UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>Plaintiff,<br>v.<br><br>TOWN OF CARVER, MA,<br>TOWN OF PLYMOUTH, MA,<br>ALAN G. GERMAIN, STEPHEN G. GRAY,<br>BETTY CAVACCO, MICHAEL MAIN,<br>A.D. MAKEPEACE COMPANY,<br>JAMES F. KANE,<br>SLT CONSTRUCTION CORPORATION,<br>and PETER OPACHINSKI,<br><br>Defendants. | No. 1:24-CV-12347-ADB |

**MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES F. KANE AND A.D. MAKEPEACE COMPANY'S MOTION TO DISMISS**

Michael R. Pontrelli (BBO # 549194)
Geoffrey M. Raux (BBO # 674788)
Lea Gulotta James (BBO # 705421)
Miranda D. Curtis (BBO # 709084)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 342-4000
mpontrelli@foley.com
graux@foley.com
ljames@foley.com
mcurtis@foley.com

*Attorneys for A.D. Makepeace Company and James F. Kane*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 2

LEGAL STANDARD ........................................................................................ 6

ARGUMENT ........................................................................................ 6

I. Half of the Allegations Against the Makepeace Defendants Are Barred by the Statute of Limitations ........................................................................................ 6

II. Plaintiff's Constitutional Claims Fail ........................................................................................ 7

*A. Plaintiff Fails to Allege Deprivation of Any Protected Right* .................... 7

*B. There Is No Causal Connection Between the Makepeace Defendants' Conduct and Any Deprivation of Rights* .............................. 8

*C. The Makepeace Defendants Did Not Act Under "Color of State Law" or Conspire with the Municipal Defendants to Deprive Plaintiff of Her Rights* ........................................................................................ 9

*D. There Are No Allegations of Class-Based Discriminatory Animus* .......... 11

*E. There Are No Allegations of Threats of Physical Harm or a Pattern of Harassment or Intimidation* .................................................. 12

III. Plaintiff's Tort Claims Fail ........................................................................................ 12

*A. Plaintiff Fails to State a Claim for Defamation* ...................................... 12

*B. The Makepeace Defendants' Conduct Was Not Extreme and Outrageous* ........................................................................................ 17

*C. Plaintiff Did Not Suffer Disclosure of Private Facts or Intrusion Upon Seclusion* ........................................................................................ 18

IV. The Complaint Should Be Dismissed as to Mr. Kane ......................................... 20

RELIEF REQUESTED ........................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Afrasiabi v. United Press Int'l*, 561 F. Supp. 3d 1 (D. Mass. 2021) ........ 15

*Alston v. Spiegel*, 988 F.3d 564 (1st Cir. 2021) ........ 11

*Anjomi v. Kalai*, 828 F. Supp. 2d 410 (D. Mass. 2011) ........ 18

*Arsenault v. Otto*, 628 F. Supp. 3d 377 (D. Mass. 2022) ........ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 6

*Ayyadurai v. Walsh*, No. 20-cv-11531-ADB, 2021 WL 3374915 (D. Mass. Aug. 3, 2021) ........ 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 6

*Biro v. Condé Nast*, 963 F.Supp.2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) .... 17

*Blankenship v. Dollar Gen. Corp.*, No. 22-cv-40058-ADB, 2023 WL 159737 (D. Mass. Jan. 11, 2023) ........ 18

*Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508 (1984) ........ 16

*Brooks v. Metro. Sec. Servs.*, 527 F. Supp. 3d 110 (D. Mass. 2021) ........ 18

*Bruce v. Worcester Reg'l Transit Auth.*, 655 F. Supp. 3d 1 (D. Mass. 2023) ........ 10

*Buckingham v. Barrett*, No. 21 MISC 000221, 2022 WL 766209 (Mass. Land Ct. Apr. 20, 2021) ........ 3

*Buntin v. City of Bos.*, No. 16-P-1568, 2017 WL 2644377 (Mass. App. Ct. Jun. 20, 2017) ........ 15

*Butler v. Deutsche Bank Tr. Co. Ams.*, 748 F.3d 28 (1st Cir. 2014) ........ 6

*Columbus v. Biggio*, 76 F. Supp. 2d 43 (D. Mass. 1999) ........ 9

*Correllas v. Viveiros*, 410 Mass. 314 (1991) ........ 13

*Currence v. A.D. Makepeace Co.*, No. 2283CV00585 (Mass. Super. Ct. May 19, 2023) ........ 3

*Damon v. Moore*, 520 F.3d 98 (1st Cir. 2008) ........ 15

*Doyle v. Hasbro, Inc.*, 103 F.3d 186 (1st Cir. 1996) ........ 17

*Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1 (1st Cir. 2005) ........ 11

*Eyal v. Helen Broad. Corp.*, 411 Mass. 426 (1991) ........ 12

*Galvin v. N.Y., New Haven, & Hartford R.R. Co.*, 341 Mass. 293 (1960) .................................. 13

*Galvin v. U.S. Bank, N.A.*, 852 F.3d 146 (1st Cir. 2017) .......................................................... 17

*Govan v. Trustees of Bos. Univ.*, 66 F. Supp. 2d 74 (D. Mass. 1999) .......................................... 6

*Home Depot U.S.A., Inc. v. Rosencranz,* No. 93-4340-F, 1994 WL 287585 (Mass. Super. Ct. Mar. 25, 1994)..................................................................................................................... 15

*Kaur v. Pollack*, No. SAG-21-00292, 2021 WL 1890630 (D. Md. May 10, 2021) ..................... 19

*LaVallee v. Town of Dedham*, No. CV 22-10554-JGD, 2024 WL 2883367 (D. Mass. June 7, 2024) ......................................................................................................................................... 8

*Lemelson v. Bloomberg LP*, 253 F, Supp. 3d 333 (D. Mass. 2017)............................................ 17

*Ligotti v. Daly XXL Commc'ns, Inc.*, No. CV 16-11522-MLW, 2018 WL 11606495 (D. Mass. Apr. 27, 2018) ......................................................................................................................... 16

