UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>*Plaintiff,*<br><br>v.<br><br>TOWN OF CARVER, MA, TOWN OF PLYMOUTH, MA, ALAN G. GERMAIN, STEPHEN G. GRAY, BETTY CAVACO, MICHAEL MAIN, A.D. MAKEPEACE COMPANY, JAMES F. KANE, SLT CONSTRUCTION CORPORATION, PETER OPACHINSKI,<br><br>*Defendants.* | Civil Action No. 1:24-cv-12347-ADB |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS, SLT CONSTRUCTION CORPORATION AND PETER OPACHINSKIS, TO DISMISS PLAINTIFF'S COMPLAINT**

Edward C. Cooley, BBO# 550117
Abigail C. Leighton, BBO# 707299
GIARRUSSO, NORTON, COOLEY
& McGLONE, P.C.
308 Victory Road
Quincy, MA 02171
Tel: (617) 770-2900
Fax: (617) 773-6934
ecooley@gncm.net
aleighton@gncm.net

*Attorneys for SLT Construction Corporation and Peter Opachinski*

# TABLE OF CONTENT

PRELIMINARY STATEMENT ……………………………………………………………1

FACTUAL BACKGROUND………………………………………………………………..2

ARGUMENT…………………………………………………………………………………..4

I. The Complaint Is Unprecedentedly Verbose and Fails the Fed.R.Civ.P. 8 Requirement of a Short and Concise Statement…………….4

II. The Plaintiff Has Failed to Plausibly Allege a Claim for Which Relief May Be Granted Requiring Dismissal of the Complaint Under Fed.R.Civ.P. 12(b)(6)……………………………………………..6

A. The Complaint Fails to Set Forth a Single Factual Allegation to Support a Conspiracy to Violate Her Civil Rights……………………..7

B. The Complaint Fails to Plausibly Allege a Violation of the Massachusetts Civil Rights Act……………………………………….12

C. Mr. Opachinski's and Mr. Martin's Statements May Not Be Attributed to SLT Nor Do They Constitute Libel or Slander……..…..14

D. The Complaint Fails to Plausibly Allege Facts Supporting A Claim for Intentional Infliction of Emotional Distress…………….17

E. The Complaint Does Not Set Forth Factual Allegations Establishing That SLT or Any of Its Employees Disseminated Private Facts Related to Plaintiff……………………………………………..19

CONCLUSION……..……………………………………………………………………21

Defendants, Peter Opachinski and SLT Construction Corporation, submit this memorandum in support of their Motion to Dismiss all claims alleged against them by the plaintiff in the case. As a threshold matter, plaintiff's Complaint is deficient in its entirety under Fed.R.Civ.P. 8 due to its unwieldy prolixity, as well as deceptive in its attempt to manufacture claims by piling on layers of unsupported conjecture, surmise, and conclusory statements that do not support the claims alleged. In short, notwithstanding the Complaint's 305 paragraphs spanning 117 pages, plaintiff has failed to plausibly allege any claims against these defendants and the Complaint must, therefore, be dismissed as to them pursuant to Fed.R.Civ.P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's Complaint attempts to frame her as the victim of an elaborate scheme to restrict her free speech and infringe her civil rights. Most of the allegations are directed at an anonymous Facebook page dedicated to posting news about the plaintiff. In this maze of allegations, defendants SLT Construction Corporation ("SLT") and Peter Opachinski ("Mr. Opachinski") are alleged to have deprived plaintiff of her constitutionally protected rights, defamed her, intentionally inflicted emotional distress, and invaded her privacy. All of these causes of action are based on exactly nine Facebook comments, eight by Mr. Opachinski, and one by an employee of SLT on *his private Facebook account*. The paucity of the comments and, more importantly, their content, do not support any of these causes of action. In fact, the irony that Mr. Opachinski has been accused of chilling plaintiff's constitutional rights, including her right to free speech, by exercising his own right to freely state his opinion, should not be lost on this Court. Furthermore, as defendant Makepeace aptly pointed out in its Motion to Dismiss, the Complaint is bereft of any support for the idea that plaintiff has been deprived of her rights and instead shows the opposite: plaintiff has continued to exercise her rights without disruption and

has filed this action as an *in terrorem* device designed to silence those who disagree with her, challenge her, or otherwise seek to invoke their own rights.

**FACTUAL BACKGROUND**

The following facts are taken from plaintiff's Complaint for purposes of this motion but are not admitted as true. Plaintiff is an attorney who frequently represents environmental nonprofits fighting against what she dubs, "the unlawful mining of sand". Compl. p.1-2. Plaintiff is domiciled in New Hampshire. Compl. ¶1. She alleges that defendants have deprived her of her constitutional rights. Compl. ¶2. SLT excavates and sells silica sand and Mr. Opachinski is the president and co-owner of SLT. Compl. ¶¶11-12. Alan Germain has served as Chair and Vice Chair of the Carver Conservation Commission and owns Alan Germain Trucking ("AGT"), a hauling company. Compl. ¶4. AGT hauled sand and gravel excavated by SLT from one site in Carver. Compl. ¶21.

