**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>*Plaintiff,*<br><br>v.<br><br>TOWN OF CARVER, MA;<br>TOWN OF PLYMOUTH, MA;<br>ALAN G. GERMAIN; STEPHEN G. GRAY; BETTY CAVACCO; MICHAEL MAIN; A.D. MAKEPEACE COMPANY; JAMES F. KANE; SLT CONSTRUCTION CORPORATION; and<br>PETER OPACHINSKI,<br><br>*Defendants.* | No. 1:24-cv-12347-ADB |

**PLAINTIFF'S OPPOSITION AND INTEGRATED MEMORANDUM OF LAW AND FACTS TO CROSS-MOTION OF MUNICIPAL DEFENDANTS TO STAY PARTY DISCOVERY PENDING RESOLUTION OF DISPOSITIVE MOTIONS**

**MANATT, PHELPS & PHILLIPS, LLP**
*Attorneys for Plaintiff Margaret E. Sheehan*
One Beacon Street, Suite 28-200
Boston, Massachusetts 02108
(617) 646-1440

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ........ 1

I. THE MUNICIPAL DEFENDANTS MISCONSTRUE THE STANDARD AND THE BURDEN FOR SEEKING A STAY OF DISCOVERY ........ 1

II. THE MUNICIPAL DEFENDANTS FAIL TO ACKNOWLEDGE DELAY PRECIPITATED BY THEIR OWN SELF-HELP, AND THEIR RIGHT TO SEEK A STAY SHOULD BE DEEMED WAIVED ........ 2

III. THE MUNICIPAL DEFENDANTS' CONTENTION THAT DISCOVERY WILL BURDEN THEIR GOVERNMENTAL ROLES DOES NOT CONSTITUTE "GOOD CAUSE" IN THESE CIRCUMSTANCES ........ 4

IV. THE MUNICIPAL DEFENDANTS ALSO FAIL TO SATISFY THE GOOD CAUSE REQUIREMENT UNDER *MARQUIS* BY ASSERTING MULTIPLE INAPPLICABLE IMMUNITIES ........ 6

V. THE MUNICIPAL DEFENDANTS FAIL TO ADDRESS THE SECOND AND THIRD *MARQUIS* FACTORS ........ 13

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998) ... 11

*Brum v. Town of Dartmouth*,
428 Mass. 684 (1999) ... 9

*City of Canton v. Harris*,
489 U.S. 378 (1989) ... 8

*Dicenzo v. Mass. Dep't of Corr.*,
Case No. 3:15-cv-3-152-MGM, 2016 WL 158505 (D. Mass. Jan. 1, 2016) ... 2

*Diva's Inc. v. City of Bangor*,
411 F.3d 30 (1st Cir. 2005) ... 12

*Dobos v. Driscoll*,
404 Mass. 634 (1989) ... 10

*Doe v. Town of Blandford*,
402 Mass. 831 (1988) ... 10

*Harlow v. Fitgerald*,
457 U.S. 800 (1982) ... *passim*

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ... 7

*Johnson v. Zerbst*,
304 U.S. 458 (1938) ... 3

*Marquis v. F.D.I.C.*,
965 F.2d 1148 (1st Cir. 1992) ... *passim*

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ... 5, 6, 13, 15

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) ... 7

*Owen v. City of Independence*,
445 U.S. 622 (1980) ... 7

*Sheehy v. Town of Plymouth*,
948 F. Supp. 119 (D. Mass. 1996) ... 9

## STATUTES

12 U.S.C. (Supp. II 1990) ... 1, 5

12 U.S.C. § 1821(d)(12) ... 1

15 U.S.C. § 78u-4(b)(3)(B) .......... 5
42 U.S.C. §§ 1983, 1985 .......... 6, 7, 8, 11
M.G.L. c. 12, § 11H, *et seq.* .......... 8
M.G.L. c. 214, § 1B .......... 8
M.G.L. c. 258, §§ 4, 10(c) .......... 9, 13

**OTHER AUTHORITIES**

U.S. Const., 1st Amendment .......... 7, 8, 13
U.S. Const., 2nd Amendment .......... 10
U.S. Const., 5th Amendment .......... 7, 8
U.S. Const., 6th Amendment .......... 3
U.S. Const., 14th Amendment .......... 7, 8

