**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>*Plaintiff,*<br><br>v.<br><br>TOWN OF CARVER, MA;<br>TOWN OF PLYMOUTH, MA;<br>ALAN G. GERMAIN; STEPHEN G. GRAY; BETTY CAVACCO; MICHAEL MAIN; A.D. MAKEPEACE COMPANY; JAMES F. KANE; SLT CONSTRUCTION CORPORATION; and<br>PETER OPACHINSKI,<br><br>*Defendants.* | No. 1:24-cv-12347-ADB |

**PLAINTIFF'S OPPOSITION AND INTEGRATED MEMORANDUM OF LAW AND FACTS TO MOTION OF DEFENDANTS SLT CONSTRUCTION CORPORATION AND PETER OPACHINSKI TO STAY PARTY DISCOVERY PENDING RESOLUTION OF DISPOSITIVE MOTIONS**

**MANATT, PHELPS & PHILLIPS, LLP**
*Attorneys for Plaintiff Margaret E. Sheehan*
One Beacon Street, Suite 28-200
Boston, Massachusetts 02108
(617) 646-1440

On December 23, 2024, Defendants SLT Construction Corporation ("SLT") and Peter Opachinski ("Opachinski") (together, the "SLT Defendants") filed a Motion (Dkt. 51) that seeks one of three closely-related forms of relief: (i) staying all party discovery pending resolution of *all* dispositive motions, as stated in the caption, Dkt. 51 at 1; or (ii) "staying *all discovery from them*," i.e., SLT and Opachinski, "until after this court has resolved *their pending motion to dismiss* [ECF No. 43-44]," Dkt. 51 at 1 (emphasis added);[1] or (iii) "staying *any and all substantive discovery from them* until after this court has resolved *the pending and forthcoming dispositive motions*," *id.* at 2 (emphasis added). Plaintiff addresses the requests for relief together.

## ARGUMENT

### I. THE SLT DEFENDANTS FAIL TO ACKNOWLEDGE DELAY PRECIPITATED BY THEIR OWN SELF-HELP, AND SUCH SELF-HELP IN THESE CIRCUMSTANCES SHOULD BE DEEMED A WAIVER OF THE RIGHT TO SEEK A STAY OF DISCOVERY.

The SLT Defendants' Motion was not filed until December 23, 2024, three months and one-and-a-half weeks after the September 12, 2024, filing of the litigation. Even then, it was filed only in response to Plaintiff's Motion filed on December 10, 2024, for an Expedited Rule 16 Scheduling Conference and Scheduling Order (Dkt. 40) ("Plaintiff's Rule 16/26(f) Motion").

As Plaintiff pointed out in her Memorandum in support of her Rule 16/26(f) Motion, Rule 26 and its accompanying advisory committee notes make clear that Rule 26(f) conferences should happen sooner rather than later, regardless of the preliminary nature of the proceedings. Dkt. 41 at 6–7. "The obligation to participate in the planning process is imposed on all parties that have appeared in the case, *including defendants who, because of a pending Rule 12 motion, may not have yet filed an answer in the case.*" Fed. R. Civ. P. 26 advisory committee's note to 1993

---

[1] This is repeated in the text at ¶ 2. *Id.* at 1 ("staying discovery until the pending motion to dismiss by SLT and Mr. Opachinski is resolved . . . .").

amendment (emphasis added). The clear intention was for the Rule 26(f) conference to occur as early as possible after the commencement of the litigation. *See AFT Mich. v. Project Veritas*, 294 F. Supp. 3d 693, 694 (E.D. Mich. 2018) (ordering defendants who refused to participate in Fed. R. Civ. P. 26(f) conference on the basis that a motion to dismiss was pending to participate in the conference within two weeks). *See also* Fed. R. Civ. P. 1 (the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

As Plaintiff also pointed out in her Rule 16/26(f) Motion, Defendants not only refused to confer in a timely fashion as required by Rule 26(f), but did so without requesting a stay from the Court. Dkt. 40, ¶ 5. Otherwise stated, all Defendants simply engaged in self-help to prevent the commencement of discovery, even though they were aware of Plaintiff's desire to begin discovery expeditiously. The mere fact that they did not oppose Plaintiff's Motion for Leave to Serve Third-Party Subpoenas on social media platforms (Dkt. 5) early does not excuse them from simply refusing to join in a Rule 26(f) conferral. Indeed, opposing the Motion for early social media subpoenas would have constituted an acknowledgement that they did not want the material identifying the John Does(s) to be produced in a timely manner, which would have raised significant questions. In continuing their refusal to confer as mandated by Rule 26(f), they have unilaterally delayed a case in which delay has already proven problematic and could still prove more so. At very least, they should have agreed to confer and taken the position that discovery should not begin, which would have elevated the likelihood that a Rule 16 conference would occur when Plaintiff requested it. Instead, they chose the course that would precipitate the greatest delay.

