UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>Plaintiff,<br>v.<br><br>TOWN OF CARVER, MA,<br>TOWN OF PLYMOUTH, MA,<br>ALAN G. GERMAIN, STEPHEN G. GRAY,<br>BETTY CAVACCO, MICHAEL MAIN,<br>A.D. MAKEPEACE COMPANY,<br>JAMES F. KANE,<br>SLT CONSTRUCTION CORPORATION,<br>and PETER OPACHINSKI,<br><br>Defendants. | No. 1:24-CV-12347-ADB |

**LIMITED OPPOSITION TO PLAINTIFF'S MOTION TO AMEND**

On May 7, 2025, this Court issued a Memorandum and Order (ECF No. 94, the "Order") resolving multiple dispositive motions and narrowing the scope of this lawsuit. In the wake of that decision, Plaintiff has sought to amend her Complaint. The proposed Amended Complaint seeks to clarify and supplement the causes of action that survived the dispositive motions. With one exception, Plaintiff is not seeking to reassert any of the original claims that were dismissed. The lone exception is Plaintiff's claim for defamation against Defendant A.D. Makepeace Company ("Makepeace" or the "Company"). The reassertion of that claim is the only thing that Makepeace opposes.

Plaintiff's original claim of defamation against Makepeace was premised on a particular set of allegations that Makepeace argued could not constitute defamation as a matter of law. The Court agreed and dismissed the claim. Plaintiff's new claim for defamation is based on entirely

different allegations. Specifically, it is premised on statements allegedly posted by an employee of Makepeace on various social media platforms.

Plaintiff does not allege that Makepeace, as a corporate entity, made or adopted any of the alleged statements at issue. Instead, the sole basis for Makepeace's alleged liability is under the doctrine of *respondeat superior*, which provides that an employer may be subject to liability for the torts of its employees committed within the scope of their employment. As the Court acknowledged in its Order, there is an established three-part test in Massachusetts to determine if an employee's conduct was in the scope of his employment: (1) the alleged conduct must be of the kind the employee is employed to perform, (2) the alleged conduct must have occurred substantially within the authorized time and space limits of the employment, and (3) the alleged conduct must have been motivated, at least in part, by a purpose to serve the employer. Here, the proposed Amended Complaint does not contain sufficient allegations to meet the first prong of the test. Accordingly, amendment to reassert a claim for defamation against Makepeace should be denied as futile.

**BACKGROUND**

Starting in the spring of 2022, Plaintiff began a social media campaign against Makepeace and several of the other Defendants. Through direct postings and postings made by organizations she founded and operates, Plaintiff has made baseless statements on platforms such as Facebook/Meta, YouTube, and others calling Makepeace "corrupt," "criminals," and a "rogue" group engaged in a "scam" that is harming nature and destroying lives. The campaign waged by Plaintiff has been incessant.

In early 2023, people on the other side of this debate began to be vocal as well, including through the very same type of internet forums and social media platforms that Plaintiff uses. The

resulting "Twitter war"—or what Plaintiff has dubbed the "sand wars"—has continued between the two sides ever since, ultimately resulting in this lawsuit. *See* Compl. ¶ 263.

Makepeace has not participated in this "Twitter war," and it does not condone or applaud the statements that were made against or about Plaintiff in connection with it. At the time this lawsuit was filed, neither Plaintiff nor Makepeace knew who was making many of the social media posts against Plaintiff. Limited non-party discovery in this case has now revealed that one of Makepeace's employees, Michael McVeigh, was the person responsible for the so-called "Meg Costs Us Millions" ("MMP") page and some of its postings. *See* Proposed Amended Complaint at ¶ 33 (ECF No. 100-1) (hereinafter "Am. Compl."). Specifically, Comcast sent letters to Makepeace and Mr. McVeigh dated January 28, 2025 indicating that Internet Service Provider ("ISP") addresses owned by Makepeace and/or tied to Mr. McVeigh linked to the MMP page. *See id.*; *see also* February 26, 2026 Letter to the Court from Makepeace (ECF No. 73) ("Letter") at 2. Makepeace's counsel promptly disclosed these letters to Plaintiff's counsel and informed counsel that the situation was being assessed. *See* Letter at 2. In subsequent meet and confers, Makepeace's counsel explained that its assessment reflected that Mr. McVeigh was a lone actor who administered the MMP page without any authorization from Makepeace. *See id.*

