UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF CARVER, MA, TOWN OF PLYMOUTH, MA, ALAN G. GERMAIN, STEPHEN G. GRAY, BETTY CAVACCO, MICHAEL MAIN, A.D. MAKEPEACE COMPANY, JAMES F. KANE, SLT CONSTRUCTION CORPORATION, PETER OPACHINSKI, and MICHAEL MCVEIGH,<br><br>Defendants. | Case No. 1:24-cv-12347-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT MICHAEL MCVEIGH'S MOTION TO**
**PARTIALLY DISMISS COUNTS 17 AND 18 OF THE AMENDED COMPLAINT**

Michael Paris (#556791)
Kileigh E. Stranahan (#707769)
NYSTROM BECKMAN & PARIS, LLP
One Marina Park Drive, 15th Floor
Boston, MA 02110
(617) 778-9100
(617) 778-9110 (fax)
mparis@nbparis.com
kstranahan@nbparis.com

*Attorneys for Defendant Michael McVeigh*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 3

I. Count 17 for Libel Fails to State a Claim for Nineteen of the Alleged Statements ........ 3

II. Count 18 for Intentional Infliction of Emotional Distress Fails to State a Claim Against McVeigh for Nineteen of the Alleged Statements ........ 19

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

***Cases*** ***Page(s)***

*Abbas v. Foreign Pol'y Grp., LLC*,
975 F. Supp. 2d 1 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015) .......................... 10

*Afrasiabi v. United Press Int's*,
561 F. Supp. 3d 1 (D. Mass. 2021) .......................... 14, 15

*Ayyadurai v. Floor64, Inc.*,
270 F. Supp. 3d 343 (D. Mass. 2017) .......................... 11, 12, 13, 18

*Baffert v. DiCorcia*,
2025 WL 669497 (9th Cir. Jan. 23, 2025) .......................... 6

*Baffert v. Wunderler*,
2024 WL 5237441 (S.D. Cal. Aug. 27, 2024) .......................... 6, 11

*Bryan v. Ascend Learning, LLC*,
2024 WL 5170211 (D. Mass. Dec. 19, 2024) .......................... 9

*Cheng v. Neumann*,
51 F.4th 438 (1st Cir. 2022) .......................... 10, 18

*Cole v. Westinghouse Broadcasting Co.*,
386 Mass. 303 (1982) .......................... 6, 10, 11, 15

*Damon v. Moore*,
520 F.3d 98 (1st Cir. 2008) .......................... 9

*Driscoll v. Bd. of Trs. of Milton Acad.*,
70 Mass. App. Ct. 285 (2007) .......................... 17

*Encompass Ins. Co. of MA v. Giampa,*
522 F. Supp. 2d 300 (D. Mass. 2007) .......................... 1

*Farah v. Esquire Mag.*,
736 F.3d 528 (D.C. Cir. 2013) .......................... 14, 15, 16

*Feld v. Conway*,
16 F. Supp. 3d 1 (D. Mass. 2014) .......................... 4, 8

*Ferlauto v. Hamsher*,
74 Cal. App. 4th 1394 (1999) .......................... 19

*Fleming v. Benzaquin*,
390 Mass. 175 (1983) ........ 8

*Gacek v. Owens & Minor Distrib., Inc.*,
666 F.3d 1142 (8th Cir. 2012) ........ 12

*Grant v. Target Corp.*,
126 F. Supp. 3d 183 (D. Mass. 2015) ........ 17

*Gray v. St. Martin's Press, Inc.*,
221 F.3d 243 (1st Cir. 2000) ........ 11

*Hill v. Cosby*,
665 Fed. Appx. 169 (3d Cir. 2016) ........ 18

*Hogan v. Teamsters Loc. 170*,
495 F. Supp. 3d 52 (D. Mass. 2020) ........ 17, 18

*Holsapple v. Cunningham*,
817 F. App'x 95 (6th Cir. 2020) ........ 6, 19

*Kilnapp Enters., Inc. v. Massachusetts State Auto. Dealers Ass'n*,
89 Mass. App. Ct. 212 (2016) ........ 9

*Kimball v. Town of Provincetown*,
158 F. Supp. 3d 7 (D. Mass. 2016) ........ 7, 10, 11

*King v. Globe Newspaper Co.*,
400 Mass. 705 (1987) ........ *passim*

*L. Offs. of David Freydin, P.C. v. Chamara*,
24 F.4th 1122 (7th Cir. 2022) ........ 6, 9, 11

*LaFlash v. Town of Auburn*,
585 F. Supp. 3d 141 (D. Mass. 2022) ........ 4

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*,
127 F.3d 122 (1st Cir. 1997) ........ 7, 8, 13, 19

*Lluberes v. Uncommon Prods., LLC*,
740 F. Supp. 2d 207 (D. Mass. 2010), *vacated in part on other grounds*, 663 F.3d 6 (1st Cir. 2011) ........ 12

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) ........ 9

*McGunigle v. City of Quincy*,
132 F. Supp. 3d 155 (D. Mass. 2015), *aff'd,* 835 F.3d 192 (1st Cir. 2016) ........................ 11

*McKee v. Cosby*,
874 F.3d 54, 61 (1st Cir. 2017)................................................................ 14, 17, 18

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)........................................................................................ 4

*Mullane v. Breaking Media, Inc.*,
433 F. Supp. 3d 102 (D. Mass. 2020), *aff'd*, 2021 WL 3027150 (1st Cir. Feb. 26, 2021) ................................................................................................ *passim*

*Myers v. Bos. Mag. Co.*,
380 Mass. 336 (1980) ............................................................... 4, 10, 13, 15

*Phantom Touring, Inc. v. Affiliated Publications*,
953 F.2d 724 (1st Cir. 1992)....................................................... 5, 8, 14, 16

*Phelan v. May Dep't Stores Co.*,
443 Mass. 52 (2004) .................................................................................... 9

*Piccone v. Bartels*,
785 F.3d 766 (1st Cir. 2015).................................................................. *passim*

*Pritsker v. Brudnoy*,
389 Mass. 776 (1983) ................................................................................ 13

