**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>*Plaintiff,*<br><br>v.<br><br>TOWN OF CARVER, MA; TOWN OF PLYMOUTH, MA; ALAN G. GERMAIN; STEPHEN G. GRAY; BETTY CAVACCO; MICHAEL MAIN; A.D. MAKEPEACE COMPANY; JAMES F. KANE; SLT CONSTRUCTION CORPORATION; PETER OPACHINSKI; and MICHAEL McVEIGH,<br><br>*Defendants.* | No. 1:24-cv-12347-ADB |

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL McVEIGH'S MOTION TO PARTIALLY DISMISS COUNTS 17 AND 18 OF THE AMENDED COMPLAINT**

**Introduction**

Defendant Michael McVeigh ("McVeigh") seeks to "partially dismiss" Counts 17 (libel) and 18 (intentional infliction of emotional distress) pursuant to Fed. R. Civ. P. 12(b)(6) ("R. 12(b)(6)"), by challenging nineteen *statements of fact* alleged in the fact section of the Amended Complaint entitled "A Chronology of Illustrative Events." Am. Cmplt., Dkt. 106 ("Am. Cmplt.") at. 10-47. The motion is fatally flawed for at least the following reasons:

First, R. 12(b)(6) is a motion that permits a defendant to move to dismiss a complaint (or a severable portion thereof, i.e., a count) for failure to state a claim upon which relief can be granted. Such motions are a means to challenge the *legal* sufficiency of a cause of action or of a pleading in its entirety. But, McVeigh does not allege that the Amended Complaint or any Count within it is legally insufficient. Dkt. 130, *passim*. Indeed, he implicitly acknowledges that ten of

his identified statements in the Amended Complaint supporting the libel and intentional infliction of emotional distress claims are legally sufficient to support those causes of action. Instead, he challenges the sufficiency of a subset of the facts in the "Chronology of Illustrative Facts" section of the Amended Complaint. Even if his unorthodox motion were to be allowed (which it should not be), all counts would remain standing against him, just as they have against his analog Defendant Peter Opachinski.

Second, in deciding whether alleged facts are sufficient to support claims for Libel and Intentional Infliction of Emotional Distress Claims, one must do so, not in isolation, but rather in the full context of the public conversation.

Third, McVeigh gives short shrift to the rulings and holdings of this Court in the Memorandum and Order of the Motions to Dismiss of all other Defendants. Dkt. 94 ("Mem. and Order"). Those rulings and holdings are dispositive of this challenge.

The Motion should be denied.

## I. Argument

### A. McVeigh's "Motion to Partially Dismiss Counts 17 and 18 of the Amended Complaint" Is Legally Unsupportable.

McVeigh wishes to challenge the legal sufficiency of the claims against him for Libel and Intentional Infliction of Emotional Distress ("Intentional Infliction"). Yet, his argument is turned on its head: Instead of addressing alleged deficiencies in the claims themselves, he focuses on cherry-picked factual allegations from the Chronology of Illustrative Events section of the Amended Complaint, which provides the context and the factual bases for all counts. By contending that only nineteen of his unilaterally identified "twenty-nine (29) fact statements []

purportedly give rise to claims against him," he implicitly acknowledges that the other ten[1] statements are legally sufficient to sustain the Libel and Intentional Infliction claims. Dkt. 130 at 3.

McVeigh oddly captions his legal arguments as "Libel Fails to State a Claim for Nineteen of the Alleged Statements" (*id.*) and "Count 18 for Intentional Infliction of Emotional Distress Fails to State a Claim Against McVeigh for Nineteen of the Alleged Statements," *Id.* at 3, 19. Typically, one would expect the terminology to be reversed, i.e., "Nineteen of the Statements of Alleged Facts Fail to State a Claim for Libel," and "Nineteen of the Statements of Alleged Fact Fail to State a Claim for Intentional Infliction of Emotional Distress." The names of the torts, i.e., "Libel" and "Intentional Infliction of Emotional Distress," do not themselves "state a claim" at all. But, application of the normal pleading protocols would simply serve to highlight that the claims themselves survive because the movant implicitly acknowledges that at least ten additional allegations support each claim.

