**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>*Plaintiff,*<br><br>v.<br><br>TOWN OF CARVER, MA;<br>TOWN OF PLYMOUTH, MA;<br>ALAN G. GERMAIN; STEPHEN G. GRAY; BETTY CAVACCO; MICHAEL MAIN; A.D. MAKEPEACE COMPANY; JAMES F. KANE; SLT CONSTRUCTION CORPORATION; PETER OPACHINSKI; and MICHAEL McVEIGH,<br><br>*Defendants.* | No. 1:24-cv-12347-ADB |

**AFFIDAVIT OF MARGARET SHEEHAN IN OPPOSITION TO SPECIAL MOTION TO DISMISS PURSUANT TO M.G.L. C. 231, § 59H OF DEFENDANTS A.D. MAKEPEACE COMPANY, JAMES F. KANE, MICHAEL McVEIGH, SLT CONSTRUCTION CORPORATION, AND PETER OPACHINSKI**

The Affiant Margaret Sheehan swears to the truth of the following:

1. My name is Margaret Sheehan, and I am the Plaintiff in the captioned lawsuit.

2. Although I have lived in New Hampshire for the last several years, I was born and raised in Southeastern Massachusetts, and I became active as early as my teens in efforts to protect the environment.

3. I have been a member of the Massachusetts Bar in good standing since 1983, when I graduated from Boston College Law School. For most of my career, I have specialized in environmental law.

4. In the last several years, I have practiced almost exclusively on a pro bono basis, devoting my time to representing residents of Southeastern Massachusetts who have been and are being adversely affected by activities occurring in or near their residential communities, and representing neighborhood associations and groups that are working to protect the environment. Many of my clients live in environmental justice communities, defined under Massachusetts law by calculating median incomes below the Commonwealth's median income levels.

5. Starting in about 2014, I began to represent residents and community groups in Southeastern Massachusetts against participants in the sand-mining industry. The industry was proliferating in the area, in part because silica sand is present due to the geological makeup of the region. Sand mining became a serious concern that was growing with the fact that the sand-mining activities were occurring over, and even reaching into, the Plymouth-Carver Sole Source Aquifer, which was being placed at risk of contamination and hydrological changes. The concerns grew from there to include unlawful conversion of agricultural cranberry bog parcels into mining sites, almost constant noise and sand pollution and traffic problems from hauling trucks moving through small roads in residential areas, blowing sand forcing nearby residents to stay inside their homes and forego use of their yards, and eventually to the recognition of the serious health risks, including silicosis, created by exposure to silica sand.

6. Several years ago, I handled the formation of Save the Pine Barrens, Inc (STPB), the name of which related to one of three remaining Atlantic Coastal Pine Barrens in the world. I was one of the founding members, and I have often held leadership positions along with others. The

Community Land and Water Coalition (CLWC) is a rebranded name for STPB for the expanded concerns and regions that the group wished to address. I am committed to the causes of STPB and CLWC, but I am one of many committed members. STPB/CLWC is a non-profit corporation. I am not its alter-ego, nor is it mine.

7. I have never been a named as the only plaintiff in any of the cases against the sand-miners or haulers, in this instance, A.D. Makepeace Co. and SLT Corporation respectively.

8. I have handled many of the cases relating to what I believe to be unlawful sand-mining in the Plymouth/Carver area in my capacity as a lawyer. The cases that James Kane lists in his affidavit are cases in which I have served as counsel or co-counsel for the plaintiffs. I was added as a plaintiff in only one of the cases, *Save the Pine Barrens, Inc. v. Carver Zoning Board of Appeals, 2183CV00929,* joining members of the Herring Pond Wampanoag Tribe in an amended complaint when Makepeace challenged the complaint on legal standing. I was not the lead attorney in the case. There are many different, sometimes overlapping, reasons why sand-mining activity is illegal: e.g., using agricultural or horticultural land for sand-mining under the false pretense of building or renovating cranberry bogs or ponds, engaging in sand-mining and hauling in areas that are zoned residential, obtaining earth removal permits for mining the sand that contain material falsehoods in the applications, e.g., as to the ultimate purpose to which the land will be put, or substantially understating the amount of sand to be removed, or transporting, or on some occasions not obtaining a permit at all or pretending to operate pursuant to a permit that has already expired.

