UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET E. SHEEHAN, Plaintiff, v. TOWN OF CARVER, MA, TOWN OF PLYMOUTH, MA, ALAN G. GERMAIN, STEPHEN G. GRAY, BETTY CAVACCO, MICHAEL MAIN, A.D. MAKEPEACE COMPANY, JAMES F. KANE, SLT CONSTRUCTION CORPORATION, PETER OPACHINSKI, and MICHAEL MCVEIGH Defendants. | No. 1:24-CV-12347-ADB |

**DEFENDANT A.D. MAKEPEACE COMPANY'S OPPOSITION TO PLAINTIFF MARGARET E. SHEEHAN'S MOTION FOR SANCTIONS**

Geoffrey M. Raux (BBO # 674788)
Lea Gulotta James (BBO # 705421)
Miranda D. Curtis (BBO # 709084)
Jared Pliner (BBO # 713551)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 342-4000
graux@foley.com
ljames@foley.com
mcurtis@foley.com
jpliner@foley.com

*Attorneys for A.D. Makepeace Company and James F. Kane*

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 4

LEGAL STANDARD................................................................................................. 8

ARGUMENT ............................................................................................................. 9

I. There Has Been No Loss of Any Meaningful Evidence.................................................... 9

II. Plaintiff Has Not Been Prejudiced By Any Loss of Evidence......................................... 11

III. Makepeace Cannot Be Held Responsible for the Unauthorized Deletion of a Private Facebook Account ................................................................................................ 13

A. Makepeace Never Had Possession, Custody, or Control Over the MMP .................... 14

B. Makepeace Did Not Know Mr. McVeigh Was Administering the MMP and Did Not Authorize Its Deletion.................................................................................... 16

C. The Deletion of the MMP Was An Act of Self-Preservation ...................................... 17

IV. The Issue of Vicarious Liability Should Not Be Determined on a Motion for Spoliation ... 18

V. The Requested Sanctions are Disproportionate and Unwarranted .................................. 18

RELIEF REQUESTED.............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amica Mut. Ins. Co. v. BrassCraft Mfg., Co.*,
C.A. No. 17-103-JJM-LDA, 2018 WL 2433560 (D.R.I. May 29, 2018) ... 19

*Bear v. Escambia Cty. Bd. of Cty. Comm'rs*,
Case No. 3:19cv4424-MCR-HTC, 2021 WL 12169650 (N.D. Fla. May 17, 2021) ... 16

*Booker v. Massachusetts Dep't of Pub. Health*,
612 F.3d 34 (1st Cir. 2010) ... 13

*Boudreau v. Shaw's Supermarkets, Inc.*,
955 F.3d 225 (1st Cir. 2020) ... 8, 11

*Edifecs, Inc. v. Welltok, Inc.*,
No. C18-1086JLR, 2019 WL 5862771 (W.D. Wash. Nov. 8, 2019) ... 17

*Hefter Impact Techs., LLC v. Sport Maska, Inc.*,
No. CV 15-13290-FDS, 2017 WL 3317413 (D. Mass. Aug. 3, 2017) ... 13

*Knoth v. Apollo Endosurgery US, Inc.*,
No. 5:18-CV-49-DCB-MTP, 2021 WL 3373801 (S.D. Miss. Aug. 3, 2021) ... 18

*McLaughlin v. Lenovo Glob. Tech. (United States) Inc.*,
682 F. Supp. 3d 149 (D. Mass. 2023) ... 19, 20

*Nucor Corp. v. Bell*,
251 F.R.D. 191 (D.S.C. 2008) ... 18

*NuVasive, Inc. v. Day*,
No. CV 19-10800-DJC, 2021 WL 9059745 (D. Mass. Aug. 23, 2021) ... 19

*Postle v. SilkRoad Tech., Inc.*,
Civil No. 18-cv-224-JL, 2019 WL 692944 (D.N.H. Feb. 19, 2019) ... 19

*PowerShare, Inc. v. Syntel, Inc.*,
597 F.3d 10 (1st Cir. 2010) ... 18

*Rattie v. Balfour Beatty Infrastructure, Inc.*,
No. 22-CV-05061-RS (LJC), 2023 WL 5507174 (N.D. Cal. Aug. 25, 2023) ... 15

*Reynolds v. City of Rochester*,
No. 6:23-CV-06506 FPG CDH, 2026 WL 1145810 (W.D.N.Y. Apr. 28, 2026) ... 15

*Sharp v. Hylas Yachts, LLC*,
872 F.3d 31 (1st Cir. 2017) ... 10, 13

*Shawmut Corp. v. FXI, Inc.*,
802 F. Supp. 3d 259 (D. Mass. 2025) ..... 13

*Small v. Gen. Motors Corp.*,
No. CIV 05-131-P-H, 2006 WL 3332989 (D. Me. Nov. 15, 2006) ..... 13

*Sonrai Sys., LLC v. Romano*
16 C 3371, 2021 WL 1418405 (N.D. Ill. Jan. 20, 2021) ..... 15

*Tchatat v. City of New York*,
795 F. App'x 34 (2d Cir. 2019) ..... 18

*TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*,
No. CV 15-2121 (BJM), 2017 WL 1155743 (D.P.R. Mar. 27, 2017) ..... 19

*Townsend v. Am. Insulated Panel Co., Inc.*,
174 F.R.D. 1 (D. Mass. 1997) ..... 16, 17, 20

*Walsh v. Tara Constr., Inc.*,
No. CV 19-10369-LTS, 2021 WL 12094222 (D. Mass. June 7, 2021) ..... 12

