UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF CARVER, MA, TOWN OF PLYMOUTH, MA, ALAN G. GERMAIN, STEPHEN G. GRAY, BETTY CAVACCO, MICHAEL MAIN, A.D. MAKEPEACE COMPANY, JAMES F. KANE, SLT CONSTRUCTION CORPORATION, PETER OPACHINSKI, and MICHAEL MCVEIGH,<br><br>Defendants. | Case No. 1:24-cv-12347-ADB |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF MARGARET E. SHEEHAN'S MOTION FOR**
**SANCTIONS AGAINST MICHAEL MCVEIGH FOR SPOLIATION OF EVIDENCE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

I. MMP and Its Context ........ 2

II. Sheehan Preserved MMP Posts for This Lawsuit ........ 4

III. MMP Private Facebook Messages Are Available ........ 6

ARGUMENT ........ 6

I. Sheehan's Request for Sanctions Should Be Denied Because No Relevant MMP Content Was Lost and Cannot Be Replaced ........ 6

A. There Is No Evidence That Any Relevant MMP Posts Were Not Preserved ........ 8

B. Relevant MMP Private Messages Are Available and Have Been Produced ........ 11

C. Other Allegedly "Lost" Information Was Available Through Discovery ........ 12

II. The Court Should Deny Sheehan's Request for Default Judgment and Defer the Determination of the Appropriate Remedy Until Trial ........ 13

A. Sheehan Cannot Show Prejudice from the Deletion of MMP ........ 14

B. Sheehan Cannot Show That McVeigh Deleted MMP With the Intent to Deprive Her of Its Use in This Case ........ 14

C. Default Judgement Is a Disproportionate Remedy ........ 15

D. Sheehan's Request for Attorneys' Fees Should Be Denied as Unreasonable and Beyond the Scope of the Spoliation Request ........ 18

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Atalian US New England, LLC v. Navarro*,
2022 WL 2681297 (D.R.I. July 12, 2022) ........ 18

*Bloom v. Campbell*,
2026 WL 951334 (D. Mass. Apr. 8, 2026) ........ *passim*

*Boudreau v. Petit*,
2025 WL 553975 (D.R.I. Feb. 19, 2025) ........ 14, 16

*Carranza v. Unique Auto Detail LLC*,
2016 WL 11816242 (D. Mass. Nov. 1, 2016) ........ 17

*Century ML-Cable Corp. v. Carrillo*,
43 F. Supp. 2d 176 (D.P.R. 1998) ........ 7

*Chepilko v. Henry*,
722 F. Supp. 3d 329 (S.D.N.Y. 2024) ........ 7

*Citizens for Consumer Just. v. Abbott Lab'ys*,
2007 WL 7293758 (D. Mass. Mar. 26, 2007) ........ 7

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*,
2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021) ........ 15

*Freeman v. Giuliani*,
691 F. Supp. 3d 32 (D.D.C. 2023) ........ 17

*Galaxy Am., Inc. v. EZ Inflatables, Inc.*,
2021 WL 12092683 (M.D. Fla. Aug. 27, 2021) ........ 10

*Glob. NAPs, Inc. v. Verizon New England Inc.*,
603 F.3d 71 (1st Cir. 2010) ........ 17

*Gordon v. DreamWorks Animation SKG, Inc.*,
935 F. Supp. 2d 306 (D. Mass. 2013) ........ 7

*Hefter Impact Techs., LLC v. Sport Maska, Inc.*,
2017 WL 3317413 (D. Mass. Aug. 3, 2017) ........ 7, 9

*Hogan v. Teamsters Loc. 170*,
495 F. Supp. 3d 52 (D. Mass. 2020) ........ 10

*Hooper-Haas v. Ziegler Holdings, LLC*,
690 F.3d 34 (1st Cir. 2012) ........ 17

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
341 F.R.D. 474 (S.D.N.Y. 2022) ........ 12

*In re TelexFree Sec. Litig.*,
2025 WL 2371354 (D. Mass. Aug. 15, 2025) ........ 9, 14, 16, 18

*Insulet Corp. v. EOFlow Co., No. CV 23-11780-FDS*,
2024 WL 5202755 (D. Mass. Dec. 23, 2024) ........ 19

*Leidig v. Buzzfeed, Inc.*,
2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017) ........ 15

*London-Sire Recs., Inc. v. Doe 1*,
542 F. Supp. 2d 153 (D. Mass. 2008) ........ 3

*McLaughlin v. Lenovo Glob. Tech. (United States) Inc.*,
682 F. Supp. 3d 149 (D. Mass. 2023) ........ 11, 16, 19, 20

*McMann v. Doe*,
460 F. Supp. 2d 259 (D. Mass. 2006) ........ 18

*Micron Tech., Inc. v. Rambus Inc.*,
645 F.3d 1311 (Fed. Cir. 2011) ........ 11

*Moody v. CSX Transportation, Inc.*,
271 F. Supp. 3d 410 (W.D.N.Y. 2017) ........ 16

*NuVasive, Inc. v. Day*,
77 F.4th 23 (1st Cir. 2023) ........ 19

*Postle v. SilkRoad Tech., Inc.*,
2019 WL 692944 (D.N.H. Feb. 19, 2019) ........ 8, 10, 13, 16

*Reynolds v. City of Rochester*,
2026 WL 1145810 (W.D.N.Y. Apr. 28, 2026) ........ 8, 9

*Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*,
2019 WL 118412 (D.R.I. Jan. 7, 2019) ........ 18

*Walsh v. Tara Constr., Inc.*,
2021 WL 12094222 (D. Mass. June 7, 2021) ........ 7, 9, 12

***FEDERAL STATUTES***

Title 42 U.S.C. § 1983 ........ 10

### ***FEDERAL RULES***

Fed. R. Civ. P. 37 .......... 8, 16
Fed. R. Civ. P. 37(b) .......... 7
Fed. R. Civ. P. 37(e) .......... *passim*
Fed. R. Civ. P. 37(e)(1) .......... 2, 7
Fed. R. Civ. P. 37(e)(2) .......... 2, 7, 15, 16, 17, 18

