UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET E. SHEEHAN,<br><br>Plaintiff,<br>v.<br><br>TOWN OF CARVER, MA,<br>TOWN OF PLYMOUTH, MA,<br>ALAN G. GERMAIN, STEPHEN G. GRAY,<br>BETTY CAVACCO, MICHAEL MAIN,<br>A.D. MAKEPEACE COMPANY,<br>JAMES F. KANE, SLT CONSTRUCTION CORPORATION,<br>PETER OPACHINSKI, and MICHAEL MCVEIGH,<br><br>Defendants. | No. 1:24-CV-12347-ADB |

**DEFENDANT A.D. MAKEPEACE COMPANY'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO COMPEL**

This is a manufactured "emergency" and a clear attempt at distraction. Despite months of extensive discovery, Plaintiff has no record evidence for her contention that Defendant Michael McVeigh was acting within the scope of his employment when he created, administered, and deleted the Meg Costs Us Millions Facebook page (the "MMP"). Instead, the record evidence uniformly reflects that Mr. McVeigh acted alone and in secret with respect to the MMP. The record evidence is uniform that Mr. McVeigh's job responsibilities did not include social media or other public communications on behalf of his employer A.D. Makepeace Company ("Makepeace"). The record evidence is uniform that Mr. McVeigh's conduct relating to the MMP was not authorized and that he suffered adverse employment action when this unauthorized conduct was discovered. Plaintiff has nothing to the contrary.

Instead, her contentions are based on speculation and conjecture. The instant Motion is more of the same. It is also completely disingenuous. Plaintiff claims that the recent summary judgment filing by Makepeace created an "emergency" and constitutes a waiver of privilege, "[b]y asserting the defense . . . that McVeigh was acting outside the scope of his employment in waging his anonymous campaign of digital impersonation, online attacks, and tracking of Sheehan's movements[.]" *See* Memorandum in Support of Plaintiff Margaret E. Sheehan's Emergency Motion ("Pl. Memo") (ECF No. 288) at 2. Plaintiff contends that "[t]he need for this request only arose after [Makepeace] moved for summary judgment on October 30, 2026." *Id.* In other words, Plaintiff is representing that—prior to the recent summary judgment filing—she was unaware that vicarious liability was contested.

The facts show otherwise. Makepeace's position on vicarious liability has been stated plainly and consistently since Plaintiff first sought to add Mr. McVeigh to this case on May 21, 2025. *See* Motion for Leave to File Amend Complaint (ECF No. 98). Indeed, on June 20, 2025, Makepeace filed a limited opposition to Plaintiff's request to amend her pleading, making the very same argument that it made in its recent summary judgment filing—*i.e.*, that Mr. McVeigh was acting outside the scope of his employment when he created and posted on the MMP. *See* Limited Opposition to Plaintiff's Motion to Amend ("Limited Opposition") (ECF No. 101) at 6-9. Makepeace also denied responsibility for Mr. McVeigh's conduct in its Answer filed on July 9, 2025, and its Affirmative Defenses clearly asserted that "Plaintiff's claims are barred, in whole or in part, to the extent any unlawful act or omission was committed by any employee or agent of Makepeace acting *ultra vires* or otherwise outside of the scope of their employment duties." *See* Answer to Amended Complaint (ECF No. 113) at 89 (Eighth Affirmative Defense); *see also id.* ¶¶ 31 (stating Makepeace was "unaware of [Mr.] McVeigh's involvement with the

MMP before the filing of this lawsuit"), 58 (denying that "[Mr.] McVeigh's actions in setting up or administering the MMP were in furtherance of Makepeace's goals or were sanctioned in any way by Makepeace"), 66 (Makepeace "den[ies] that [Mr.] McVeigh posted on the MMP because he was acting in the scope of his employment"), 67 (similar), 69–70 (similar), 218 (denying "that Makepeace is liable for any posts by [Mr.] McVeigh or that [Jim] Kane retained supervisory control over [Mr.] McVeigh's online activities, including any activities relating to the MMP"), 225 (denying "that [Mr.] McVeigh was acting within the scope of his employment with respect to administration of the MMP and any online posts on the MMP or other websites through anonymous profiles), 226 (denying responsibility for Mr. McVeigh's conduct).