*Linton v. O'Brien*, 142 F. Supp. 3d 215 (D. Mass. 2015) (Burroughs, J.).................................. 10

*Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6 (1st Cir. 2011) ................................................ 16

*Lyon v. Morphew*, 424 Mass. 828 (1997) ..................................................................................... 20

*MacFarlane v. Town of E. Bridgewater*, 110 F. Supp. 3d 310 (D. Mass. 2015)......................... 19

*Maclellan v. Dahlheimer*, No. MICV201102611H, 2012 WL 6971005 (Mass. Super. Ct. Dec. 21, 2012) ....................................................................................................................................... 18

*McCavitt v. Zoning Bd. of Appeals of City of Newburyport*, No. 381972 (HMG), 2008 WL 4572928 (Mass. Land Ct. Oct. 14, 2008).................................................................................. 15

*McKee v. Cosby*, 874 F.3d 54 (1st Cir. 2017)................................................................................. 14

*Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102 (D. Mass. 2020), *aff'd*, No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021)............................................................................ 13, 15

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)........................................................................... 16

*Nelson v. Salem State Coll.*, 446 Mass. 525 (2006)........................................................................ 19

*Ortiz v. Examworks, Inc.*, 470 Mass. 784 (2015)............................................................................ 19

*Parker v. Landry*, 935 F.3d 9 (1st Cir. 2019) ....................................................................... 11, 12

*Polay v. McMahon*, 468 Mass. 379 (2014)...................................................................... 17, 18

*Poon v. Mass. Inst. of Tech.*, No. CV 21-11468-GAO, 2023 WL 2696534 (D. Mass. Mar. 29, 2023) ........ 8, 12

*Rodriguez-Cirilo v. Garcia*, 115 F.3d 50 (1st Cir. 1997) ........ 8

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) ........ 6

*Ryan v. Hannula*, No. 2483CV00301 (Mass. Super. Ct. 2024) ........ 3

*Salcedo v. Town of Dudley*, 629 F. Supp. 2d 86 (D. Mass. 2009) ........ 8

*Sanchez v. Pereira-Castillo*, 590 F.3d 31 (1st Cir. 2009) ........ 9

*Santiago v. Puerto Rico*, 655 F.3d 61 (1st Cir. 2011) ........ 10

*Save the Pine Barrens, Inc. v. Carver Zoning Bd. of Appeals*, No. 2183CV00929, 2022 WL 19005239 (Mass. Super. Ct. Oct. 12, 2022) ........ 3

*Sheehan v. Tobin*, 326 Mass. 185 (1950) ........ 16

*Squeri v. Mount Ida Coll.*, 954 F.3d 56 (1st Cir. 2020) ........ 18

*Taylor v. Swartwout*, 429 F. Supp. 2d 209 (D. Mass. 2006) ........ 20

*Thomas v. Harrington*, 909 F.3d 483 (1st Cir. 2018) ........ 12

*Walker v. Bd. of Appeals of Harwich*, 388 Mass. 42 (1983) ........ 15

*Williams v. City of Brockton*, 59 F. Supp. 3d 228 (D. Mass. 2014) ........ 6

**Statutes**

42 U.S.C. § 1983 ........ 1, 2, 8, 12

42 U.S.C. § 1985 ........ 1, 8

M.G.L. c. 12 § 11H-11J ........ 1

M.G.L. c. 214, § 1B ........ 23

M.G.L. c. 260, § 4 ........ 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 1, 6

Defendants A. D. Makepeace Company ("Makepeace") and James F. Kane (together with Makepeace, the "Makepeace Defendants") hereby submit this Memorandum in Support of their Motion to Dismiss the Complaint ("Complaint") of Plaintiff Margaret Sheehan ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff has engaged in an organized campaign over the past several years to undermine the Makepeace Defendants' lawful and legitimate business activity, and to halt economic development by Makepeace and other businesses across southeastern Massachusetts. Acting individually and under the guise of a self-styled "environmental protection" organization called Save the Pine Barrens, Inc. ("STPB"), Plaintiff has filed at least four different judicial actions and three different administrative appeals against the Makepeace Defendants. She has been unsuccessful at every turn. This latest effort will be no different.

In this case, Plaintiff goes beyond her baseless contention that Makepeace is harming the environment, and now alleges that the Makepeace Defendants are harming her personally and depriving her of constitutionally protected rights. She asserts claims under 42 U.S.C. §§ 1983 and 1985(3) and the Massachusetts Civil Rights Act ("MCRA") alleging that she has been deprived of her free speech and due process rights. She also asserts state-law tort claims for defamation, intentional infliction of emotional distress, and invasion of privacy.

Despite filing a 117-page Complaint, Plaintiff has shown no substance undergirding her sundry causes of action. Indeed, she only identifies four instances of purported misconduct by the Makepeace Defendants. Two of those four allegedly took place in spring 2021, outside of the three-year statute of limitations that applies to each of Plaintiff's claims. With or without the statute of limitations, moreover, Plaintiff fails to assert any factual allegations showing that the

Makepeace Defendants deprived her of any legally protected rights. In fact, Plaintiff fails to allege that she has been deprived of her rights at all. The Complaint shows the opposite—that Plaintiff has continued to exercise her protected rights without interruption.

Even if Plaintiff's rights had been deprived, she fails to allege any causal connection between that deprivation and the conduct of the Makepeace Defendants, and, as a matter of law, she cannot show that the Makepeace Defendants should be treated as "state actors" or co-conspirators for purposes of 42 U.S.C. §§ 1983 and 1985. She also has failed to allege any discriminatory animus to state a claim under § 1985.

Plaintiff's state-law tort claims fare no better. As to defamation, the Complaint alleges statements that did not concern her, are not defamatory on their face, and do not suggest actual malice. Her intentional infliction of emotional distress claim comes nowhere close to alleging conduct that was beyond all possible bounds of decency, and her invasion of privacy claim does not allege any privacy intrusion that was unreasonable, substantial, or serious. For these reasons, as set forth more fully below, yet another of Plaintiff's many cases against the Makepeace Defendants must end in dismissal.