Plaintiff regularly petitions against SLT during hearings on its permit applications and challenges decisions authorizing SLT's work. Plaintiff is the founder of Save The Pine Barrens ("STPB"), also known as the Community Land and Water Coalition, which includes links on its website to items like, "Carver: Public interest group and residents pursue legal challenges to stop SLT's destructive mining operation". Compl. ¶33. Having failed to stop SLT's lawful operations through her comments at municipal meetings, her organizing efforts, and litigation designed to stop projects, plaintiff has filed this lawsuit against SLT and Mr. Opachinski along with others involved in site development, including removing materials, and the municipal permitting of such actions.

In January 2023, an anonymous Facebook page dedicated to news regarding the plaintiff and titled "Meg Costs Us Millions" (henceforth the "MMP page") was created. Compl. ¶60. An

associated YouTube channel was also created posting videos of zoning board meetings at which plaintiff appeared. Compl. ¶61. Much of plaintiff's grievances in the Complaint derive from this Facebook page. Mr. Opachinski, however, did not author this webpage, nor does plaintiff allege otherwise. She admits the author is anonymous and unknown. This litigation is her effort to gather all her suspects, which consist of businesses trying to lawfully complete projects and municipal officials and municipalities who issue associated permits. Her claims against SLT and Mr. Opachinski are predicated on a handful of comments posted to the MMP page from Mr. Opachinski's private Facebook account. The statements complained of consist of the following:

- On January 28, 2023, the MMP page posted information regarding plaintiff bringing another Chapter 40B project to Plymouth. The post also suggested that plaintiff cost the town millions of dollars in legal fees from defending against lawsuits filed by plaintiff. Compl. ¶68. Mr. Opachinski commented on the post stating, "[m]ay as well addd [sic] Plympton to her list. Looks like we will have to go the 40B route to get anything through in that town." Id.

- On April 28, 2023, the MMP page posted a letter from Ms. Cavacco, the former Chair of the Plymouth Select Board, to the President of the Southeastern Massachusetts Pine Barrens Alliance, Inc. ("SEMPBA"), who has a similar mission to but is unaffiliated with STPB. The MMP page argued, based on the letter, that plaintiff established an unwritten subtenancy with the SEMPBA for the purpose of gaining standing to sue Plymouth. Compl. ¶88. Mr. Opachinski commented on this post stating, "[h]opefully Plymouth pursues any legal remedies they have regarding the 'fake standing'". Compl. ¶89.

- In May 2023, the MMP page posted information regarding truck traffic surrounding the L. Knife commercial site. Compl. ¶93. L Knife is plaintiff's father's company where plaintiff "at times" served as an advisory director. ¶71. Mr. Opachinski commented on the post stating, "[y]et she's up in arms over the trucks on Meadow St. to the Maki property because of the 'poor neighbors' and the noise?" Compl. ¶93.

- In May 2023, the MMP page posted information that Sheehan was running a business from a property belonging to an LLC that she owned in New Hampshire. Compl. ¶95. Mr. Opachinski commented on the post stating, "So where does Meg actually live and pay her taxes? Massachusetts or New Hampshire?" Compl. ¶95.

- In July 2023, the MMP page posted an article regarding marketing an undeveloped parcel by a Sheehan family company. Compl. ¶102. Mr. Opachinski commented on the post stating, "Like the author has written before,……a lying, vile old hag!" Compl. ¶103.

- In August 2023, the MMP page posted information about the sale of a Sheehan family parcel of land, suggesting that plaintiff should have donated the parcel to the Town of Plymouth. Compl. ¶106. Mr. Opachinski replied to a comment by Rebecca Lipton stating, "There's a right way to do it and a wrong way to do it. If Meg Sheehan cares so much about conservation, maybe she and daddy can donate the $4M parcel of land they are selling along the Plymouth waterfront. Never seen such a hypocrit [sic] in my life!!" Compl. ¶106. Rebecca Lipton commented in response and Mr. Opachinski replied, "Then why is Meg selling her land along the Plymouth waterfront for $4M? If she truly cared about conservation, she should donate the land for a park. Again, nothing but a phony. If I tried to develop that property, she'd be busting my balls there too like she tried doing in Carver. All she does is lose in court, and we have to raise land prices to cover legal expenses." Mr. Opachinski also commented, "Just another one of the vile hag's scams!" Compl. ¶106.

- On May 22, 2024, the MMP page posted information regarding an incident where plaintiff's engineering expert's license had been temporarily suspended. Compl. ¶117. The MMP page encouraged complaints to the Board of Bar Overseers in the post. Id. Jason Martin, an employee of SLT, commented *from his private Facebook account* stating, "Mr James should not be able to stamp an envelope in this state after this as well as the other cases he has offered his erroneous P.E. services too. He sold himself and his profession out to this hack lawer [sic] Meg Sheehan, She should be disbarred and people WILL be pushing hard to make sure they both are disciplined for their blatant ethics and professional violations. *three clown emojis* Sickening what these people are allowed to say and do to legitimate enterprises while lying cheating and misrepresenting the truth at every turn. Time they payed [sic] for their crimes!" Compl. ¶117.

Based on these comments by Mr. Opachinski on his private Facebook account, and one comment by an SLT employee on his private Facebook account, none of which are attributable or related to SLT as a company, plaintiff brings six causes of action against SLT and Mr. Opachinski. As set forth fully below, none of this conduct is actionable and the Complaint must be dismissed as to Mr. Opachinski and SLT move for dismissal.

## ARGUMENT

### I. The Complaint is Unprecedentedly Verbose and Fails the Fed.R.Civ.P. 8 Requirement of a Short and Concise Statement.