**RULES**

Fed. R. Civ. P. 26(c) .......... 4
Fed. R. Civ. P. 26(f) .......... 2, 4, 16
Fed. R. Civ. P. 8 .......... 13
Rule 12(b)(6) .......... 13
Fed. R. Civ. P. 12(e) .......... 13
Fed. R. Civ. P. 16 .......... 2, 3, 15, 16
Fed. R. Civ. P. 26(a)(1)(B) .......... 3
Fed. R. Civ. P. 26(f)(1) .......... 3

On December 19, 2024, the Towns of Carver and Plymouth, as well as Carver's municipal officials Alan Germain ("Germain") and Stephen Gray ("Gray") and Plymouth municipal officials Betty Cavacco ("Cavacco") and Michael Main ("Main") (collectively, the "Municipal Defendants"), filed a Motion to Stay Party Discovery Pending Resolution of Dispositive Motions (the "Municipal Defendants' Motion"). Dkt. 47. For the reasons discussed below, the Motion should be denied.

**ARGUMENT**

**I. THE MUNICIPAL DEFENDANTS MISCONSTRUE THE STANDARD AND THE BURDEN FOR SEEKING A STAY OF DISCOVERY.**

The Municipal Defendants argue in the first instance that "[i]t is appropriate to defer discovery until pending questions that could dispose of the case are determined by the court." Dkt. 47 at 1. But, while it is well established that federal district courts "possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention," *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154 (1st Cir. 1992), "stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced," *id.* at 1155. In the *Marquis* case, the Court was considering whether the congressionally mandated 90-day stay of pending federal cases against financial institutions imposed in 12 U.S.C. § 1821(d)(12) when receiverships were established could be extended an additional 90 days if the administrative process was not yet finished. The Court answered affirmatively, while noting the requirements quoted above applicable when a non-mandatory stay of a lawsuit is requested.[1] The burden of

[1] Confirmation that the three-factor requirement does not relate exclusively to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") context is provided by the cases cited by the Court as authority, none of which was a FIRREA case. *Marquis*, 965 F.2d at 1155.

satisfying those factors belongs solely to the moving party-Defendants, not to the Plaintiff. *Dicenzo v. Mass. Dep't of Corr.*, Case No. 3:15-cv-3-152-MGM, 2016 WL 158505, at *1 (D. Mass. Jan. 1, 2016) (the movant "bears the burden of showing good cause and reasonableness for a stay of discovery, which is akin to a protective order under Fed. R. Civ. P. 26 (c)(1)").

Each of the three factors—two of which Defendants do not address at all or in any meaningful way—will be addressed below, after brief statements of: (a) the procedural history and (b) the law of immunity in a civil rights context.

## II. THE MUNICIPAL DEFENDANTS FAIL TO ACKNOWLEDGE DELAY PRECIPITATED BY THEIR OWN SELF-HELP, AND THEIR RIGHT TO SEEK A STAY SHOULD BE DEEMED WAIVED.

The Municipal Defendants' Motion was not filed until three months after the September 12, 2024, filing of the litigation, and then only in response to Plaintiff's Motion filed on December 10 for an Expedited Rule 16 Scheduling Conference and Scheduling Order or, Alternatively, for an Order that Defendants Promptly Participate in a Rule 26(f) Conference and Submission of a Report ("Plaintiff's Motion"). Dkt. 40. Plaintiff incorporates here her arguments in Plaintiff's Motion and in the supporting Memorandum. Dkt. 41. Plaintiff points out in that Motion that Defendants failed to confer in a timely fashion as required by FRCP 26(f), and that they did so without requesting a stay from the Court. Otherwise stated, until the Municipal Defendants filed the pending Motion to advance Rules 26(f) and/or 16 conferral and conference,[2] all Defendants simply engaged in self-help to prevent the commencement of discovery. In doing so, they have

[2] On December 23, 2024, SLT Construction Corporation and Peter Opachinski (the "SLT Defendants") also filed a motion for a stay of discovery, having similarly engaged in self-help by refusing to confer and failing to seek a stay from the Court. The remaining Defendants A.D. Makepeace and James F. Kane (the "Makepeace Defendants") have not requested a stay to date but have refused to confer with Plaintiff pursuant to FRCP 26(f).

unilaterally delayed a case in which delay has already proven problematic and could still prove more so.