Under federal common law principles of waiver, the right of all Defendants in this case to seek a stay of discovery should be deemed waived because they waited until their hand was

absolutely forced by Plaintiff's Rule 16/26(f) Motion. *See* Dkt. 40. Rule 26(f)(1) does not simply invite a discretionary conferral. Rather, it contains strong mandatory language: "Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, *the parties must confer as soon as practicable* – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed. R. Civ. P. 26(f)(1) (emphasis added). There is no reason that such conduct should be treated differently than other failures to comply with the rules where knowingly and voluntarily eschewing one's rights generally constitutes waiver, e.g., belated attempts to claim a jury trial. *See, e.g.*, *Doelger v. JPMorgan Chase Bank, N.A.*, Civil No. 21-11042-AK, 2024 WL 38743, at *4–5 (D. Mass. Jan. 3, 2024) (denying late motion to assert jury claim, where contractual waiver was knowing and voluntary).

There can be no question here that the very capable lawyers from four law firms representing the four sets of defendants (two municipal, two private), some of whom engaged in communications with Plaintiff's counsel regarding her request for a Rule 26 conferral more than once, knowingly and voluntarily chose not to seek a stay. A strategic decision to turn their backs on the mandatory conferral requirement of Rule 26(f), therefore precipitating delay, should not simply be ignored.

## II. DISCOVERY MAY BE DEFERRED UNTIL DISPOSITIVE MOTIONS ARE DECIDED, BUT ONLY IF THE COURT FINDS THAT THREE REQUIREMENTS HAVE BEEN MET.

The SLT Defendants have not filed a supporting Memorandum with their Motion, instead incorporating their Opposition (Dkt. 50) to Plaintiff's Rule 16/26(f) Motion. This approach appears to ignore that the SLT Defendants bear the burden on their Motion to Stay Party Discovery (Dkt. 51). *DiCenzo v. Mass. Dep't of Corr.*, Case No. 3:15-cv-3-152-MGM, 2016 WL 158505, at *1 (D. Mass. Jan. 1, 2016) (the movant "bears the burden of showing good cause and

reasonableness for a stay of discovery, which is akin to a protective order under Fed. R. Civ. P. 26(c)(1)").

The burden that the SLT Defendants must meet is that set by the U.S. Court of Appeals for the First Circuit (the "First Circuit") in *Marquis v. F.D.I.C.*, 965 F.2d 1148 (1st Cir. 1992). After noting that "stays cannot be cavalierly dispensed," the First Circuit stated that "there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced." *Id*. at 1155.

The rationales that the SLT Defendants offer as good cause are: "prevent[ing] wasting time and effort of all concerned, and . . . mak[ing] the most efficient use of judicial resources," in order to "reduce[] expenses, minimize[] the burden of unnecessary discovery, and conserve[] judicial resources." Dkt. 51 at 1–2. While these are worthy objectives, they relate to issues present in all, or virtually all, litigation. Neither Congress, by statute, nor the Judicial Conference Committee on Rules and Practice and Procedure, by rule, has mandated routine stays of discovery pending the outcome of dispositive motions. Indeed, the advisory committee notes on Rule 26(f) are to the contrary.[2] This is undoubtedly true for several reasons, but high among them is likely the legal maxim "justice delayed is justice denied."[3] As the First Circuit made clear in the *Marquis* decision, stopping a case in its normal tracks only serves justice if the delay is of a reasonable duration, and – most importantly – the circumstances of all parties are assessed through a weighing and balancing of competing equities. 965 F.2d at 1155.

---

[2] A convenient source for the Advisory Committee Notes can be found at: https://www.law.cornell.edu/rules/frcp/rule_26.

[3] The words are believed to have been uttered first by British Prime Minister William Gladstone in 1868, and to have been made famous in the United States by the Rev. Martin Luther King, Jr.

As referenced above, the SLT Defendants discuss the duration of any stay with three variations tied to the Court's disposition of motions to dismiss. They ask that the Court enter a stay of discovery: (i) "pending resolution of dispositive motions" (plural), Dkt. 151 at 1 (title); or (ii) "until the pending motion to dismiss filed by SLT and Mr. Opachinski is resolved," *id.*, ¶ 2; or (iii) "until after this Court has resolved the pending and forthcoming dispositive motions," *id.* at 2 (last paragraph). To the extent that Defendants address reasonableness of the duration at all, they do so only impliedly through their references to expenses, burdens, and judicial resources, factors that apply in virtually every case. The drafters of the Federal Rules of Civil Procedure chose as the default position allowing discovery to proceed during the pendency of motions to dismiss, not staying discovery until the motions are resolved. *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. Defendants have given no justification for end-running the default, i.e., that discovery and motions to dismiss proceed on parallel tracks.