Mr. McVeigh is a veteran of the United States Navy and a recently barred attorney who has worked his way up the ranks of the Company. *See* Am. Compl. at Count 14 ¶ 61. He started in 2013 as an inside salesman/truck dispatcher, and eventually went to law school. *See id.* Makepeace supported Mr. McVeigh with the "cost of . . . his legal education" as it has for other employees. *See id.* at ¶ 19. Mr. McVeigh's current role and role during the relevant time period was Legal Administrator at Makepeace, where he handles project management and routine legal tasks, including such things as drafting deeds, supporting real estate closings, and performing legal

research. Marketing, communications, and management of Makepeace's social media are not part of his job.

Despite the fact that marketing, communications, and social media are not the kind of work Mr. McVeigh was employed to perform at Makepeace, Plaintiff has sought to hold Makepeace legally responsible for his conduct. The claim for defamation sought to be reasserted against Makepeace in the proposed Amended Complaint is expressly advanced "under the doctrine of *respondeat superior*[.]" *See* Am. Compl. at ¶ 70. Because the doctrine does not apply, Makepeace opposes this aspect of the proposed amendment.

## **LEGAL STANDARD**

Plaintiff's motion to amend is made under Fed. R. Civ. P. 15(a)(2), which provides that a party may amend her pleadings with leave of court. In general, "[t]he court should freely give leave when justice so requires." *Id.* However, in circumstances where a proposed amendment is legally deficient such that a proposed claim would be subject to dismissal if asserted, leave to amend should be denied as futile. *See Strahan v. AT&T Mobility LLC*, 270 F. Supp. 3d 535, 543 (D. Mass. 2017).

In reviewing a proposed amendment for futility, the court applies the same standard that applies under Fed. R. Civ. P. 12(b)(6). *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Indeed, "[t]here is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim." *Id.* Accordingly, a proposed amended complaint is futile if it would fail to state a claim that is plausible on its face. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

# ARGUMENT

## I. Makepeace's Opposition Is Limited

In opposing amendment in this case, Makepeace is mindful that the Court recently resolved substantial motions to dismiss filed by each of the Defendants. While Makepeace continues to believe that all of the claims asserted against it should have been dismissed, it accepts the Court's ruling. Makepeace acknowledges, moreover, that Plaintiff has also accepted the Court's ruling and has worked to tailor her proposed Amended Complaint to comport with it.

In submitting this Opposition, Makepeace does not seek to rehash issues or arguments that this Court has already decided. The focus is limited to a claim for defamation that is newly asserted against Makepeace. The prior claim for defamation asserted against Makepeace in the original Complaint was dismissed under Fed. R. Civ. P. 12. *See* Order at 68–70. The new claim in Count 17 of the proposed Amended Complaint is based on *different* facts and a *different* theory of liability—namely, holding Makepeace responsible through the doctrine of *respondeat superior* for statements made by Mr. McVeigh.

It is Makepeace's position that this new claim is susceptible to dismissal on multiple grounds, including that the alleged defamatory statements do not constitute defamation as a matter of law. The MMP posts reflect unactionable opinion, hyperbolic rhetoric, and insults and verbal abuse that—while distasteful—do not constitute torts under Massachusetts law. *See, e.g., Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 112 (D. Mass. 2020), *aff'd*, No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021) (quoting *Fleming v. Benzaquin*, 390 Mass. 175, 181 (1983)) (holding that "'ridicule and simple verbal abuse' do not give rise to liability for defamation"). Indeed, the rhetoric on the MMP page is of the same kind as that employed in countless other

"Twitter wars" that are fought online every day. Federal courts are not the appropriate forum to resolve these battles.