*Rapaport v. Barstool Sports, Inc.*,
2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021), *aff'd,* 2024 WL 88636 (2d Cir. Jan. 9, 2024) ............................................................................................................ 7

*Ravnikar v. Bogojavlensky*,
438 Mass. 627 (2003) .................................................................................. 4

*Riley v. Harr*,
292 F.3d 282 (1st Cir. 2002)................................................................... 5, 18

*Rosa v. Eaton*,
2024 WL 3161853 (S.D.N.Y. June 25, 2024) ............................................... 6

*Salmon v. Lang*,
57 F.4th 296 (1st Cir. 2022)........................................................................ 4

*Scholz v. Delp*,
473 Mass. 242 (2015) ....................................................................... 4, 12, 19

*Seaton v. TripAdvisor LLC*,
728 F.3d 592 (6th Cir. 2013) ........................................................................................ 6

*Shay v. Walters*,
702 F.3d 76 (1st Cir. 2012)...................................................................................... 4, 19

*Tech Plus, Inc. v. Ansel*,
59 Mass. App. Ct. 12 (2003)........................................................................................ 8

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
603 F. Supp. 2d 584 (S.D.N.Y. 2009)....................................................................... 15

*Veilleux v. Nat'l Broad. Co.*,
206 F.3d 92 (1st Cir. 2000).......................................................................................... 8

*White v. Blue Cross & Blue Shield of Massachusetts, Inc.*,
442 Mass. 64, 66 (2004) ............................................................................................ 19

## PRELIMINARY STATEMENT

Plaintiff Margaret Sheehan ("Sheehan") filed suit eleven months ago, alleging the towns of Carver and Plymouth, various town committee members, and two local companies, A.D. Makepeace ("Makepeace") and SLT Construction ("SLT), conspired to silence her advocacy against sand mining in Southeastern Massachusetts, defamed her, and caused her emotional distress. Sheehan alleged that certain defendants defamed her on an anonymous Facebook page: "Meg Costs Us Millions" ("MMP"). Shehan has now amended her Complaint to assert claims against Michael McVeigh ("McVeigh"), who she alleges administered MMP.

Although a newcomer to this suit, McVeigh reviewed the Court's Memorandum and Order ("Order"), *see* ECF 94, on the other Defendants' motions to dismiss. He does not seek to relitigate the arguments addressed by this Court. Instead, McVeigh seeks dismissal of the defamation (Count 17) and intentional infliction of emotional distress ("IIED") (Count 18) claims to the extent they are predicated on statements that the Court did not address and that are not actionable under well-established First Amendment principles. Having parsed each alleged statement, *see* Appendix, McVeigh sets forth why nineteen (19) of those statements cannot give rise to liability for defamation or IIED. *See* ECF 94 n.26 (dismissing Count 10 to extent predicated on slander); *Encompass Ins. Co. of MA v. Giampa*, 522 F. Supp. 2d 300, 317 (D. Mass. 2007) (dismissing nonactionable statements from defamation claims). Counts 17 and 18—to the extent predicated on these statements—should be dismissed, thereby narrowing the claims against McVeigh and limiting unnecessary discovery and future briefing.

## FACTUAL BACKGROUND

Sheehan is an environmental litigator and advocate who has dedicated her late professional career to opposing sand mining in Southeastern Massachusetts. *Amended Complaint* ("*Compl.*") p.1, ¶¶ 15, 66. Sheehan has galvanized others to join her disruption efforts and has formed organizations

to challenge companies she perceives as antagonistic to her mission. *Id.* ¶¶ 36-42, 49, 50, 72, 104. Her vocal opposition to sand mining in Southeastern Massachusetts has ignited what has been dubbed the "Sand Wars" between Sheehan and those who support the development projects requiring sand mining and excavation. *Id.* ¶ 103.

In January 2023, McVeigh joined this public debate via MMP. *Id.* ¶ 19. McVeigh is a resident of Southeastern Massachusetts and Defendant Makepeace's in-house counsel. *Id.* ¶ 12. McVeigh launched MMP four days after a hearing before the Plymouth Zoning Board of Appeals ("ZBA") during which Sheehan appealed the denial of her enforcement request against a sand mining operation. *Id.* ¶ 58. At the hearing, Sheehan and the Chair of the Plymouth ZBA, Michael Main, engaged in a heated exchange, at which Main "proclaimed:"

> I've been here for 18 years, and I have seen five of these from you and they have all been denied . . . all still cost this Town a ton of money. *And now we're talking about millions and millions of dollars on your frivolous lawsuits*. I've had it. This one's not going any further. *Id.* ¶ 52.

That hearing was one of many where Sheehan challenged sand mining operations in the area. *Id.* ¶¶ 37, 42, 50. As of January 2023, Sheehan had spent years contesting sand mining projects before various town boards in Southeastern Massachusetts. *Id.* ¶¶ 37, 52.

Created in the wake of this year's long campaign by Sheehan, MMP was a forum for McVeigh and others to share their thoughts on the subject. *Id.* ¶¶ 19, 63, 91-92. MMP was one of several Facebook groups where locals discussed and debated Sheehan and her opposition efforts. Other pages included the "All Things Plymouth" page, the "Plymouth Rant" page, the "Fair and Open Government for Carver" page, and Sheehan's own "Save the Pine Barrens" ("STPB") page. *Id.* ¶ 28, 97, 102, 106. McVeigh, as MMP's administrator, shared posts criticizing Sheehan and her advocacy against sand mining. *Id.* ¶¶ 58-117. Other Defendants, including SLT's President Peter Opachinski ("Opachinski") and Alan Germain ("Germain") commented on MMP, as did Sheehan's supporters. *Id.* ¶¶ 63, 91-92. Sheehan herself participated in the online debate, including posting on

STPB, where she called sand mining proponents "thugs." *Id.* ¶ 102.

Nevertheless, Sheehan filed suit. The Defendants moved to dismiss the initial Complaint, but only Opachinski argued that his statements on MMP constituted nonactionable opinions under the First Amendment. This Court dismissed numerous counts but declined to dismiss the defamation claim against Opachinski because he: (1) did not disclose the facts underlying his opinions, and (2) failed to parse each allegedly defamatory statement and identify for the Court which of his statements constituted protected opinion. *See* ECF 94 at 64-65, n.23 & n.24. This Court dismissed the defamation claim against Opachinski to the extent it alleged slander because the Complaint failed to give Opachinski sufficient notice. *See id.* at 68 n.26.