McVeigh relies on a single case to support his premise that statements of alleged fact, as opposed to full pleadings or claims, can be "dismissed." *See id.* at 1, citing *Encompass Ins. Co. of MA v. Giampa*, 522 F. Supp. 2d 300, 317 (D Mass. 2007) (Dein, M.J.), with the inaccurate parenthetical summary "(dismissing nonactionable statements from defamation claims)." In that case, Plaintiff moved to dismiss Defendants/Counterclaimants' defamation count in its entirety as part of Plaintiff's Omnibus Motion to Dismiss Defendants' Counterclaims. Unlike the case at Bar, the *Encompass Ins. Co*. case did not involve an effort by the movant to "dismiss" statements of fact in a multi-count Complaint. *Id.* at 305. In her Report and Recommendation, M.J. Dein

[1] MMP and McVeigh receive attention in the Amended Complaint that is disproportionate to the other Defendants. Plaintiff does not accept McVeigh's efforts to circumscribe the number of factual statements that support Counts 17 and 18 against him.

recommended that "the motion [to dismiss] be allowed with respect to the "counterclaim[] for . . defamation," in so far as it related to "the amount in controversy and the length of Encompass' pre-suit investigation." *Id.* The parenthetical employed by McVeigh to describe the holding is therefore inaccurate.

There are appropriate approaches at appropriate times to pursue McVeigh's objective, e.g., a motion *in limine* pre-trial to exclude evidence of specified facts from being presented to the jury. A Rule 12(b)(6) motion to "dismiss" allegations of fact is not the right approach, nor is this the right time.

### B. Allegations of Fact Are Not to Be Reviewed in Isolation, But Rather in the Full Context of Public Discourse, in Deciding Whether Alleged Facts Are Sufficient to Support a Claim for Libel.

The lengths to which McVeigh has gone to cherry-pick nineteen of eighty-seven paragraphs in the Chronology (Am. Cmplt., ¶¶ 35 to 122), apparently in order to shoehorn them into his compendium of defamation holdings where isolated factual allegations were insufficient to state a claim, is creative, but ultimately to no avail. Apparently he misses the irony that a single author would seek to protect nineteen separate statements constituting offensive conduct that, in isolation, might not be sufficient to state a claim for defamation, *e.g.*, opinion, hyperbole, parodies, satire, ridicule, verbal abuse, speculation, surmise, and independent impressions, [2]

---

[2] Plaintiff does not concede the categorizations, but McVeigh seeks to dismiss factual allegations that he contends are statements: of opinion ("Statement 7" and "Statement 8"); of hyperbole ("Statement 4," "Statement 15," and "Statement 16"); that amount to mere ridicule and verbal abuse ("Statement 6"); that constitute artistic rhetorical hyperbole or parodies or satire ("Statement 3," "Statement 17," and "Statement 20," ); that are the author's speculation or surmise ("Statement 2," "Statement 13," and "Statement 19"); and that are the author's "independent impressions"). Dkt. 130 at 5-19.

without even considering either the context of the statement or the totality of the offending conduct.

But, McVeigh's statements, especially those posted on MMP, were part of a public discussion, such that they could not "be read in isolation, but [are to be read] in the context of the entire discussion." *See Feld v. Conway,* 16 F. Supp 3d 1, 4 (D. Mass. 2014) (statements to be read in full context of public discussions). In *Feld*, "[t]he complaint bases its claim of defamation solely on defendant's tweet." The court concluded that the offending phrase -- "Mara Feld . . is fucking crazy" – "when viewed in that context, cannot reasonably be understood to state actual facts about plaintiff's mental state." *Id.* That isolated statement of criticism, while offensive, is a far cry from the steady drumbeat of "demeaning, ridiculing, harassing, and libeling Sheehan through MMP that was to continue incessantly for more than a year and a half, stopping only with the filing of this lawsuit." Am. Cmplt., ¶ 62.[3] Such tactics were relied upon by McVeigh in furtherance of his and his employer A.D. Makepeace Co.'s desire to stop opposition to the unlawful sand mining in which Makepeace was a primary player. *Id.*, ¶ 58. McVeigh anonymously created MMP in January of 2023 and did not take it down until immediately after the filing of this lawsuit in September of 2024, twenty-one months later. *Id.*, ¶ 19. McVeigh remained carefully anonymous while he perpetrated, and encouraged the perpetration by others of, much of the wrongful online conduct alleged in this lawsuit. *Id.*, ¶ 31.