9. While I have often been active in forums, meetings, and even peaceful protests of unlawful sand-mining, I have done so lawfully and peacefully. I have never used my car to block Makepeace's mining or hauling trucks, and I never forced a truck off the road as Makepeace once reported to the local police.

10. I filed my lawsuit when I could no longer tolerate the way I was being treated. It was affecting virtually every aspect of my life, and it was a constant drumbeat of taunts and lies and efforts to bully me. I had honestly become afraid for my physical and emotional well-being, and even for my life. I am seeking recompense for what Defendants have put me through, in hopes that this may prevent them from continuing to do this in the future, to me or to anyone else. I am not seeking in this lawsuit to challenge, appeal or relitigate any of the cases in which I have sued Makepeace or SLT, or any other participants in the sand-mining industry, on behalf of my clients. All those cases were before municipal or Commonwealth entities, and appealed in state courts. I was the attorney, not the party in each of those cases, except for the 2021 case to address standing.

11. When I finally felt that I had no choice but to take action against the people who were trying to destroy my practice, my reputation, and me, I gave careful consideration to the identity of the industry participants and the municipalities whose treatment of me had truly crossed the line. At the time when I was making my decisions, the towns that were the most difficult and conflicted were Carver and Plymouth. The industry participants who were causing me the most trouble were A.D. Makepeace Co. and SLT Corporation.

12. Makepeace as the largest grower in the area was sand-mining on a number of its bog properties, claiming that they were renovating bogs, or building new bogs or ponds when

they clearly were not. There was no question in my mind that, in the instances on which I was focusing, their actual reason for their mining activity was to excavate silica sand for transport and commercial sale. They did so on land that was zoned for residential and agricultural use, while they were conducting an industrial and commercial use, and that existed in close proximity to residential neighborhoods including environmental justice communities. In many instances they appeared to have no permit, or no valid permit, to engage in their activities. In others, they prevaricated on their applications regarding the duration or the sand mining or the reason for the excavation. It is my understanding and belief, that their commercial sales over the years that they have been excavating sand and gravel have amounted to well over one hundred million dollars.

13. At some point after the Meg Costs Us Millions Facebook page ("MMP") appeared in January of 2023, I started attempting to learn who was behind the page. I hired and paid a forensic firm to try to track IP addresses and identify the person or persons behind MMP. The contract price was $15,000, with the last $5000 due at trial. I believe the payments that I made before my law firm picked up the effort with subpoenas to social media companies and ISPs was close to $10,000. I have paid a retainer to Manatt in excess of $150,000 to cover expenses in the lawsuit to be used as and when necessary. These out of pocket expenses are in addition to the very real emotional distress with which I have been living since 2021, and with regard to the damage done to my reputation. The damages that I seek in this lawsuit are my own. Any damages that I seek in lawsuits on behalf of clients are in separate litigation where the clients are the plaintiffs.

14. When we filed my lawsuit on September 12, 2024, we did not issue a press release; and there was no press to my knowledge until at least several weeks later. On Saturday, September 14, I received a call from my daughter informing me that MMP was no longer available. Within the next day or two, she reported the same information with regard to companion sites like X. I was stunned because I assumed that no one but the parties, their law firms, and a small number of close friends and allies knew about the lawsuit that quickly. Fortunately, I had saved many snapshots of the offensive content on MMP, and some of my friends had saved others.

I swear to the averments above based on my personal knowledge. Where a statement expressly indicates that it is based on my belief, I swear that I hold the statement to be true to the best of my belief.

Signed this 5th day of September, 2025 under the pains and penalties of perjury.

Margaret E. Sheehan

Margaret Sheehan