*Ward v. Schaefer*,
No. CV 16-12543-FDS, 2019 WL 13196106 (D. Mass. Sept. 18, 2019) ..... 13

**Statutes**

42 U.S.C. § 1983 ..... 20

**Rules**

Fed. R. Civ. P. 37(e) ..... 8, 9

Fed. R. Civ. P. 37(e)(1) ..... 8

Fed. R. Civ. P. 37(e)(2) ..... 8, 9

## INTRODUCTION

Like this entire lawsuit, the instant Motion for Sanctions Against Defendants Michael McVeigh and A.D. Makepeace Company for Spoliation of Evidence (the "Motion," ECF No. 211) is overblown. Plaintiff is seeking extreme relief and draconian sanctions that are wholly unjustified. For years, a public debate has been waged around cranberry farming activity in Southeastern Massachusetts and the purported harm it is causing to the local environment. Plaintiff has been the initiator and driving force of this debate. Through organizations she has founded and funded, and through her work as a pro bono attorney, she has caused and participated in scores of different lawsuits and administrative challenges against several of the Defendants in this lawsuit and against others in the industry. She has also written numerous news articles, given interviews, spoken at events, and utilized social media to promote her positions. In response to her own extensive social media postings—which frequently vilified many of the Defendants and characterized them as criminal actors—a counter social media campaign was started. An anonymously administered Facebook page called "Meg Costs Us Millions" (the "MMP") was the primary forum for posts made against Plaintiff and her positions. The tone and content of the MMP were, in certain respects, distasteful—just as were many of Plaintiff's own postings.

Frustrated by the MMP and aiming to stop the public campaign against her, Plaintiff filed this lawsuit. Instead of simply asserting claims for defamation, Plaintiff asserted constitutional violations under both federal and state law. The original Complaint, filed in September 2024, was a 117-page behemoth. It described, cited, and reproduced many of the posts from the MMP. Ironically, in light of the current Motion, the lawsuit achieved its primary objective within days, as the MMP was immediately taken down. Through early third-party discovery, Plaintiff was able to uncover the identity of the administrator of the MMP (Defendant McVeigh) and obtain other

information about the page. The MMP itself, however, was not recoverable.

Two years later, Plaintiff now moves for sanctions against both Mr. McVeigh and Makepeace for spoliation of evidence associated with the deletion of the MMP. The requested sanctions include default judgment and/or an unspecified adverse inference. For multiple reasons, such sanctions are inappropriate, especially as to Makepeace.

First, there has been no meaningful loss of evidence. As stated, Plaintiff and her counsel prepared an extensive pleading which relies heavily on the MMP posts. The MMP was publicly available during the entire time Plaintiff was preparing this lawsuit, and she and her counsel clearly spent significant time consulting it. During her deposition, moreover, Plaintiff testified that she frequently visited the MMP and made over 900 screenshots of posts from it. The idea that there are important posts that were somehow missed and have now been lost is not credible.

Aside from the posts on the MMP, Plaintiff points to direct messages sent to Mr. McVeigh as the site's administrator. Unlike the public posts, it is true that Plaintiff could not have accessed these private messages. Any such messages, however, are of limited relevance. Private messages between the MMP administrator and individuals who posted on or viewed the MMP cannot support a claim of defamation or intentional infliction of emotional distress. Regardless, Mr. McVeigh's testimony was that he only recalled receiving direct messages from Defendants Alan Germain and Peter Opachinski, and the number of messages was low. Mr. Germain has testified that he did not delete any of the messages that were sent, and all such messages with respect to Messrs. Germain and Opachinski have now been produced to Plaintiff. Thus, any direct messages that were potentially lost by the deletion of the MMP have been recovered through other sources.

Second, to the extent any evidence has been lost, Plaintiff has not suffered any prejudice. There is no showing that any missing evidence prevents Plaintiff from proving her claims or that

any such evidence would support different claims. Any evidence that has been lost is either irrelevant or just more of the same.

Third, no sanctions can be imposed against Makepeace, because Makepeace is not responsible for the destruction of any evidence. The evidence destroyed was the MMP page. Mr. McVeigh has acknowledged that he deleted it without the knowledge, consent, or approval of Makepeace. In fact, the testimony from all witnesses in this case is uniform and unequivocal: Mr. McVeigh acted alone in creating, maintaining, and deleting the MMP, and no one knew his involvement with the MMP until after this lawsuit was filed and after the page was deleted. The deletion of the MMP, moreover, was an act of self-preservation by Mr. McVeigh. It was not intended to protect Makepeace.

More importantly, the evidence purportedly destroyed was never in Makepeace's possession, custody, or control. The MMP was a Facebook page that Mr. McVeigh created through Facebook. Makepeace had no control over it and had no ability to preserve it or prevent its deletion. Courts have consistently found that a corporate employer cannot be held responsible for spoliation where lost evidence resided on devices, servers, websites, or within portals that did not belong to the corporation.

Fourth, while it is clear based on the limited record before the Court that Makepeace cannot be held responsible for the destruction of evidence associated with the MMP, to the extent there is any question around that, the issue is premature. Makepeace has consistently denied liability for any conduct by Mr. McVeigh relating to the MMP—over and above spoliation. Among other things, Makepeace intends to move for summary judgment on the issue of vicarious liability given that Mr. McVeigh's conduct associated with the MMP was clearly outside of his job responsibilities and done without Makepeace's knowledge or consent. Plaintiff's attempt to

indirectly establish vicarious liability through the instant Motion is improper.