### ***OTHER AUTHORITIES***

*Facebook Help Center, What Happens If You Permanently Delete Your Facebook Profile*, https://www.facebook.com/ .......... 6

## INTRODUCTION

Plaintiff Margaret E. Sheehan ("Sheehan") asks this Court to enter the ultimate sanction available under Rule 37(e) – default judgment – and to award her nearly $378,000 in fees for Defendant Michael McVeigh's ("McVeigh") deletion of a Facebook page ***after*** Sheehan and her supporters preserved its content and her Complaint was filed. Sheehan's Motion ignores the threshold requirements that she must prove to obtain spoliation sanctions under Rule 37(e): (1) that relevant evidence was actually lost, and (2) that it cannot be restored or replaced through other discovery. See Fed. R. Civ. P. 37(e); Bloom v. Campbell, 2026 WL 951334, at *6 (D. Mass. Apr. 8, 2026) (Boal, J.) ("[T]he moving party[] bears the burden of proving the threshold requirements that relevant evidence has been lost and cannot be replaced."). Sheehan fails to address these fundamental questions because (i) no ***relevant*** evidence was actually lost; and (ii) anything that was deleted has been obtained through other means.

Sheehan's Motion fails to disclose to the Court that she and her allies spent more than a year screenshotting the Facebook page before it was deleted, preserving nearly 900 screenshots – over one thousand pages – of its profile, posts, comments, and likes before she filed suit. Her counsel drafted a 117-page, 305-paragraph Complaint while the Facebook page was publicly available, and every post referenced in the Complaint and Amended Complaint is supported by a screenshot produced by Sheehan in this case. Further, the private messages between the Facebook page and other Defendants that Sheehan claims are lost have been produced by those Defendants, and the metadata and "background information" she identifies as missing have been supplied by Meta, Comcast, and McVeigh's own testimony. In short, Sheehan has not shown that a single post or piece of evidence of which she is aware was not captured or cannot be replaced.

Because Sheehan cannot show that relevant information was lost and cannot be replaced, Rule 37(e) does not authorize any sanction, and therefore, the Court need not reach the question

of remedy under Rule 37(e)(1) and (2). Nevertheless, even if the Court were to impose some remedy, default judgment is disproportionate and draconian. Because Sheehan possessed the relevant MMP evidence, she has suffered no prejudice. Nor can Sheehan demonstrate that McVeigh deleted MMP with the specific intent to deprive her of using its contents in the litigation to justify sanctions under subsection (e)(2). Any lesser sanction is best determined at trial when it is clear what claim(s) or portions thereof remain against McVeigh.[1] Finally, Sheehan's excessive attorneys' fee request seeks to shift costs she would have incurred regardless of any alleged spoliation – including fees that were incurred long before the Facebook page's deletion. As such, Sheehan's fee request should also be denied.

## BACKGROUND

### I. MMP and Its Context

Beginning in 2021, Sheehan, an environmental lawyer and activist, embarked on a multi-year campaign to oppose cranberry farming and sand mining operations in Southeastern Massachusetts. See ECF No. 106, p. 1, ¶¶ 15, 35-36. As part of this campaign, she formed a non-profit, Community Land & Water Coalition ("CLWC"), to target local companies and towns that she perceived as antagonistic to her mission, which included Defendants in this lawsuit. Id. ¶¶ 36, 49; Stranahan Affidavit ("Aff."), Ex. 1 – (*Sheehan Deposition)* at 21-24, 580-582.[2] Since 2021, Sheehan, on behalf of CLWC and others, has filed numerous lawsuits and administrative actions against Defendants A.D. Makepeace Company ("Makepeace"), SLT Construction Corporation ("SLT"), the Town of Carver, and the Town of Plymouth. See ECF Nos. 136-1, 136-2, 213-1 at 207-208; Ex. 1 at 580-581; Ex. 4 at 138. These companies and towns have defended those suits at

[1] The Court has already dismissed Count 17 (defamation) and Count 18 (intentional infliction of emotional distress) to the extent they are based on eighteen of the twenty-nine statements alleged against McVeigh on the basis that such statements are non-actionable as a matter of law. See ECF No. 193. McVeigh also intends to file a motion for summary judgment contending that the remaining statements are likewise not defamatory as a matter of law.

[2] Exhibits referenced hereinafter are those attached to the Affidavit of Kileigh Stranahan in Opposition to Plaintiff's Motion for Sanctions Against Michael McVeigh for Spoliation ("Stranahan Aff.").

significant cost, maintaining that Sheehan's claims are baseless. See ECF No. 213-1 at 207-208; Ex. 1 at 580-581; Ex. 4 at 138. Sheehan frequently took her attacks against these Defendants to social media, disparaging Makepeace, SLT, and their employees and accusing them of criminal and fraudulent conduct. Using disparaging terms like "sand mafia," "climate criminals" and "thugs," Sheehan embarked on a public campaign to smear the Defendants and sand mining at large. Ex. 1 at 287-289, 307-310.

After years of Sheehan's onslaught of baseless lawsuits and online attacks, McVeigh created a Facebook page called "Meg Costs Us Millions" ("MMP") to bring attention to Sheehan's conduct. See ECF No. 213-1 – (*McVeigh Deposition)* at 15-16, 26, 44, 91-92, 101, 206. MMP was created on January 8, 2023, and remained publicly accessible until September 13, 2024, the day *after* the 100+ page Complaint in this case was filed. Id. at 12; ECF No. 1. During this time, McVeigh was MMP's sole administrator. See ECF No. 213-1 at 15-16. To express his views anonymously – a right protected by the First Amendment[3] – McVeigh did not identify himself as MMP's administrator; instead, he created a Facebook profile called "Rebecca Newhouse." Id. at 17-18, 20. McVeigh began posting on MMP in January 2023 and stopped posting months before the page was taken down. Id. at 131. The last MMP post referenced in the Complaint was made on May 22, 2024. ECF No. 1, ¶ 117.