The recent summary judgment filing did not inject a new issue into this case. Instead, Plaintiff has apparently realized there is no record evidence to support her position, and she is now scrambling to create a dispute of material fact where none exists. It seems her plan is to try to get access to certain privileged documents to argue that they somehow show that Mr. McVeigh's creation and posting on the MMP was part of his job responsibilities. The only "emergency" is that Plaintiff waited until a week before her summary judgment opposition was due to raise this issue.

Given that Plaintiff has known about the privileged documents for nearly a year (when they were clawed back), and given that she has known about Makepeace's position on vicarious liability for at least sixteen months (when its Limited Opposition was filed), the instant Motion is either extremely dilatory or, more likely, an eleventh-hour litigation tactic. Either way, this Court should not indulge it. The documents at issue are clearly privileged; they have nothing to do with Mr. McVeigh's MMP postings for which Plaintiff is seeking to hold Makepeace liable; and there

has been no waiver under the "at issue" or "sword and shield" doctrines (which do not apply). For these reasons, Plaintiff's Motion should be denied.

## I. <u>The Documents Withheld are Privileged</u>

Although Plaintiff does not appear to explicitly contest this point, it is nonetheless worth noting that the two documents at issue are subject to privilege protections. As the Court will see on its *in camera* review, the documents withheld and clawed back include a draft document prepared by counsel (Mr. McVeigh) working with Makepeace's communications team (Linda Burke and Kim Houdette).[1] The communications team provides feedback and certain edits to the draft and asks strategic and logistical questions of counsel. Counsel provides legal advice in response.

The attorney-client privilege protects communications, like these, "made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Miss. Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*, 649 F.3d 5, 30 (1st Cir. 2011) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 394-95 (1981)) (upholding district court's denial of plaintiff's motion to compel production of privileged documents); *see also Cavallaro v. U.S.*, 284 F.3d 236, 245 (1st Cir. 2002). "[T]he request for legal advice need not be explicit" so long as the communication was confidential and made for the purpose of seeking or receiving legal advice. *See U.S. ex rel. Long v. Janssen Biotech, Inc.*, 788 F. Supp. 3d 167, 170 (D. Mass. 2025) (citing *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011)). Here, both documents at issue clearly fall into this category—they are made in confidence between an attorney and his client's employees, and they reflect legal advice and strategy.

---

[1] Given the privileged nature of the documents, Makepeace discusses their contents in generalities for purposes of this public filing.

The documents may also fall under the protection of the attorney work-product doctrine insofar as they were prepared in connection with and as a result of litigation. At the time that these documents were created, in spring 2022, Makepeace was in active litigation against Save the Pine Barrens (later renamed Community Land and Water Coalition)—the advocacy organization Plaintiff had founded and funded. Plaintiff was serving as counsel of record in these litigations. She was also pursuing certain administrative challenges against Makepeace before at least the Carver Zoning Board of Appeals during this same time. The privileged documents at issue directly reference these matters and arose out of them, as there would never have been a need to create them but for the ongoing litigations. *See, e.g.*, *Traverse v. Gutierrez Co.*, Civ. Ac. No. 18-10175-DJC, 2019 WL 12291347, *3-6 (D. Mass. May 6, 2019) (Boal, M.J.) (pre-litigation investigative report prepared by outside counsel was subject to work product protection). They reflect consideration by Makepeace of a request for oversight of conduct at issue in those litigations and, therefore, were created for potential "use" in litigation. *See generally id.*

Accordingly, on grounds of both the attorney-client privilege and the attorney work product doctrine, the documents sought by Plaintiff are protected from production.

## II. <u>There Has Been No Waiver</u>

Plaintiff does not put forth any substantive argument that the documents at issue are not privileged. Instead, she claims waiver based on the "at issue, and the sword and the shield, doctrines."[2] Pl. Memo at 2. Implied waiver does not apply here.

[2] These are not separate doctrines. Rather, the implied waiver doctrine operates, in part, to prevent a party from using privilege both as a sword and a shield by selectively disclosing certain documents helpful to their case while withholding other documents on the basis of privilege. *See, e.g.*, *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.*, 348 F.3d 16, 24 (1st Cir. 2003); *see also Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 248-49 (D. Mass. 2013) (citation omitted) (waiver "may be imposed when the privilege holder has attempted to use the privilege both as a sword and a shield").