## FACTUAL BACKGROUND

Makepeace is the largest cranberry grower in the North America and the largest grower-owner of Ocean Spray Cranberries, Inc., an agricultural cooperative. Makepeace has been in business in the Commonwealth since 1854 and maintains its principal place of business in Wareham, Massachusetts. Compl. ¶ 9. It has long served the community through its agricultural pursuits and charitable endeavors. In order to cultivate its large volume of quality fruit, Makepeace engages in the regular construction, maintenance, and renovation of its cranberry bogs, and it excavates sand and gravel on its farm as an incidental phase of such work. *See id.* ¶ 14. Makepeace

has also developed the environmentally-conscious neighborhood of Redbrook, located in Plymouth, Massachusetts. *See id.* Mr. Kane is the CEO and President of Makepeace. *See id.* ¶ 10.

Plaintiff is the founder of STPB, which was initially created with the goal of "preventing Makepeace from continuing to obtain permits" for solar power projects. *See id.* ¶ 33. Over the years, Plaintiff's and STPB's efforts against Makepeace have expanded. Plaintiff regularly petitions against Makepeace at zoning boards and other municipal bodies and has filed at least four separate lawsuits challenging municipal decisions authorizing Makepeace's work. Three of those lawsuits have been dismissed, one is awaiting decision on a pending Rule 12 motion, and one is awaiting Rule 12 briefing. *See Buckingham v. Barrett*, No. 21 MISC 000221, 2022 WL 766209, at *1 (Mass. Land Ct. Apr. 20, 2021) (dismissing Planning Board appeal for lack of subject matter jurisdiction and failure to state a claim); *Save the Pine Barrens, Inc. v. Carver Zoning Bd. of Appeals*, No. 2183CV00929, 2022 WL 19005239 (Mass. Super. Ct. Oct. 12, 2022) (dismissing ZBA appeal for lack of subject matter jurisdiction); *Currence v. A.D. Makepeace Co.*, No. 2283CV00585, Memo. of Dec. & Ord. on Defs.' Mot. for SJ at *11 (Mass. Super. Ct. May 19, 2023) (File Ref. Nbr. 46) (dismissing ERC appeal for failure to state a claim); *Ryan v. Hannula*, No. 2483CV00301 (Mass. Super. Ct. 2024) (Rule 12(b)(1) motion pending).

In addition, STPB is a party—either in name or in interest—to at least three pending administrative appeals before the Department of Environmental Protection ("DEP") attempting to stop Makepeace from (1) the creation of new cranberry bogs, (2) the installation of solar panels near existing bogs, and (3) the paving of a short road where there is already an existing unimproved road. *See In the Matter of ADM Cranberry Co.*, OADR No. WET-2024-013; *In the Matter of ADM Agawam Development, LLC*, OADR No. WET-2024-016; Request for Denial—Superseding Order of Conditions, DEP File No. SE57-3343. With respect to each of the administrative matters, after

public hearing and review, the relevant local conservation commissions issued an Order of Conditions approving Makepeace's work. *See id.* STPB appealed these Orders of Conditions to DEP, and DEP has already issued Superseding Orders of Conditions again approving the work in two of the three matters (both of which STPB has now further appealed to DEP's Office of Appeals and Dispute Resolution). *See id.* A ruling has yet to issue in the remaining matter. *See id.*

Having found no success in her efforts to stop Makepeace's work and destroy its business through these actions, Plaintiff has now resorted to filing this lawsuit against the Makepeace Defendants claiming they have caused her personal harm. The saga she tells in her 305-paragraph Complaint is over-the-top. Yet amidst all the hyperbole, there are only four alleged instances of purported misconduct by the Makepeace Defendants.

First, Plaintiff alleges that, in spring 2021, Mr. Kane sent a letter to her home address in New Hampshire instead of to her professional address. *See id.* ¶ 34. The Complaint does not elaborate on how Mr. Kane obtained that address, nor does it argue that the address was not publicly available. *See id.* Upon receiving the letter, Plaintiff apparently sent a response requesting that Mr. Kane not use her home address again. *See id.* Mr. Kane has respected that request. *See id.*

Second, again in spring 2021, Plaintiff alleges that she pulled over to the shoulder of a public road near Makepeace property in Carver. *See id.* ¶ 35. She admits she was there to "observe" Makepeace's alleged sand and gravel operations—which Plaintiff and STPB have a history of doing, including through measures such as drone flights over Makepeace property. *See id.* (admitting that Plaintiff observed Makepeace's activities on "numerous occasions"). Plaintiff alleges that she then moved to the Tihonet Road cemetery, where she was approached by a Wareham police officer. *See id.* The police officer supposedly told Plaintiff that Makepeace had reported her for harassing a truck driver and blocking a truck and put out a "Be on the Lookout"

alert for her vehicle. *See id.* Plaintiff was then apparently followed by a Makepeace employee when she drove away and was later approached by a Carver police officer. *See id.* at ¶ 36.

Third, during a public hearing of the Carver Zoning Board of Appeals ("ZBA") on September 28, 2021, Mr. Kane allegedly made statements with which Plaintiff disagreed. The hearing was for Plaintiff's appeal of a matter she had previously lost in which she argued that Makepeace's agricultural development violated the town's zoning bylaw. *See id.* at ¶ 36. Mr. Kane was asked to speak at the hearing by the ZBA's Chair. *See id.* In order to "correct" a statement by Plaintiff, Mr. Kane stated that Plaintiff's expert participated in a visit to the Makepeace site at issue. *See id.* at ¶ 38. Plaintiff admits that this statement was accurate. *See id*. However, she took issue with a further statement where Mr. Kane allegedly said that the site visit was conducted by the Carver Earth Removal Committee ("ERC"), and that the ERC found Makepeace to be "in compliance at all three sites." *See id.* Plaintiff says this statement was incorrect insofar as the ERC only determined that any earth removal was conducted in accordance with bylaws applicable to removal, but that it had not determine that the sites were in compliance in all other respects. *See id.* Plaintiff characterizes Mr. Kane's statement as "falsely accus[ing] her of being a liar, without actually using the word," and undermining her credibility. *See id.* ¶¶ 39-40.