As an initial matter, the *117- page* Complaint filed by Plaintiff suffers from extreme prolixity, making it virtually impossible for defendants (or the Court) to interpret and respond to each of its elements. Worse, much of the information crammed into the 305 paragraphs consists

of unsupported conjecture, surmise, and conclusory statements disguised as facts in an attempt by plaintiff to overwhelm the Court and the defendants with the appearance of substance.

Both the Federal Rules of Civil Procedure and the applicable caselaw are clear that the vexatious "shock and awe" pleading tactics perpetrated by plaintiffs, in piling on sheer volumes of self-serving statements and adjectival embroidery that in no way support a claim, are strictly prohibited. Fed.R.Civ.P. 8(a) requires a "short and plain statement" of a claim. Further, Fed.R.Civ.P. 8(e) requires that each averment in a pleading "be simple, concise, and direct".

The First Circuit has without hesitation upheld dismissal of complaints similar in scale, and even substantially shorter, than that at issue here. In Jackson v. Polaroid Corp., 181 F.3d 79 (1st Cir. 1999), the Court promptly upheld dismissal of a 180-page, double-spaced complaint with 350 paragraphs (originally, 54 single-spaced pages and 141 paragraphs). "[T]hat the court and the defendants would be prejudiced by having to deal with either the amended or substitute amended complaint also is clear. 'Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage'." Id., *quoting* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1281, at 522 (2d ed. 1990). The First Circuit has made clear that "[a] district court has the power to dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s 'short and plain statement' requirement." Kuehl v. Federal Deposit Insurance Corp., 8 F.3d 905, 908 (1st Cir. 1993).

District Courts in Massachusetts have heeded the rulings in those cases. *See e.g.* Greg Beeche Logistics, LLC v. Skanska USA Building, Inc., No. 12–11121, 2014 WL 4656503 (D.Mass. 2014) (dismissing 122-page complaint with 456 paragraphs and voluminous exhibits); Youngworth v. Gentile, No. 05-30108, 2006 WL 516757, *2 (D.Mass. 2006) (dismissing "an

extremely verbose" 110-page complaint with 418 paragraphs). In fact, this Court recently warned a plaintiff not "to bombard the Court" with an overly-elaborate and confusing complaint. See Negron v. Turco, No. 4:16-40150, 2017 WL 2312688, *2 (D.Mass. 2017, Hillman, J.).

As with other defective pleadings dismissed per the cases referenced above, the current Complaint would "necessitate significant effort to separate the wheat from the chaff" in responding to it. Beeche, *supra* at 5. Plaintiffs have stuffed the Complaint with unnecessary statements and rambling paragraphs for no apparent reason other than to overwhelm the defendants in an attempt to convince the Court that there is "something" there. Many of the Rule 8 dismissal cases involved *pro se* plaintiffs, and even thn Courts were compelled to draw bright lines. Here, in sharp contrast, the plaintiff is represented by experienced counsel, and there is no excuse for the deliberate abuse of the pleading requirements. The Complaint is inexcusably verbose and must be dismissed on that basis alone, if for no other reason. As set forth fully below, however, there are ample other reasons for dismissal.

## II. The Plaintiff Has Failed to Plausibly Allege a Claim for which Relief May be Granted Requiring Dismissal of the Complaint Under Fed.R.Civ.P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint must be "enough to raise a right to relief above the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is the plaintiff's burden "at the pleading stage [to make] allegations plausibly suggesting (not merely consistent with)" the right to relief. Id. at 557. "The statement [of the claim] should be plain in that it should state facts, not conclusions of fact." Lasky v. Shearson Lehman Brothers, Inc., 139 F.R.D. 597, 598-99 (1991). As the court stated in Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996), the deferential standard of review afforded motions to dismiss "does not force [a] court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and

the like need not be credited." Thus, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement"' will not survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) quoting Twombly, 550 U.S. at 557.

Indeed, although "Rule 12(b)(6) require[s] the acceptance of Plaintiffs' well-pleaded facts as true… the court will not "credit conclusory allegations, subjective characterizations, or outright vituperation." Machado v. Leavitt, 542 F.Supp.2d 185 (D. Mass. 2008) quoting McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir.2006). "Adjectives are not substitutes for allegations of fact." Coble v. Broadvision Inc., 2002 WL 31093589, *4 (N.D. Cal. Sept. 11, 2002); see also Johnson v. Berkshire Street Railway Co., 292 Mass. 311, 312 (1935) (claim must be established "by acts . . . and not merely by the accumulation of adjectives and adverbs").

**A. The Complaint Fails to Set Forth a Single Factual Allegation to Support a Conspiracy to Violate Her Civil Rights.**

Plaintiff brings claims against Mr. Opachinski and SLT for conspiracy to violate her first amendment rights pursuant to 42 U.S.C. § 1983 (Count 7) and conspiracy to interfere with her civil rights pursuant to 42 U.S.C. § 1985(3) (Count 8). These causes of action fail because plaintiff has not alleged a single fact plausibly supporting that a conspiracy to deprive her of her rights existed. The nature of plaintiff's allegations is that Mr. Opachinski, a non-state actor, conspired with Mr. Germain, a member of the Carver Conservation Commission, to deprive plaintiff of her rights under the first amendment to free speech and her right to petition:

> To plead such a conspiracy, a plaintiff "must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of h[is] civil rights." Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019). When direct evidence of such an agreement is unavailable, "the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." Id.; see Earle, 850 F.2d at 843. Where, as here, a complaint aspires to allege a conspiracy in violation of section 1985(3), it must "elaborate[ ] [ ]or substantiate[ ] [any] bald claims that certain defendants 'conspired' with one another." Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980); see Francis-Sobel v. Univ. of Me.,

> 597 F.2d 15, 17 (1st Cir. 1979) (requiring "at least minimum factual support of the existence of a conspiracy"). Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss. See Parker, 935 F.3d at 18.