No explanation whatsoever is given as to why none of the Defendants asked the Court for a stay over a period of at least three months, which necessitated that Plaintiff assume the cost and burden of filing a motion to force the issue when time remains of the essence in preventing the loss of additional evidence. Defendants are the ones who benefit from delay, and they do so at Plaintiff's expense, especially because of the need to identify the John Doe(s).

Under federal principles of waiver, the right of all Defendants in this case to seek a discovery stay should be deemed waived because they waited until their hand was absolutely forced by Plaintiff's Rule 26(f)/Rule 16 Motion. *See* Dkt. 40. Rule 26(f)(1) contains strong mandatory language: "Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, *the parties must confer as soon as practicable* – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)" (emphasis added). There is no reason that such conduct should be treated differently than other failures to comply with the rules. The U.S. Supreme Court has given careful consideration to application of waivers even in the revered Sixth Amendment context of right to counsel in a criminal case. *See Johnson v. Zerbst*, 304 U.S. 458 (1938). Although the Supreme Court ultimately determined not to deem the right to counsel waived, it did so in circumstances where the accused was not represented by counsel when the waiver allegedly occurred and had not "competently and intelligently waived his constitutional right . . . ." *Id.* at 464 (finding no waiver where defendant had no counsel at the time of the purported waiver).

A request for a stay of discovery is purely discretionary and therefore entitled to far less deference than a constitutional right. This is particularly true where, as here, the moving

Defendants are represented by counsel who intentionally refused to meet their Rule 26(f) conferral obligation or to promptly seek a stay or other protective order to excuse their refusal for at least three months. Plaintiff has already been prejudiced by the delay that resulted in permanent deletion of information identifying the administrator of the Meg Costs Us Millions Facebook page ("MMP"). In the absence of any identifiable mandatory data retention standards for internet service providers ("ISPs"), the parties who, among other things, assign IP addresses, it is imperative that Plaintiff be in a position to subpoena the U.S.-based ISP for the digital impersonator account with the matching email address to MMP, and it would be extremely helpful to the search for the truth if Plaintiff could also subpoena the IP address assignments and owner names(s) for the megcostsusmillions@proton.me account and the digital impersonator email account timwestover@proton.me.[3] The ISPs do not publish their deletion dates, and the risk is clearly increased that the prejudice will be exacerbated if Plaintiff cannot promptly subpoena the ISPs for the relevant assignment logs.

## III. THE MUNICIPAL DEFENDANTS' CONTENTION THAT DISCOVERY WILL BURDEN THEIR GOVERNMENTAL ROLES DOES NOT CONSTITUTE "GOOD CAUSE" IN THESE CIRCUMSTANCES.

The Municipal Defendants attempt in the first instance to satisfy the good cause requirement of *Marquis* by referring to the Court's power under FRCP 26(c) to issue a protective order "to protect a party or person [from] . . . undue burden or expense." They even suggest, in contravention of *Marquis*, that "[c]ertainly discovery could be stayed on this basis alone." Dkt. 48 at 4. That is a misstatement of the law. Discovery, which is a critical part of the litigation

[3] MMP first appeared and was likely created in the days immediately following the false accusation by the Carver ZBA Chair, Defendant Michael Main, at the January 4, 2023, hearing that Sheehan had cost the town "millions and millions of dollars on [her] frivolous lawsuits." The statement was patently untrue. *See* Dkt. 1, ¶¶ 52–58

process, causes "burden or expense" to virtually every litigant, but it is generally necessary, and the resulting burden should not automatically be deemed "undue." If Congress had intended that discovery be presumptively delayed until preliminary motions were decided in lawsuits generally, or in lawsuits against government officials in particular, it could readily have said so as it has in other contexts. *See, e.g*., stay provisions in the Private Securities Litigation Reform Act ("PSLRA")[4] and in FIRREA, 12 U.S.C. (Supp. II 1990). It did not do so.