Under Defendants' inconsistent approaches, the stay will remain in effect until the Court decides the SLT Defendants' pending Motion to Dismiss, or until the Court decides all of the pending Motions to Dismiss, or until the Court delays ruling on any motion for an indefinite period to see if additional motions to dismiss are filed. Each facet of this open-ended approach totally ignores Plaintiff's needs. In other words, it does not address the weighing of the equities that is required by the First Circuit's decision in *Marquis*.

Weighing the equities from the Plaintiff's perspective includes the following analysis:

The subpoenas that the Court permitted to be served on the social media platforms Meta (Facebook), X, and Google (YouTube), plus an email address associated with Proton Mail,[4] have

[4] As noted in earlier submissions, Proton Mail is a Swiss company with no U.S. presence or agent for service of process, but apparently with an Internet Service Provider ("ISP") with a presence in the United States.

resulted in the production of email addresses and IP addresses that Plaintiff did not have previously. Through this process, Plaintiff has learned the name of one of the digital impersonators, and the IP and/or email addresses for the others (not necessarily extending to Proton Mail). By causing expert analysis of the produced IP addresses to be undertaken, Plaintiff now has the geographic area (but not the street addresses)[5] of two digital impersonators, one of whom is an email match with the administrator of the now-deleted Meg Costs Us Millions Facebook page ("MMP") and presumptively the same person(s). While reasonable inferences as to identities can permissibly be drawn from the information that Plaintiff now possesses, direct evidence that is not subject to denial, rebuttal, or obfuscation is obviously preferable. It is highly likely that one or more of the Defendants or employees or agents of the Defendants has knowledge regarding the identit(ies) of the owners or administrators of the MMP, its matched digital impersonator account, the T.J. Strongbow account, and/or the Tim Westover Proton Mail account. That knowledge should be discovered as soon as possible for the following reasons:

The only remaining practical route to confirm the identities directly (other than admissions from the person(s) to whom the identities belong) is through the ISPs, e.g., Comcast. But, the IP addresses for residential or private users are dynamic rather than fixed, and Comcast only retains the IP address logs[6] for such addresses for 180 days (e.g., c. six months).[7] However, Comcast can

---

[5] In civil cases, the ISPs do not reveal the precise address but, rather provide an area within which the precise address is situated. The size of the area can vary due to multiple factors but is generally manageable and helpful with regard to the IP addresses in this case.

[6] The logs associate the randomly assigned alphanumerical IP address to the customer name and contact information for the account from which the message emanated. Hence, the log provides names to go with the alphanumerical identifiers which are matched to the date and time of the message.

[7] The information included in this Opposition relating to Comcast was simply the result of using a web browser (Google) to locate information. Comcast posts online a document entitled *Comcast*

still provide certain account information when provided with a complete home and work street address; a Comcast email address; or a landline number, Xfinity Voice (VoIP) telephone number, or a mobile telephone number, if such a number is currently or has historically served or included a subscriber contact number. Plaintiff does not have this information for the individuals whom they infer are the likely administrators and owners of the subject pages and accounts. Discovery should allow them to obtain it to be used for the limited purpose of providing it to the ISPs.

With every passing day, the most precise information, i.e., the IP address log entries, is lost. By **early to mid-March 2025**, all information from the IP address logs will presumably be lost. Further information will only be obtainable from the ISPs to the extent that Plaintiff has reasonably inferred the correct identities and obtained the information listed above.

Comcast, the ISP believed to have provided all or some of the IP addresses at issue here, does not part with its information readily. If ever there were a circumstance in which time should be deemed of the essence, this case presents it. The SLT Defendants claim expense and inconvenience to justify their request to stay discovery, while the Plaintiff confronts the potential loss of direct evidence that may well meaningfully impact the defenses proffered and those abandoned by various parties in this case. The equities strongly favor the Plaintiff. Discovery should move forward with alacrity.

## CONCLUSION

For the reasons set forth above and in her Memorandum in Support of her Rule 16/26(f) Motion (Dkt. 41), Plaintiff respectfully requests that the SLT Defendants' Motion for a Stay be deemed waived and/or denied on the merits, and that discovery be permitted to proceed promptly.

---

*Guide for Law Enforcement – August 2022*, which can easily be reached through a web browser. The information in it may or may not be applicable to private litigants, but a section entitled "civil matters" is included at p. 2.

Respectfully submitted,

**MARGARET E. SHEEHAN,**

By her attorneys,

*/s/ Joan A. Lukey*
Joan A. Lukey (BBO No. 307340)
Justin J. Wolosz (BBO No. 643543)
MANATT, PHELPS & PHILLIPS, LLP
One Beacon Street, Suite 28-200
Boston, Massachusetts 02108
Telephone: (617) 646-1448
jlukey@manatt.com
jwolosz@manatt.com

Dated: January 6, 2025

**CERTIFICATE OF SERVICE**

I, Joan A. Lukey, hereby certify that, on January 6, 2025, I caused a true and accurate copy of the foregoing document to be served via the Court's CM/ECF filing system on all counsel of record.

*/s/ Joan A. Lukey*
Joan A. Lukey