That said, Makepeace recognizes that a similar argument was advanced by the SLT Defendants and was rejected by the Court for purposes of Rule 12. *See* Order at 64–65. In addition, this Court rejected another potential basis for dismissal, namely that the alleged defamation is not actionable because Plaintiff is a limited purpose public figure. *See id.* at 65–66. These grounds for dismissal, therefore, are not the subject of the instant Opposition.

Instead, Makepeace's Opposition is about the doctrine of *respondeat superior*. The Court addressed the application of this doctrine in its Order, but it expressly left open the question that is at the heart of the current Opposition—namely, "how, if at all, the respondeat superior test is uniquely applied when considering liability for corporate officers and directors," or, here, ordinary employees like Mr. McVeigh. *See id.* at 66–68. In its analysis of the doctrine in connection with the SLT Defendants' motion to dismiss, the Court distinguished between statements made by SLT's "President and co-owner" and statements made by its General Manager & Health and Safety Officer. *See id.* at 67–68, n.25. The Court was ultimately satisfied that Plaintiff had sufficiently pled a claim for defamation against SLT based on statements made by its President and co-owner. *See id.* However, the Court expressly stated that "the parties should be prepared to address in any subsequent dispositive motions how, if at all, the respondeat superior test is uniquely applied when considering liability for corporate officers and directors." *Id.* This Opposition is a "subsequent dispositive motion" addressing that issue.

## II. <u>The Defamation Claim Is Futile As To Makepeace Because Mr. McVeigh's Social Media Posts Were Not Part Of His Job Description Or Duties</u>

In the context of the defamation claim made against SLT, the Court noted "that the Complaint does not plead any facts which would indicate that [SLT's General Manager & Health

and Safety Officer] was hired to engage in public outreach about SLT or that he posted the comments with authorization." *Id.* at n.25. The proposed Amended Complaint suffers from the same malady with respect to the alleged defamatory statements made by Mr. McVeigh. Nothing in the proposed Amended Complaint alleges that engaging in public outreach, marketing, or social media communications are or were part of Mr. McVeigh's job duties or responsibilities at Makepeace. *See generally* Am. Compl. In fact, Makepeace has a separate Vice President of Marketing and Communication.[1] Mr. McVeigh does not report to or work under her. The proposed Amended Complaint is clear that Mr. McVeigh is an "in-house lawyer."[2] *See* Am. Compl. at ¶ 19.

The proposed Amended Complaint alleges, "[o]n information and belief," that "others at Makepeace were aware of, should have been aware of, or were willfully blind to" his conduct. *See id.* at Count 17 ¶ 77. Such conclusory allegations should be rejected by the Court. But, even if they were considered, they do not constitute allegations that Mr. McVeigh's postings were authorized by Makepeace such that they could be considered the "kind of work he was employed to perform." *See Berry v. Commerce Ins. Co.*, 488 Mass. 633, 638 (2021).

Furthermore, the fact that Mr. McVeigh remains an employee of Makepeace does not demonstrate that his prior conduct was authorized or approved by Makepeace. An employer is not required to terminate every employee who acts beyond the scope of his employment and in a manner with which the employer disapproves. There are other forms of corrective action that can

---

[1] *See Management Team*, A.D. MAKEPEACE COMPANY, https://admakepeace.com/management-team (last visited June 19, 2020).

[2] Notably, the proposed Amended Complaint does not allege that Mr. McVeigh is Makepeace's "general counsel" or part of its management team. *See generally* Am. Compl. He is not. As the proposed Amended Complaint acknowledges, Mr. McVeigh only "became a member of the Massachusetts Bar in January of 2022[.]" *Id.* at Count 14 ¶ 61. As a relatively junior attorney, Mr. McVeigh handles routine legal and paralegal tasks that do not require involvement by senior lawyers or outside counsel.

be imposed.[3] *See* Restatement (Third) of Agency § 4.01 cmt. d (2006) ("[A] principal's failure to terminate or reprimand an employee by itself is not likely to ratify the employee's unauthorized action because the employer may have varied reasons for failing to take action adverse to an employee.").