Following the Court's Order, Sheehan amended her Complaint to add McVeigh as a defendant, alleging, *inter alia*, defamation and IIED. As outlined in the Appendix, Sheehan alleges McVeigh made twenty-nine (29) statements that purportedly give rise to claims against him. Nineteen (19) of these statements are nonactionable. To streamline discovery, narrow the issues before the Court, and prevent a further "damper on freedom of expression," Counts 17 and 18 should be dismissed as to these nineteen (19) statements. *See Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 110 (D. Mass. 2020), *aff'd,* No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021) ("summary disposition of defamation claims is especially favored . . . because meritless cases put an unjustified and serious damper on freedom of expression").[1]

## <u>ARGUMENT</u>

### I. Count 17 for Libel Fails to State a Claim for Nineteen of the Alleged Statements

Under Massachusetts law, a plaintiff asserting a libel claim must establish:

> "(1) that '[t]he defendant made a [written] statement, concerning the plaintiff, to a third party'; (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community'; (3) that '[t]he defendant was at fault in making the statement'; and (4) that

[1] Unless otherwise indicated, internal citations and quotation marks have been omitted.

> '[t]he statement either caused the plaintiff economic loss ... or is actionable without proof of economic loss.'"

*Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (quoting *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-630 (2003)). Further, the statement must be false. *See Ravnikar*, 438 Mass. at 629 n.3.

Importantly, the First Amendment "limits 'the *type* of speech which may be the subject of state defamation actions.'" *Mullane*, 433 F. Supp. 3d at 111 (quoting *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015)). For a statement to be actionable, "the statement must be one of fact rather than of opinion." *Salmon v. Lang*, 57 F.4th 296, 320 (1st Cir. 2022) (quoting *Scholz v. Delp*, 473 Mass. 242, 249 (2015)). Accordingly, a "statement cannot be defamatory if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Piccone,* 785 F.3d at 771. "This provides assurance that public debate will not suffer for lack of imaginative expression or rhetorical hyperbole." *Milkovich v. Lorain J. Co*., 497 U.S. 1, 20 (1990).

As this Court noted in its Order, an expression of an opinion may give rise to liability in circumstances where the statement "implies the existence of underlying false and defamatory facts." ECF 94, pp. 62-63. But "[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is." *Myers v. Bos. Mag. Co.*, 380 Mass. 336, 339 (1980). To determine whether a statement expresses a fact (and is actionable) or opinion (and is not), "a court must examine the statement in its totality in the context in which it was uttered or published, and must consider all the words used." *LaFlash v. Town of Auburn*, 585 F. Supp. 3d 141, 148 (D. Mass. 2022). A statement made as part of a public discussion "cannot be read in isolation, but in the context of the entire discussion." *Feld v. Conway*, 16 F. Supp. 3d 1, 4 (D. Mass. 2014). Here, nineteen (19) of the alleged twenty-nine statements are unambiguously nonactionable.

**<u>Statement 2</u>: MMP post on YouTube of a video captioned "Meg gets scolded at the 1/4/2023 ZBA meeting . . .". *Compl.* ¶ 59.**

McVeigh's subjective interpretation that Sheehan got "scolded" during the ZBA meeting is nonactionable. *See Riley v. Harr*, 292 F.3d 282, 292 (1st Cir. 2002) (attorney's assessment of another's testimony protected as "a subjective view, an interpretation, a theory, conjecture, or surmise"). By posting the video of the ZBA meeting, McVeigh not only provided the "full factual basis" for his statement (*i.e.*, the YouTube video of the hearing), *see Mullane*, 433 F. Supp. 3d at 113, but also "information from which readers might draw contrary conclusions." *Riley*, 292 F.3d at 292 (quoting *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 730 (1st Cir. 1992)). As such, this post "at most amounts to a personal conclusion[ ] about the information presented" and "cannot reasonably be interpreted to suggest that [McVeigh] had access to information . . . that was not accessible to others." *Mullane*, 433 F. Supp. 3d at 113.

**<u>Statement 3</u>: MMP's profile picture "showing a thermometer-style gauge with the 'mercury' approaching the $2.5 million level, entitled 'The Meg Sheehan Wasted Taxpayer Money Chart,'" and a "partially obscured picture behind it of Sheehan with hundred-dollar bills fanning out in each hand." *Compl.* ¶ 60.**

The "totality [of] the context" makes clear that MMP's alleged profile picture is not actionable. Whether a reasonable viewer would think an image is a factual assertion or the creator's opinion depends on the "sum effect of the format, tone and entire content." *Phantom Touring, Inc*, 953 F.2d at 729. Even where a statement or image appears false when "[c]onstrued literally," it cannot support a defamation claim if, in context, a "literal construction . . . would [be] unreasonable." *King v. Globe Newspaper Co.*, 400 Mass. 705, 714 (1987) (fictitious press release not defamatory because literal interpretation unreasonable). Indeed, "hyperbole, exaggeration, and caricature" are not defamatory; reasonable viewers understand such statements express the creator's opinion. *Id.* at 710.

MMP's Facebook profile picture is not an actionable statement of fact. Importantly, the "setting" in which this "statement" was published—a Facebook profile picture—suggests that it is McVeigh's opinion. *See Cole v. Westinghouse Broadcasting Co*., 386 Mass. 303, 310 (1982); *Rosa v. Eaton,* 2024 WL 3161853, at *4 (S.D.N.Y. June 25, 2024) ("Online fora, such as [Facebook], are informal, unedited, and typically regarded as fora for stating opinions."). Sheehan alleges the profile picture was false because "the cost to Plymouth relating to lawsuits and municipal matters on behalf of [Sheehan's] clients was a small fraction of the indicated amount," *Compl.* ¶ 60, but the actual text does not purport to represent facts about municipal spending. *Cf. Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598-99 (6th Cir. 2013) (given absence of objective criteria and "loose, hyperbolic" language, resort's #1 ranking on "Dirtiest Hotels" list not actionable). Rather, the actual text of the thermometer image states: "The Meg Sheehan Wasted Taxpayer Money Chart." *Compl.* ¶ 60. Whether taxpayer money was "wasted" is a subjective opinion. *See*, *e.g.*, *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1130 (7th Cir. 2022) (affirming dismissal based on "don't waste your money" because "there are numerous reasons why someone may . . . suggest that a product or service would be a 'waste of money.' . . . What objective indicator defines . . . whether a service or good was worth the money?"); *Holsapple v. Cunningham*, 817 F. App'x 95, 110 (6th Cir. 2020) ("characterizations of the lawsuits as 'unsubstantiated' and a 'waste of taxpayer money,' can neither be measured objectively nor definitively resolved").