Indeed, McVeigh's isolation of nineteen statements of facts that were alleged in the context of eighty-seven such statements causes each of the cherry-picked nineteen to lose all context, which distorts their meaning. For example, Plaintiff alleges that she was treated

[3] "On a motion to dismiss, the Court 'must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom.'" *See Feld,* 16 F. Supp. 3d at 3.

improperly by Chair Michael Main's verbal abuse on January 4, 2023 at a Plymouth Zoning Board of Appeals hearing. *Id.*, ¶¶ 50-57. Sheehan then details the connection between Main's abusive conduct, where he *falsely* accused Sheehan of costing the Town "*millions and millions* of dollars on [her] frivolous lawsuits," and the appearance four days later of the "Meg Costs Us Millions" Facebook page, anonymously created by McVeigh "in furtherance of his employer's desire to stop opposition to the unlawful sand mining in which Makepeace was a primary player." *Id.*, ¶ 58.

Continuing in sequential paragraphs, Plaintiff alleges that Main's false accusations damaged Sheehan by inspiring McVeigh to create MMP. She further alleges additional harm flowing from Main through McVeigh with McVeigh's posting of (i) the video where Main "scolded" her and (ii) the false depiction of a thermometer-type gauge with the mercury approaching the $2.5 million level, entitled "The Meg Sheehan Wasted Taxpayer Money Chart." McVeigh ignores the allegations of fact that Main's conduct inspired McVeigh to use MMP to repeat Main's false premise that Sheehan was costing the Town of Plymouth, millions and millions of dollars. Instead, McVeigh plucks ¶ 59 as his "Statement 2" suggesting that claiming someone was "scolded" is non-actionable. Similarly, he plucks ¶60 as his "Statement 3" and suggests that a photo-shopped picture is similarly non-actionable. Dkt. 130 at 5.

In short, in these instances as in others, McVeigh intentionally ignores the context in which his statements were made and his graphics and photo-shopped pictures posted. These allegations cannot be read as stand-alone allegations, taken entirely out of context, and without consideration of the cumulative effect.

### C. McVeigh Ignores the Fact That the Sufficiency of All the Allegations That He Challenges Have Already Been Addressed by the Court.

Although McVeigh's identity had not yet been determined at the time of the other Defendants' Motions to Dismiss and the entry of this Court's Memorandum and Order, the acronym MMP is interchangeable with the name of the person or persons behind the Meg Costs Us Millions Facebook Page. That person is Michael McVeigh. McVeigh highlights nineteen statements of fact drawn from the eighty-seven statements of fact in the Chronology of Illustrative Events. In the Court's "Factual Background" contained in the Memorandum and Order, the Court notes, "[t]he following relevant facts are taken primarily from the Complaint, which the Court assumes to be true when considering a motion to dismiss." Mem. and Order at 2 (citing *Ruivo v. Wells Fargo Bank, N.A.*, 766 F. 3d 87, 90 (1st Cir. 2014)). Even more enlightening for purposes of this Opposition is this Court's introductory language in *Patane v. Babson College, et al*, C.A. No. 1:20-cv-11603-ADB, Dkt. 28: "The following facts are drawn from the amended complaint, *the well-pleaded allegations* of which are taken as true for the purposes of evaluating the motion to dismiss" (emphasis added). *Id.* at 2.

Each and every one of the oddly numbered[4] "Statements" that McVeigh seeks to dismiss are addressed in the Factual Background portion of the Memorandum and Order, as itemized below. The Court has therefore already found the Statements to be part of the "well-pleaded allegations . . .taken as true for the purposes of evaluating the motion to dismiss."[5] In the

[4] The Statements are not numbered sequentially. Apparently McVeigh numbered all relevant (to his determination) paragraphs in some source (perhaps the Amended Complaint or the Court's Memorandum and Order), selected those he wanted to "dismiss," and used the numbers that appeared and pulled out those paragraphs.

[5] This is not to say that any one of the statements is sufficient standing alone to support a finding of Libel or Intentional Infliction of Emotional Distress. However, considered in their totality with the statements that were not cherry-picked, they are well-pleaded and taken as true.