Fifth, and finally, the requested sanctions are disproportionate and could cause prejudice to other parties. There is, as stated, no loss of any material evidence and no prejudice caused to Plaintiff. Makepeace, moreover, took immediate and reasonable steps to ensure the successful preservation of all evidence in its possession, custody, and control. It had no role in the deletion of the MMP and it has gained no benefit from its deletion. It would be unwarranted to impose a sanction of default judgment or an adverse inference against Makepeace that could create liability that does not currently exist, especially given the extensive record in this case and the substantial discovery obtained by Plaintiff. Furthermore, in a case centering on conspiracy claims, a default judgment or adverse inference against one alleged co-conspirator could have prejudicial effects on other alleged co-conspirators who also had no involvement in any spoliation.

For all of these reasons, Plaintiff's Motion should be denied.

## BACKGROUND

This lawsuit was filed on September 12, 2024. *See* Complaint, ECF No. 1. The 305-paragraph Complaint focused on alleged harm caused to Plaintiff via social media posts on the MMP criticizing her and her environmental advocacy work. *See generally id.* Throughout the Complaint, specific posts from the MMP are highlighted, described, and reproduced as screenshots. *See generally id.* The MMP was obviously reviewed and consulted thoroughly in preparing the Complaint.

Hours after the Complaint was filed, the MMP was taken down. At that time, no one knew the identity of the MMP site administrator or who had deleted it. As for Makepeace, its CEO James Kane questioned individuals at the company as to whether they had knowledge of the MMP's creation and operation, and/or whether they knew who was behind it. *See* Affidavit of Lea Gulotta

James ("James Aff."), Ex. A (Dep. Tr. of James F. Kane) at 224:13-225:24. He received negative replies, including from Mr. McVeigh—an in-house attorney who had been tasked with managing the non-stop legal and regulatory challenges Plaintiff was filing against Makepeace. *See id.* at 95:19–96:2, 156:4. Mr. Kane's clear instruction to employees since Plaintiff started to target Makepeace was not to engage with her in public debates or disputes, and to leave matters to the outside attorneys. *See id.* at 150:19–151:7, 242:18–243:14, 258:24–259:19. If a public statement was to be made, whether via social media or otherwise, the company's Chief Marketing Officer Linda Burke was the only person authorized to make it. *See* James Aff., Ex. B (Dep. Tr. of Linda Burke) at 11:9–24, 113:6–19; Ex. A at 155:12–16, 155:17–156:10. At the time that the Complaint was filed, therefore, Makepeace had no reason to believe that any of its employees was involved.

Makepeace also had no reason to believe that potentially relevant evidence in its possession, custody, and control was in jeopardy of being lost or destroyed. To the contrary, Makepeace had already implemented broad preservations measures in response to a preservation notice from the Office of the Inspector General in 2023. *See* Affidavit of James F. Kane ("Kane Aff.") ¶ 3. Those measures were still in place when the Complaint was filed. *See id.* ¶¶ 3, 5. Soon after the filing, moreover, a verbal instruction to relevant personnel was given reiterating the requirement to preserve all materials. *See id.* ¶ 4. A formal written hold notice was circulated later, again reiterating the ongoing obligations. *See id.* ¶ 6.

It came as a shock to Mr. Kane and others at Makepeace when it was discovered in January 2025 that Mr. McVeigh was the creator and administrator of the MMP and that he had deleted it upon learning that the Complaint was filed. *See* James Aff., Ex. A at 249:12–250:6; Ex. B at 177:9–178:4; Ex. C (Dep. Tr. of Chris Ierardi) at 57:8–58:14. Plaintiff made this discovery through the pursuit of third-party subpoenas, including to Meta/Facebook—the company that owned and

controlled the internet platform on which the MMP resided. Plaintiff was able to identify Mr. McVeigh, determine where and when he accessed the MMP, and learn other information about it. *See* Plaintiff's Memorandum of Law ("Pl. Mem.") (ECF No. 212) at 7. However, she was not able to recover the MMP itself.

The inability to recover the MMP meant that Plaintiff could not continue to view the public postings that had been displayed on it. It also meant that Plaintiff could not obtain copies of direct messages sent to the site administrator (at least not from the administrator himself). Plaintiff, however, testified in this case that she viewed the MMP on a near daily basis when the page was up, ranging between 100 and 200 times total. *See* James Aff., Ex. D (Dep. Tr. of Margaret E. Sheehan, June 30, 2026) at 188:14-189:17. Shortly after the page went live, moreover, she began taking screenshots utilizing both her phone and laptop to ultimately capture over 900 individual images preserving the contents of the MMP before the page was deleted. *See* James Aff., Ex. E (Dep. Tr. of Margaret E. Sheehan, September 30, 2026) at 320:14-323:11. And she was not the only one. Friends, allies, and supporters took screenshots as well, which they shared with or have otherwise made available to her for use in this litigation. *See id.* As for the direct messages, Mr. McVeigh was questioned about these at his deposition and testified that limited messages were sent to him and they were primarily with Defendant Alan Germain and some with Defendant Peter Opachinski (both of whom testified that they did not know Mr. McVeigh's identity when engaged in this messaging). *See* James Aff., Ex. F (Dep. Tr. of Michael McVeigh) at 156:14–157:21; Ex. G (Dep. Tr. of Peter Opachinski) at 149:6–12, 157:8–11; Ex. H (Dep. Tr. of Alan Germain) at 127:11–128:17. Plaintiff served document requests on both Defendants Germain and Opachinski and has now obtained all of the direct messages.