While the page was live, McVeigh exchanged private messages with other users through Facebook's messenger function. See ECF No. 213-1 at 155-157. At his deposition, the only Defendants with whom McVeigh recalled exchanging such messages were Alan Germain, former Chair of the Carver Finance Committee and Conservation Commission, and Peter Opachinski, the President of SLT Construction Corporation. Id. at 155-57; ECF No. 218; ECF No. 220. Michael

[3] London-Sire Recs., Inc. v. Doe 1, 542 F. Supp. 2d 153, 163 (D. Mass. 2008) ("As the Supreme Court has repeatedly held, the First Amendment protects anonymous speech").

Main, Chair of the Plymouth Zoning Board of Appeals ("ZBA"), and Stephen Gray, Chair of the Carver ZBA, each testified that they did not have Facebook accounts. Ex. 4 – (*Main Deposition)* at 142; Ex. 2 – (*Gray Deposition)* at 155. Betty Cavacco, former Chair of the Plymouth Select Board and member of the Community Preservation Committee, testified that she was unaware that Facebook had a private messaging function. Ex. 3 – (*Cavacco Deposition)* at 169-171. McVeigh likewise testified that he did not exchange private Facebook messages with these Defendants. See ECF No. 213-1 at 158-159.

On September 13, 2024, the day after the Complaint was filed, McVeigh deleted MMP. See ECF No. 213-1 at 12. McVeigh testified that, after a coworker sent him a copy of the Complaint, he deleted MMP out of fear of being included in the lawsuit. Id. at 13-16. He also deleted the associated YouTube and Twitter/X accounts. Acting in a panic, he did not preserve the accounts before deleting them. Id. at 12-13, 132. McVeigh explained, when he deleted MMP, he did not think that he was destroying evidence, and it was not his "hope" that that there would be no remaining evidence of the Facebook page. Id. at 14-15. Instead, he testified that he deleted the page with the purpose of trying to protect his anonymity. Id. at 25.

## II. Sheehan Preserved MMP Posts for This Lawsuit

By the time MMP was deleted, Sheehan had already preserved relevant information from MMP. While the page was live, Sheehan viewed it often, testifying that it is "possible that [she] visited [MMP] every day." Ex. 1 at 189. Beginning "shortly after she discovered [MMP]," and no later than January 2023, Sheehan and her supporters screenshotted MMP's content, including its profile, mission statement, hundreds of posts, and the associated comments and likes. Ex. 1 at 321; Stranahan Aff. ¶ 17. Sheehan testified that ten to twenty of her supporters captured screenshots of MMP to send to Sheehan. Id. at 322-323. According to the metadata of the nearly 900 screenshots produced in discovery, this effort continued for more than a year, yielding over one thousand pages

of screenshots that she preserved before filing suit.[4] Stranahan Aff. ¶¶ 7-10, 17. Notably, Sheehan could not recall or specifically identify any MMP post that was not captured by a screenshot. Ex. 1 at 324-328. At her deposition, Sheehan testified that she did not know "how many posts there were" and did not know "how many were screenshotted." Id. at 324. She assumed that there were "probably many" posts that she did not capture, but she could not remember a "specific one," noting that "a lot of people took those screenshots, not just [her]." Id. at 321-322, 326-328.

Critically, when Sheehan and her counsel prepared the 117-page, 305-paragraph Complaint, the entirety of MMP was publicly available to them. Although McVeigh was not named in the original Complaint, the administrator of MMP was named as "John Doe," and Sheehan included in the Complaint the factual allegations against the MMP administrator and other Defendants. See ECF No. 1. Indeed, at a status conference on January 30, 2025, Sheehan's counsel explained to Judge Burroughs that she drafted such a lengthy Complaint because of "the number of defendants, ten plus the John Doe[]" and because of her vast experience with civil rights cases, "in addition to the short and concise statement of the most cogent facts in the individual counts," she included "the backup facts that [she was] going to need" to assert claims against the Defendants, ***including John Doe***. See Ex. 10 at 4. On June 25, 2025, after MMP had been taken down, Sheehan filed a seventy-four-page Amended Complaint naming McVeigh (and removing Doe) as a defendant. ECF No. 106. Notably, the Amended Complaint included virtually the same MMP content as in the original Complaint. Compare ECF No. 1 with ECF No. 106 ¶ 90. Each MMP post referenced in the original Complaint was reproduced in the Amended Complaint and is supported by a screenshot produced in this litigation. Stranahan Aff. ¶ 17. Nowhere does the

[4] On January 19, 2026, Sheehan served a production of 855 documents "largely consist[ing] of website screenshots regarding the MMP postings in the amended Complaint." See Ex. 5. In response to a subpoena by the Town of Carver, one of Sheehan's allies, Mary Dormer, produced several additional pages of screenshots in June 2026. See Ex. 8. Thereafter, on June 17, 2026, Sheehan made a supplemental production of twenty-one documents, including additional screenshots of MMP. See Ex. 9.

Amended Complaint allege that there were other posts or information that Sheehan recalled but did not have access to. See ECF No. 106.

### III. MMP Private Facebook Messages Are Available

Although deleting MMP eliminated McVeigh's ability to access the private messages sent to and from the MMP account, it did not destroy those messages. See ECF No. 213-1 at 199. According to Facebook, when a user deletes an account, the messages that the user exchanged with others remain in the recipients' inboxes. See Ex. 11 - *Facebook Help Center, What Happens If You Permanently Delete Your Facebook Profile*, (last accessed October 8, 2026) ("Copies of messages you have sent are stored in your friends' inboxes."). After Sheehan filed this motion, Defendants learned that MMP messages may be located in their inboxes under the name "Facebook User" rather than "Meg Costs Us Millions" because of the deletion, and they conducted another search for such messages. Stranahan Aff. ¶¶ 13-15. On September 27, 2026, Germain produced eleven pages of messages exchanged with the MMP account between April 2023 and August 2024. Ex. 12; ECF No. 218. On September 29, 2026, Opachinski produced messages exchanged with the MMP account between September 2023 and June 2024. Ex. 13; ECF No. 220. Other Defendants confirmed that they conducted a similar search and found no messages. Ex. 14.