The question Makepeace has put "at issue" is whether it can be vicariously liable for the claims against Mr. McVeigh, which are based on his creation, administration, and deletion of the MMP. Makepeace has argued, and the evidence supports, that Mr. McVeigh's conduct concerning the MMP was unauthorized and beyond the scope of his job responsibilities. The issue of vicarious liability has been in play since at least June 2025, when Plaintiff sought to add Mr. McVeigh to the lawsuit and Makepeace filed its Limited Opposition.

As an initial matter, the privileged document and communications sought through the instant Motion have no relevance to the question of vicarious liability for the MMP. They do not concern the MMP or Mr. McVeigh's conduct relating to the MMP. In fact, they are dated nearly a year before the MMP was even created. The documents consist of a draft confidential submission and internal communications concerning that draft. There is no record that this confidential submission was ever finalized or sent to the relevant body. Regardless of whether Plaintiff would be entitled to a copy of any final draft that was submitted, she is certainly not entitled to internal drafts that were prepared by, and reflect the legal advice of, counsel. What is more, even if this document was finalized and submitted (again, there is no record of that), Plaintiff could not use it as a basis for liability against Makepeace or Mr. McVeigh. Given the nature of the document, such a submission would have been a protected act. *See Cariglia v. Bar Counsel*, 442 Mass. 372, 379-80 (2004).

More importantly, Makepeace has never relied on these documents, or any issues implicated by them, in asserting its arguments on vicarious liability. As the First Circuit has noted, "the attorney-client privilege is highly valued," and "courts should be cautious about finding implied waivers[.]" *See In re Intuniv Antitrust Litig.*, Civ. Ac. Nos. 16-cv-12653-ADB, 16-cv-12396-ADB, 2021 WL 10362709, *8 (D. Mass. Mar. 3, 2021) (Burroughs, J.) (citation

omitted). "An 'at issue' waiver occurs when a party injects certain claims or defenses into the case which implicate, *i.e.*, put 'at issue' the communications of counsel." *Id.* (citation omitted) (finding no implicit waiver of privilege where party introduced evidence of actions taken without presenting evidence of legal advice it received before taking those actions). The appropriate inquiry is whether the "claims and defenses are so enmeshed in privileged evidence that the material must be produced[.]" *See Mass. Mut. Life Ins. Co.*, 293 F.R.D. at 248 (citation and quotation omitted) (holding no waiver where party did not need the evidence at issue to prove its claims and explicitly eschewed use of the evidence at trial).

A classic example of an "at issue" waiver is where a party bases its defense on the advice of counsel. In that scenario, the defendant voluntarily puts its attorney's advice at issue, and the defense is undisputedly tied to privileged communications. Fairness therefore dictates that the opposing party should be able to discover communications about the attorney's advice. In contrast, where the privileged documents are not necessary to litigate the claim or defense, there is no "at issue" waiver.

For example, in *Bacchi v. Mass. Mut. Life Ins. Co.*, the defendant asserted affirmative defenses that it acted in good faith when it failed to distribute surplus funds to policyholders, and that its actions were approved by the appropriate regulatory agency. *See* 110 F. Supp. 3d. 270, 272 (D. Mass. 2015). The defendant produced guidance from the regulatory body, and the Court found that it was unnecessary to inquire into privileged documents reflecting counsel's advice or thoughts to determine whether there was a good faith basis to follow that guidance. This was true even though the defendant had directly placed the issue of its good faith directly at issue.

The scenario here bears no resemblance to an "at issue" waiver. The documents sought to be turned over are even less implicated than in *Bacchi*. As discussed, the draft submission and

accompanying communication have no relation to Mr. McVeigh's conduct in creating, operating, or deleting the MMP. Makepeace has never pointed to these documents in the course of this litigation and is in no way relying on their contents to support the arguments about vicarious liability. This is nowhere close to a situation where a party is relying on the very evidence it is preventing the other party from accessing through privilege.

To the extent Plaintiff contends the privileged documents somehow relate to the scope of Mr. McVeigh's job responsibilities at Makepeace more generally—which is not what is at issue here—she has had ample opportunity to gather evidence on this matter. Makepeace has produced documents showing, written discovery explaining, and witnesses testifying to Mr. McVeigh's official job responsibilities. Plaintiff has been free to explore how Mr. McVeigh's conduct with the MMP fit into those job responsibilities. And she has been free to explore what others at Makepeace knew about that conduct, to what extent others participated in that conduct, and whether that conduct was authorized.