Fourth and finally, Plaintiff alleges that in February 2023, she was once again standing on the side of the road by Makepeace property when two cars containing supposed Makepeace personnel pulled up beside her, and that individuals in the cars allegedly videotaped Plaintiff without her permission. *See id.* ¶ 75. Plaintiff claims, in conclusory fashion and without supporting factual allegations, that these actions were directed by Mr. Kane. *See id*.

***Nothing else in the Complaint implicates the Makepeace Defendants.*** Nonetheless, Plaintiff asserts seven different causes of action against the Makepeace Defendants based solely

on these four instances of purported misconduct. Because such conduct, even if true, does not support any of the asserted claims for relief, the Makepeace Defendants now move for dismissal.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must set forth "more than labels and conclusions[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[B]ald assertions and unsupportable conclusions are properly disregarded." *Butler v. Deutsche Bank Tr. Co. Ams.*, 748 F.3d 28 (1st Cir. 2014). A complaint, like Plaintiff's, that is full of words, but lacking in substance, must be dismissed for failure to state a claim. *See, e.g.*, *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) (dismissing complaint per Rule 12(b)(6) and noting that the requirement to state a plausible claim for relief is "not satisfied merely by making a complaint long").

## ARGUMENT

### I. Half of the Allegations Against the Makepeace Defendants Are Barred by the Statute of Limitations

Plaintiff's lengthy Complaint identifies only four instances of alleged misconduct by the Makepeace Defendants. *Supra* 4-5. Two of the four instances are outside of the statute of limitations. Specifically, Plaintiff's allegations about the correspondence Mr. Kane sent to her home and the allegations about the police complaint both occurred in the "Spring of 2021." *See* Compl. ¶¶ 34, 35, 266. Each of Plaintiff's causes of action carries a three-year statute of limitations. *See Williams v. City of Brockton*, 59 F. Supp. 3d 228, 240 (D. Mass. 2014) (§ 1983); *Govan v. Trustees of Bos. Univ.*, 66 F. Supp. 2d 74, 80 (D. Mass. 1999) (§ 1985); *Arsenault v. Otto*, 628 F. Supp. 3d 377, 380 (D. Mass. 2022) (MCRA); M.G.L. c. 260, § 2A (tort actions); M.G.L. c. 260, §

4 (slander). Since this Complaint was filed on September 12, 2024, these causes of action must be dismissed to the extent they rely on the spring 2021 allegations. Even with these allegations, Plaintiff's claims cannot survive scrutiny under Rule 12. But without them, Plaintiff's already weak claims become untenable.

## II. Plaintiff's Constitutional Claims Fail

The essence of Plaintiff's claims for violation of her First, Fifth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) (Counts 19, 20, and 21), and for interference with rights secured by the U.S. Constitution and/or the constitution of the Commonwealth (Count 22), is that her rights to free speech and due process were violated such that she was impeded in her efforts to combat what she characterizes as the "sand mining industry." However, the allegations in the Complaint show that Plaintiff has not been deprived of any protected rights. To the contrary, Plaintiff has pursued her campaign against Makepeace without interruption. There is, moreover, nothing in the Complaint showing a causal connection between any purported deprivation of rights and conduct attributable to the Makepeace Defendants.

### A. *Plaintiff Fails to Allege Deprivation of Any Protected Right*

Tellingly, Plaintiff does not allege that her efforts to combat the so-called "sand mining industry" have been blocked or prevented by the Makepeace Defendants. Instead, she claims they have been "chill[ed]." *See* Compl. ¶¶ 271, 281. What has resulted from this "chilling" is unclear. What is clear, however, based on the Complaint and publicly available filings of which this Court may take judicial notice, is that Plaintiff has actively and routinely relied upon her free speech and due process rights to attack Makepeace in an attempt to thwart its business at every turn.

Plaintiff admits that she has attended and petitioned on behalf of her clients at meetings before municipal bodies in the Towns of Carver and Plymouth on no fewer than ten occasions—

and likely far more—in the past three years. *See, e.g.*, Compl. ¶¶ 37 (September 28, 2021 Carver ZBA hearing), 43 (2022 Carver Town Hall), 46 (Carver Conservation Commission), 52-57 (January 4, 2023 Plymouth ZBA hearing), 76 (March 23, 2023 Carver Town Hall), 77 (March 29, 2023 Carver ERC meeting), 78 (April 2023 Carver Town Hall), 111 (December 7, 2023 CPC meeting), 119 (May 29, 2024 Carver ZBA hearing), 123 (July 17, 2024 Carver ZBA hearing). In addition, as summarized above, Plaintiff has filed multiple lawsuits in land and superior court and pursued several administrative appeals before the DEP. *Supra* at Factual Background.

Nowhere does the Complaint identify a protected right that Plaintiff was unable to exercise. For that reason, her conclusory allegations that her constitutional rights have been deprived must be rejected, and the causes of action that depend on those allegations must be dismissed. *See LaVallee v. Town of Dedham*, No. CV 22-10554-JGD, 2024 WL 2883367, at *19 (D. Mass. June 7, 2024) (no deprivation where plaintiff public school teacher admitted he was not prohibited from and continued to exercise First Amendment right not to stand during Pledge of Allegiance); *Poon v. Mass. Inst. of Tech.*, No. CV 21-11468-GAO, 2023 WL 2696534, at *2 (D. Mass. Mar. 29, 2023) (no deprivation where defendants' disciplinary actions against plaintiff did not prevent plaintiff from exercising constitutional right to petition government).