Alston v. Spiegel, 988 F.3d 564, 577–78 (1st Cir. 2021). For purposes of conspiracy under § 1983, "The person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." United States ex rel. Angel v. Scott, 697 F. Supp. 3d 483, 493 (E.D. Va. 2023) citing DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999).

Here, plaintiff provides nothing more than conclusory allegations regarding Mr. Opachinski and Mr. Germain working together. Paragraph 21 of the Complaint notes that on exactly one unspecified occasion, Mr. Germain did not recuse himself from participating in a board decision on an SLT permit application even though Mr. Germain's company AGT hauled sand and gravel excavated by SLT from *one* site in Carver. Compl. ¶21. Plaintiff alleges that outside a separate hearing, Mr. Germain stated that he "wouldn't stop until [he] got rid of [her]." Id. Plaintiff then states that on occasions when Mr. Germain did in fact recuse himself from public hearings on SLT permit applications, he would remain seated at the table with other members of the Conservation Commission and "would participate in discussions sometimes bullying or otherwise intimidating or embarrassing those members and yelling at and harassing audience members who spoke in opposition to the SLT projects." Compl. ¶22.

Plaintiff seeks to use essentially this sole occasion in the hallway to string together a "conspiracy" between Mr. Opachinski and Mr. Germain because Mr. Germain's words were spoken prior to a hearing at which an SLT permit application would be considered and therefore, "…Germain was …carrying SLT's and Opachinski's water as much as his own." Compl. ¶184.

The only remaining allegations in the Complaint on this issue deal with comments Mr. Opachinski and Mr. Germain made separately in response to anonymous Facebook posts. For example, in response to anonymous "MMP" Posts, Mr. Germain and Mr. Opachinski commented as follows:

> "[r]ules for thee, not for me." -Germain; Compl. ¶92.
>
> "[h]er family sells property for millions then she goes in and tries to stop development, after the check is cashed of course!" -Germain; Compl. ¶92.
>
> "[y]et she's up in arms over the trucks on Meadow St. to the Maki property because of the 'poor neighbors' and the noise?" -Opachinski; Compl. ¶93.
>
> "So where does Meg actually live and pay her taxes? Massachusetts or New Hampshire??" -Opachinski; Compl. ¶95.
>
> "Only her rules apply." -Germain, Compl. ¶95.
>
> "Like the author has written before,……a lying, vile old hag!" -Opachinski, Compl. ¶103.

The above comments were made to various posts over the course of months. Several of Mr. Opachinski's Facebook comments also dealt with the sale of a parcel of land along the Plymouth waterfront, referring to plaintiff as a hypocrite for not donating the land to conservation. None of the comments or actions suggest that Mr. Opachinski and Mr. Germain were working in concert to deprive plaintiff of rights, nor that they were in communication regarding the matters commented upon. Furthermore, none of the comments suggest that Mr. Germain was acting in his capacity as a member of the Conservation Commission, nor do they suggest that Mr. Opachinski was engaged in state action. The comments constitute personal commentary and opinion regarding plaintiff's actions and inactions.

While plaintiff alleges that "[a]ll of Opachinski's conduct as alleged in this Complaint is chargeable to his company SLT", there is no factual or legal support for this allegation. In fact, the Supreme Court has stated regarding speech that constitutes state action, "…Just as we can

safely presume that speech at a backyard barbeque is personal, we can safely presume that speech on a "personal" page is personal (absent significant evidence indicating that a post is official)." Lindke v. Freed, 601 U.S. 187, 202, 144 S. Ct. 756, 769, 218 L. Ed. 2d 121 (2024).

None of Mr. Opachisnki's comments even remotely suggest that he is speaking for SLT or that he is utilizing government authority to deprive plaintiff of her rights. Rather, all of Mr. Opachinski's comments are his own personal opinions expressed on his Facebook account. Similarly, the Complaint is devoid of plausible allegations to support the contention that Mr. Germain "conspired" with SLT or Mr. Opachinski. Significantly, there are no alleged facts that plausibly demonstrate that Mr. Germain was speaking in his official capacity as opposed to sharing his privately held opinion. Finally, plaintiff's baseless attempt to attribute to SLT an employee's Facebook comment from his personal account suggesting that plaintiff should "pay for [her] crimes" is absurd. The conduct of an employee on his personal account cannot, standing alone, be charged to SLT nor does it evidence a conspiracy to deprive plaintiff of her constitutional rights.

"…[A] plaintiff seeking to allege such joint activity must plead 'more than a naked assertion of conspiracy between a state actor and private parties.' The plaintiff 'must plausibly allege that [the] [d]efendants acted jointly in concert, and that some overt act was done in furtherance of the conspiracy that resulted in the plaintiff's deprivation of some constitutional right.'" United States ex rel. Angel v. Scott, 697 F. Supp. 3d 483, 493 (E.D. Va. 2023) citing Worthington v. Palmer, No. 3:15cv410, 2015 WL 7571822, at *5, 2015 U.S. Dist. LEXIS 159441 (E.D. Va. Nov. 24, 2015).