Curiously, the Moving Defendants rely on *Mitchell v. Forsyth*, 472 U.S. 511 (1985), for the proposition that the Supreme Court wishes to protect officials from being compelled to take valuable time away from their public duties. Dkt. 48 at 5. The genesis of the *Mitchell* case was a warrantless wiretap authorized by former U.S. Attorney General John Mitchell on national security grounds. After more than five years of discovery, cross-motions for summary judgment led to appeals all the way to the Supreme Court, which declared that Mitchell' s cabinet-level position and national security concerns did not entitle him to absolute immunity. *Mitchell*, 472 U.S. at 520–23. The Supreme Court next turned to qualified immunity and held that he would be entitled to such, but only "so long as his actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 524 (quoting *Harlow v. Fitgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court then concluded that he was not entitled to qualified immunity on the facts of the case because his actions *did* violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* The Supreme Court acknowledged that the *Harlow* concerns extended beyond damages "even [to] such pretrial matters

[4] "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).

as discovery" because such inquiries "can be peculiarly disruptive of effective government." *Id.* at 526 (quoting *Harlow*, 457 U.S. at 817). That is precisely what led to the new wholly objective qualified immunity standard, i.e., a defendant is entitled to dismissal before discovery *if the plaintiff fails to allege the violation of clearly established rights. Id.* There was no such failure in this case. *See, e.g.*, Dkt. 1, ¶¶ 150–152, 190, 213–17, 270–71, 274, 278, 281. If the allegations of violation of clearly established rights are made and discovery proceeds, Defendants will be entitled to seek summary judgment after discovery "if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed [violations of clearly established rights]." *Mitchell*, 472 U.S. at 526.

## IV. THE MUNICIPAL DEFENDANTS ALSO FAIL TO SATISFY THE GOOD CAUSE REQUIREMENT UNDER *MARQUIS* BY ASSERTING MULTIPLE INAPPLICABLE IMMUNITIES.

The Municipal Defendants contend in their Motion that they "are entitled to immunity from suit as to the federal and state claims asserted against them" and that the Supreme Court and the Massachusetts Supreme Judicial Court have held that immunity should be determined first before proceeding to discovery. Dkt. 47 at 1–2. Notwithstanding that the Municipal Defendants assert every immunity that one could imagine, none of them applies here.

In the civil rights context, which is at the very heart of this case, the law is clear that the Municipal Defendants do *not* enjoy either absolute or qualified immunity, given the well-pleaded allegations in the Complaint. As noted above, if those allegations do not hold up after discovery, which Plaintiff respectfully suggests is highly unlikely, Defendants can assert their purported immunities in a summary judgement context. At that time, unlike the present time, the Court will be able to act on a developed record.

The federal claims asserted against each of the Towns and their officials are civil rights claims pursuant to 42 U.S.C. §§ 1983 and 1985. By its terms, § 1983 "creates a species of tort

liability that, on its face admits of no immunities. Its language is absolute and unqualified; no mention is made of any privileges, immunities, or defenses that may be asserted." *Owen v. City of Independence*, 445 U.S. 622, 635 (1980) (citations omitted) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).

The Supreme Court made it clear almost fifty years ago that a municipality is a "person" under § 1983 as long as the claims are based on the municipality's implementation of a "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The proviso requires that the challenged conduct occurred and/or is occurring in the context of ongoing accepted practices, if not an explicit policy. If that standard is met, the municipality does *not* have immunity. *See also Owen*, 445 U.S. at 635–38 (a municipality has no immunity from liability under § 1983 flowing from its constitutional violations and may not assert the good faith of its officers as a defense to such liability).