While often an issue reserved for summary judgment, Massachusetts courts have dismissed claims invoking *respondeat superior* for similar pleading deficiencies. *See, e.g., Roggio v. City of Gardner*, No. 10-40076-FDS, 2011 WL 1303141, at *5–7 (D. Mass. Mar. 30, 2011) (no facts pled that supermarket employees were employed to make phone calls seeking plaintiff's criminal background); *Borselli v. Shaw's Supermarkets, Inc.*, No. 2372CV00055, 2023 WL 11987658, at *1 (Mass. Super. Ct. Aug 29, 2023) ( "[N]othing in the complaint alleges that Shaw's authorized or directed the conduct [of "up skirting"], [or] that the conduct was in any way that which the employee was employed to perform[.]"); *Pettiford v. Branded Mgmt. Grp., LLC*, No. 2285-00583D, 2023 WL 2233995, at *3-4 (Mass. Super. Ct. Jan. 26, 2023) (no facts pled that cook ignoring a black patron's order, throwing it at him, and using a racial epithet was conduct of the kind cook was hired to perform). In fact, in a recent case before the Business Litigation Session of the Massachusetts Superior Court, Plaintiff's counsel successfully obtained dismissal of a claim based on *respondeat superior*. *See Mactaggart v. President & Fellows of Harvard Coll.*, No. 2384CV01389-BLS2, 2024 WL 556026, at *1 (Mass. Super. Ct. Feb. 12, 2024) (allowing motions to dismiss on all claims). Plaintiff's counsel correctly argued that all three prongs of the *respondeat superior* test must be pled in order to survive a motion to dismiss, and that dismissal

[3] The proposed Amended Complaint does not reference Mr. McVeigh's continued employment as a basis for invoking *respondeat superior*. However, at the hearing on the motions to dismiss, the Court inquired as to whether Mr. McVeigh remained an employee of Makepeace. The question was asked in passing and there was not an opportunity to provide any context to the matter or to explain that other corrective action (short of outright termination) was imposed. Makepeace raises the issue here out of an abundance of caution and for the sake of completeness.

in that case was required for a failure to plead that the conduct at issue was, among other things, the type of work that the employee was employed to perform. *See* Consolidated Mem. in Supp. of Mot. to Dismiss of President and Fellows of Harvard College, Mark F. Cicchetti and Tracy Fay, *Mactaggart*, No. 2384CV01389-BLS2, at 18–20 (attached hereto as **Exhibit A**).

Here, the result should be the same. Because there are no allegations that Mr. McVeigh's alleged defamatory postings were made in connection with the type of work he was employed by Makepeace to perform, the doctrine of *respondeat superior* cannot be applied against Makepeace in this case. Accordingly, the claim for defamation sought to be reasserted against Makepeace in the proposed Amended Complaint will fail as a matter of law, rendering it futile. This aspect of the proposed amendment should not be allowed.

## RELIEF REQUESTED

**WHEREFORE**, Makepeace respectfully requests that this Court deny the Motion to Amend solely with respect to the proposed claim for defamation/libel against Makepeace in Count 17 of the proposed Amended Complaint.

Dated: June 20, 2025
Boston, Massachusetts

Respectfully submitted,

A.D. MAKEPEACE COMPANY

By its attorneys,

*/s/ Geoffrey M. Raux*

Michael R. Pontrelli (BBO # 549194)
Geoffrey M. Raux (BBO # 674788)
Lea Gulotta James (BBO # 705421
Miranda Curtis (BBO # 709084)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Phone: 617-342-4000
Fax: 617-342-4001
mpontrelli@foley.com
graux@foley.com
ljames@foley.com
mcurtis@foley.com

**CERTIFICATE OF SERVICE**

I, Lea Gulotta James, hereby certify that the foregoing was filed on June 20, 2025 through the ECF filing system and will be sent electronically to all counsel of record identified as registered participants on the associated Notice of Electronic Filing.

*/s/ Lea Gulotta James*
Lea Gulotta James