The thermometer's backdrop—a clearly photoshopped image of Sheehan holding fanned out "hundred-dollar bills"—reinforces the profile picture's hyperbolic and satirical tone. Federal courts have consistently rejected defamation claims based on social media statements that accompany obviously photoshopped images with a hyperbolic tone. *See*, *e.g*., *Baffert v. Wunderler*, 2024 WL 5237441, at *5 (S.D. Cal. Aug. 27, 2024), *appeal dismissed sub nom. Baffert v. DiCorcia*, 2025 WL 669497 (9th Cir. Jan. 23, 2025) (dismissing "vague and subjective" X posts and "a crudely

photoshopped, mock image of a CNN broadcast"); *Rapaport v. Barstool Sports, Inc.*, 2021 WL 1178240, at *16 (S.D.N.Y. Mar. 29, 2021), *aff'd,* 2024 WL 88636 (2d Cir. Jan. 9, 2024) ("obviously doctored" photoshopped images of plaintiff having herpes were "opinionated viewpoints"). In context, a reasonable viewer would understand the profile picture to be an expression of the creator's opinion.

**Statement 4: MMP post of a "clown photo of Sheehan, with the caption "we're excited to announce a partnership with the Twitter/X account 'Exposing Meg Sheehan.'" *Compl.* ¶ 61.**

Sheehan does not allege that this post was false, which is fatal to her claim. *See Kimball v. Town of Provincetown*, 158 F. Supp. 3d 7, 16 (D. Mass. 2016) ("Plaintiffs do not allege that this statement was false, thus it cannot be defamation"). Moreover, aside from informing the reader that MMP launched a "partnership" with the Twitter/X account—which was true—this statement cannot reasonably be interpreted as an objectively verifiable fact. *See Piccone*, 785 F.3d at 771 ("the relevant question is . . . whether it reasonably would be understood to declare or imply provable assertions of fact"). A reasonable viewer would not interpret this "clown photo" as a statement that Sheehan was, literally, a clown. As the First Circuit has observed:

> The First Amendment's shielding of figurative language reflects the reality that exaggeration and non-literal commentary have become an integral part of social discourse. For better or worse, our society has long since passed the stage at which the use of the word 'bastard' would occasion an investigation into the target's lineage or the cry 'you pig' would prompt a probe for a porcine pedigree. Hyperbole is very much the coin of the modern realm.

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997). The "clown photo" is a clear use of hyperbole and figurative expression. *Compare Rapaport,* 2021 WL 1178240, at *16 (photoshopped photograph of plaintiff as a clown nonactionable defamation).

**<u>Statement 6</u>: "Meg Sheehan is what happens when you have too much unearned money, unchecked narcissism and a desperate thirst for relevance. She truly is an unaccomplished bozo. -Myles Standish."** ***Compl.*** **¶¶ 65-66. Appendix ¶ 6 (screenshot).**

"'[R]idicule and simple verbal abuse' do not give rise to liability for defamation." *Mullane*, 433 F. Supp. 3d at 112 (quoting *Fleming v. Benzaquin*, 390 Mass. 175, 181 (1983)). Courts routinely dispose of libel claims based on "mere epithets," such as calling a plaintiff "rude," "dumb" "unethical," or "entitled." *Id.* at 107-108, 112 (dismissing claim based on statements plaintiff was "rude," "an idiot," "a little brat," "unethical," a "little entitled ponce," and a "dauphin"). *See also Levinsky's*, 127 F.3d at 129-30 ("trashy"); *Phantom Touring, Inc.*, 953 F.2d at 728 ("a rip-off, a fraud, a scandal, a snake-oil job"); *Tech Plus, Inc. v. Ansel*, 59 Mass. App. Ct. 12, 25 (2003) ("sick," "mentally ill," "lived with two hundred cats").

Statement 6 contains no more than "mere epithets." *Mullane*, 433 F. Supp. 3d at 112. Whether someone has "too much unearned money," "a desperate thirst for relevance," or is "unaccomplished" is not objectively verifiable. *See Piccone*, 785 F.3d at 773 ("unprofessional" not actionable). Similarly, "unchecked narcissism" "cannot be read literally without regard to the way in which a reasonable person would interpret it." *Feld*, 16 F. Supp. 3d at 4 (dismissing claim based on statement that plaintiff was "fucking crazy"). Finally, the attribution to Myles Standish—a long-dead British Military officer—was plainly for dramatic and satirical effect. *See Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 115 (1st Cir. 2000) ("an opinion is protected hyperbole [if] a reasonable person would not interpret it as providing actual facts").

**<u>Statement 7</u>: Sheehan "the hypocrite."** ***Compl.*** **¶¶ 67-69, 81-82, 87.**

Sheehan alleges that McVeigh referred to her as a "hypocrite," which became a "central theme" on MMP. *Id.* She alleges that this "hypocrisy theme" falsely suggested she had the ability to control her family company, L. Knife & Son ("L. Knife"), an Anheuser-Busch wholesale distributor in Kingston, MA, which was "founded by her great grandfather and still run by her father." *Compl.*

¶¶ 67-69, 81-82. However, merely alleging a "theme," without setting forth the specific statements that fostered it, does not give McVeigh "fair notice of the statements at issue." *Bryan v. Ascend Learning, LLC*, 2024 WL 5170211, at *9 (D. Mass. Dec. 19, 2024). And simply calling Sheehan a hypocrite is a nonactionable opinion. *See Mullane*, 433 F. Supp. 3d at 112; *L. Offs. of David Freydin, P.C.*, 24 F.4th at 1131 ("hypocrite" nonactionable).