Memorandum and Order, the Court breaks the Factual Background into shorter segments with sub-titles. Mem. and Order at 2-28. The sub-title under which each of McVeigh's "Statements" is located is identified in the following paragraphs:

In the section entitled "Creation of 'Meg Cost Us Millions'", Mem. and Order at 12-14, the Court accepted as well pleaded and presumed true for purposes of the Motions to Dismiss: "Statement 2" (video of "Meg gets scolded . . ."), "Statement 3" (thermometer gauge and chart, "Meg Sheehan Wasted Taxpayer Dollars"), "Statement 4 (clown photo), "Statement 6"( "too much unearned money), "Statement 7" ("the hypocrite"), and "Statement 8" (L. Knife).

In the section of the Court's rulings entitled "MMP-2023 Online Campaign," Mem. and Order at 16-22, the Court accepted as well pleaded and presumed true for purposes of the Motion to Dismiss "Statement 10" (sign "Meg loses, again !!!"), "Statement 11" (commenter "Rebecca Newhouse" calling Sheehan a witch"), "Statement 13" (reminder to Wareham residents); "Statement 15" (dismissal on standing grounds, with slights against Sheehan); "Statement 16" (Sheehan as "beer cashier" and "natural Disaster"); "Statement 17" (photoshopped beer swigging pictures); "Statement 19" ("She's trying to put good people out of business"); "Statement 20" (fake newspaper meme); "Statement 21"(adaptation of the "Terrible, Horrible, No Good, Very Bad Week"); "Statement 24" (criticism of Sheehan family for both donating and failing to donate land).

In the section of the Court's rulings entitled "MMP 2024 Online Campaign", Mem. and Order at 24-25, the Court accepted as well pled and presumed true for purposes of the Motion to Dismiss "Statement 27" ("Meg's Bingo Card") and "Statement 28" (problem with expert);

In the section of the Court's rulings entitled "May 29, 2024 Carver ZBA Meeting," Mem. and Order at 26-27, the Court accepted as well pled and presumed true for purposes of the Motion to Dismiss "Statement 29" ("Tim Westover" email).

Given that all the cherry-picked "Statements" have already been found by the Court to be well-pleaded and taken as true by the Court in denying the Motions to Dismiss of the most analogous Defendant, i.e., Peter Opachinski -- the other non-municipal actor who actively posted on MMP to protect his and his company's economic interests – there is no basis on which these issues should be relitigated by McVeigh. With regard to the Libel claim, as the originator of the offending materials online, McVeigh has no basis to claim that the factual underpinnings of Libel are less applicable to him than to Opachinski, who reposted and commented upon the underlying posts. *See* Mem. and Order at 62-68. With regard to the Intentional Infliction claim, there is arguably no defendant more culpable than McVeigh, and therefore Makepeace under agency or *respondeat superior* principles.

The Court found that "a campaign of repeated harassment, vilification, and embarrassment is precisely what the Complaint allege Opachinski and SLT have conducted." Mem. and Order at 72. That principle applies to McVeigh with even greater strength.

### D. The Principles of Context and Totality of the Circumstances Are Also Applicable to Intentional Infliction of Emotional Distress Claims.

This Court has already ruled that "[r]epeated harassment . . . may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress." *Sindi v. El-Moslimany*, 896 F. 3d 1, 21 (1st Cir. 2018). Mem. and Order at 72. McVeigh's attempts to remove 19 statements would not have

been enough to ignore the others. But, in any event, the same statements were found tortious as to Opachinski, and McVeigh's fault is even greater.

**Conclusion**

For the reasons set forth herein, as buttressed by the reasoning in the Memorandum and Order, Defendant McVeigh's partial motion to dismiss should be denied.

Respectfully submitted,

**MARGARET E. SHEEHAN,**

By her attorneys,

*/s/ Joan A. Lukey*

Joan A. Lukey (BBO No. 307340)
Justin J. Wolosz (BBO No. 643543)
MANATT, PHELPS & PHILLIPS, LLP
One Beacon Street, Suite 28-200
Boston, Massachusetts 02108
Telephone: (617) 646-1448
jlukey@manatt.com
jwolosz@manatt.com

Dated: August 14, 2025

**Certificate of Service**

Undersigned counsel swears that she has served all Defendants through their counsel electronically via the Court's ECF system on this fourteenth day of August, 2025.

By her attorneys

*/s/ Joan A. Lukey*