As for Mr. McVeigh, he testified that he created, administered, and deleted the MMP in

secret. *See* James Aff., Ex. F at 77:25–80:4, 135:13–23. He admitted to lying to Mr. Kane when questioned about his involvement and knowledge of the website, and acknowledged that his activity was unauthorized and outside the scope of his job responsibilities at Makepeace. *See id.* at 77:25–80:4, 126:9–14. Plaintiff makes much of the fact that Mr. McVeigh was not terminated when his involvement with the MMP was discovered. While termination was considered, it was ultimately not the decision made by Mr. Kane. *See* James Aff., Ex A at 232:20–233:17. Instead, Mr. Kane considered Mr. McVeigh's entire tenure, including the consistent display of good judgment and character outside of conduct associated with the MMP. *See id.* Mr. McVeigh was a young professional who made a poor choice. But that choice was not all that defined him to Mr. Kane. Thus, while significant negative employment action was taken, Mr. McVeigh's employment has continued. *See id.* at 234:3–8.

Despite knowing Mr. McVeigh's identity and the deletion of the MMP since early 2025, Plaintiff waited a year and a half to bring this Motion for spoliation. If she had raised this issue immediately or waited until pre-trial motions in limine, either path would have made sense. The present timing suggests that Plaintiff's primary aim is to get a back-door ruling on the issue of Makepeace's vicarious liability prior to summary judgment. As will be discussed, that is improper.

What is more, Plaintiff has also insisted on bringing this Motion despite the fact that all material evidence has now been obtained through other sources. Admittedly, this did not occur until after the Motion was filed, insofar as the filing prompted searches for direct messages to the MMP administrator by the parties (including by Plaintiff). These recent searches resulted in the production of all messages from Messrs. Germain and Opachinski. Since these were the only messages Mr. McVeigh testified to having received from other Defendants, it is clear that any evidence that was lost has now been recovered. Nevertheless, when Makepeace and Mr. McVeigh

requested that Plaintiff withdraw her Motion in light of these recent productions, she refused. As a result, Makepeace now submits this Opposition.

**LEGAL STANDARD**

Under Fed. R. Civ. P. 37(e), sanctions are authorized when Electronically Stored Information ("ESI") "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery…" *Boudreau v. Shaw's Supermarkets, Inc.*, 955 F.3d 225, 237-38 (1st Cir. 2020). "Because the rule calls only for reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve. For example, the information may not be in the party's control. Or information the party has preserved may be destroyed by events outside the party's control…" Fed. R. Civ. P. 37(e), Committee Notes on Rules—2015. In addition, sanctions are only permitted when evidence is actually lost. Fed. R. Civ. P. 37(e). "Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e), Committee Notes on Rules—2015.

In circumstances where evidence is lost and cannot be obtained through another source, ***and*** where that loss is a result of a party's unreasonable efforts at preservation, the responsible party can be sanctioned. If there was no intent by the party against whom sanctions are sought "to deprive another party of the information's use in the litigation," then a sanction is only permissible upon a showing of prejudice to the moving party and only to the extent necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1). If, however, there is a finding of intent by the party against whom sanctions are sought "to deprive another party of the information's use in litigation," then enhanced sanctions—including an adverse inference or entry of default—are permitted. Fed. R. Civ. P. 37(e)(2). Even here, however, "[c]ourts should exercise caution" and are not required to

impose such extreme sanctions. Fed. R. Civ. P. 37(e), Committee Notes on Rules—2015. Ultimately, "[t]he remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." *Id.*

In this case, sanctions against Makepeace are not permissible. No meaningful evidence has been lost, and Makepeace took reasonable steps to preserve all relevant evidence in its possession, custody, and control. To the extent any evidence has been lost, such evidence was never in Makepeace's possession, custody, or control. Plaintiff has also suffered no prejudice from the loss of any evidence. While there was an intentional destruction of evidence (which, again, was all recovered), it was not destroyed with the intent to deprive anyone of its use in litigation; rather, it was destroyed as a means of self-preservation. Regardless, it was not destroyed by Makepeace and Makepeace had no intent to destroy anything or deprive anyone of evidence in this lawsuit.

## **ARGUMENT**

### I. There Has Been No Loss of Any Meaningful Evidence

Sanctions are not permissible where no evidence has been lost, including where destroyed evidence is obtained through other sources. *See supra* at 8-9. Here, Plaintiff has access to all information relevant to her claims in this lawsuit and has made no showing to support her contention that meaningful evidence has been lost.

Plaintiff's Motion focuses on two general buckets of evidence: (1) public posts made on the MMP, and (2) direct messages with the MMP administrator account. *See* Pl. Mem. at 14. With respect to the first bucket, it is undisputed that Plaintiff frequently visited the MMP, and that both she and her friends and supporters frequently captured posts from the page via screenshot. James Aff., Ex. E at 320:14–323:11. Indeed, during discovery, Plaintiff herself produced ***over 900***

***screenshots*** of posts and comments from the MMP. *See id.*

It is also undisputed that the MMP continued to be active and publicly available until ***after*** the Complaint was filed. *See* Pl. Mem. at 5. This means that Plaintiff and her counsel had full access to the MMP as they worked to form the claims asserted in this lawsuit. The original Complaint (as well as the Amended Complaint) is replete with descriptions and reproductions of posts made on the MMP—revealing that Plaintiff and her counsel did in fact consult the MMP to prepare this lawsuit. *See generally* Compl.; Am. Compl. (ECF No. 106).