## ARGUMENT[5]

### I. Sheehan's Request for Sanctions Should Be Denied Because No Relevant MMP Content Was Lost and Cannot Be Replaced

Rule 37(e) exclusively governs spoliation of electronically stored information ("ESI") and permits sanctions where "a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."[6] Sheehan's Motion conspicuously avoids this

[5] Unless otherwise stated, internal quotations and citations have been omitted.
[6] Rule 37(e) provides in full: "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

standard and instead cites law applicable to the Court's inherent authority to impose spoliation sanctions. See Pl. Br. at 12-15.[7] But the law is clear: "[s]ince 2015, Rule 37(e) 'forecloses reliance on inherent authority or state law' to determine when sanctions should be imposed for spoliation of ESI." Walsh v. Tara Constr., Inc., 2021 WL 12094222, at *3 (D. Mass. June 7, 2021) (Boal, J.) (quoting Adv. Comm. Note to 2015 Amendment, Fed. R. Civ. P. 37(e)).

Under Rule 37(e), "a party claiming spoliation of ESI must establish **first** that ESI has been lost and is not available in any other location." Bloom, 2026 WL 951334, at *5 (emphasis added). Only where the moving party establishes both the loss of relevant ESI ***and*** that the information is not available from another source may the Court impose sanctions under Rule 37(e)(1) or (2) by assessing prejudice and intent. See id. at *6 ("the moving party[] bears the burden of proving the threshold requirements that relevant evidence has been lost and cannot be replaced."); Hefter Impact Techs., LLC v. Sport Maska, Inc., 2017 WL 3317413, at *7 (D. Mass. Aug. 3, 2017) ("no basis for sanctions where information that was destroyed in one form is available in another form."); Chepilko v. Henry, 722 F. Supp. 3d 329, 338 (S.D.N.Y. 2024), appeal dismissed (Feb. 4, 2025) ("Before determining whether sanctions are appropriate under either Rule 37(e)(1) or Rule 37(e)(2), the Court must first determine whether the threshold requirements have been satisfied").

Sheehan ignores her threshold burden entirely, skipping directly to subsections (e)(1) and (e)(2) to focus the Court's attention on McVeigh's intent. In so doing, she omits that she preserved

---

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
(A) presume that the lost information was unfavorable to the party;
(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment."

[7] See, e.g., Gordon v. DreamWorks Animation SKG, Inc., 935 F. Supp. 2d 306, 315 (D. Mass. 2013) (applying spoliation analysis pre-2015 amendment to Rule 37(e)); Citizens for Consumer Just. v. Abbott Lab'ys, 2007 WL 7293758, at *4 (D. Mass. Mar. 26, 2007) (evaluating request for spoliation sanctions under Rule 37(b) and court's inherent powers); Century ML-Cable Corp. v. Carrillo, 43 F. Supp. 2d 176, 182 (D.P.R. 1998) (same).

nearly **900 screenshots of MMP,** including every post on which her claims in the Amended Complaint are based. See supra note 5. Sheehan can point to no other relevant evidence that has been lost. Ex. 1 at 324-328. Because Sheehan cannot show that relevant MMP content was lost and is unavailable from another source, her Motion should be denied.

### A. There Is No Evidence That Any Relevant MMP Posts Were Not Preserved

Although Sheehan preserved approximately 900 MMP screenshots and had the Facebook page available when preparing her Complaint, she contends that sanctions are warranted because she and her allies "do not know if they [captured] the full universe of posts." Pl. Br. at 8. That is woefully deficient. To justify her request for sanctions under Rule 37(e), Sheehan must demonstrate not only that some unpreserved posts *actually existed*, but also that those hypothetical posts were relevant to her claims and that their content is unavailable from another source. See Postle v. SilkRoad Tech., Inc., 2019 WL 692944, at *3 (D.N.H. Feb. 19, 2019) (moving party must "demonstrate that information relevant to the claims at issue existed on the devices, was removed from those devices, and does not exist anywhere else."); Reynolds v. City of Rochester, 2026 WL 1145810, at *4 (W.D.N.Y. Apr. 28, 2026) ("party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed"). Courts in this Circuit have required the moving party to establish these facts by clear and convincing evidence, without resorting to speculation. Postle, 2019 WL 692944, at *2-3 (applying "clear-and-convincing evidence standard" to threshold burden); Bloom, 2026 WL 951334, at *6 (citing "clear and convincing evidence" standard to sanctions request under Rule 37). This, Sheehan cannot do.

First, Sheehan – who is represented by experienced counsel – drafted the Complaint with full access to the MMP page, and both the Complaint and the Amended Complaint describe in detail the MMP posts underlying her claims against McVeigh. See ECF Nos. 1 and 106. For every MMP post referenced in either pleading – whether described or pictured – Sheehan has produced

a screenshot of the post and its likes and comments. Stranahan Aff. ¶ 18. Because Sheehan possesses a copy of every post on which her claims rest, those posts cannot support Rule 37(e) sanctions. See Hefter Impact Techs., 2017 WL 3317413, at *7 ("no basis for sanctions where information that was destroyed in one form is available in another form."); Reynolds, 2026 WL 1145810, at *8 ("Facebook post cannot serve as a basis for spoliation sanctions, because at least a copy of it still exists and Plaintiff has access to that copy").