Plaintiff has issued requests seeking documents with regard to contracts, positions, roles, and duties relating to Mr. McVeigh's employment by Makepeace. *See, e.g.*, Plaintiff's Requests for Production of Documents and Things to A.D. Makepeace Company ("Makepeace Requests") Nos. 2-4 (**Exhibit A**); Plaintiff's Requests for Production of Documents and Things to James F. Kane ("Kane Requests") Nos. 2-3 (**Exhibit B**). She has also served requests seeking documents with respect to the identities of any anonymous posters to the MMP known to Makepeace, as well as requests seeking documents relating to any involvement by Makepeace in the deletion of the MMP. *See* Ex. A, Makepeace Requests Nos. 3, 7-8, 10-11; Ex. B, Kane Requests Nos. 4-5, 7-9, 12-13. Plaintiff has served interrogatories regarding knowledge by Makepeace employees as to the identity of the MMP administrator, retention of materials by Makepeace employees, and

McVeigh's job responsibilities. *See, e.g.*, Plaintiff's First Set of Interrogatories to A.D. Makepeace Company and James F. Kane Nos. 7, 13, 19 (**Exhibit C**). She has also extensively questioned witnesses at depositions regarding these matters. *See, e.g.*, Tr. Ex. 2 Deposition of Linda Burke, dated Dec. 18, 2025 at 174:7-21; Tr. Ex. 12 Deposition of Michael McVeigh, dated Jan. 20, 2026, at 121:4-14 (McVeigh's identity was revealed only after a subpoena in this case); Tr. Ex. 10 Deposition of James Kane, dated June 26, 2026, at 224:20-225:24; Tr. Ex. 12 (McVeigh Dep.) at 79:17-80:4 (Kane asked Makepeace employees whether they were behind the MMP or knew who was, and each said no; McVeigh lied to Kane when asked); Tr. Ex. 12 (McVeigh Dep.) at 15:24-16:8 (McVeigh never gave anyone else his MMP administrator credentials and did not allow others to post MMP content); *Id.* at Ex. 119 (McVeigh Dep. Ex. 21 (MOU)) at MCVEIGH000022-23; Ex. 134 (SHEEHAN_ADM 0002106) (Memorandum of Understanding memorialized that McVeigh's MMP activity "was not known, authorized, or directed by anyone at A.D. Makepeace Company," that he "acted alone," that he "did not understand [his] actions to be part of [his] job responsibilities at Makepeace"); Tr. Ex. 10 (Kane Dep.) at 14:21-16:10, 92:2-20, 155:12-156:6 (Kane instructed Makepeace employees not to engage publicly with Plaintiff; social media and public relations were not part of McVeigh's job responsibilities).

The fact that Plaintiff has not uncovered any evidence to support her contentions does not mean she has been prevented from gathering evidence relevant to the matter at issue. The privileged documents she now seeks are not part of Makepeace's defense. Stripping these documents of their protected privileged status based on implied waiver would be an aggressive and unwarranted step for this Court to take based on the record before it.

**RELIEF REQUESTED**

For these reasons, Defendant Makepeace respectfully requests that Plaintiff's Motion be denied.

Dated: November 13, 2026

Boston, Massachusetts

Respectfully submitted,

A.D. MAKEPEACE COMPANY

By its attorneys,

*/s/ Geoffrey M. Raux*
Geoffrey M. Raux (BBO # 674788)
Lea Gulotta James (BBO # 705421)
Miranda D. Curtis (BBO # 709084)
Jared H. Pliner (BBO # 713551)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Phone: 617-342-4000
Fax: 617-342-4001
graux@foley.com
ljames@foley.com
mcurtis@foley.com
jpliner@foley.com

**CERTIFICATE OF SERVICE**

I, Jared H. Pliner, hereby certify that the foregoing was filed on November 13, 2026 through the ECF filing system and will be sent electronically to all counsel of record identified as registered participants on the associated Notice of Electronic Filing.

*/s/ Jared H. Pliner*
Jared H. Pliner