### *B.* *There Is No Causal Connection Between the Makepeace Defendants' Conduct and Any Deprivation of Rights*

Even if Plaintiff could establish a deprivation of her constitutional rights, she has not adequately alleged a causal connection between such deprivation and the Makepeace Defendants' conduct. Causation is an essential element of each of Plaintiff's constitutional claims.[1] The

---

[1] *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) ("[P]laintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation [in § 1983 claim]."); *Salcedo v. Town of Dudley*, 629 F. Supp. 2d 86, 105 (D. Mass. 2009) (requiring that defendant's actions "caused an actionable

Complaint, however, does not explain how the alleged conduct of the Makepeace Defendants could have deprived Plaintiff of her rights. Again, the only conduct at issue that is within the statute of limitations is (1) Mr. Kane's answering of questions at a public hearing and making statements with which Plaintiff disagrees, and (2) Makepeace employees purportedly pulling up beside her on a public road and videotaping her without her permission. Putting aside the vast amount of protected activity in which Plaintiff has admittedly engaged ***after these events occurred*** (thereby showing that no rights were deprived), there is no plausible explanation for how these events could reasonably have caused any deprivation of rights.[2] Plaintiff cannot simply declare she was deprived of her rights by the Makepeace Defendants without explaining how. *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (dismissing § 1983 claim for merely "parroting" causation standard).

The type of conduct at issue, moreover, is ubiquitous, and in no way whatsoever limited to Makepeace or Mr. Kane. Advocates and witnesses daily speak in court and before administrative bodies taking positions and making assertions with which their opponents disagree. Similarly, in the age of smart phones, it is commonplace for people in public places to be openly videotaped. It would be unprecedented and a vast overreach for this Court to find that such conduct can support a claim for a violation of constitutional rights, especially in a case, like this one, where there is no identification or explanation of when or how Plaintiff was actually deprived of such rights.

### *C. The Makepeace Defendants Did Not Act Under "Color of State Law" or Conspire with the Municipal Defendants to Deprive Plaintiff of Her Rights*

Over and above her failure to show an actual deprivation of rights or a causal connection

---

constitutional violation"); *Columbus v. Biggio*, 76 F. Supp. 2d 43, 54 (D. Mass. 1999) (dismissing MCRA claim because plaintiff failed to "establish the nexus between the threats and deprivation of rights").

[2] There is also no explanation of how the time-barred conduct of sending a letter to her residence or reporting her harassment to the police could cause a deprivation of her free speech or due process rights.

with the Makepeace Defendant's conduct, Plaintiff's claims under § 1983 and § 1985(3) fail for the additional reasons that the Complaint does not allege facts supporting the contention that the Makepeace Defendants were state actors or conspired with others to deprive Plaintiff of her constitutional rights.

Conduct by private actors, like the Makepeace Defendants, is only subject to § 1983 if it can be attributed to the state by virtue of the close relationship between the two. *See* 42 U.S.C. § 1983; *see also Linton v. O'Brien*, 142 F. Supp. 3d 215, 218 (D. Mass. 2015) (Burroughs, J.) (citing *W. v. Atkins*, 487 U.S. 42, 48–50 (1988)). To qualify, one of three demanding tests set forth by the First Circuit must be passed. *Bruce v. Worcester Reg'l Transit Auth.*, 655 F. Supp. 3d 1, 10 (D. Mass. 2023) (citing *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015)). The Complaint's allegations fail to satisfy each and every one of these three tests.

The Complaint contains no allegations that the Towns of Plymouth and Carver (the "Municipal Defendants") "exercised coercive power" over the Makepeace Defendants to deprive Plaintiff of her rights or that they otherwise significantly encouraged the Makepeace Defendants to undertake any such deprivation, as would be required to meet the state compulsion test. *See Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011) ("[A] plaintiff must demonstrate a particularly close tie between the state and the private party's conduct, such that the conduct may fairly be regarded as state action."). Likewise, the Complaint fails to allege any facts suggesting that the Makepeace Defendants are dependent on the Municipal Defendants in their day-to-day affairs, share profits generated by the challenged conduct, or use the Municipal Defendants' public facilities, as is required to meet the nexus or joint action test. *See id.* (requiring a showing of "mutual interdependence" to establish "that the private party's actions are attributable to the state"). Finally, the Complaint does not allege that the Makepeace Defendants performed any

public function, much less one that is "traditionally the exclusive prerogative of the State." *See Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005). Accordingly, Plaintiff's § 1983 claim cannot be sustained.

With respect to § 1985(3), allegations of a conspiracy are required, defined by common law as "an agreement among the [alleged] conspirators to deprive the plaintiff of her civil rights." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019). "Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." *Alston v. Spiegel*, 988 F.3d 564, 577–78 (1st Cir. 2021). In this case, the Complaint contains no facts supporting the conclusory allegations of a conspiracy. At most, the Complaint alleges that the Makepeace Defendants and Municipal Defendants shared a common interest and an "implied" symbiotic relationship or "organic alliance." Compl. ¶¶ 258, 264. There are no allegations that the Makepeace Defendants and Municipal Defendants had an agreement to deprive Plaintiff of her rights, much less allegations regarding the formation or nature of such an agreement.

Far from pleading a close relationship or conspiracy, the Complaint merely alleges that Makepeace donated equipment and land to the Municipal Defendants; Carver and Plymouth municipal agencies voted in favor of Makepeace's proposed developments; and the Makepeace Defendants and Municipal Defendants share a common interest in supporting the "sand mining industry." *See* Compl. ¶¶ 100, 111. 129, 255, 257, 262, 276. As a matter of law, such conduct and common interest, even if assumed to be true, would not establish a claim under § 1985(3).

### *D. There Are No Allegations of Class-Based Discriminatory Animus*

Plaintiff's § 1985(3) claim also fails because there are no allegations that the Makepeace Defendants acted with discriminatory intent. A conspiracy is not actionable under § 1985(3)

unless it "involve[s] some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Parker*, 935 F.3d at 18. Dismissal is required.