Here, no such overt act has been alleged against Mr. Opachinski or SLT. In fact, apart from the conclusory allegation that "[t]he effect of Opachinski's conduct, conducted on behalf of

himself and SLT and in concert with Germain, has been to chill Sheehan's First Amendment rights of free speech, to petition, and to assemble" (Compl. ¶190) there are no *factual* allegations to support the claim of concerted action. Further, the Complaint fails to plausibly allege that any acts of Mr. Opachinski, SLT, or Mr. Germain have actually deprived plaintiff of any of her rights, much less that they were done in concert.

Plaintiff also seeks punitive damages against Mr. Opachinski and SLT which requires that that plaintiff plausibly allege either that there was a "specific intent to violate [ ] plaintiff's federally protected right" or that there was "'reckless indifference' towards [ ] plaintiff's federally protected right." Powell v. Alexander, 391 F.3d 1, 19–20 (1st Cir. 2004) citing DiMarco–Zappa v. Cabanillas, 238 F.3d 25, 38 (1st Cir.2001). The First Circuit has "described the plaintiff's obligation to demonstrate a defendant's state of mind regarding the consequences of her intentional acts as 'a heightened burden.'" Powell v. Alexander, 391 F.3d 1, 19 (1st Cir. 2004) citing Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 84 (1st Cir.2001).

Here, far from carrying this heightened burden, plaintiff asserts no factual allegations regarding Mr. Opachinski's state of mind and does not plausibly allege facts from which an intention to violate her federally protected rights could reasonably be inferred.

A conspiracy under §1985 similarly requires "plausible allegations of an agreement among the conspirators to violate a plaintiff's rights (or factual allegations that allow the reasonable inference of such an agreement)." Hudson v. MacEachern, 94 F. Supp. 3d 59, 70 (D. Mass. 2015) citing LeBaron v. Spencer, 527 Fed.Appx. 25, 33 (1st Cir.2013) (per curiam) and Williams v. City of Boston, 771 F.Supp.2d 190, 204 (D.Mass.2011) (adopting report and recommendation of Dein, M.J.). "'[A]llegations of conspiracy must ... be supported by material facts, not merely conclusory statements' and such claims of conspiracy are subject to dismissal

where the allegations 'neither elaborate [ ] nor substantiate[ ][the] bald claims that certain defendants 'conspired' with one another.'" Id. citing Slotnick v. Garfinkle, 632 F.2d 163, 165–66 (1st Cir.1980) (per curiam). The facts alleged in the Complaint do not support the existence of such a conspiracy: there are no material facts of conspiracy alleged, only bald conclusions of the type that compel dismissal.

Finally, plaintiff also fails to plausibly allege any facts supporting that she was deprived of any First Amendment rights. On the contrary, the Complaint is rampant with occasions on which plaintiff utilized her right to speech and petition. See Compl. ¶¶37, 43, 46, 52-57, 76, 77, 78, 111, 119, and 123. Accordingly, Counts 7 and 8 must be dismissed.

### B. The Complaint Fails to Plausibly Allege a Violation of the Massachusetts Civil Rights Act.

In Count 9 of the Complaint, plaintiff alleges that the conduct of Mr. Opachinski, and the nonexistent conduct by SLT, constitutes a violation of the Massachusetts Civil Rights Act. To establish a claim under the Massachusetts Civil Rights Act ("MCRA"):

> ….the plaintiff must prove that 1) the exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth 2) has been interfered with, or attempted to be interfered with, 3) by threats, intimidation or coercion. Bally v. Ne. Univ., 403 Mass. 713, 532 N.E.2d 49, 51–52 (1989) (citing M.G.L. c. 12, §§ 11H, 11I). Furthermore, the alleged threat, intimidation or coercion must be aimed at a particular individual or group of individuals and the harm involved must be sufficiently serious. Id. at 52-53. . .The standard for determining whether conduct constitutes threats, intimidation or coercion is an objective, reasonable person standard. Currier v. Nat'l Bd. of Med. Exam'rs, 462 Mass. 1, 965 N.E.2d 829, 838 (2012).

Kappa Alpha Theta Fraternity, Inc. v. Harvard Univ., 397 F. Supp. 3d 97, 109 (D. Mass. 2019). It is indisputable that none of the statements made by Mr. Opachinski constitute threats or coercion. This Count is predicted on the comment made by Mr. Martin, an SLT employee, on his private Facebook account, "directed toward Sheehan online, calling for her to be disbarred and made to

‘pay for [her] crimes’”. Compl. ¶197. The comment related to an MMP page post regarding an engineering expert used by plaintiff whose license had been temporarily suspended. The Complaint asserts that the MMP page post encouraged members to complain to the Board of Bar Overseers, though no one did. Compl. ¶117.

First, Mr. Martin’s statement does not mention, reference, emanate from, or otherwise relate in any way to SLT or Mr. Opachinski and can in no way form the basis of a claim against them. Second, the statement does not threaten or intimidate any physical harm to plaintiff. “… [C]ourts have typically found that a finding of non-physical coercion ‘require[s] ‘a pattern of harassment and intimidation[.]’” Daly v. Mason, No. 4:23-CV-40162-MRG, 2024 WL 4426420, at *9 (D. Mass. Sept. 30, 2024) citing Thomas v. Harrington, 909 F.3d 483, 493 (1st Cir. 2018). Here, the Complaint relies on a single statement of what is characterized as a “threat”, which falls well short of establishing a pattern of harassment and intimidation.