Plaintiff has accurately and appropriately alleged that each town had "a longstanding practice and unwritten policy of protecting the owners of land on which sand and gravel mining occurs, the operators of the mine (if different), and the haulers of the mined sand and gravel (together, the 'sand mining industry')." In addition, "[t]he unwritten policy extends to impeding concerned residents, and groups, and their advocate (usually Sheehan) in their efforts to oppose the sand mining industry through administrative and judicial proceedings." Dkt. 1, ¶ 148. *See, e.g.*, *id.* ¶¶ 148–53, 156–58 (manifestations of the unwritten policy in Carver); *id.* ¶¶ 212–13, 215, 217–20, 229 (manifestations of the unwritten policy in Plymouth); *id.* ¶¶ 264, 277 (manifestations of the unwritten policy in both Towns). "Sheehan, acting as the attorney and advocate for the opponents to the sand mining industry, . . . has been subjected to a deprivation under color of law of her rights under the First, Fifth and Fourteenth Amendments to the U.S. Constitution by [the

Town's] unwritten policy." *Id.* ¶¶ 150 (Carver), 213 (Plymouth). Because the Municipal Defendants' conduct against Sheehan was in the context of each town's practice and unwritten policy, neither town has a basis for claiming immunity.

Municipal officials are also "persons" under § 1983. Their liability is assessed separately from that of the Towns on whose boards or committees they serve. No immunity attaches if *a person under the same circumstances should have known that his or her actions were violating a clearly established constitutional right. See Harlow*, 457 U.S. at 815–18. In the present case, the allegations are that the town officials intentionally violated Plaintiff's First Amendment rights to free speech and freedom to petition and to assemble, and her Fifth or Fourteenth Amendment[5] substantive due process rights, triggered by the Towns' deliberate indifference to training their public officials on compliance with the Constitution and other laws. *See City of Canton v. Harris*, 489 U.S. 378, 389–92 (1989). All such claims relate to clearly established constitutional rights, and all of the violations were in furtherance of the Towns' practices and unwritten policies. There can be no doubt that, by 2021, individuals in the same circumstances as Germain, Gray, Cavacco, and Main would have known that the actions undertaken against Sheehan violated Sheehan's clearly established constitutional rights.

The Municipal Defendants also contend that they have immunity defenses to the state law claims against them. Regarding the Towns, the counts sound in tort for intentional infliction of emotional distress and libel, and statutorily for violation of the Massachusetts Privacy Act, M.G.L. c. 214, § 1B. The Town officials face the same state law claims, as well as statutory claims under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11H, *et seq.*

---

[5] These rights are sometimes referred to as Fifth Amendment rights enforced through the Fourteenth Amendment in the state context.

In asserting that they have immunity defenses to the state law claims, the Municipal Defendants attempt to bootstrap such claims to the federal cases (which do not assist in any event). Dkt. 48 at 5. They also rely on one state court case, *Brum v. Town of Dartmouth*, 428 Mass. 684, 688 (1999), in which they take unwarranted solace. The *Brum* matter related to an entirely different subsection of section 10, i.e., subsection (j). The Supreme Judicial Court specifically cautioned against using other subsections within section 10 to try to interpret the meaning of a different subsection at issue. *Id.* at 693.

The Municipal Defendants include a cursory paragraph at the end of the Argument section of the supporting Memorandum that begins with the phrase "[b]y way of brief illustration," Dkt. 48 at 5, and proceeds to list several immunities without amplification. None of the listed immunities is available in the face of the allegations pled. The Defendants' language is italicized; Plaintiff's responses appear in normal text.

<u>First</u>: "[*T*]*he state law claims asserted against the Towns of Carver and Plymouth are barred by sovereign immunity, see M.G.L. c. 258, §§ 4 & 10(c).*" Dkt. 48 at 5. Chapter 258 is known as the Massachusetts Tort Claims Act ("MTCA") and comprises the primary mechanism in the Commonwealth overriding the previous common law doctrine of sovereign immunity. Section 4 is a notice provision, and §10(c) makes it clear that §§ 1–8 of the MTCA (including § 4) do not apply to the intentional torts that Plaintiff alleges, i.e., Plaintiff had no obligation to give advance notice to the Towns of her lawsuit. The Towns' suggestion that they are not liable under the MTCA for their officials' intentional torts, even if their officials are liable, is an incorrect statement of the law. If the Towns' own intentional or negligent failure to train their officials subsequently resulted in the officials' intentional torts, as Plaintiff alleges, the Towns are indeed liable. *See, e.g.*, *Sheehy v. Town of Plymouth*, 948 F. Supp. 119, 123 (D. Mass. 1996) (claims may be brought against a