Further, calling Sheehan a hypocrite does not imply she could *control* L. Knife;[2] a reasonable interpretation is that Sheehan owned or received financial benefits from L. Knife. *See King*, 400 Mass. at 711-12 ("Statements alleged to be libelous must be interpreted reasonably."). These facts were substantially true.[3] *Compl.* ¶ 68. Sheehan had a small ownership interest in L. Knife, served as an advisory director, and received an annual stipend from her father, L. Knife's sole voting stockholder. *Id.* Sheehan's allegation that the "hypocrisy theme" could only be interpreted as suggesting she ***controlled*** the company is "unreasonably strained." *King*, 400 Mass. at 711. "Forced or strained construction of the statement will not suffice to state a claim for defamation." *Damon v. Moore*, 520 F.3d 98, 105 (1st Cir. 2008).

And even if calling Sheehan a "hypocrite" somehow implied control (as opposed to ownership), that is not defamatory. L. Knife is "a well-respected 120-year-old local business" "that had displayed altruism toward its community." *Compl.* ¶¶ 67-68. Implying Sheehan controlled the company would not "tend to hold [her] up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." *Phelan v. May Dep't Stores Co.*, 443 Mass. 52, 56 (2004). Lastly, unlike Opachinski's hypocrisy statements, McVeigh ***specifically shared a link to a public complaint "which laid out the control and structure" of L. Knife***. *Compl.*

[2] Sheehan does not allege McVeigh ever stated she had the ability to control L. Knife.
[3] "To be actionable a statement must be materially false." *Kilnapp Enters., Inc. v. Massachusetts State Auto. Dealers Ass'n*, 89 Mass. App. Ct. 212, 219 (2016). "The question of falsity 'overlooks minor inaccuracies and concentrates upon substantial truth.'" *Id.* (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–517 (1991)).

¶¶ 67-68 (emphasis added). This allowed MMP's audience to vet Sheehan's interest in the company and assess the basis for McVeigh's opinion that she was a hypocrite. *See Cheng v. Neumann*, 51 F.4th 438, 447 (1st Cir. 2022) (statement inactionable where it "provides a link to the source material . . . [and] enables readers to draw their own conclusions").

**Statement 8: "Did the town of Kingston account for all the earth removed from Meg Sheehan's company headquarters during their expansions? Where are the truck counts? How was all this work approved so close to the Jones River? Did Meg and L. Knife and Son follow all local, state and federal laws? Where are the wetland reports?" *Compl.* ¶ 68. Appendix ¶ 8 (screenshot).**

Here, McVeigh plainly expresses "theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Cheng*, 51 F.4th at 444. *See Mullane*, 433 F. Supp. 3d at 113 (article "simply posed [a] question[ ] and suggested [an] answer[ ], as a matter of opinion"); *Abbas v. Foreign Pol'y Grp., LLC*, 975 F. Supp. 2d 1, 16 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015) ("[rhetorical] questions" inviting "reader to form her own judgment" not actionable). And, as explained, the reference to "Meg Sheehan's company" is not defamatory or materially false; Sheehan partially owned L. Knife. *Compl.* ¶ 68.

**Statement 10: MMP post of "Meg loses, again!!!" sign. *Compl.* ¶ 79. Appendix ¶ 10 (screenshot).**

Sheehan does not allege the statement on the sign was false (*i.e.*, that she did not "lose again"). That is dispositive. *See Kimball*, 158 F. Supp. 3d at 16. Further, the statement's presentation—with three exclamation points and surrounded by cartoon images of hauling trucks and a tree—clearly indicates it is an expression of MMP's opinion. *See Myers*, 380 Mass. at 337, 342-44 (statement that "passe[d] for factual proposition" nonactionable opinion when considered alongside "adjoining cartoon[s]"). MMP's audience was sufficiently familiar with Sheehan's opposition to sand mining and MMP's view of Sheehan. *See Cole*, 386 Mass. at 309 (court must consider audience to which statement is published). They were aware that what McVeigh considered to be a "loss" for Sheehan, others may not. Indeed, "what is 'success' in a situation like

this one is very much a matter of opinion." *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 249 (1st Cir. 2000) (statement that company "failed" nonactionable opinion).

**<u>Statement 11</u>: "Rebecca Newhouse" comment stating: "I've watched this witch waste Carver's money time and resources for years. Glad she's facing the music finally." *Compl.* ¶ 79.**

This statement is a nonactionable expression of the author's personal observations and subjective feelings toward Sheehan. *Compare McGunigle v. City of Quincy*, 132 F. Supp. 3d 155, 179-80 (D. Mass. 2015), *aff'd,* 835 F.3d 192 (1st Cir. 2016) ("statement is merely a commentary about how unusual [defendant] perceived the situation to be, and is not susceptible to a defamatory meaning"). Newhouse's statement that she had "watched this witch waste Carver's money time and resources" is not objectively verifiable. *See*, *e.g.*, *L. Offs. of David Freydin, P.C.*, 24 F.4th at 1130 (affirming dismissal based on "don't waste your money" because "there are numerous reasons why someone may . . . suggest that a product or service would be a 'waste of money.'"). And "glad she's facing the music" was "obviously used . . . in a loose, figurative sense to demonstrate" Newhouse's personal opinion. *Cole*, 386 Mass. at 309. *Compare Baffert*, 2024 WL 5237441, at *5 ("vague and subjective" statements claiming video of plaintiff is "incriminating" and "will be the end" of him nonactionable).