The notion that Plaintiff omitted more egregious or more probative posts than the ones included in her 117-page, 305-paragraph Complaint is, frankly, ridiculous. Similarly, Plaintiff's suggestion that meaningful posts may have existed beyond the 900+ she screenshotted upon almost daily visits to the MMP such that she could have "expanded" her claims of defamation is also not plausible. *See* Pl. Mem. at 11. The reality is that Plaintiff had full and complete access to the MMP and took steps to ensure that she identified and preserved all of the evidence from that site that she wanted to use in this lawsuit. *See Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 41–42 (1st Cir. 2017) (affirming denial of sanctions for damaged yacht, where defendant "had a number of other opportunities to examine the boom, inspect the yacht, and conduct sea trials[,]" and "[was] unable to explain what it thinks it might have discovered upon inspection of the boom that it could not learn from the materials and information plaintiffs provided").

As for the second bucket of evidence, the direct messages sent to the administrator of the MMP were never publicly available. Those messages were seemingly lost by the deletion of the MMP and Plaintiff did not have them at the time that this Motion was filed. However, filing this Motion spurred additional searches by the parties and subsequent productions. It is now clear that all such direct messages have been obtained.

Plaintiff had a full opportunity to question Mr. McVeigh—the administrator of the MMP—about the direct messages he received, including from whom they were received, what substance they contained, and the extent of such messages. That sworn testimony alone could be deemed sufficient replacement for any evidence that was lost. *See Boudreau*, 955 F.3d at 237–38. Mr. McVeigh's testimony was that he recalled communicating with only two defendants through the direct messaging function of the MMP—Mr. Germain and Mr. Opachinski. *See* James Aff., Ex. F at 156:14–157:21; 158:1–159:12. Mr. McVeigh testified that the communications were limited, and "could have been 25" in number. *See id.* at 156:14–157:21. After this Motion was filed, both Messrs. Germain and Opachinski searched their Facebook accounts. All direct messages with the MMP administrator were located and have been produced. *See* James Aff., Exs. I, J. The number of such messages was nearly identical to the number described in Mr. McVeigh's testimony. Other parties, including Plaintiff, also recently searched their Facebook accounts. Also consistent with Mr. McVeigh's testimony, no other direct messages were located. *See* James Aff., Ex. K. In sum, there is nothing to indicate that extensive direct messages ever existed, and all direct messages that did exist with the alleged "co-conspirators" have seemingly been recovered and produced.

Given the unfettered access to the MMP that Plaintiff had while preparing her case, the extensive efforts she took to preserve the relevant posts, and given the recent production of direct messages sent to the administrator of the MMP, no meaningful evidence has been lost. Accordingly, sanctions are not permissible.

## II. Plaintiff Has Not Been Prejudiced by Any Loss of Evidence

To the extent any evidence in either of these two buckets has been lost, it has not caused Plaintiff any prejudice. Again, it is unbelievable that Plaintiff missed or omitted any meaningful posts from the MMP after making near daily visits, taking more than 900 screenshots, and

consulting the site while preparing her Complaint. But even if she did, it is all but certain that they would have been similar in substance to what she already obtained. Nothing suggests the prior existence of posts that could have materially changed or improved Plaintiff's claims in this lawsuit.

Similarly, the direct messages appear to have been recovered. Any additional direct messages would seem to have limited probative value. These were ***private*** messages. Thus, even if they contained disparaging comments about Plaintiff, they cannot support claims like defamation or intentional infliction of emotional distress, and they cannot serve as evidence that Plaintiff was somehow chilled in the exercise of her First Amendment rights (given that she never saw them).

The only other evidence Plaintiff contends was lost through deletion of the MMP are playable videos and "metadata, upload information, and other background information[.]" *See* Pl. Mem. at 2. The screenshots of posts she preserved appear to include much of this information, including which account made the post, the date of the post, how many likes or reactions the post garnered, and any comments on the post. *See, e.g.,* Am. Compl. ¶¶ 65 (showing reactions to the post); 77–79 (reciting comments on a Facebook post); 90–91 (screenshots reflecting comments); 97 (same). Moreover, metadata, including the IP address information through which Plaintiff ultimately discovered that Mr. McVeigh was the administrator of the MMP, was available via third-party subpoena. *See* Pl. Mem. at 7; *see also Walsh v. Tara Constr., Inc.*, No. CV 19-10369-LTS, 2021 WL 12094222, at *5 (D. Mass. June 7, 2021) (declining to enter sanctions because party was not prejudiced by deletion of text message that was obtainable via third-party subpoena).

The larger point, however, is that none of this evidence is meaningful in terms of proving or disproving Plaintiff's claims. Even if "metadata, upload information, and other background information" are missing, their loss has no material impact on this lawsuit. Plaintiff's claims do not fail because she is missing technical website data that was lost by the deletion of the MMP.