Second, Sheehan's suggestion that MMP contained *other* posts beyond the 900 screenshots is pure speculation. See In re TelexFree Sec. Litig., 2025 WL 2371354, at *6 (D. Mass. Aug. 15, 2025) ("Case law is clear . . . that speculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence."); Walsh, 2021 WL 12094222, at *5 (rejecting sanctions request based on "speculative" arguments that text messages "actually existed"). When asked at her deposition, Sheehan could not identify any MMP post that was not captured.[8] Ex. 1 at 322-328 (Q: "Aside from those 800 to 900, . . . is there any post that you can remember . . . that was not captured in a screenshot?" A: "I would have to look at them all. . . then say, 'Well, was there a comment on that post that I remember that I did not capture.' So that would be . . . not something that I can specifically recall here" . . . Q: "So as you sit here today, you can't remember a specific post?" A: "Not a specific one, but I know there were some").

Sheehan cannot point to any evidence of missing MMP posts, and she relies solely on conjecture to say that relevant posts were not preserved. See In re TelexFree Sec. Litig., 2025 WL

---

[8] Sheehan disingenuously states that "McVeigh claims that he similarly does not know whether those screenshots represent the full universe of MMP posts." Pl. Br. at 8. But Sheehan fails to disclose that she produced the MMP screenshots the day prior to McVeigh's deposition, which also happened to be a federal holiday. See Ex. 5. Before asking McVeigh at his deposition whether he knew if the screenshots captured all of MMP, Sheehan did not show them to McVeigh, nor did McVeigh have an opportunity to independently review them in advance of his deposition testimony. See ECF No. [Add]. McVeigh's testimony "hardly satisfies [Sheehan's] burden of demonstrating that relevant [posts] were actually lost." Compare Reynolds, 2026 WL 1145810, at *9 (testimony that party "did not know whether emails or text messages from 2022 about Plaintiff . . . were deleted . . . hardly satisfies Plaintiff's burden of demonstrating that relevant communications were actually lost").

2371354, at *6 (rejecting assertion that allegedly spoliated documents "would demonstrate . . . knowledge of fraud" as "pure speculation"); Galaxy Am., Inc. v. EZ Inflatables, Inc., 2021 WL 12092683, at *10 (M.D. Fla. Aug. 27, 2021) (rejecting "unsubstantiated allegations of spoliation" of "social media posts containing advertisements of the infringing products" where "Plaintiff failed to identify 'what posts it claim[ed] to be "missing"').

Here, Sheehan posits that unpreserved posts would have revealed "a myriad of readers' comments, based on the debasement of Sheehan, [that] ***could*** have proved several aspects of her claims, e.g., that the readers would not retain Sheehan, that she should be subject to Bar discipline, that she should be run out of town and ostracized for costing the towns 'millions and millions of dollars,' or that hate crimes against her and her family members were warranted." Pl. Br. at 14 (emphasis added). But it defies logic that Sheehan captured hundreds of MMP screenshots, and her counsel drafted a 117-page Complaint with full access to the page, yet both omitted the "most critical" evidence supporting her claims. Id. On this record, Sheehan does not come close to meeting the "clear-and-convincing standard" to show that this evidence actually existed. Postle, 2019 WL 692944, at *3.

Third, the nature of Sheehan's claims makes her spoliation theory implausible. Sheehan has asserted claims against McVeigh for defamation, intentional infliction of emotional distress, conspiracy to violate her First Amendment rights under 42 U.S.C. § 1983, and violation of the Massachusetts Civil Rights Act. A defamation plaintiff must plead "the essential 'who, what, when, and where'" of each allegedly defamatory statement. Hogan v. Teamsters Loc. 170, 495 F. Supp. 3d 52, 62 (D. Mass. 2020). If Sheehan believed other MMP posts were defamatory, she was required to plead them in her Complaint, when she had full access to MMP. Id. She did not. Id. And notably, the Court already dismissed eighteen of the twenty-nine MMP posts she did plead because they were non-defamatory as a matter of law. See ECF No. 193. As such, any alleged

"missing" MMP evidence that relates to dismissed statements or themes that the Court rejected as non-defamatory is not relevant because the Court held that they are not actionable as a matter of law. This includes videos that Sheehan claims she captured only still images of, see Pl. Br. at 2. Because those videos do not relate to any alleged defamatory statement remaining in the case or any claim against McVeigh, they are not relevant. See ECF No. 193 (dismissing as non-defamatory photo-shopped content and other videos alleged in Amended Complaint). As for the civil rights claims, Sheehan's counsel told the Court that the Complaint was so lengthy because she included the "backup facts" needed to support those claims. See Ex. 10 at 4. Again, if additional MMP posts existed and were relevant to those claims, they were available when Sheehan filed her Complaint.

In short, Sheehan cannot show that any MMP post was "lost" and "cannot be restored or replaced" because she preserved screenshots of every such post. As to any other theoretical posts, there is no record that they existed or would be relevant to her claims.[9] Therefore, Rule 37(e) sanctions are an inappropriate remedy, and Sheehan's Motion must be denied.[10]

**B. Relevant MMP Private Messages Are Available and Have Been Produced**

Sheehan likewise cannot meet her burden as to the private messages sent to and from the MMP account. Because those messages remain available from the users with whom MMP communicated, they can be "restored or replaced through additional discovery." Fed. R. Civ. P.

---

[9] Sheehan incorrectly asserts that McVeigh "bears the 'heavy burden' to show a lack of prejudice to the opposing party," while Sheehan need only "com[e] forward 'with plausible, concrete suggestions as to what the destroyed evidence might have been.'" Pl. Br. at 13 (quoting McLaughlin v. Lenovo Global Tech. (U.S.) Inc., 682 F. Supp. 3d 149, 165–66 (D. Mass. 2023)). However, not only has Sheehan **not** come forward with any "plausible, concrete suggestions" as to what relevant MMP content has been lost, this "heavy burden" language derives from the spoliation analysis under the Court's inherent authority that is inapplicable to the spoliation of ESI under Rule 37(e). See id. (quoting Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1328 (Fed. Cir. 2011) (evaluating sanction for bad faith spoliation under court's "inherent power" prior to Rule 37(e)'s amendment)).