### *E. There Are No Allegations of Threats of Physical Harm or a Pattern of Harassment or Intimidation*

Plaintiff has also failed to state a claim under the MCRA for the additional reason that there are no allegations of threats of physical harm or a pattern of harassment or intimidation. A claim under the MCRA requires allegations of threats of physical harm, *Thomas v. Harrington*, 909 F.3d 483, 492–93 (1st Cir. 2018), or, in the absence of threats of physical harm, a pattern of harassment and intimidation. *Id.* The Complaint is bereft of any such allegations. The four instances of purported misconduct by the Makepeace Defendants are unrelated to one another. They occurred eighteen months apart, with different actors, and in wholly different contexts. *See Poon*, 2023 WL 2696534 at *2 (a "single, isolated statement" does not constitute threat, intimidation, or coercion under MCRA). Dismissal of the MCRA claim is required.

## III. Plaintiff's Tort Claims Fail

In addition to her claims for deprivation of constitutional rights, Plaintiff brings state law tort claims for defamation, intentional infliction of emotional distress, and invasion of privacy. Like her constitutional claims, these claims cannot be supported by the four instances of purported misconduct by the Makepeace Defendants, much less the two instances that are within the statute of limitations. The Court should dismiss these claims in full.

### *A. Plaintiff Fails to State a Claim for Defamation*

Defamation is a "traditionally disfavored action . . . ." *Eyal v. Helen Broad. Corp.*, 411 Mass. 426, 432 n.7 (1991). Prompt "disposition of defamation claims is 'especially favored' in Massachusetts because meritless cases put 'an unjustified and serious damper on freedom of expression' and 'the costs of litigation may induce an unnecessary and undesirable self-

censorship.'" *Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 110 (D. Mass. 2020), *aff'd*, No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021) (quoting *King v. Globe Newspaper Co.*, 400 Mass. 705, 708 (1987)). "Prompt" dismissal of Plaintiff's claim is warranted here.

Plaintiff's claim for slander in Count 23 concerns two instances of alleged misconduct: (1) statements made by Mr. Kane at the September 2021 ZBA hearing that Plaintiff disputed, and (2) the purported report made to the Wareham and Carver police that Plaintiff harassed a Makepeace driver. Per the Complaint, the report to police allegedly occurred in spring 2021, so it is barred by the three-year statute of limitations. Regardless, Massachusetts recognizes a conditional privilege for reports of potential criminal activity made to the police. *See Correllas v. Viveiros*, 410 Mass. 314, 320-24 (1991). Liability cannot attach to such reports unless they are made with actual malice or distributed broadly beyond the police. *See Galvin v. N.Y., New Haven, & Hartford R.R. Co.*, 341 Mass. 293, 296–97 (1960). Here, there are no allegations that the Makepeace Defendants made their alleged report to anyone other than the police. Furthermore, while Plaintiff states that the report was false and "precipitated by their malice," such allegations are conclusory and should be disregarded. Indeed, the Complaint itself undercuts any claim of malice by admitting that there was an incident of harassment on the road that involved "another driver, who happened also to be a woman." Compl. ¶ 292. By acknowledging that there was a factual basis for the alleged report, the Complaint demonstrates that there can be no finding of actual malice. Accordingly, a conditional privilege immunizes the Makepeace Defendants from liability for reporting potential criminal conduct to police.

With respect to Mr. Kane's statements made at the ZBA hearing, there are at least five separate reasons why Plaintiff has failed to state a claim for relief.

<u>First</u>, the statements did not concern Plaintiff. Indeed, in discussing those statements, the

Complaint says that Plaintiff felt "demoralized that [Mr. Kane] had gutted her ***argument*** . . . ." *Id.* ¶ 40 (emphasis added). "[H]e then volunteered information . . . with the express purpose of contradicting Sheehan . . . at the same time he ***gutted her carefully laid-out argument***." *Id.* ¶ 38 (emphasis added). Plaintiff's own allegations, therefore, underscore that Mr. Kane's statements had nothing to do with her, her reputation, or her character. They were directed at her argument before the ZBA. *See Ayyadurai v. Walsh*, No. 20-cv-11531-ADB, 2021 WL 3374915, at *2 (D. Mass. Aug. 3, 2021) (Burroughs, J.) (no actionable conduct where defendant's comments about Boston not being a place for those who "push hate" and fighting back against "anti-Semitism" and "Nazis" did not concern plaintiff). Plaintiff's assertion that the statements "portrayed her as a liar" is conclusory at best. There is no support in Massachusetts law for the contention that simply disagreeing with another during a public hearing can qualify as a statement made against that person's reputation or character to support a claim for defamation.

Second, even if Mr. Kane's statements to the ZBA could be construed as statements attacking Plaintiff's credibility, such statements would still not support a claim for defamation insofar as "[g]eneral statements about a person's credibility may well be a matter of opinion that is not capable of being 'objectively verified or disproven.'" *McKee v. Cosby*, 874 F.3d 54, 63 (1st Cir. 2017) (quoting *McKee v. Cosby*, 236 F. Supp. 3d 427, 440 (D. Mass. 2017)). In addition, disclosing facts underlying an assertion of untruthfulness "immuniz[es]" a person "from defamation liability." *Id.* at 63. Here, Mr. Kane's comments did not concern Plaintiff or directly attack her credibility. If his disagreement with her constitutes an attack on her credibility, it is merely an opinion that does not qualify as defamation. Moreover, because he disclosed the facts upon which his opinion was based (*e.g.*, where the ERC was present and for what purpose), Mr. Kane is immunized from liability. *See id.*; *see also Home Depot U.S.A., Inc. v. Rosencranz*, No.

93-4340-F, 1994 WL 287585, at *2 (Mass. Super. Ct. Mar. 25, 1994) (no actionable conduct where group's letter to editor opposing retail permitting and accusing company of lying to residents was opinion, took an issue position, and disclosed facts).