Furthermore, “[t]he availability of a showing of non-physical coercion under the MCRA is not available when a mere ‘threat to use lawful means to reach an intended result’ is made.” Daly v. Mason, No. 4:23-CV-40162-MRG, 2024 WL 4426420, at *9 (D. Mass. Sept. 30, 2024) citing Thomas v. Harrington, 909 F.3d 483, 493 (1st Cir. 2018). The Facebook comment by Mr. Martin refers to professional discipline on plaintiff’s license to practice law for her professional violations as “payment” for her “crimes” of nondisclosure regarding her expert’s suspension. In other words, the statement exclusively refers to the use of lawful means. Additionally, plaintiff admits that no one, including Mr. Martin, ever in fact filed a complaint with the Board of Bar Overseers. “[T]o be actionable, a defendant's actions must amount to ‘an attempt to force someone to do something the person is not lawfully required to do.’” Miller v. Pugliese, 693 F. Supp. 3d 163, 179 (D. Mass. 2023) citing Farrah v. Gondella, 725 F. Supp. 2d 238, 248 (D. Mass.

2010). Mr. Martin's statement cannot reasonably be construed as an attempt to force plaintiff to do anything, least of all something she was not lawfully required to do. If anything, Mr. Martin's statement encourages honesty and full disclosure in the practice of law, which is required of plaintiff in all events. Nor does the statement interfere or attempt to interfere with plaintiff's rights. For all of these reasons, the conduct described does not come close to plausibly alleging a violation of the Massachusetts Civil Rights Act and Count 9 must, therefore, be dismissed.

### C. Mr. Opachinski's and Mr. Martin's Statements May Not Be Attributed to SLT Nor Do They Constitute Libel or Slander.

Count 10 of plaintiff's Complaint asserts a cause of action for libel and slander against Mr. Opachinski personally, and SLT, "through its agents Opachinski and Martin". Compl. ¶199. First, as set forth above, there is no legal or factual support for Mr. Opachinski or Mr. Martin's statements to be attributed to SLT. Their posts do not reference the company, nor do their private profiles purport to speak on SLT's behalf. Second, plaintiff cannot support a libel claim against Mr. Opachinski individually since the extent of his personal Facebook comments constitute his personal opinion which is clearly protected speech that is not actionable as libel. "Statements of opinion are constitutionally protected and thus are not actionable." Hi-Tech Pharms., Inc. v. Cohen, 277 F. Supp. 3d 236, 244 (D. Mass. 2016), as amended (Oct. 28, 2016) citing Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379, 522 N.E.2d 959 (1988).

"The elements of a libel case are a false and defamatory written communication of and concerning the plaintiff." McAvoy v. Shufrin, 401 Mass. 593, 597, 518 N.E.2d 513, 517 (1988) citing Restatement (Second) of Torts § 558 (1977). Slander is a spoken defamatory statement. Noonan v. Staples, Inc., 707 F. Supp. 2d 85, 89 (D. Mass. 2010). The only reference in the Complaint regarding slander by the defendants is the following allegation: "On information and

belief, Opachinski's and SLT's false statements were also disseminated to third parties orally." Compl. ¶201. Under any construction, this is insufficient to pass muster on a motion to dismiss.

The Complaint asserts that the libel included "statements that Sheehan was a hypocrite, a liar, motivated by self-interest, incompetent, unethical, and guilty of criminal conduct." Compl. ¶199. The statement that plaintiff acted unethically and should "pay for her crimes" was, in fact, based on her failure to disclose that her engineering expert's license had been revoked, which the Complaint admits is true. Compl. ¶117. Again, this comment was made by Mr. Martin, an employee of SLT, and cannot be attributed to the company. Mr. Martin's statement alone, therefore, cannot form the basis for a libel claim against either Mr. Opachinski or SLT.

As for the remaining allegations referenced, Mr. Opachinski commented on a post on the MMP Facebook page, stating "Like the author has written before,…..a lying, vile old hag!" Compl. ¶103. Mr. Opachinski also commented on an MMP page post, stating "There's a right way to do it and a wrong way to do it. If Meg Sheehan cares so much about conservation, maybe she and daddy can donate the $4M parcel of land they are selling along the Plymouth waterfront. Never seen such a hypocrit in my life!!" Compl. ¶106. Mr. Opachinski also responded to a comment from Rebecca Lipton stating, "Then why is Meg selling her land along the Plymouth waterfront for $4M? If she truly cared about conservation, she should donate the land for a park. Again, nothing but a phony. If I tried to develop that property, she'd be busting my balls there too like she tried doing in Carver. All she does is lose in court, and we have to raise land prices to cover legal expenses." Id. These statements do not, however, as a matter of law, support a claim for libel:

> "[R]idicule and simple verbal abuse" do not give rise to liability for defamation. See Fleming v. Benzaquin, 390 Mass. 175, 454 N.E.2d 95, 100 (1983). Many of the challenged statements -- such as those referring to Mullane as "rude," "dumb," "unethical," a "little entitled ponce," or a "dauphin" -- are mere "epithets" that are

> "insufficiently fact-based" to ground a defamation claim. See Levinsky's, 127 F.3d at 130 (holding that defendant's description of competitor's store as "trashy" was not actionable); see also Letter Carriers v. Austin, 418 U.S. 264, 284-86, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974) ("traitor"); Greenbelt Coop. Publ'g Ass'n v. Bresler, 398 U.S. 6, 13-14, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970) ("blackmail"); Phantom Touring, 953 F.2d at 728 ("a rip-off, a fraud, a scandal, a snake-oil job"); McCabe v. Rattiner, 814 F.2d 839, 842-43 (1st Cir. 1987) ("scam").