public employer for intentional torts when the Town's negligence precedes the intentional torts). Precisely those allegations are included in the Complaint. *See, e.g.*, Dkt. 1, ¶¶ 152,[6] 154,[7] 274,[8] 284; *see also Dobos v. Driscoll,* 404 Mass. 634, 653 (1989) (stating that, "where the supervisory officials allegedly had, or should have had, knowledge of a public employee's assaultive behavior, it is the supervisors' conduct, rather than the employee's intentional conduct, that is the true focus of the case" (citing *Doe v. Town of Blandford*, 402 Mass. 831, 836–38 (1988))). This, too, is pleaded in the Complaint.

As to Carver and Germain, *see* Dkt. 1, ¶¶ 22,[9] 44.[10]

As to Plymouth and Main, *see* Dkt. 1, ¶¶ 53–57, 58–59 (after Main's abusive behavior at a hearing, Cavacco did not respond to a letter from Sheehan at all, and the Select Board reappointed

---

[6] "It was incumbent on the Town to train its police officers to understand that protection was not limited to those in the sand mining industry and withdrawn from those who were industry opponents," and "[t]he failure to train or educate its Town officials in allowing Town residents to be heard directly or through their attorney in opposition to official actions, as exemplified by Gray's conduct . . . is a second violation . . . ."

[7] "The Town of Carver's duty to train and educate, and then to oversee and monitor, its Police personnel, also extended to its Town officials, who, as alleged herein were obligated to, but did not, treat all persons before them, including Sheehan, without bias and with respect, and to render all decisions without bias or predisposition."

[8] "The Town of Plymouth had an obligation to ensure that its officials were trained and educated to ensure that Town residents and their attorneys were . . . given the opportunity to present and argue their positions when public boards were to determine their rights. The Town woefully failed to do so, and instead had a practice and policy of favoring one group, i.e., the participants in the sand mining industry, and disfavoring the other, i.e., the opponents of the sand mining industry."

[9] Even when Germain was supposed to be recusing himself, "Germain would nonetheless remain seated at the table with the other members, would participate in discussions sometimes bullying or otherwise intimidating or embarrassing those members and yelling at and harassing audience members who spoke in opposition to the SLT Projects."

[10] "[Germain] had a reputation for volatility and for bullying behavior" and as "a vocal Second Amendment proponent known to be licensed and to 'carry.'"

Main notwithstanding his tirade against Sheehan, once he apologized to the public but refused to apologize to Sheehan).

Sheehan posits that the fact that the appointing Boards in each Town knowingly chose to appoint members of the sand mining industry to relevant boards and committees, in furtherance of the Town's practice and unwritten policy, constitutes an additional wholly justifiable basis for imposing liability on the Town. *See, e.g.*, Dkt. 1, ¶¶ 47 (Carver's appointment of industry participants to Earth Removal Committee), 148 (same), 212 (Plymouth's appointment of sand mining industry participants to committees, boards and commissions with which the sand mining industry regularly interacts).

Second: "[*L*]*egislative immunity bars any claims against Germain in his individual capacity for any conduct occurring at or during Town Meeting., see, e.g., Bogan v. Scott-Harris, 523 U.S. 44, 52 (1998).*" *Id.* The *Bogan* case affirms that local legislators enjoy the same absolute immunity under § 1983 as national, state and regional legislators for legislative functions. 523 U.S. 44 at 52. But the allegations against Germain at the April 2023, Town Meeting, *see* Dkt. 1, ¶ 80,[11] had absolutely nothing to do with a legislative role or legislative discretion. As the allegations of the Complaint point out, Germain has served, among other positions, on the Carver Conservation Commission and later (by the time that the Complaint was filed in September of 2024) as Town Moderator. *Id.*, ¶ 4. Hence, he was either a member of the Conservation Commission, which would have had no legislative role at a Town Meeting, or he was the Town Moderator, which is not a legislative position, or he was neither because his verbal assault of

[11] "At the Carver Town Meeting in April 2023, Germain once again shouted at Sheehan in a very public setting, this time so egregiously and outrageously that it resulted in multiple police reports being filed against him by some of the local residents whom Sheehan was assisting in their efforts to stop the sand mining." *Id.*, ¶ 80.