**<u>Statement 13</u>: "Just a reminder to Wareham residents to be watchful for Meg Sheehan and her supporters tonight. They do not live in Wareham and their intent is to disrupt your town meeting. Meg recently tried (unsuccessfully) to influence Carver's town meeting. She and the members of her various groups . . . will likely try and cause trouble. Ultimately the only thing they'll accomplish will be increased legal costs borne by the town and the taxpayer." *Compl.* ¶ 83. Appendix ¶ 13 (screenshot).**

Sheehan does not allege that the statement is false, which is dispositive. *See Kimball*, 158 F. Supp. 3d at 16. Moreover, "statements concerning a person's motivation or intent are not actionable because they are incapable of being proved true or false." *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 365 (D. Mass. 2017) (statement plaintiff "deliberately misrepresenting" report nonactionable). McVeigh was entitled to speculate about Sheehan and her supporters' intent. *See*

*Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1147–48 (8th Cir. 2012) ("anyone is entitled to speculate on a person's motives from the known facts of his behavior"); *Scholz*, 473 Mass. at 251 (statement that "could not have been understood by a reasonable reader to [be] anything but opinions regarding the reason [person] committed suicide" nonactionable speculation). Lastly, McVeigh's comments about what Sheehan and her supporters would "accomplish" at a future town meeting is unknowable and pure "conjecture." *See Piccone*, 785 F.3d at 771; *Lluberes v. Uncommon Prods., LLC*, 740 F. Supp. 2d 207, 226 (D. Mass. 2010), *vacated in part on other grounds*, 663 F.3d 6 (1st Cir. 2011) ("conjecture about a future event . . . cannot be proved to be true or false").

**Statement 15: MMP post "about the dismissal of a lawsuit on standing grounds," which "include[d] nasty slights against Sheehan, referring to her as an 'attention seeking hag' and a '[b]ogus activist,' engaged in 'a pathetic attempt to validate her unremarkable life.'" *Compl.* ¶ 86.**

Sheehan acknowledges that the alleged lawsuit was dismissed, rendering that portion of the statement true and, thus, not defamatory. *See Compl.* ¶ 86 ("McVeigh posted information anonymously on MMP about the dismissal of a lawsuit on standing grounds, a not infrequent occurrence within the labyrinth of administrative law . . ."). Further, the allegedly "nasty slights" made about Sheehan are "mere epithets" and are not objectively verifiable. *Mullane*, 433 F. Supp. 3d at 112. *See Ayyadurai,* 270 F. Supp. 3d at 362 ("colorful and figurative language" such as "bogus" makes clear articles "are not making any fact-based accusation").

**Statement 16: "Meg 'beer cashier' Sheehan" and "Meg the 'Natural Disaster' Sheehan." *Compl.* ¶ 87.**

McVeigh's references to Sheehan as "beer cashier" and "Natural Disaster" are figurative expressions, which no reasonable reader would believe presented actual facts (*i.e.,* that Sheehan was indeed a "beer cashier" or a "Natural Disaster"). "[T]he First Amendment prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented

facts." *Levinsky's, Inc.*, 127 F.3d at 128. To the extent the term "beer cashier" implied Sheehan's connection to L. Knife, McVeigh disclosed the structure and control of the company on MMP. *See King*, 400 Mass. at 713 (contested cartoon was based on facts disclosed in a previously published article). And as explained, implying that Sheehan was connected to or owned L. Knife was not materially false or defamatory. If Sheehan alleges calling her a "Natural Disaster" implied some facts, "it is unclear what they are" and "it is entirely unclear . . . that they are defamatory." *Pritsker v. Brudnoy*, 389 Mass. 776, 782 (1983).

**Statement 17: Photoshopped pictures showing Sheehan "about to take a swig from a bottle of Budweiser," and "Sheehan's head imposed on a man's body pushing a dolly transporting crates of beer."** ***Compl.*** **¶ 88.**

Through the use of "artistic rhetorical hyperbole," these photoshopped pictures were clearly designed to emphasize McVeigh's view that Sheehan was a "hypocrite" because of her connection to L. Knife. *See King*, 400 Mass. at 711 (cartoon suggesting plaintiff was responsible for ill-advised government appointment was nonactionable opinion). Again, the basis for McVeigh's opinion regarding Sheehan and L. Knife was fully disclosed. *See supra* p. 9-10. *See also King*, 400 Mass. at 713 (contested cartoon was based on facts disclosed in a previously published article). Although the photoshopped images may offend Sheehan, they neither suggested, nor implied, false facts. *See Myers*, 380 Mass. at 344 ("To sharpen the bite of his rapier, a critic may resort to caricature or rhetorical license. So long as he excludes false statements of fact from his arsenal, the Constitution will shield him").

**Statement 19: "Anyone who has a problem with these posts or our page simply has not been paying attention. Watch Meg's appearances at town boards. They're on youtube, Go read her twitter page. It's filled with insane and unsubstantiated attacks on good businesses. SHE'S TRYING TO PUT GOOD PEOLPE [sic] OUT OF BUSINESS. Wake the f up. She is beneath civility."** ***Compl.*** **¶ 91. Appendix ¶ 19 (screenshot).**

McVeigh's statement regarding what Sheehan was "trying" to do goes directly to Sheehan's intent, and therefore, is protected speculation. *Ayyadurai,* 270 F. Supp. 3d at 365. Further, this

statement was "based on facts accessible to everyone." *Phantom Touring, Inc*, 953 F.2d at 730. McVeigh made clear his statement was based on Sheehan's public appearances on YouTube and her Twitter page, both of which McVeigh encouraged his audience to view. It could not "reasonably be interpreted to suggest that the author had access to information . . . not accessible to others." *Mullane*, 433 F. Supp. 3d at 112. *Contrast Milkovich*, 497 U.S. at 5 n.2, 21-22 (allowing suit where author claimed to be in "unique position" to verify defamatory allegations). In the same vein, McVeigh's opinion that Sheehan's Twitter page was "filled with insane and unsubstantiated attacks" was based on disclosed, public information. *See McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) ("when the speaker outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected").

**Statement 20: MMP post of a "fake newspaper meme." *Compl.* ¶¶ 93-94. Appendix ¶ 20 (screenshot).**

Viewed in context, this "fake newspaper meme" is not actionable. *Afrasiabi v. United Press Int's*, 561 F. Supp. 3d 1, 6 (D. Mass. 2021). The Court must consider the satirical nature of this newspaper meme. *Farah v. Esquire Mag*., 736 F.3d 528, 536 (D.C. Cir. 2013) ("Despite its literal falsity, satirical speech enjoys First Amendment protection.").