They fail because the extensive evidence that does exist does not support them. Where the loss of evidence has no material impact on a party's ability to present her case, there is no prejudice that justifies sanctions. *See Booker v. Massachusetts Dep't of Pub. Health*, 612 F.3d 34, 47 (1st Cir. 2010) (spoliation instruction was not warranted where plaintiff "proffered no evidence that any of those emails were even potentially relevant *to her claims in this case*" as required to demonstrate prejudice); *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, No. CV 15-13290-FDS, 2017 WL 3317413, at *7 (D. Mass. Aug. 3, 2017) (finding insufficient evidence of prejudice where plaintiff made no showing that wiped laptop contained any information relevant to product line it alleged to be defective); *Small v. Gen. Motors Corp.*, No. CIV 05-131-P-H, 2006 WL 3332989, at *31 n. 53 (D. Me. Nov. 15, 2006), *report and recommendation adopted*, 474 F. Supp. 2d 186 (D. Me. 2007) (movant can only be prejudiced by spoliation of evidence if "[the lost evidence] is relevant to the movant's theory"); *Ward v. Schaefer*, No. CV 16-12543-FDS, 2019 WL 13196106, at *9 (D. Mass. Sept. 18, 2019) (plaintiff's "wish list of the evidence [plaintiff] would like to put forward at trial" could not support a finding of prejudice without "concrete suggestions" of lost evidence that would be material to plaintiff's claims); *Shawmut Corp. v. FXI, Inc.*, 802 F. Supp. 3d 259, 270 (D. Mass. 2025) (inability of defendant to examine allegedly defective product was material to defendant's ability to disprove plaintiff's claims, but prejudice was mollified by plaintiff's "detailed records of all of the defective product claims at issue in this case"). General, speculative claims of prejudice do not suffice. *See Sharp*, 872 F.3d at 42 (movant's "vague reference to the generalized prejudice it suffered" was insufficient for Rule 37(e) sanctions).

## III. Makepeace Cannot Be Held Responsible for the Unauthorized Deletion of a Private Facebook Account

Even if material evidence had been lost, and even if that loss caused prejudice to Plaintiff, sanctions against Makepeace would still be inappropriate. This is because Makepeace took

reasonable steps to preserve evidence in its possession, custody, and control, and because the MMP was never within Makepeace's possession, custody, or control. In other words, Makepeace never had a responsibility to preserve the MMP and had no ability to prevent its deletion.

### *A. Makepeace Never Had Possession, Custody, or Control Over the MMP*

Sanctions are only permissible against a party where that party failed to take reasonable steps to preserve evidence and that failure led to the loss of evidence. *See supra* at 8-9. Here, Makepeace took reasonable steps to preserve all evidence in its possession, custody, and control. It had a general culture of preservation and did not employ auto-delete functions on its electronic systems. As discussed above, extensive preservation measures were implemented in response to an OIG preservation notice prior to this lawsuit being filed. *See supra* at 4-5. Immediately upon receipt of this lawsuit, moreover, Mr. Kane—Makepeace's CEO—coordinated with counsel and took steps to notify relevant personnel of the suit and provide preservation instructions. *See* Kane Aff. ¶¶ 4–5. These instructions were largely redundant since the earlier preservation measures remained in place. *See id.* Makepeace later followed up with a formal written hold notice, again reiterating the requirements to preserve relevant evidence. *See id.* ¶ 6.

Furthermore, within days after receiving the Complaint, Mr. Kane made direct inquiries of key personnel about their involvement with and knowledge of the creation and administration of the MMP. Mr. Kane had previously instructed all employees to avoid public engagement with Plaintiff and not to get involved with her advocacy efforts. *See supra* at 4–5. The negative responses he received—including from Mr. McVeigh—were consistent with this instruction.

These were all reasonable steps to preserve relevant evidence. But even if none of these steps had been taken, Makepeace could still not be held responsible for the destruction of the evidence at issue in the Motion, because that evidence was never in its possession, custody, or

control. *See supra* at 5. The spoliation at issue concerns the MMP. The MMP was a private Facebook page, not a Makepeace website. The platforms on which the MMP operated and the servers on which it resided were owned and controlled by Facebook, not Makepeace. The mere fact that one of Makepeace's employees created and administered the MMP does not mean that preserving the MMP was Makepeace's responsibility. *See supra* at 4–5.

Courts have consistently held that a corporate defendant cannot be held liable for the spoliation of its employees' personal, non-work-related data that is outside of the company's possession, custody, or control. *See*, *e.g.*, *Sonrai Sys., LLC v. Romano*, No. 16 C 3371, 2021 WL 1418405, at *17–19 (N.D. Ill. Jan. 20, 2021), *report and recommendation adopted*, No. 1:16-CV-03371, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021) (corporate defendant not liable for former employee's deletion of emails absent "evidence that the e-mail string ever existed on [company's] computer system"); *Reynolds v. City of Rochester*, No. 6:23-CV-06506 FPG CDH, 2026 WL 1145810, at *13-16 (W.D.N.Y. Apr. 28, 2026) (city defendant not liable for employee's failure to preserve evidence stored on personal devices and personal accounts that were not within control of the city). "A party can be held accountable for preserving evidence only to the extent that it has control over the evidence in question." *Sonrai Sys.*, 2021 WL 1418405 at *17–19 (company did not have control over an email from employee's personal Gmail account). Evidence is deemed to be within a party's possession, custody, or control where a party has "*actual* possession, custody or control, or has the legal right to obtain the [evidence] on demand." *See Rattie v. Balfour Beatty Infrastructure, Inc.*, No. 22-CV-05061-RS (LJC), 2023 WL 5507174, at *3-4 (N.D. Cal. Aug. 25, 2023) (emphasis original). Where such control is absent, sanctions for the spoliation are not appropriate. *See, e.g., id.* (declining to compel production of employees' personal ESI absent "evidence indicating one way or the other whether [the company] has any type of control over its

employees' personal cell phones or other electronic devices"); *Townsend v. Am. Insulated Panel Co., Inc.*, 174 F.R.D. 1, *4 (D. Mass. 1997) (employee not responsible for destruction of walk-in freezer where the freezer was not in the employee's control). This is especially the case with respect to social media. *See, e.g.*, *Bear v. Escambia Cty. Bd. of Cty. Comm'rs*, Case No. 3:19cv4424-MCR-HTC, 2021 WL 12169650, at *7-8 (N.D. Fla. May 17, 2021) (finding that "when it comes to social media" courts have "not gone so far as to hold that such information is in the employer's control, even when the device is used for the employer's business").