[10] Sheehan's argument for sanctions "focus[es]" on the MMP Facebook account, however; she notes that MMP's content was also "reposted" on YouTube and Twitter. See Pl. Br. at 1, n.1. For the same reasons that Sheehan cannot meet her burden for sanctions for the deletion of the MMP Facebook account – because she preserved the relevant MMP posts prior to filing the Complaint – she cannot meet her burden for sanctions for the deletion of the same content on the associated pages. As Sheehan notes, those pages "reposted" the very content which Sheehan preserved. Therefore, that content was not lost and can be replaced. See Fed. R. Civ. P. 37(e).

37(e). See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 341 F.R.D. 474, 495 (S.D.N.Y. 2022) ("Emails sent to or from a custodian are not 'permanently lost or unrecoverable' if they are replaceable through other custodian"). Indeed, the very messages Sheehan contends are relevant – those between MMP and Germain, and between MMP and Opachinski – have now been produced. See Pl. Br. at 9-10. And as McVeigh and other Defendants testified, no other individual Defendants sent private messages to the MMP Account. See ECF No. 213-1 at 158-159; Ex. 2 at 155; Ex. 3 at 169-171: Ex. 4 at 142. Therefore, Sheehan's claim that she has been deprived of messages "show[ing] defendants' knowledge regarding the falsity of the statements and the conspiracy to violate Sheehan's rights," Pl. Br. at 14, fails. See Walsh, 2021 WL 12094222, at *5 (party who obtained copy of lost text message "cannot establish that the information is unavailable in any other location"). Moreover, Sheehan has had or will have the opportunity to question both custodians about those messages: Germain's continued deposition proceeded on October 5, 2026, and Opachinski's is scheduled for October 20, 2026. Stranahan Aff. ¶ 16. Because the messages have been restored through additional discovery, and Sheehan will have examined both recipients about them, the private messages cannot provide a basis for Rule 37(e) sanctions.[11]

### C. Other Allegedly "Lost" Information Was Available Through Discovery

Finally, Sheehan contends that sanctions are warranted because the MMP screenshots omit metadata and "background information," such as the administrator's contact information, the page's registration date, the dates of certain posts, and the IP addresses and equipment from which posts were made. Pl. Br. at 2, 13. This information, too, is available from other sources. Indeed,

---

[11] Sheehan notes that McVeigh also used email addresses, including megcostsusmillions@proton.me in connection with MMP and hotdogh10@gmail.com in connection with T.J. Strongbow, but she does not seek sanctions for the deletion of emails from those accounts. Nor could she. As Sheehan's brief states, "[w]hen McVeigh received emails . . . for MMP, he 'deleted it,' noting that 'that's what I've always done.'" Pl. Br. at 9, n.12. Because McVeigh deleted any such emails in real time – before the Complaint was filed or litigation was anticipated – Sheehan cannot show that any such emails "should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e).

Sheehan acknowledges in her brief that she obtained much of this information from her subpoenas to Meta, Google, and Comcast, as well as from McVeigh's own testimony. Id. at 14. Meta produced the contact information McVeigh used to create MMP and the page's registration date. See Ex. 6. McVeigh confirmed both at his deposition. See ECF No. 213-1 at 17-18. Further, most of the captured posts display the date on which they were made. For those showing only a time stamp relative to the date of the screenshot (e.g., "2d"), the posting date can be determined from the screenshot's metadata: a screenshot created on February 11, 2024, of a post marked "2d" reflects a post made two days prior on February 9, 2024. See Ex. 15.

Meta and Comcast also provided information showing that posts were made from McVeigh's home and Makepeace's headquarters, and McVeigh testified that he posted from both locations and used his company laptop. See ECF No. 213-9; Ex. 6; Ex. 7; ECF No. 213-1 at 128-129. To the extent Sheehan contends that, had McVeigh preserved MMP, Meta would have provided the IP address for each post on MMP and the equipment from which it was posted, nothing in the record supports this assertion. See Affidavit of Katrina Uy, Ex. 17, pp. 19-24 (sample posts, with no IP address or related information provided for each post). Accordingly, Sheehan cannot prove by clear and convincing evidence that this MMP data existed, was lost, and cannot be replaced. See Postle, 2019 WL 692944, at *3. Because the "metadata, upload information, and other background information" Sheehan claims was lost is available to her – and has been provided through discovery – Rule 37(e) sanctions are inappropriate and unwarranted.

## II. The Court Should Deny Sheehan's Request for Default Judgment and Defer the Determination of the Appropriate Remedy Until Trial

Even if the Court finds that Sheehan somehow met her threshold burden as to some MMP content – which it should not – the Court must nonetheless deny her request for default judgment. Once a party meets its threshold burden under Rule 37(e), the Court's "next inquiry is whether the loss of the ESI has caused prejudice or whether the party in possession acted 'with the intent to

deprive another party of the information's use in the litigation.'" Bloom, 2026 WL 951334, at *5. "Upon a finding of prejudice, the court may order measures no greater than necessary to cure the prejudice." Id. As for a finding of intent, "the court may '(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.'" Id.

### A. Sheehan Cannot Show Prejudice from the Deletion of MMP

For the reasons explained, Sheehan cannot show that she was prejudiced by the deletion of MMP. Because she possesses all the MMP posts that serve as the basis for her claims against Defendants, as well as the private Facebook messages that were exchanged between the MMP account and individual Defendants, she cannot show the loss of any evidence material to her claims. Boudreau v. Petit, 2025 WL 553975, at *2 (D.R.I. Feb. 19, 2025) ("Proof that the specific lost ESI is important or material to a significant issue falls on the movant").