Third, Mr. Kane's comments cannot support a claim for defamation because they did not hold Plaintiff "up to scorn, hatred, ridicule, or contempt, in the minds of any considerable or respectable segment in the community." *Damon v. Moore*, 520 F.3d 98, 103 (1st Cir. 2008) (quoting *Phelan v. May Dep't Stores, Co*., 443 Mass. 52, 56 (Mass. 2004)). In other words, Mr. Kane's comments are not actionable because no reasonable mind would construe them as defamatory. *See, e.g., Afrasiabi v. United Press Int'l*, 561 F. Supp. 3d 1, 6–7 (D. Mass. 2021) (Burroughs, J.) (no actionable conduct where defendant called plaintiff a "wolf in sheep's clothing" and an "Iranian spy"); *Mullane*, 433 F. Supp. 3d at 112 (no actionable conduct where "rude," "dumb," "unethical," a "little entitled ponce," and a "dauphin" "are mere epithets that are insufficiently fact-based to ground a defamation claim") (quotation simplified).

Fourth, Mr. Kane's comments were privileged. There is an absolute privilege that applies to statements made during judicial or quasi-judicial proceedings. *See Buntin v. City of Bos.*, No. 16-P-1568, 2017 WL 2644377, at *4 (Mass. App. Ct. Jun. 20, 2017). Since zoning board proceedings are quasi-judicial, Mr. Kane's comments should be immune from liability. *See Walker v. Bd. of Appeals of Harwich*, 388 Mass. 42, 50 n.6 (1983) (superseded by statute on other grounds) ("We have stated that a zoning board of appeals is an administrative or quasi-judicial tribunal."); *McCavitt v. Zoning Bd. of Appeals of City of Newburyport*, No. 381972 (HMG), 2008 WL 4572928, at *4 (Mass. Land Ct. Oct. 14, 2008) (characterizing lawsuit as seeking "review of a quasi-judicial proceeding").

Even if an absolute privilege does not apply, a conditional privilege exists where a

"communication is of a kind reasonably calculated to protect or further" a common interest between the maker and the recipient. *Sheehan v. Tobin*, 326 Mass. 185, 190–91 (1950). The privilege is retained so long as the speaker does not publish the statement unnecessarily, unreasonably, or excessively. *Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 514 (1984). Here, the ZBA hearing was held, in part, to elicit testimony concerning the validity of a permit. The ZBA benefits (as the public does) from open and honest testimony, Mr. Kane shared that interest in conveying to the ZBA his advocacy on behalf of Makepeace, and Mr. Kane made his comments to the appropriate panel empowered to receive them. Accordingly, even if not absolutely privileged, his statements were conditionally privileged. *See, e.g., Ligotti v. Daly XXL Commc'ns, Inc.*, No. CV 16-11522-MLW, 2018 WL 11606495, at *5 (D. Mass. Apr. 27, 2018) (conditional privilege where employment file with alleged defamatory statements of sexual harassment was not shown to anyone beyond supervisory personnel).

<u>Fifth</u> and finally, there are no allegations that Mr. Kane made his comments with actual malice. As Plaintiff seems to acknowledge, she is likely a limited purpose public figure in light of her self-generated prominence in campaigning against a wide array of municipal permitting, and serial participation in public hearings, as the founder of STPB. *See* Compl. ¶¶ 168, 204, 233, 296; *see also Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13–14 (1st Cir. 2011) (noting that a "limited purpose" public figure emerges where there is a "matter that attracts public attention" and "the plaintiff has attempted to 'influence the resolution' of that controversy"). Recovery by a public figure for defamation is only possible upon a showing of actual malice. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964). To plead "actual malice" means to plead facts that a defendant acted "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Levesque v. Doocy*, 560 F.3d 82, 87 (1st Cir. 2009) (alteration in original). Pleading

actual malice is an "onerous task." *Biro v. Condé Nast*, 963 F.Supp.2d 255, 278 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015); *see Lemelson v. Bloomberg LP*, 253 F. Supp. 3d 333, 340–31 (D. Mass. 2017) (pleading actual malice is a "high bar"). Plaintiff fails to plead any facts showing that Mr. Kane knew the alleged falsity of the statements he made before the ZBA. Accordingly, there can be no finding of actual malice and, as a result, no valid claim for defamation.

### *B. The Makepeace Defendants' Conduct Was Not Extreme and Outrageous*

Plaintiff also fails to state a valid claim for intentional infliction of emotional distress. This claim requires allegations that (1) defendants "intended, knew, or should have known that [their] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 161 (1st Cir. 2017) (quoting *Polay v. McMahon*, 468 Mass. 379, 385 (2014)). The standard for intentional infliction of emotional distress is "very high." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145–46 (1976)). "'Mere insults, indignities, threats, annoyances, petty oppressions, [] other trivialities' . . . [or] 'an intent which is tortious or even criminal'" is not enough. *Polay*, 468 Mass. at 385 (quoting *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997)). Conduct is extreme or outrageous where it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Roman v. Tr. of Tufts Coll.*, 461 Mass. 707, 718 (2012)). "A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level." *Id.*

In this case, the alleged conduct of the Makepeace Defendants does not meet this high burden. Making statements at a public meeting that conflict with the statements of another, and briefly videotaping someone standing on a public roadway, are not even close to the "extreme and

outrageous" conduct necessary to inflict emotional harm that is "so severe that 'no reasonable person could be expected to endure it.'" *See Anjomi v. Kalai*, 828 F. Supp. 2d 410, 414 (D. Mass. 2011) (quoting *Tetrault*, 425 Mass. at 466). Considering the time-barred conduct of Mr. Kane's letter sent to a personal residence and the report allegedly made by Makepeace to police does not change this conclusion. *See, e.g.*, *Blankenship v. Dollar Gen. Corp.*, No. 22-cv-40058-ADB, 2023 WL 159737, at *1, 4 (D. Mass. Jan. 11, 2023) (no actionable conduct where defendant's employees called police several times to report plaintiff's "vexatious" conduct); *Maclellan v. Dahlheimer*, No. MICV201102611H, 2012 WL 6971005, at *2 (Mass. Super. Ct. Dec. 21, 2012) (no actionable conduct where principal allegedly followed third grader "around school in a menacing way, staring and glaring at him for no reason"); *Brooks v. Metro. Sec. Servs.*, 527 F. Supp. 3d 110, 113 (D. Mass. 2021) (no actionable conduct where plaintiff alleged court security officers "tried to silence her" during testimony and "stood over her menacingly while she was trying to plead her case"). Because the alleged conduct of the Makepeace Defendants is not "extreme and outrageous" as a matter of law, Plaintiff's claim for intentional infliction of emotional distress must be dismissed.