Mullane v. Breaking Media, Inc., 433 F. Supp. 3d 102, 112 (D. Mass. 2020), aff'd, No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021). The Complaint itself on several occasions refers to Mr. Opachinski's statements as mere "epithets". See Compl. ¶¶183, 209, 303. "Even if an opinion implies a provably false assertion of fact, that statement will not be actionable if 'it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts.'" Mullane v. Breaking Media, Inc., 433 F. Supp. 3d 102, 111–12 (D. Mass. 2020), aff'd, No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021) citing Riley v. Harr, 292 F.3d 282, 289 (1st Cir. 2002).

Mr. Opachinski's statements were made on posts by the author of the MMP page which specifically detailed the factual basis for his commentary. Disclosing facts underlying an assertion of untruthfulness "immuniz[es]" a person "from defamation liability." McKee v. Cosby, 874 F.3d 54, 63 (1st Cir. 2017). None of these comments express anything more than Mr. Opachinski's own subjective view and conjecture on facts disclosed by a third party. At no point did Mr. Opachinski imply or assert that he possessed additional verifiable facts on which these opinions were based. Accordingly, these statements fail to constitute libel as a matter of law.

Additionally, although the statements are not actionable regardless of plaintiff's status, it is clear that plaintiff is a limited purpose public figure for purposes of these claims. See Hi-Tech Pharms., Inc. v. Cohen, 277 F. Supp. 3d 236, 246 (D. Mass. 2016), as amended (Oct. 28, 2016) quoting Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 13 (1st Cir. 2011) (limited purpose

public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.") This capacity means plaintiff must show actual malice by defendants to recover for defamation. N.Y. Times Co. v. Sullivan, 376 U.S. 254, 283 (1964). "Actual malice exists where the defendant publishes the defamatory communication with knowledge that it was false or with reckless disregard for whether it was false or not." McAvoy v. Shufrin, 401 Mass. 593, 598–99, 518 N.E.2d 513, 517–18 (1988) citing New York Times Co. v. Sullivan, *supra* 376 U.S. at 279–280, 84 S.Ct. at 725–726.

Plaintiff's Complaint contains no factual allegations to support that Mr. Opachinski or Mr. Martin knew the alleged falsity of the statements made. In fact, on several occasions plaintiff admits the underlying truth of the facts on which their opinions were based. Based on the foregoing, Count 10 must be dismissed.

**D. The Complaint Fails to Plausibly Allege Facts Supporting a Claim for Intentional Infliction of Emotional Distress.**

Count 11 of the Complaint asserts a cause of action for intentional infliction of emotional distress against Mr. Opachinski and SLT "jointly and severally". Plaintiff alleges that "SLT and Opachinski have intimidated and coerced Sheehan, and looked upon her as an impediment to be removed for the sake of the sand mining industry and their own economic interests. . . Their conduct has been extreme and outrageous, and they had neither the right nor the cause to threaten, intimidate or coerce Sheehan as they have." Compl. ¶207. Putting aside the puffery, conjecture, and surmise built into this claim, the plaintiff nevertheless fails to plausibly plead a claim for intentional infliction of emotional distress.

To establish a claim for intentional infliction of emotional distress, a plaintiff must show "(1) that [Defendants] intended, knew, or should have known that [their] conduct would cause

emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Daly v. Mason, No. 4:23-CV-40162-MRG, 2024 WL 4426420, at *10 (D. Mass. Sept. 30, 2024) citing Polay v. McMahon, 468 Mass. 379, 10 N.E.3d 1122, 1128 (2014). "A plaintiff must also allege more than bare assertions to demonstrate that the emotional distress was severe." Id. citing Polay, 10 N.E.3d at 1130. Despite this requirement, plaintiff alleges exactly these types of bare assertions, stating that "…the emotional distress that she has experienced and continues to experience is extreme and exhausting, interfering with every day of her life. . . she struggles to find the joy that her profession used to bring her." Compl. ¶208. This conclusory statement is exactly the kind that courts reject as a basis for emotional distress. See Boyle v. Barnstable Police Dep't, 818 F. Supp. 2d 284, 310 (D. Mass. 2011)(ruling that the allegation that plaintiff suffered "mental pain and anguish, severe emotional trauma, embarrassment, and humiliation" insufficient to avoid summary judgment).

Even in her Opposition to defendant Makepeace's Motion to Dismiss the Complaint, plaintiff does nothing more than reiterate this exact statement as the basis for her claim of intentional infliction of emotional distress against defendant Makepeace. Plaintiff's Opposition to Defendant Makepeace's Motion to Dismiss ("Pltf Opp.") p.19. Plaintiff further tries to minimize the degree of conduct that must be plausibly alleged to sustain a claim for intentional infliction of emotional distress, but the law requires the conduct must "go beyond all possible bounds of decency, and [be] regarded as atrocious, and utterly intolerable in a civilized community." Daly v. Mason, No. 4:23-CV-40162-MRG, 2024 WL 4426420, at *10 (D. Mass. Sept. 30, 2024) citing Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013).