Sheehan fell between the tenures. In any event, "shout[ing] at Sheehan in a very public setting," *id.*, ¶ 80, does not constitute the exercise of legislative discretion.

Third: "*Qualified immunity bars claims against the municipal official defendants (Germain, Gray, Cavaco, and Main). . . .*" Dkt. 48 at 5. As discussed earlier, qualified immunity does not attach if a reasonable person would have known that the defendants' challenged conduct was violative of well-established rights, as was the case here. As stated by the Supreme Court in *Harlow*, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." 457 U.S. at 818–19.

Fourth: *"[Q]uasi-judicial immunity bars claims against Gray arising from his role as a member of the Carver ZBA . . . .*" Dkt. 48 at 5–6 (citing *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 41 (1st Cir. 2005)). The genesis of the *Diva's Inc.* case was the denial of a special amusement permit by the Bangor City Council to the petitioner, an adult entertainment bar, in a situation where the Council performed an "adjudicatory" function. 411 F.3d at 41. For the holdings of the *Diva's Inc.* case to have any application, Gray's conduct would have to have been directed at Sheehan's client, i.e., the party appealing to the ZBA. Gray, the Chair of the Carver ZBA, is singled out in the Complaint for his unconscionable treatment of Sheehan as an advocate, *not* of her client, at the May 29, 2024, ZBA meeting. Dkt. 1, ¶¶ 23, 119. A local resident who volunteered with one of Plaintiff's client groups wrote to the ZBA shortly thereafter, directing her comments to Gray: "[Y]our contempt towards Ms. Sheehan is palpable, unprofessional, juvenile and a behavior that one would not expect from a member of the Bar. Staring at the ceiling, swiveling in your chair and rolling your eyes while she speaks is disgraceful . . . ." *Id.*, ¶ 121.

The allegations against Gray in the Complaint are not related to Gray's denial of the client's appeal; they are against Gray for his violation of Sheehan's constitutional rights to exercise her freedoms of speech and petitioning. Violation of an advocate's First Amendment rights for the purpose of driving her away is not the performance of a quasi-judicial function.

## V. THE MUNICIPAL DEFENDANTS FAIL TO ADDRESS THE SECOND AND THIRD *MARQUIS* FACTORS.

The Municipal Defendants do not address either the second or third Marquis factors, i.e., whether the duration of the requested stay is reasonable, and the weighing and balancing of the equities. In addition to their pending Rule 8 and 12(e) Motion (incorrectly styled as a Motion to Dismiss), and the instant Motion to Stay, the Municipal Defendants have already indicated that a Rule 12(b)(6) motion, based at least in part on purported immunities, will follow. This suggests that a stay based on the determination of all dispositive motions may take several months, which leads into the critical third *Marquis* factor: the weighing and balancing of the equities.

From all appearances – *see* supporting Memorandum, Dkt. 48 at 4–5 – the Municipal Defendants will point to (a) cost and (b) interference with their official roles, as factors weighing in favor of a stay. Regarding the municipal officials, it is presumptively the case that the Towns have assumed their respective officials' defense, perhaps under § 9 of the MTCA, given that each Town and its officials are respectively represented by one law firm. It is also the case that legal fees and costs generally occur in all lawsuits, and Congress did not mandate a stay of discovery for any of the causes of action at issue here, or for government officials when they are sued. With regard to the alleged interference with official roles, the Supreme Court determined in *Harlow*, 457 U.S. at 817, and reiterated in *Mitchell*, 472 U.S. at 526, that a defendant is entitled to dismissal before discovery *only if* the plaintiff fails to allege the violation of clearly established rights. As itemized above, plaintiff here did allege the violation of clearly established rights. *See supra* p. 6.

In addition, the Municipal Defendants have given no indication that their respective service on various boards or committees requires more than occasional evening meetings and/or hearings.