Two cases are analogous. First, in *King,* the Supreme Judicial Court concluded that a "fictitious press release" was nonactionable satire. 400 Mass. 705, 714–15. Though the fake press release included potentially defamatory attributions, the Court concluded its "numerous obvious attempts at humor, which one would not expect to find in an authentic press release" made it reasonably clear it was satire. *Id.* Second, in *Farah*, the D.C. Circuit Court of Appeals dismissed a defamation claim based on a fake news article about the plaintiff. 736 F.3d at 537-39. The article falsely claimed the plaintiff had announced plans to recall a book about Barack Obama's eligibility for President and included fake quotes. *Id*. Nevertheless, the D.C. Circuit concluded a reasonable

viewer would not consider it "real news" because: (1) reasonable viewers would have recognized its satirical nature; (2) the article included "[a] number of humorous or outlandish details"; and (3) "[s]tylistic elements, such as the exclamatory headline . . . also would indicate to the reasonable reader that the story was not serious news." *Id.* at 537-39.

The same result is required here. First, MMP's audience was local to Southeastern Massachusetts and was sufficiently familiar with MMP, the tone and tenor of its posts, and MMP's strongly held opinion of Sheehan. *See Cole*, 386 Mass. at 310 (specific audience and whether they "may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole" relevant to whether statement is opinion). "With that baseline of knowledge, reasonable readers of [MMP] would recognize the prominent indicia of satire" of this "fake newspaper meme." *Farah*, 736 F.3d at 537. Further, the stylistic elements, outlandish details, and exaggerated tone of the "fake newspaper meme" "betray its satirical nature." *Id.* at 538. The reader's eye is immediately drawn to the bold title: "**NEWS**"—which, despite its facetious claim of existence "since 1875," is clearly not a recognized newspaper. Immediately thereunder, the newspaper claims to report the "**MOST IMPORTANT**" news in the world just before the headline referencing a local town issue: Sheehan "**los[ing] again**." The juxtaposition of these two bold titles further highlights the newspaper meme's ironic and exaggerated tone. *See Myers*, 390 Mass. at 342 (magazine page with "best" and "worst" titles "suggest[ed] that the expressed opinions will have an especially humorous inclination and fanciful tone").

A reasonable reader would not view the headline "Meg Loses Again" as a statement of fact isolated from the rest of the article. This Court has reiterated that headlines have latitude to grab the reader's attention and must be considered in the context of the words that follow. *See Afrasiabi*, 561 F. Supp. 3d at 6 (quoting *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009) ("A newspaper . . . is permitted some drama in grabbing its reader's

attention, so long as the headline remains a fair index of what is accurately reported below."). In the paragraph following the headline, the article explains why Sheehan "lost": her candidate for select board lost the election and a new town charter did not pass.[4]

Removing any doubt of its satirical nature, the newspaper includes clearly fake quotes from a ***national*** political pundit stating he had never seen anyone as "unsuccessful" as Sheehan, and that Sheehan has "the reverse Midas touch"—an obvious device of exaggeration and hyperbole. *See Farah*, 736 F.3d at 538 ("quotes that are highly unorthodox for a real news story" reveal satirical nature); *King*, 400 Mass. 715 ("obvious tongue-in-cheek" statements clearly satire). Other outlandish details included a statement that there was a "tight race" for the presidential election between "John Doe and John Smith," and that "[t]wo Russian farmers catched [sic] an extraterrestrial humanoid with a fishing net." *See Farah*, 736 F.3d at 538. A reasonable reader could not understand this "newspaper meme" as "real news." *See id.* at 539.

**Statement 21: MMP post of "an adaptation of the title and book cover . . . 'Meg Sheehan and the Terrible, Horrible, No Good, Very Bad Week,'" with "photo-shopped picture of Sheehan metamorphosed into a scowling witch-like face," listing "two court or administrative matters that actually related to Sheehan," a "defeat of a new town charter, the election loss of a Select Board Candidate, and a U.S. Supreme Court decision curtailing the Environmental Protections Agency's powers."** ***Compl.*** **¶ 94.**

Sheehan does not allege that this book adaptation was false and defamatory. Nor could it be construed as such. The "sum effect of the format, tone and entire content" makes "unmistakably clear" it was a parody of a children's book created to express McVeigh's viewpoint. *Phantom Touring, Inc*, 953 F.2d at 729. McVeigh's view that Sheehan had a "very bad week" is a personal conclusion based on disclosed facts. McVeigh listed the "terrible events" he was referencing. *See Compl.* ¶ 94 ("two court or administrative matters that actually related to Sheehan," a "defeat of a new town charter, the election loss of a Select Board Candidate, and a U.S. Supreme Court decision

[4] Notably, Sheehan does not allege that these statements are false. *See Compl.* ¶ 93.

curtailing the Environmental Protections Agency's powers"). **Sheehan does not contest the truth of these facts.** Accordingly, McVeigh's statements are shielded from liability. *See Piccone*, 785 F.3d at 774 ("full disclosure of the non-defamatory facts in his possession invited [reader] to extrapolate his own independent impressions"); *McKee*, 874 F.3d at 63 ("Whether we deem these underlying facts to be probative is immaterial, so long as the facts presented for the readers' consideration are not both false and defamatory").

**Statement 24: MMP "attacked" Sheehan "when a Sheehan family entity donated land for preservation, *i.e.*, the donation of a Kingston parcel to the Native Land Conservancy, Inc." because "McVeigh was aggrieved that the family had not donated a different parcel to the Town of Plymouth instead." *Compl.* ¶ 100.**

This statement fails to allege what McVeigh said, when the statement was made, or why it was false or defamatory against Sheehan. It does not provide adequate facts to give McVeigh "fair notice" of the allegedly defamatory statement. *See Hogan v. Teamsters Loc. 170,* 495 F. Supp. 3d 52, 61-62 (D. Mass. 2020) (allegation must "explain the essential who, what, when, and where. . ."). "Nor do these vague allegations 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Grant v. Target Corp.*, 126 F. Supp. 3d 183, 193 (D. Mass. 2015).