The same rationale applies here. The MMP was a personal, password-protected account that existed on Facebook servers that was at no point accessible to, or within the control of, Makepeace. Accordingly, Makepeace cannot be sanctioned for its destruction.

### *B. Makepeace Did Not Know Mr. McVeigh Was Administering the MMP and Did Not Authorize Its Deletion*

The fact that the MMP was outside of Makepeace's possession, custody, and control is dispositive. That fact alone prevents sanctions against Makepeace and requires denial of Plaintiff's Motion. But sanctioning Makepeace would be doubly improper insofar as Makepeace was wholly unaware of Mr. McVeigh's conduct in administering the MMP and never authorized or instructed Mr. McVeigh to delete it.

Notwithstanding Plaintiff's speculation and surmise, the record evidence in this case is extensive, uniform, and unequivocal that Mr. McVeigh acted alone in creating, administering, and deleting the MMP, and no one at Makepeace (or outside Makepeace) knew of his involvement until after this lawsuit was filed and after the MMP was deleted.[1] *See supra* at 4-5. Mr. McVeigh

[1] In support of her argument that Makepeace knew of Mr. McVeigh's involvement, Plaintiff notes that, upon receiving the Complaint, Makepeace employee Peter Lorenz "mysteriously" sent a copy to Mr. McVeigh. *See* Pl. Mem. at 5. Leaving aside the fact that Plaintiff chose not to depose Mr. Lorenz—which could have cleared any confusion—it is not mysterious that a Makepeace employee would provide their in-house lawyer with information regarding a new lawsuit naming the company and its CEO as defendants. Plaintiff also highlights Mr. McVeigh's disclosure of his

admitted that he lied to Mr. Kane when questioned about any involvement with the MMP. *See supra* at 7; James Aff., Ex. F at 77:25–80:4, 135:13–23. For his part, Mr. Kane testified that he had no reason to suspect that Mr. McVeigh was being untruthful. *See* James Aff., Ex. A at 224:20–225:11. In the extensive record in this case, there is not a shred of evidence that Makepeace was aware of Mr. McVeigh's conduct. Nothing supports Plaintiff's bald assertion that Makepeace knew about and authorized the MMP's deletion. Rather, the record evidence is that Makepeace took reasonable steps to preserve evidence, and any purported spoliation was in ***direct contravention*** of orders of Makepeace's CEO. *See supra* at 4–5.

### *C. The Deletion of the MMP Was an Act of Self-Preservation*

A further reason that sanctions are not appropriate as to Makepeace is that Mr. McVeigh's deletion of the MMP was motivated by self-preservation. *See* James Aff., Ex. F at 15:10–23. When asked why he deleted the MMP, Mr. McVeigh stated plainly: "I didn't want to be included in any kind of suit." *See id.* Plaintiff acknowledges the same, noting that Mr. McVeigh deleted the MMP with the "intention of insulating himself from this litigation." Pl. Mem. at 11, n.13. Mr. McVeigh was not seeking to protect Makepeace when he deleted the MMP, he was seeking to protect himself. Such intent does not justify sanctions against Makepeace.[2] *See, e.g., Edifecs, Inc. v. Welltok, Inc.*, No. C18-1086JLR, 2019 WL 5862771, at *5 (W.D. Wash. Nov. 8, 2019), *aff'd*, 840 F. App'x 224 (9th Cir. 2021) (declining to impose sanctions on employer for deletion of text messages absent any evidence that employees "deleted text messages to protect [company], as

involvement in the MMP to Chris Ierardi, a senior executive at Makepeace. *See id.* at 6. But here Plaintiff conveniently omits the timeline. The undisputed testimony is that Mr. McVeigh did not tell Mr. Ierardi that he was the administrator of the MMP until months after the Complaint was filed and the MMP was deleted. *See supra* at 5–6.

[2] Such intent is also not sufficient to trigger sanctions against Mr. McVeigh under Rule 37. What matters for purposes of Rule 37 is an intent to deprive another party of the use of evidence in litigation. Mr. McVeigh did not intend to deprive anyone of the use of the public posts and other information on the MMP. He simply wanted to stay hidden as the anonymous administrator of the site.

opposed to protecting themselves"); *Nucor Corp. v. Bell*, 251 F.R.D. 191, 196 (D.S.C. 2008) (declining sanctions against employer for employee's spoliation where employee destroyed a thumb drive to protect himself, had not disclosed its existence to the employer, and had not consulted with the company about discarding the drive).

## IV. The Issue of Vicarious Liability Should Not Be Determined on a Motion for Spoliation

Denial of Plaintiff's Motion is also warranted on the grounds that it is a premature attempt to address the larger issue of Makepeace's vicarious liability for Mr. McVeigh's conduct. Vicarious liability is a central issue in this case. Plaintiff's claims against Makepeace fail in all respects, but they are particularly hollow if she cannot impute Mr. McVeigh's conduct to the company. A finding that Makepeace is vicariously liable for Mr. McVeigh's deletion of the MMP essentially requires the Court to also find Makepeace liable for Mr. McVeigh's creation and administration of the MMP and the content of his postings on it. Deciding this pivotal issue on the instant Motion without the benefit of the full factual record is premature, fundamentally prejudicial to Makepeace, and an improper end-run around summary judgment, for which Makepeace intends to move in full. When faced with similar situations, other federal courts have deferred ruling on the issue of spoliation. *See Knoth v. Apollo Endosurgery US, Inc.*, No. 5:18-CV-49-DCB-MTP, 2021 WL 3373801, at *5 (S.D. Miss. Aug. 3, 2021); *Tchatat v. City of New York*, 795 F. App'x 34, 37 (2d Cir. 2019). This Court should do the same.[3]