### B. Sheehan Cannot Show That McVeigh Deleted MMP With the Intent to Deprive Her of Its Use in This Case

"The intent requirement in Fed. R. Civ. P. 37(e)(2) is 'stringent' – it must be based on more than just negligence or even gross negligence in producing or preserving ESI." In re TelexFree Sec. Litig., 2025 WL 2371354, at *4. "A party seeking sanctions under subsection (e)(2) bears the burden to show by clear and convincing evidence that the alleged spoliator acted with the intent to deprive the movant of information for use in the litigation." Id. "[T]he intent contemplated by Rule 37 is not merely the *intent to perform an act* that destroys ESI but rather the intent to actually deprive another party of evidence." Id. (emphasis added). As such, Sheehan must show more than "just intentional action" but instead "a specific kind of intent"– namely, that McVeigh deleted MMP with the specific intent to deprive her from using its content in this litigation. Boudreau v. Shaw's Supermarkets, Inc., 2019 WL 3242051, at *4 (D. Me. July 18, 2019), aff'd, 955 F.3d 225 (1st Cir. 2020) (employee's intentional removal of hard drives does not imply intent to prevent

plaintiff from using evidence); Doubleline Cap. LP v. Odebrecht Fin., Ltd., 2021 WL 1191527, at *4, 8 (S.D.N.Y. Mar. 30, 2021) (defendants did "not deny that they intentionally destroyed the encryption keys," but plaintiffs failed to show destruction was done "with the intent of depriving *plaintiffs in this litigation* of that evidence"); Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017) (despite plaintiffs' intentional destruction of website and emails, defendant failed to establish "plaintiffs spoliated any evidence out of the desire to deprive [defendant] of such evidence during the litigation").

Here, Sheehan cannot meet her burden by clear and convincing evidence. At his deposition, McVeigh acknowledged deleting MMP. His intent in doing so, however, was not to prevent Sheehan from using its content in this litigation, but rather to insulate himself from being included in the lawsuit. See ECF 213-1 at 15. As McVeigh testified, he did not understand that he was deleting evidence of MMP's "contents and narratives," and he did not possess the "hope that there would be no remaining evidence of the Facebook page once [he] deleted it." Id. at 14-17. Indeed, before deleting MMP, McVeigh reviewed the Complaint which showed that Sheehan had taken screenshots of the page and retained significant material from MMP for use in this litigation. See ECF Nos. 1; 213-1 at 13-14. McVeigh's motivation in deleting the Complaint was not to deprive Sheehan of this content – which she clearly already possessed – but to protect his anonymity. Id. at 25. This does not rise to the level of specific intent required to impose sanctions under Rule 37(e)(2). See Leidig, 2017 WL 6512353, at *11 (intentional act of destruction which "might have been sufficient to obtain a harsh sanction" prior to 2015 amendment, not sufficient for sanctions under Rule 37(e)(2) as amended).

**C. Default Judgment Is a Disproportionate Remedy**

"In our Circuit, the cases dealing with spoliation are clear that the most extreme sanction – dismissal/default judgment – should not be deployed except in the most egregious

circumstances." Boudreau v. Petit, 2025 WL 553975, at *3 (D.R.I. Feb. 19, 2025) (default sanction not appropriate where plaintiff "failed to show that the missing material is relevant at all, or, to the extent that any might be relevant, that the relevant information cannot be obtained from another source, nor has he demonstrated that he has been prejudiced"); In re TelexFree Sec. Litig., 2025 WL 2371354, at *8 (default judgment not proper because plaintiff "has not shown by clear and convincing evidence that [defendant] failed to preserve relevant evidence with the intent of depriving any plaintiff of access to information relevant to his or her claims"). Indeed, even the "presence of bad faith and prejudice, without more, do not justify the imposition of dispositive sanctions." McLaughlin, 682 F. Supp. 3d at 166 ) (despite plaintiff's intentional wiping of hard drive to deprive defendant of metadata, "harsh sanction" of dismissal not appropriate, ordering instead that jury "may, but need not, presume . . . deleted information was unfavorable");[12] Postle, 2019 WL 692944, at *7 (despite intentional destruction of ESI, "court is disinclined to dismiss . . . claim or to enter default judgment"); Moody v. CSX Transportation, Inc., 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017) (despite intentional destruction of "highly relevant evidence," defendant's actions "not so outrageous as to warrant outright disposition of the case" as "case-dispositive sanctions . . . should be imposed only in extreme circumstances").

The Advisory Committee to Fed. R. Civ. P. 37 similarly directs that "[c]ourts should exercise caution . . . in using the measures specified in [Rule 37](e)(2)," and that a finding of intent "**does not** require a court to adopt any of the measures listed in subdivision (e)(2)." See Adv. Comm. Note to 2015 Amendment, Fed. R. Civ. P. 37(e)(2) (emphasis added). Rather, "[t]he remedy should fit the wrong, and the severe measures authorized by this subdivision should not

[12] In McLaughlin, the plaintiff, a former employee of Lenovo, intentionally wiped the hard drive of his company laptop before returning it and filing suit against Lenovo. 682 F. Supp. 3d at 163. The Court found that the information that was wiped was material to the case, and that Lenovo was prejudiced by its destruction. Id. at 165-166. However, because there was no evidence that Lenovo "will not be able to recover substantially all, if not all, of the deleted materials," the Court ruled that dismissal was "too harsh a punishment." Id. at 166.

be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." Id. Such lesser measures include "allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision." Id.