*C. Plaintiff Did Not Suffer Disclosure of Private Facts or Intrusion Upon Seclusion*

Plaintiff's final claim against the Makepeace Defendants is for invasion of privacy. It too requires dismissal. To state a claim for statutory invasion of privacy under M.G.L. c. 214, § 1B "the invasion must be both unreasonable and substantial or serious." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020). A claimed intrusion is assessed against these criteria based on "the location of the intrusion, the means used, the frequency and duration of the intrusion, and the underlying purpose behind the intrusion." *Polay*, 10 N.E.3d at 383. An intrusion may either be based on disclosure of private facts or on intrusion upon solitude or seclusion. *See id.* at 382.

In her Complaint, Plaintiff alleges that her privacy was invaded by the Makepeace

Defendants in the sending of a letter to her personal residence, reporting her to the police, and videotaping her on a public roadway. The alleged videotaping is the only conduct within the statute of limitations. As discussed, that allegedly occurred in a public space near the Makepeace property while Plaintiff was admittedly watching Makepeace's operations and "taking notes" to "keep a record of the haul trucks traveling from the neighboring site." Compl. ¶ 75. The videotaping was apparently brief, and the incident ended when Plaintiff got into her car. *See id.* Because Plaintiff had no reasonable expectation of privacy while standing on a public road observing Makepeace's operations, she has no claim for invasion of privacy based on the alleged videotaping. *See Nelson v. Salem State Coll.*, 446 Mass. 525, 527 (2006) (no reasonable expectation of privacy being videotaped changing in an office area with no door in a setting open to the public).

As for the time-barred conduct, even if it were considered, Plaintiff's claim would still not survive. As a matter of law, neither sending a single letter to a person's residence nor reporting potential harassment to local police without any further public disclosure qualifies as unreasonable and substantial invasions of a person's privacy. *See, e.g., Ortiz v. Examworks, Inc.*, 470 Mass. 784, 792–94 (2015) (no actionable conduct where independent medical provider sent multiple letters to patient following car accident); *MacFarlane v. Town of E. Bridgewater*, 110 F. Supp. 3d 310, 332 (D. Mass. 2015) ("common sense dictates" that a building commissioner sending plaintiffs a letter regarding a by-law violation "caused no serious or substantial interference" with plaintiffs' privacy); *see also Kaur v. Pollack*, No. SAG-21-00292, 2021 WL 1890630, at *6 (D. Md. May 10, 2021) ("Plaintiff has not cited and this Court has not found any court which has interpreted a person's statements to police to constitute publicity sufficient for an invasion of privacy claim."). For these reasons, Plaintiff's invasion of privacy claim should be dismissed.

## IV. The Complaint Should Be Dismissed as to Mr. Kane

Finally, as to Mr. Kane, dismissal is required for the separate and independent reason that he cannot be liable based solely on his position as President and CEO of Makepeace. It is well-established that "[o]fficers and employees of a corporation do not incur personal liability for torts committed by their employer merely by virtue of the position they hold in the corporation." *Lyon v. Morphew*, 424 Mass. 828, 831 (1997). In addition, "[o]fficers of a corporation do not . . . incur personal liability for torts committed by corporate employees merely by virtue of the position they hold in the corporation." *See Taylor v. Swartwout*, 429 F. Supp. 2d 209, 213 (D. Mass. 2006).

Only conduct personally attributable to Mr. Kane can support a cause of action against him. Of the four instances of the Makepeace Defendants' alleged misconduct, only two involved Mr. Kane—the letter sent to Plaintiff's residence and the statements made before the ZBA.[3] The letter sent to Plaintiff's residence was in spring 2021, hence, it is barred by the statute of limitations. The statements made to the ZBA are all that is left, and they simply do not constitute the type of conduct that can support any claim for relief. For that reason, even if Makepeace is not dismissed from this lawsuit, Mr. Kane should be.

## RELIEF REQUESTED

For the foregoing reasons, the Makepeace Defendants respectfully request that this Court dismiss the Complaint against them with prejudice and grant such other and further relief as the Court deems just and proper.

---

[3] Plaintiff's allegations, "on information and belief," that the Makepeace employees who videotaped her were "directed" by Mr. Kane and acted with his "knowledge and consent" are conclusory. *See* Compl. ¶ 75. There are no allegations, moreover, that Mr. Kane was personally involved in reporting Plaintiff.

Dated: November 13, 2024
Boston, Massachusetts

Respectfully submitted,

A.D. MAKEPEACE COMPANY
and JAMES F. KANE

By their attorneys,

*/s/ Geoffrey M. Raux*

Michael R. Pontrelli (BBO # 549194)
Geoffrey M. Raux (BBO # 674788)
Lea Gulotta James (BBO # 705421
Miranda Curtis (BBO # 709084)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Phone: 617-342-4000
Fax: 617-342-4001
mpontrelli@foley.com
graux@foley.com
ljames@foley.com
mcurtis@foley.com

## CERTIFICATE OF SERVICE

I, Miranda D. Curtis, hereby certify that the foregoing was filed on November 13, 2024 through the ECF filing system and will be sent electronically to all counsel of record identified as registered participants on the associated Notice of Electronic Filing.

*/s/ Miranda D. Curtis*
Miranda D. Curtis