The basis for the claim, according to plaintiff, is "the use of demeaning epithets and insulting photoshopped pictures" (Compl. ¶209), yet there is no allegation in the Complaint that Mr. Opachinski created or posted photoshopped pictures. The handful of Facebook comments made by Mr. Opachinski and posted on a page dedicated to news stories regarding the plaintiff do not begin to approach this standard. "[L]iability cannot be predicated upon 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities ....'" McCormick v. Lischynsky, 539 F. Supp. 3d 225, 244 (D. Mass. 2021) citing Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). Furthermore, to support joint and several liability against SLT, plaintiff would need to show that SLT itself would be individually liable to plaintiff, which there are no allegations to support. In short, the Complaint fails to plausibly allege a claim for intentional infliction of emotional distress against either Mr. Opachinski or SLT and Count 11 must, therefore, be dismissed.

**E. The Complaint Does Not Set Forth Factual Allegations Establishing That SLT or Any of its Employees Disseminated Private Facts Related to Plaintiff.**

In Count 25, plaintiff alleges that all defendants violated her privacy rights pursuant to M.G.L. c. 214 §1B. The basis for this allegation against Mr. Opachinski and SLT is posting altered photos of plaintiff, turning "her age and gender into such epithets as 'vile old hag'", and "discussed in an unflattering ways her family's business and the details of its transactions for no reason other than to use them and to besmirch her." Compl. ¶303. This is an insufficient basis upon which to predicate a claim of violation of plaintiff's privacy.

To successfully plead a claim for invasion of privacy, "a plaintiff must establish that the disclosure was both unreasonable and either substantial or serious." Taylor v. Swartwout, 445 F. Supp. 2d 98, 103 (D. Mass. 2006) citing Ayash v. Dana–Farber Cancer Inst., 443 Mass. 367, 382, 822 N.E.2d 667 (2005). Additionally, "the disclosed **facts** must be of a 'highly personal or

intimate nature.'" Id. citing Bratt v. Int'l Bus. Machs. Corp., 392 Mass. 508, 518, 467 N.E.2d 126 (1984)(emphasis added). A claim for invasion of privacy will not succeed if the facts are "already in the public domain." Id. citing Brown v. Hearst Corp., 862 F.Supp. 622, 631 (D.Mass.1994).

None of the allegations of the Complaint point to dissemination of private facts by Mr. Opachinski. Firstly, there are no factual allegations in the Complaint stating that Mr. Opachinski or SLT posted or reposted altered photos of plaintiff from the MMP page. More significantly, posting altered photos of plaintiff does not constitute disclosure of private *facts*. See Ratchford v. Orange Lantern, Inc., 720 F. Supp. 3d 64, 79 (D. Mass. 2024)("…reposting of publicly available images of Plaintiffs did not involve any private information about Plaintiffs or intrude on their solitude or seclusion.") Massachusetts does not recognize a claim for false light. Canney v. City of Chelsea, 925 F. Supp. 58, 70 (D. Mass. 1996). Similarly, the only fact implied by calling plaintiff a "vile old hag" is her age, which is not a highly personal or intimate fact but rather an opinion about her public appearance. See Johnson v. Sawyer, 47 F.3d 716, 736 (5th Cir. 1995)(ruling that disclosure of plaintiff's middle initial, age, street address, and executive title were not private or highly intimate facts required to sustain Texas tort).

Finally, Mr. Opachinski's comments regarding plaintiff's "family business" were made in response to posts by the MMP page listing the specific information, making these facts already in the public domain. Aside from originally being posted by the MMP page, the facts were all publicly available information, including the sale of a parcel of land and public traffic patterns surrounding the L. Knife site.

The Complaint fails to plausibly allege that Mr. Opachinski or SLT disclosed any highly personal facts about the plaintiff, much less that the disclosure was unreasonable and substantial. Accordingly, Count 25 must be dismissed as to Mr. Opachinski and SLT.

## CONCLUSION

The plaintiff has weaved a false story around kernels of facts. Upon examination though, it is clear that the Complaint is just that: a story. Plaintiff seeks to silence or punish those that disagree with her, challenge her, or otherwise seek to invoke their own rights, all under the guise that these parties "chilled her free speech". Plaintiff makes clear through this litigation that her right to free speech, rather than being chilled, is a right she brazenly utilizes as she tilts at windmills. For all of the reasons stated above, plaintiff failed to plausibly assert any claims against SLT or Mr. Opachinski and for these reasons they respectfully request that this Court dismiss the Complaint against them with prejudice and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
SLT CONSTRUCTION CORPORATION
and PETER OPACHINSKI,
By their counsel,

*/s/Edward C. Cooley*

Edward C. Cooley, BBO# 550117
eccooley@gncm.net
Abigail C. Leighton, BBO# 707299
aleighton@gncm.net
GIARRUSSO, NORTON, COOLEY
& McGLONE, P.C.
308 Victory Road
Quincy, MA 02171
Tel: (617) 770-2900
Fax: (617) 773-6934

## CERTIFICATE OF SERVICE

I, Abigail Leighton, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Abigail C. Leighton*
Abigail C. Leighton

Dated: December 13, 2024