The equities on Plaintiff's side relate to the compelling need to collect all evidence, particularly in a digital format, before it is forever lost. Meta (Facebook) reports that it permanently deleted all information relating to the identity of the administrator of the "Meg Costs Us Millions" Facebook page before allowance of the emergency motion for leave to serve subpoenas on Meta, Google (YouTube), X, and Proton Mail. The genesis of the deletion was that the Administrator of the Facebook page requested that it be deleted (thereby making it immediately inaccessible to the public) the day after the filing of the lawsuit, triggering a 14-day period before Meta permanently deleted it. Fortunately, Plaintiff had available a screenshot of a post to that Facebook page that includes an email address, which allowed Meta to match the email address associated with the Facebook page to that of a particular digital impersonator whose account had not yet been eliminated before receipt of the subpoena, suggesting that the same person or persons established both the page and the account. (By policy, Meta deletes Facebook pages within 14 days of the request and accounts within 30 days of the request. Google's response to the subpoena indicates that it uses a 30-day deletion policy for postings.) A radius IP address has been obtained for the digital impersonator who matches to the Facebook page, and a subpoena to the ISP is now required to attach the name(s) to the IP address. Subpoenas to the ISPs for two other digital impersonators should reveal names behind the generically named email accounts as well. The identity of a third digital impersonator has been confirmed. Proton Mail has no presence (other than email servers) and no registered agent in this country and cannot be served without the expense of a Swiss lawsuit. However, at least one ISP serving Proton Mail has a major U.S. presence, and a subpoena to that ISP is necessary to confirm the identity of the final digital

impersonator and the owner of the megcostsusmillions@proton.me email account, shared by that impersonator and by the administrator of MMP.

The Municipal Defendants state that they "do not oppose Sheehan taking reasonable steps to enforce subpoenas against the non-parties, or to take other steps to engage in limited non-party discovery with the sole aim of identifying the alleged John/Jane Does, which Plaintiff stated was necessary for the purpose of closing her pleadings." Dkt. 48 at 3. Plaintiff does not know the position of all Defendants in this regard. The subpoena recipients have indicated that they have produced all of the information that has not been deleted. If so, further subpoenas to them would produce nothing. The suggestion has also been made among the subpoena recipients that the requests for information about the identity of administrators and owners should have gone first to the parties, before entangling the social media entities in a lawsuit in which they have no interest. It is possible that taking discovery of the parties would avoid the need for subpoenas to the ISPs, which may well be contested, to obtain names behind IP addresses and/or email addresses. But, because no Rule 16 conference has occurred, Plaintiff cannot proceed with either approach without leave of Court, and she fears the elimination of additional evidence with the passage of more time.

Plaintiff respectfully suggests that: the equities weigh in her favor, particularly because the Municipal Defendants did not address the full *Marquis* factors; Plaintiff is at risk of losing key evidence; and the *Mitchell* and *Harlow* cases indicate that discovery should not be stayed if—as is the case here—the plaintiff has pleaded that her well-established rights have been violated by Defendants.

## CONCLUSION

Plaintiff respectfully requests that the Motion for a stay be denied and the right to seek a stay be deemed waived by virtue of the three months of self-help while Plaintiff's rights were being

adversely affected. Plaintiff further requests that her pending Motion relating to Rule 26(f) conferral and a Rule 16 conference (Dkt. 40 and 41) be allowed, so that discovery can proceed promptly.

Respectfully submitted,

**MARGARET E. SHEEHAN,**

By her attorneys,

*/s/ Joan A. Lukey*

Joan A. Lukey (BBO No. 307340)
Justin J. Wolosz (BBO No. 643543)
MANATT, PHELPS & PHILLIPS, LLP
One Beacon Street, Suite 28-200
Boston, Massachusetts 02108
Telephone: (617) 646-1448
jlukey@manatt.com
jwolosz@manatt.com

Dated: January 2, 2025

**CERTIFICATE OF SERVICE**

I, Joan A. Lukey, hereby certify that, on January 2, 2025, I caused a true and accurate copy of the foregoing document to be served via the Court's CM/ECF filing system on all counsel of record.

*/s/ Joan A. Lukey*
Joan A. Lukey