**Statement 27: "Meg's Bingo Card" with an allegedly "unflattering photo of Sheehan" and squares such as "squawks about dust," "Meg says 'you have a duty," 'Meg's few supporters look like an unmade bed, '" and "[o]ther[] . . . falsehoods that have no place in matters pertaining to environmental justice communities." *Compl.* ¶ 108.**

Statements ridiculing Sheehan, her speech, or her supporters' appearances are not actionable. *See Mullane*, 433 F. Supp. 3d at 112 ("[R]idicule and simple verbal abuse do not give rise to liability for defamation"). Accordingly, Sheehan cannot recover for the "unflattering" photograph of her or the squares mocking her statements at public hearings.[5] Further, the

[5] Statements about Sheehan's supporters do not "concern" Sheehan and are also not actionable on that basis. *See Driscoll v. Bd. of Trs. of Milton Acad.*, 70 Mass. App. Ct. 285, 298 (2007).

conclusory statement that other bingo squares include "falsehoods," without more, does not provide McVeigh "fair notice" of the allegedly defamatory statements. *Hogan,* 495 F. Supp. 3d at 61-62. Nor is such a conclusory allegation sufficient to state a plausible claim. *See id*. ("Merely alleging that Defendant . . . made defamatory statements. . . [does not] contain sufficient factual matter, accepted as true, to state a claim").

**Statement 28: MMP post where "McVeigh purported to recap events . . . surrounding an incident in which Sheehan voluntarily disclosed to the Court that her engineering expert's license had been temporarily suspended due to a failure to file mandatory forms or paperwork. . . . McVeigh (still anonymously) accused Sheehan of 'lying,' not bothering to include in his purported 'recap,' Sheehan's side of the facts." McVeigh added that if readers "agree" Sheehan was lying, "make a complaint to the Massachusetts Board of Bar Overseers and show them this video."** ***Compl.*** **¶ 109. Appendix ¶ 28 (screenshot).**

***First,*** McVeigh's opinion that Sheehan was "lying" disclosed the salient facts on which it was based. *Riley*, 292 F.3d at 294 (Defendant "entitled to report . . . opinion that Riley had given false testimony, having disclosed the facts upon which the opinion was based"); *Ayyadurai*, 270 F. Supp. 3d at 349, 358-62, Appendix A (articles calling plaintiff "liar" not actionable where "articles disclose[d] the non-defamatory facts on which they rely"). ***Second,*** Sheehan does not allege McVeigh's "recap" was false; just that McVeigh did not "bother[] to include . . . [her] side of the facts," including her subjective claim "[s]he was unaware" of the expert's suspension "when she retained him." *Compl.* ¶ 109. There is no requirement that a defendant provide a "balanced two-sided story," so long as he discloses the non-defamatory facts underlying his opinion. *See McKee*, 874 F.3d at 63-64 (quoting *Hill v. Cosby*, 665 Fed. Appx. 169, 175 (3d Cir. 2016) ("[E]ven if Singer's Statement does imply Ms. Hill is a liar, it is still not actionable because it includes the facts supporting that implication.")). McVeigh did so, and accordingly, the First Amendment shields his statements. ***Finally,*** McVeigh's BBO comment merely reflects his own opinion of Sheehan's conduct based on disclosed information. McVeigh presented the information necessary for his audience to form their own opinions. *See Cheng*, 51 F.4th at 447.

**<u>Statement 29</u>: Email from "Tim Westover," sent to the Chairman of the Carver ZBA Stephen Gray, stating "[t]his woman has no shame as she forces our town to spend huge sums of legal bills defending against her garbage. When will this stop?" *Compl.* ¶ 116.**

The Amended Complaint fails to allege McVeigh made this statement or that it was about Sheehan. *Id.* at ¶¶ 116-118. However, even if the statement could be plausibly attributed to McVeigh, it is not objectively verifiable and, thus, not actionable. Whether legal bills were "huge" or Sheehan's appeals were "garbage" are subjective opinions not susceptible to a "single, readily ascertainable meaning." *Piccone*, 785 F.3d at 772. *See Holsapple,* 817 F. App'x 95, 110 (6th Cir. 2020) ("characterizations of the lawsuits as 'unsubstantiated' and a 'waste of taxpayer money,' can neither be measured objectively nor definitively resolved"); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1403 (1999) (calling lawsuit "'stupid,' 'laughed at,' 'a joke,' 'spurious,' and 'frivolous,' are common characterizations" and "nothing more than [one side's] predictable opinion"). Because these phrases cannot be objectively verified, they "belong[] squarely in the category of protected opinion." *Piccone*, 785 F.3d at 772 (quoting *Levinsky's*, 127 F.3d at 130).[6]

## II. Count 18 for Intentional Infliction of Emotional Distress Fails to State a Claim Against McVeigh for Nineteen of the Alleged Statements

Sheehan's IIED claim against McVeigh is based entirely on allegedly defamatory statements made on MMP and through other digital impersonators. *Compl.* p. 70, ¶ 82. "The Supreme Court has made it pellucid that a failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress." *Shay*, 702 F.3d at 83. Because nineteen of the alleged statements "are nonactionable opinion," Sheehan "also cannot establish the derivative claim of intentional infliction of emotional distress" based on these statements. *Scholz*, 473 Mass. at 254. Her IIED claim premised on these nineteen statements must also be dismissed.

---

[6] McVeigh cannot be held liable for allegedly defamatory statements published on MMP by other Facebook users. "The publication element of defamation requires that the **<u>defendant</u>** communicate the defamatory statement to a third party." *White v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 442 Mass. 64, 66 (2004) (emphasis added).

## CONCLUSION

For all the above reasons, Counts 17 and 18 premised on the aforementioned nineteen (19) statements must be dismissed for failure to state a claim against McVeigh.

Respectfully Submitted,

Michael McVeigh, by his Attorneys,

/s/ Michael Paris
Michael Paris (#556791)
Kileigh E. Stranahan (#707769)
NYSTROM BECKMAN & PARIS, LLP
One Marina Park Drive, 15th Floor
Boston, MA 02110
(617) 778-9100
(617) 778-9110 (fax)
mparis@nbparis.com
kstranahan@nbparis.com

Dated: August 8, 2025

## CERTIFICATE OF SERVICE

I, Michael Paris, hereby certify that, on August 8, 2025, I caused a true and accurate copy of the foregoing document to be served via the Court's CM/ECF filing system on all counsel of record.

/s/ Michael Paris
Michael Paris