## V. The Requested Sanctions Are Disproportionate and Unwarranted

Finally, the sanctions sought by Plaintiff should be rejected because they are disproportionate to any harm that was caused and unwarranted based on Makepeace's overall

---

[3] Given the potentially dispositive nature of a ruling on vicarious liability, it is likely outside the purview of the Federal Magistrates Act. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13 (1st Cir. 2010) (noting that magistrate judges ordinarily may not decide motions that are dispositive either of a case or of a claim or defense within a case).

conduct. Since Rule 37(e) was amended in 2015, this Court has never granted the type of dispositive sanctions Plaintiff is seeking in the Motion. Even in instances where courts in the First Circuit have found that the moving party was prejudiced by the loss of evidence—which is not the case here—the extraordinary relief of dispositive sanctions was still deemed too severe. *See*, *e.g.*, *McLaughlin v. Lenovo Glob. Tech. (United States) Inc.*, 682 F. Supp. 3d 149, 166-67 (D. Mass. 2023); *NuVasive, Inc. v. Day*, No. CV 19-10800-DJC, 2021 WL 9059745, at *6-9 (D. Mass. Aug. 23, 2021); *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, No. CV 15-2121 (BJM), 2017 WL 1155743, at *1-3 (D.P.R. Mar. 27, 2017); *Postle v. SilkRoad Tech., Inc.*, Civil No. 18-cv-224-JL, 2019 WL 692944, at *7 (D.N.H. Feb. 19, 2019).

The rare instances where dispositive sanctions have been deemed warranted in other jurisdictions involve either such extreme prejudice that the movant could not possibly make their case or enormously egregious conduct that is inapposite to the facts in this case. *See, e.g.*, *Amica Mut. Ins. Co. v. BrassCraft Mfg. Co.*, C.A. No. 17-103-JJM-LDA, 2018 WL 2433560, at *4 (D.R.I. May 29, 2018) (dismissal allowed where loss of evidence meant defendant could not mount a defense and plaintiff could not prove its case); *Atalian US New England, LLC v. Navarro*, C.A. No. 1:20-cv-00133-JJM-LDA (D.R.I. 2023) (default entered where the defendants not only deleted data and claimed inability to access relevant email accounts in order to deny discoverable evidence to the plaintiff, but also deliberately misled the court about their conduct).

Unlike those circumstances, Plaintiff is not prevented from pursuing her claims due to the loss of any evidence through the deletion of the MMP. Plaintiff has a wealth of evidence of the same kind and nature of what she contends was destroyed. In addition, Makepeace did not intentionally cause the spoliation of any evidence and has not taken any steps to prevent the parties from obtaining relevant information. Rather, Makepeace has made good faith, reasonable efforts

to preserve evidence. It has also engaged diligently in discovery, making substantial document productions and cooperating with Plaintiff in the deposition of many of its employees. A default judgment or adverse inference against Makepeace would be extraordinary relief that goes well beyond what could possibly be needed to cure any prejudice that has occurred.[4]

Granting Plaintiff's requested sanctions would not only unfairly punish Makepeace, it could cause prejudice to other parties to this case. Plaintiff's allegation is that the Defendants are engaged in a conspiracy to deprive her of her constitutional rights. As private parties, Makepeace and Mr. McVeigh cannot conspire to chill Plaintiff's constitutional rights without the involvement of a municipal actor. Therefore, by the nature of this claim, any adverse inference or default against Mr. McVeigh or Makepeace on the issue of conspiracy pursuant to 42 U.S.C. § 1983 would be tantamount to an adverse inference or default judgment against all Defendants on one of the central claims in this case. Such an outcome would cause extreme prejudice to these other Defendants and must be avoided. *See* Plymouth Defendants' Limited Opposition to Plaintiff's Motion for Sanctions for Spoliation of Evidence (ECF No. 219); Limited Opposition of SLT Construction Corp. and Peter Opachinski to Plaintiff's Motion for Sanctions for Spoliation of Evidence (ECF No. 220); Response of Alan G. Germain, Stephen G. Gray, and Town of Carver (ECF No. 218).

## RELIEF REQUESTED

For all of these reasons, Makepeace respectfully requests that this Court deny Plaintiff's Motion in its entirety.

---

[4] Courts routinely consider the extent of prejudice suffered when fashioning sanctions, even in cases where a finding of prejudice is not required. *See Townsend*, 174 F.R.D. at 4; *McLaughlin*, 682 F. Supp. 3d at 165.

Respectfully submitted,

A.D. MAKEPEACE COMPANY

By its attorneys,

*/s/ Geoffrey M. Raux*

Geoffrey M. Raux (BBO # 674788)
Lea Gulotta James (BBO # 705421)
Miranda Curtis (BBO # 709084)
Jared Pliner (BBO # 713551)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Phone: 617-342-4000
graux@foley.com
ljames@foley.com
mcurtis@foley.com
jpliner@foley.com

Dated: October 9, 2026

**CERTIFICATE OF SERVICE**

I, Lea Gulotta James, hereby certify that on October 9, 2026, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF electronic filing system.

*/s/ Lea Gulotta James*
Lea Gulotta James