Default judgment is certainly not a proportionate remedy in this case. Sheehan has maintained possession of the MMP posts and private messages underlying the claims in her Amended Complaint, so lesser measures, if warranted, would more than suffice to redress whatever loss may have resulted from MMP's deletion. Even the cases Sheehan relies upon illustrate the point: default is generally appropriate ***only*** in cases in which the destruction leaves the movant unable to prove her claims and is combined with repeated discovery violations by the non-moving party. For example, in Freeman v. Giuliani, 691 F. Supp. 3d 32, 64 (D.D.C. 2023), judgment entered, 2023 WL 9783148 (D.D.C. Dec. 18, 2023), the Court entered default judgment against Giuliani after he "deliberate[ly] fail[ed] to preserve his ESI" and repeatedly failed to comply with his discovery obligations, including violating Court Orders. Id. at 64. There, the ESI was "irremediably lost" and the plaintiffs' case was "severely hampered." Id. at 59, 63. The Court concluded that, in light of the "pattern of [Giuliani's] disobedience" and his "noncompliance with court orders" which "prejudiced the opposing party . . . no lesser sanction is warranted." Id. at 65. See also Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 38 (1st Cir. 2012) (affirming default after repeated and willful violations of discovery obligations and court orders); Glob. NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 94 (1st Cir. 2010) (affirming default as sanction for violations of discovery orders); Carranza v. Unique Auto Detail LLC, 2016 WL 11816242, at *4 (D. Mass. Nov. 1, 2016) (imposing "relatively extreme sanction of default judgment" under "relatively extreme circumstance" for defendants' "repeated violations of deadlines, failure to

comply with the court's explicit directives, and persistent refusal to cooperate"); Atalian US New England, LLC v. Navarro, 2022 WL 2681297, at *1 (D.R.I. July 12, 2022) (entering default for second and third instances of intentional spoliation in matter), (cited in Pl. Br. at 12-15).

At this stage – before summary judgment – it is unclear which claims (if any) will proceed to trial against McVeigh and how, if at all, Sheehan's case would be affected. It is therefore premature to determine what measures "would be sufficient to redress the loss." See Adv. Comm. Note to 2015 Amendment, Fed. R. Civ. P. 37(e)(2) ("severe measures authorized by [Rule 37(e)(2)] should not be used when the information lost was relatively unimportant or lesser measures . . . would be sufficient"). Accordingly, McVeigh respectfully requests that the Court defer to trial whether any jury instruction is warranted and, if so, its content. See Wai Feng Trading Co. Ltd v. Quick Fitting, Inc., 2019 WL 118412, at *7 (D.R.I. Jan. 7, 2019) ("Since the content of a jury instruction is normally formulated after the conclusion of evidence, or at least during trial, courts often consider it premature to conclude that a spoliation instruction will actually be given until the final charge conference."); In re TelexFree Sec. Litig., 2025 WL 2371354, at *9 (deferring "extent of sanctions to be imposed, if any . . . to the discretion of the presiding District Judge at the appropriate time").

### D. Sheehan's Request for Attorneys' Fees Should Be Denied as Unreasonable and Beyond the Scope of the Spoliation Request

Sheehan seeks nearly $378,000 in fees incurred "in connection with efforts to identify McVeigh (Ex. 15), and far more to amend the Complaint and go through additional motion practice when the determination was finally made as to McVeigh's identity." Pl. Br. at 20. But Sheehan's efforts to identify McVeigh and amend her Complaint have virtually nothing to do with MMP's deletion. It is important to bear in mind that – while Sheehan may find it distasteful – McVeigh had a First Amendment right to create an anonymous Facebook account to share his views. See McMann v. Doe, 460 F. Supp. 2d 259, 266 n.35 (D. Mass. 2006) ("The protections of the First

Amendment extend to the Internet. . . . the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded." (citations omitted)). Absent a court-authorized subpoena, McVeigh had no obligation to identify himself on MMP or to Sheehan when she filed suit. See id.

While a non-spoliating party may be entitled to attorneys' fees in connection with efforts that are a "predictable result of the spoliation," NuVasive, Inc. v. Day, 77 F.4th 23, 32 (1st Cir. 2023), Sheehan has tried to shoehorn into her request all work undertaken to identify McVeigh that she would have needed to perform *regardless of any spoliation*. Most strikingly, she includes $9,000 in investigator bills from August 2023, **more than a year before MMP was deleted**. See Affidavit of Joan Lukey, Ex. 15. Regardless of the deletion, Sheehan would have had to subpoena Meta to learn McVeigh's identity and amend her Complaint to name him. And the only changes in the Amended Complaint concerning McVeigh were his addition as a party and several paragraphs addressing McVeigh's identity and the claims against him. Compare ECF No. 1 with ECF No. 106. Fees for discovery efforts caused by McVeigh's anonymity, rather than by any spoliation, are not recoverable. See Insulet Corp. v. EOFlow Co., No. CV 23-11780-FDS, 2024 WL 5202755, at *3 (D. Mass. Dec. 23, 2024) (declining to award fees "based on actions that fall beyond the scope of the Court's [spoliation] order" that "cannot be described as a 'predictable result of the spoliation'").

Nor should the Court award fees for this motion. In McLaughlin, the court declined to award attorneys' fees despite finding intentional spoliation by the non-moving party because the movant had itself "complicated th[e] matter" by "incorrectly assert[ing] that all metadata had been destroyed, and that an important email had not been produced . . . [which] led to substantial briefing and analysis." 682 F. Supp. 3d at 167. So too here. Sheehan failed to disclose the extent of the screenshots she preserved, and she refused to withdraw or narrow her motion after Germain and

Opachinski produced the messages she claimed were spoliated, despite requests from undersigned counsel and counsel for Makepeace. See Ex. 16. The result was substantial and unnecessary briefing. Each party should, therefore, bear its own costs. See McLaughlin, 682 F. Supp. 3d at 167.

## CONCLUSION

For the foregoing reasons, McVeigh respectfully requests that the Court deny Plaintiff's Motion for Sanctions in its entirety. In the alternative, McVeigh requests that the Court deny Plaintiff's request for default judgment and attorneys' fees, and defer to trial any determination of whether a jury instruction concerning the deletion of MMP is warranted.

Respectfully Submitted,

Michael McVeigh,

by his Attorneys,

/s/ Michael Paris
Michael Paris (#556791)
Kileigh E. Stranahan (#707769)
NYSTROM BECKMAN & PARIS, LLP
One Marina Park Drive, 15th Floor
Boston, MA 02110
(617) 778-9100
(617) 778-9110 (fax)
mparis@nbparis.com
kstranahan@nbparis.com

Dated: October 9, 2026

## CERTIFICATE OF SERVICE

I, Michael Paris, hereby certify that on the 9th day of October 2026, this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Michael Paris