**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MARGARET E. SHEEHAN,

Plaintiff,

v.

TOWN OF CARVER, MA; TOWN OF PLYMOUTH, MA; ALAN G. GERMAIN; STEPHEN G. GRAY; BETTY CAVACCO; MICHAEL MAIN; A.D. MAKEPEACE COMPANY; JAMES F. KANE; SLT CONSTRUCTION CORPORATION, PETER OPACHINSKI, and MICHAEL McVEIGH,

Defendants.

Case No. 1:24-cv-12347-ADB

**PLAINTIFF MARGARET E. SHEEHAN'S RESPONSE TO DEFENDANTS TOWN OF PLYMOUTH, BETTY CAVACCO, AND MICHAEL MAIN'S STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiff Margaret E. Sheehan ("Plaintiff" or "Sheehan") responds to the Statement of Facts submitted by defendants Town of Plymouth, Betty Cavacco, and Michael Main (collectively, "Plymouth" or the "Plymouth Defendants").

## I. Complaint Allegations[1]

**FACT NO. 1:**

Sheehan filed her original Complaint on September 12, 2024, asserting twenty-five counts against the named defendants, including the Town of Plymouth, Betty Cavacco, and Michael Main. *ECF No. 1 – Complaint; ECF No. 94 – Memorandum and Order, p. 2*.

**RESPONSE TO FACT NO. 1:**

Undisputed; the Complaint speaks for itself.

**FACT NO. 2:**

On May 7, 2025, the Court issued a Memorandum and Order on the defendants' motions to dismiss. As to the Plymouth defendants, the Court dismissed the constitutional claims to the extent they were premised on the Fourteenth Amendment, leaving the First Amendment claims to proceed. The Court characterized Sheehan's asserted chilling of protected activity as a First Amendment retaliation theory, notwithstanding her express disclaimer of a retaliation claim, and treated the official-capacity claims against Cavacco and Main as claims against Plymouth. *ECF No. 94, pp. 30, 35–38, 43–46, 76–77.*

**RESPONSE TO FACT NO. 2:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the Court's Memorandum and Order, which speaks for itself.

[1] The headings from the Plymouth Defendants' Statement of Facts are included for organizational purposes only. To the extent the headings purport to state material facts, they are disputed.

**FACT NO. 3:**

Sheehan filed her First Amended Complaint on June 25, 2025, asserting Counts 9–13 against Plymouth, Cavacco, and Main. *ECF No. 106 – Am. Compl., pp. 58–64.*

**RESPONSE TO FACT NO. 3:**

Undisputed; the Amended Complaint speaks for itself.

**FACT NO. 4:**

Count 9 of the Amended Complaint alleges that Plymouth maintained an unwritten policy favoring the sand-mining industry and disfavoring its opponents, implemented through Cavacco and Main, and that their conduct chilled Sheehan's exercise of her First Amendment rights to speak and petition the government. *ECF No. 106, ¶¶ 28–32, 37–38*.

**RESPONSE TO FACT NO. 4:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself.

**FACT NO. 5:**

Sheehan alleges that Main obstructed her speech at the January 4, 2023 ZBA hearing; Cavacco ignored her subsequent written complaint about Main, restricted her speech at a December 7, 2023 Community Preservation Committee ("CPC") meeting, and disseminated disparaging social-media content. *ECF No. 106, ¶¶ 33–36*.

**RESPONSE TO FACT NO. 5:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself. Sheehan also notes that she inadvertently included the wrong CPC meeting. Affidavit of Margaret Sheehan ("Sheehan. Aff.") ¶ 25.

**FACT NO. 6:**

Count 10 of the Amended Complaint alleges that Cavacco, while seeking public office, disparaged Sheehan and her family as self-interested, hypocritical, and unethical to retaliate against and deter her advocacy. *ECF No. 106, ¶¶ 39–42.*

**RESPONSE TO FACT NO. 6:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself.

**FACT NO. 7:**

Count 11 asserts a claim against Main under 42 U.S.C. § 1983 in his individual capacity, based on his alleged conduct while chairing the January 4, 2023 Plymouth ZBA hearing. Sheehan alleges that Main repeatedly called her a liar and falsely accused her of costing Plymouth "millions and millions" of dollars defending litigation attributed to her. Sheehan alleges that Main acted recklessly or willfully and maliciously, violating her First Amendment rights. *ECF No. 106, ¶¶ 43–45*; *see also id. ¶ 53.*

**RESPONSE TO FACT NO. 7:**

Undisputed but the Amended Complaint speaks for itself.

**FACT NO. 8:**

In deciding the motions to dismiss, the Court held that Main's alleged statements at the January 4, 2023 ZBA hearing were sufficient to state a First Amendment chilling claim, however, the Court accepted the Complaint's allegations as true and did not consider the complete video recording of the hearing as evidence. *ECF No. 94, pp. 39–40.*

**RESPONSE TO FACT NO. 8:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the Court's Memorandum and Order, which speaks for itself.

**FACT NO. 9:**

The Court deferred qualified immunity for possible consideration at summary judgment. *ECF No. 94, pp. 49–50.*

**RESPONSE TO FACT NO. 9:**

Undisputed.

**FACT NO. 10:**

Count 12 alleges that Cavacco defamed Sheehan during her 2023 campaign by portraying her as dishonest and motivated by personal gain, causing reputational and emotional injury. *ECF No. 106, ¶¶ 46–52.*

**RESPONSE TO FACT NO. 10:**

Undisputed, but the Amended Complaint speaks for itself.

**FACT NO. 11:**

Count 13 alleges that Main defamed Sheehan at the January 4, 2023 ZBA hearing by calling her a liar and accusing her of costing Plymouth “millions and millions,” causing reputational and emotional injury. *ECF No. 106, ¶¶ 53–57.*

**RESPONSE TO FACT NO. 11:**

Undisputed, but the Amended Complaint speaks for itself.

**FACT NO. 12:**

The Court dismissed official-capacity defamation claims but allowed individual-capacity claims against Cavacco and Main to proceed without deciding their merits. *ECF No. 94, pp. 59–61.*

**RESPONSE TO FACT NO. 12:**

Undisputed, but the Court’s Memorandum and Order speaks for itself.

## II. Background

**FACT NO. 13:**

Sheehan is an attorney who has engaged in environmental advocacy, including advocacy concerning sand and gravel mining and land development in Plymouth and surrounding communities. She has represented individuals and environmental organizations in administrative and judicial proceedings concerning those matters. *Defs' Joint Index of Deposition Testimony, Deposition of Margaret Sheehan (Vol. III) at 233:20–237:15, 580:13-584:14.*

**RESPONSE TO FACT NO. 13:**

Largely undisputed, but not entirely necessarily complete. While sand mining is a significant part of Sheehan's focus, her activities are not limited to matters relating to sand mining. Sheehan. Aff. ¶ 2.

**FACT NO. 14:**

Sheehan co-founded Save the Pine Barrens, Inc. ("STPB" also known as "Community Land & Water Coalition "CLWC"), in 2021 to pursue scientific, charitable, and educational activities focused on southeastern Massachusetts, including protecting land and water resources. Its March 25, 2021 Articles of Organization identified 158 Center Hill Road, Plymouth, Massachusetts, as its principal office and listed Sheehan as president, treasurer, clerk, and director. *Deposition of Margaret Sheehan (Vol. I) at 21:5–22:16; Defs' Jt. Index of Exhibits, Exhibit 18 – STPB - CLWC - Corporate Filings (March 25, 2021), S.J. Exs. 209, 211.*

**RESPONSE TO FACT NO. 14:**

Undisputed, but Sheehan says that, at the time, CLWC did not yet have its own physical office, such that its mailing address was its principal (and only) address. Sheehan Aff. ¶ 20; *see* Affidavit of Sharl Heller ("Heller Aff.") ¶ 3. SEMPBA extended the same courtesy to two other non-profits at the time, one of which was a volunteer town committee. Heller Aff. ¶ 3. Sheehan also notes for

the Court's benefit that Plymouth's citation to Exhibit 18 is erroneous and should instead refer to Exhibit 16.

**FACT NO. 15:**

Sheehan used 158 Center Hill Road, Plymouth, Massachusetts, as the mailing address for Community Land & Water Coalition in correspondence with Plymouth officials. In a January 9, 2023 email to the Select Board concerning the January 4, 2023 ZBA hearing, Sheehan identified herself as an attorney for Save the Pine Barrens and listed Community Land & Water Coalition, 158 Center Hill Road, in her signature block. She used the same address in a January 20, 2023 follow-up email requesting that the Select Board acknowledge her earlier correspondence. *Defs' Jt. Index of Exhibits, Exhibit 53 – January 9, 2023 Email to Select Board re ZBA Hearing on January 4, 2023 (Ex. 1 to Cavacco Dep.)*; *Defs' Jt. Index of Exhibits, Exhibit 56 – Email from D. Brindisi regarding Inquiry into January 9 Letter to Select Board (Ex. 3 to Cavacco Dep.) (January 24, 2023)*.

**RESPONSE TO FACT NO. 15:**

Undisputed, but see note in response to Fact No. 14 to the effect that CLWC did not yet have its own physical office, such that its mailing address was its principal (and only) address. SEMPBA extended the same courtesy to two other non-profits at the time, one of which was a volunteer town committee. Heller Aff. ¶ 3.

**FACT NO. 16:**

On January 3, 2023, Sheehan filed a complaint in Plymouth Superior Court on behalf of eight Plymouth residents challenging the ZBA's approval of Claremont Plymouth LLC's proposed development at Colony Place. The complaint named Main and the other ZBA members, in their official capacities, and Claremont as defendants. Sheehan signed the complaint as counsel for the plaintiffs and listed 158 Center Hill Road, Plymouth, Massachusetts, as her address. *Defs' Jt. Index*

*of Exhibits, Exhibit 48 - Magnarelli v. Main, et al. – Complaint (Plymouth Superior Court, Civil Action No. 2382CV002), filed January 3, 2023, S.J. Exs. 0516, 0537.*

**RESPONSE TO FACT NO. 16:**

Undisputed.

**FACT NO. 17:**

Betty Cavacco's involvement in Plymouth town government began in 2016, when she served on the Town's Advisory and Finance Committee. The following year, she was publicly elected to the Plymouth Select Board, where she served for approximately six years, until May 2023, including a period as Chair. After leaving the Select Board, Cavacco continued her involvement in local government as a member of Plymouth's Community Preservation Committee, serving from 2023 until June 2026, when her term expired. *Defs' Joint Index of Deposition Testimony, Deposition of Betty Cavacco, 32:12–33:7.*

**RESPONSE TO FACT NO. 17:**

Undisputed.

**FACT NO. 18:**

Michael D. Main served on Plymouth's Zoning Board of Appeals ("ZBA") for approximately twenty-one years, beginning around 2005 and continuing until his retirement on June 15, 2026. During approximately the final five years of his service, Main served as Chair of the ZBA. *Defs' Joint Index of Deposition Testimony, Deposition of Michael Main, 11:9-24, 15:2-22.*

**RESPONSE TO FACT NO. 18:**

Undisputed.

**FACT NO. 19:**

Members of the Plymouth Select Board are democratically elected by the Town's voters. The Select Board, in turn, appoints members of the Zoning Board of Appeals and the Community Preservation Committee. The Chair of the Select Board is selected by the Select Board from among

its members, while the Chair of the Zoning Board of Appeals is selected from among that Board's members. *Deposition of Betty Cavacco, 32:12–33:12*; *Deposition of Michael Main, 11:1–15:22*.

**<u>RESPONSE TO FACT NO. 19:</u>**

Disputed to the extent that the cited deposition testimony, which primarily discusses the local-government careers of Cavacco and Main, does not support Plymouth's general points about the composition of the Select Board, Zoning Board of Appeals, and Community Preservation Committee or the selection of their respective chairs.

**III. Evidence Concerning Michael Main**

**<u>FACT NO. 20:</u>**

On January 3, 2023, the day before the ZBA hearing, Sheehan addressed the Plymouth Select Board concerning the Claremont development at Colony Place. According to the meeting minutes, Sheehan stated her belief that the DPW and ZBA had negotiated an arrangement under which Claremont would contribute up to $2.52 million toward a booster pump in the West Plymouth service area in connection with Town permitting approvals. *Defs' Jt. Index of Exhibits, Exhibit 49 – Official Minutes of the January 3, 2023 Plymouth Select Board Meeting (Ex. 9 to Sheehan Dep. II)*.

**<u>RESPONSE TO FACT NO. 20:</u>**

Disputed to the extent this paragraph mischaracterizes the minutes, which reflect that Sheehan stated her belief that "the project with Claremont went against Open Meeting Law" and that "Open Meeting Law complaints were not sent to the Select Board and the ZBA." Defs JA Ex. 49 at S.J. Exs. 0561. The minutes also reflect that Sheehan stated that "Claremont cannot be responsible to pay the $2.5 million," Town Manager Brindisi stated "Ms. Sheehan is correct," and the two proceeded to disagree regarding whether Claremont would need to build a well. *Id.* at S.J. Exs. 0565. Further, the Development Agreement provides that, in exchange for the ZBA approving the

project and Claremont's donation of $2.5 million, the Town would provide Claremont with "land and all entitlements for the Station," not charge Claremont for fees, and, in addition, waive "all designated fees . . . . including building permit, garage permit, signage permit, inspections . . . water and sewer hook-up fees, mitigation fees, etc. for the Project on both Lots 5A and 5B." Defs JA Ex. 43 at S.J. Exs. 0431.

**FACT NO. 21:**

On January 4, 2023, Sheehan appeared before the Plymouth ZBA in her capacity as an attorney representing a client. Main was serving as chair of the ZBA. *Deposition of Margaret Sheehan (Vol. III), 486:21–491:9.*

**RESPONSE TO FACT NO. 21:**

Undisputed.

**FACT NO. 22:**

The January 4, 2023 ZBA hearing was recorded. Sheehan did not believe she had any interactions with Main that day apart from those occurring during the ZBA hearing, including any conversations in hallways or parking areas. *Deposition of Margaret Sheehan (Vol. III), 488:15–489:13*.

**RESPONSE TO FACT NO. 22:**

Undisputed.

**FACT NO. 23:**

In fact, Sheehan confirmed that she had never had any private discussions or communications with Main, or any interactions with him outside his capacity as a member or chair of the Plymouth Zoning Board of Appeals. *Deposition of Margaret Sheehan (Vol. III), 479:11-480:2*.

**RESPONSE TO FACT NO. 23:**

Undisputed that Sheehan has not had discussions with Main outside his capacity as ZBA chair or "private" discussions with him, noting that one-on-one discussions in a public setting, namely, the

audience of the ZBA before a hearing, do not qualify as "private" discussions. Sheehan (Vol. III) Tr. at 479:11-480:2.

**FACT NO. 24:**

A video recording of the January 4, 2023 Plymouth ZBA hearing was posted on the Community Land & Water Coalition's ("CLWC") YouTube channel. Sheehan did not personally post the recording and had no objection to its publication. *Deposition of Margaret Sheehan (Vol. III), 488:15-18, 489:14–490:2*.

**RESPONSE TO FACT NO. 24:**

Undisputed.

**FACT NO. 25:**

The recording is in the summary judgment record as Exhibit 51 and it speaks for itself. *Defs' Jt. Index of Exhibits, Exhibit 51 – Video of January 4, 2023 Plymouth ZBA Meeting*.

**RESPONSE TO FACT NO. 25:**

Undisputed that the recording, which speaks for itself, is in the record as Exhibit 51.

**FACT NO. 26:**

Main acknowledged making a statement during the January 4, 2023 ZBA hearing to the effect that Sheehan had cost Plymouth "millions and millions of dollars." He explained that he was referring to litigation expenses incurred by the Town in matters involving Sheehan as an attorney. Main also described a proposed arrangement with Claremont at Colony Place under which the developer would contribute toward a deep-well pump to improve fire protection in Plymouth. Main attributed the loss of that proposed arrangement and the pump to litigation involving Sheehan. *Deposition of Michael Main, 133:17–139:5*.

**RESPONSE TO FACT NO. 26:**

Disputed because Main acknowledges making the statement at the meeting, and his subjective, post-hoc interpretation of what he meant is immaterial to how a member of the public present at

the meeting would interpret it. The recording of the January 4, 2023 ZBA hearing speaks for itself. *See* Defs JA Ex. 51. Further, Main did not merely say something "to the effect" that Sheehan had cost Plymouth "millions and millions of dollars"; he said:

> Every time you pull one of these stunts! I've been here 18 years, and I have seen five of these from you that have all been denied, all gone away, but all still cost this town a ton of money. And now we're talking about millions and millions of dollars on your frivolous lawsuits. I've had it. This one's not going any further.

and, later, "I'm telling you that you cannot stand here and lie to us. And that's what it is. And I will not put up with it. Period," Defs JA Ex. 51 at 1:10–5:10; Sheehan Aff. ¶ 10. Main admitted that he did not know the actual costs and did not "get into money." Main Tr. 138:18–23. When asked "[d]o you have any idea what it actually cost the Town?" Main responded: "Well, I know that – I hear one department head saying, 'Gee whiz, I had to spend all kinds of overtime money, thousands of dollars. I've heard all kinds of complaints from all kinds of people. Did I list who they were? No. Did I list the amounts of money? No." *Id.* 138:8-15. Main could not provide a range for what Sheehan had cost Plymouth, stating, "I do not know that for a fact. That's your number." *Id.*, 139:17–140:23. Main testified: "I made an assertion that this lawyer cost this Town lots of money. I don't know – and I put a figure on it, but I don't know that that should be considered an accurate figure any more than how many lumps of sugar did you put in your coffee this morning." *Id.*, 140:18–23. Main admits that he accused Sheehan of lying and that his treatment of her was "probably not . . . the best." *Id.* at 75:21–23, 77:12–16. Main testified that Sheehan "doesn't care. She just wants to get people riled up . . . . I don't want to deal with her any more." *Id.*, 133:17–20. Main testified that "I don't like her" and that he does "not particularly" trust her, on the basis of "[e]vidence that she presented over a period of time that was totally incorrect and evidence proving that she was totally incorrect" that Main was unable and unwilling to identify. *Id.*, 47:16–48:9. Main testified that, by the time of the hearing, he "[p]robably" disliked Sheehan. *Id.*, 69:7–9. He also admitted that he has never treated any other opponent to a petition in the same

manner in which he treated Sheehan. *Id.*, 124:7–14. Sheehan has not cost Plymouth "millions and millions of dollars." Sheehan Aff. ¶ 10. The actual defense fees when Main made his proclamation were only about $26,000 for Plymouth and $149,000 for Carver. Exs. 93, 126.

**FACT NO. 27:**

On January 9, 2023, Sheehan emailed a letter to Plymouth Select Board Chair Betty Cavacco and other Select Board members, copying Town Manager Derek Brindisi. Sheehan acknowledged that she authored, signed, and transmitted the letter. *Deposition of Margaret Sheehan (Vol. III), 495:12–496:13*; *Defs' Jt. Index of Exhibits, Exhibit 52 – January 9, 2023 – Email to Select Board re January 4, 2023 ZBA Hearing with Attached Letter.*

**RESPONSE TO FACT NO. 27:**

Undisputed.

**FACT NO. 28:**

Sheehan's January 9, 2023 letter concerned Main's conduct while presiding over the January 4, 2023 ZBA public hearing in Case No. 4077. The letter characterized Main's conduct as improper and asked the Select Board whether it considered the conduct objective, unbiased, and professional. *Exhibit 52*.

**RESPONSE TO FACT NO. 28:**

Undisputed, but the letter speaks for itself.

**FACT NO. 29:**

In the letter, Sheehan provided a YouTube link to a recording of the January 4, 2023 ZBA hearing and expressly requested that the Select Board watch the recording, including the testimony from members of the public following her presentation. *Exhibit 52*.

**RESPONSE TO FACT NO. 29:**

Undisputed.

**FACT NO. 30:**

Sheehan also identified Main's subsequent refusal to apologize during proceedings concerning his reappointment as an additional incident relevant to her claims against him. *Deposition of Margaret Sheehan (Vol. III), 489:14–491:9, 495:12–497:10*.

**RESPONSE TO FACT NO. 30:**

Undisputed.

**FACT NO. 31:**

Paragraph 57 of the Amended Complaint alleges that, when Main's reappointment to the Plymouth Zoning Board of Appeals came before the Select Board, a member of the public raised a question about Main's treatment of Sheehan. Main allegedly apologized to the public but stated words to the effect of "I'm not apologizing to her." The Select Board thereafter voted unanimously to reappoint Main. *ECF No, 106, ¶ 57.*

**RESPONSE TO FACT NO. 31:**

Undisputed, but the Amended Complaint speaks for itself.

**FACT NO. 32:**

During the June 20, 2023 Plymouth Select Board meeting, in connection with proceedings concerning his reappointment to the ZBA, Main stated, "And I lost my temper and it's not acceptable," followed by, "the only person I will not apologize to is that particular attorney." *Defs' Jt. Index of Exhibits, Exhibit 79 – PacTV Screenshot of Plymouth Select Board Hearing (June 20, 2023); Deposition of Margaret Sheehan (Vol. III), 498:15–500:7*.

**RESPONSE TO FACT NO. 32:**

Undisputed. Main confirmed in his deposition that he said he would apologize to the Board and the public but not to "that attorney" and that nobody forwarded Sheehan's complaint to him, told him of it, or disciplined or reprimanded him for his conduct at the hearing. Main Tr. 96:18–97:22, 106:13–107:11.

**FACT NO. 33:**

Sheehan was not present at the June 20, 2023 Plymouth Select Board meeting and did not personally observe Main's remarks concerning his refusal to apologize. *Deposition of Margaret Sheehan (Vol. III), 500:5-13.*

**RESPONSE TO FACT NO. 33:**

Undisputed that Sheehan was not present at the meeting, but she did watch a recording of the June 20, 2023 Plymouth Select Board a few days after it occurred and heard Main state that he would not apologize to "that particular attorney." Sheehan Aff. ¶ 14. This demeaning and insulting commentary was made in public, broadcast on cable television, and recorded as part of the permanent record of Town proceedings, and caused Sheehan significant emotional distress. *Id.*

**FACT NO. 34:**

Sheehan did not identify any social-media post that she recalled seeing Main make about her. *Deposition of Margaret Sheehan (Vol. III), 442:19-23*.

**RESPONSE TO FACT NO. 34:**

Undisputed but immaterial.

**FACT NO. 35:**

Main did not know Michael McVeigh and knew nothing about him. *Deposition of Michael Main, 142:4–144:4.*

**RESPONSE TO FACT NO. 35:**

Sheehan cannot possibly answer whether this "Fact" is disputed or undisputed; but it is immaterial, as Sheehan does not contend that Main knew McVeigh.

**FACT NO. 36:**

Main had never communicated with McVeigh by telephone or in writing and had never interacted with him in person. *Deposition of Michael Main, 153:8-19.*

**RESPONSE TO FACT NO. 36:**

Sheehan cannot possibly answer whether this "Fact" is disputed or undisputed; but it is immaterial, as Sheehan does not contend that Main communicated or interacted with McVeigh.

**FACT NO. 37:**

Main had never seen the "Meg Costs Us Millions" Facebook page and, to his knowledge, had never communicated with its administrator. *Deposition of Michael Main, 153:20–154:11.*

**RESPONSE TO FACT NO. 37:**

Sheehan cannot possibly answer whether this "Fact" is disputed or undisputed; but it is immaterial as Sheehan does not contend to the contrary. Main acknowledged that he heard about the page and "laughed about it." Main Tr. 141:4–13.

**IV. Evidence Concerning Betty Cavacco**

**FACT NO. 38:**

As indicated in the preceding section, on January 9, 2023, Sheehan sent Cavacco and the Plymouth Select Board a letter complaining about Main's conduct at the January 4, 2023 ZBA hearing. Cavacco did not recall receiving the letter but did not dispute that she received it. She testified that she did not believe she responded to Sheehan's request that she assess Main's conduct. *Deposition of Betty Cavacco, 63:6–66:5; Exhibit 53.*

**RESPONSE TO FACT NO. 38:**

Disputed to the extent that this paragraph characterizes the January 9, 2023 letter as "complaining" rather than an attempt to bring to the Board's attention Main's "improper conduct," providing a link to the hearing video to be viewed, and asking whether what was shown was "an objective, unbiased and professional ZBA chair." Defs JA Ex. 52 at S.J. Exs. 0580; Sheehan Aff. ¶ 12. No member of the Select Board, including Cavacco, responded to Sheehan. Sheehan Aff. ¶ 12. Cavacco testified that she never watched the recording, never read a transcript, and to this day has no understanding of how Main behaved at the hearing. Cavacco Tr. 61:2–11, 65:10–16. The Select

Board had neither sent Main a copy of Sheehan's January letter requesting a review of Main's behavior, nor had they even told him about it. Sheehan Aff. ¶ 14. At the June meeting, the Select Board did not complain about Main's conduct and voted to reappoint him to another three-year term. *Id.* On January 24, 2023, Town Manager Derek Brindisi failed to answer an inquiry from a resident about Main's behavior, telling the resident to "encourage Ms. Sheehan to represent her own interests at future town meetings," copying the rest of the Select Board. *Id.* ¶ 15; Defs JA Ex. 56 at S.J. Exs. 0594.

**FACT NO. 39:**

Sheehan acknowledged that, apart from sending Cavacco her January 9, 2023 letter concerning Main's conduct at the ZBA hearing, she had no other communication with Cavacco regarding that letter. *Deposition of Margaret Sheehan (Vol. III), 507:12–508:21; Defs' Jt. Index of Exhibits, Exhibit 54 – January 9, 2023 Email to Select Board re ZBA Hearing on January 4, 2023 (Ex. 46 to Sheehan Dep. III).*

**RESPONSE TO FACT NO. 39:**

Disputed. On January 20, 2023, Sheehan emailed the Town Manager and the Select Board, including Cavacco, requesting that her January 9, 2023 letter be acknowledged and read at the January 24, 2023 Select Board meeting. Defs JA Ex. 56 at S.J. Exs. 0594; Sheehan Aff. ¶ 12.

**FACT NO. 40:**

The next chronologically identifiable allegation against Cavacco in the Amended Complaint concerns January 28, 2023, when Sheehan alleges that Cavacco reposted a modified version of a "Meg Costs Us Millions" ("MMP") Facebook post on the Plymouth Voters and Friends Facebook page. The original post, attributed to Michael McVeigh, blamed Sheehan for Claremont Plymouth LLC's decision to pursue a Chapter 40B housing development at Colony Place rather than proceed under an arrangement involving a multimillion-dollar developer contribution toward a water

booster pump for Plymouth. The original post concluded, "THANKS MEG, you literally cost us millions." *ECF No. 106, ¶ 64*.

**RESPONSE TO FACT NO. 40:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself. Plaintiff further notes that Main's comments on Jan. 4, 2023 asserted that Sheehan had cost the town million and Millions in defense fees in lawsuits that she had brought.

**FACT NO. 41:**

Deposition Exhibit 48 contains a screenshot of a Facebook post appearing under Cavacco's name concerning the Claremont development project, stating in part, "Thanks Meg Sheehan, I hope you're happy now because Claremont just pulled the plug because of your frivolous suits." *Deposition of Margaret Sheehan (Vol. III), 527:7-21; Defs' Jt. Index of Exhibits, Exhibit 130 – B. Cavacco Facebook Post re Claremont (Ex. 48 to Sheehan Dep. III) (Undated)*.

**RESPONSE TO FACT NO. 41:**

Undisputed that Joint Exhibit 130 contains a version of the post in question, but it is not the version about which Cavacco was deposed. Pl. Ex. 214 at –1156. Cavacco admitted to writing the post. Cavacco Tr. 111:13–112:4. Plymouth omits the remainder of the post, which states "now Plymouth will have 350 more 40B's, and will have to pay for a well…you really do cost us millions," followed by a re-post of a MMP post beginning with "Meg Sheehan has been unsuccessful in life except for wasting everybody's time and money." Pl. Ex. 214 at –1156. There is no judicial imprimatur on contentions that the cases Sheehan has filed are frivolous. Sheehan Aff. ¶ 20. Indeed, in the labyrinth of administrative law, appeals under the Administrative Procedure Act, G.L. c. 30A, frequently fall victim to such procedural hurdles as standing and mootness. *Id.* At the time of the post, Sheehan had filed one appeal, as counsel, on January 23, 2023, and Claremont

had not "pulled the plug"; it was still proposing a project with the booster-station arrangement in April 2024. Defs JA Ex. 99 at 1165–67.

**FACT NO. 42:**

Cavacco testified that she believed the statements in her January 28, 2023, Facebook post were factual. She explained that Plymouth had been negotiating with Claremont concerning a proposed development arrangement under Chapter 40B that would have afforded the Town input into the project and infrastructure benefits, including a well. Cavacco understood that Sheehan had filed lawsuits concerning the project (see ¶ 45) and that Claremont subsequently discontinued negotiations with the Town and elected to proceed under Chapter 40B without the negotiated arrangement. *Deposition of Betty Cavacco, 112:8–114:3*.

**RESPONSE TO FACT NO. 42:**

Undisputed that Cavacco so testified but disputed as to any implication that Cavacco's testimony is correct. When asked about her purpose in posting, Cavacco responded, "[n]o purpose at all, just it was fact," and when asked what role Sheehan played, she said Sheehan "was filing suits. On what, I can't remember." Cavacco Tr. 112:5–6, 113:14–20. The Development Agreement states Claremont will contribute a maximum of $2.5 million to "Pump Funds" but says nothing about a well. Defs JA Ex. 45 at S.J. Exs. 0497–0503.

**FACT NO. 43:**

ZBA Chair Main testified that Claremont's original development proposal at Colony Place involved 192 age-restricted housing units, as compared with a subsequent proposal for approximately 350 apartments. *Deposition of Michael Main, 133:21–136:5*.

**RESPONSE TO FACT NO. 43:**

Undisputed that Main so testified but disputed as to any implication that Main's testimony is correct.

**FACT NO. 44:**

On December 7, 2022, the Plymouth Zoning Board of Appeals granted Claremont Plymouth LLC a special permit under ZBA Case No. 4063 for a proposed 198-unit, age-restricted residential development at Colony Place. The ZBA issued an amended decision on March 7, 2023. The special permit approval was appealed. Claremont subsequently proposed a 300-unit development under Chapter 40B without age restrictions. *Defs' Jt. Index of Exhibits, Exhibit 43 – Claremont Special Permit (Plymouth ZBA) (December 12, 2022); Defs' Jt. Index of Exhibits, Exhibit 63 – March 28, 2023 - Appeal of Plymouth ZBA Amended Decision re Claremont (Case No. 4063)*; *Defs' Jt. Index of Exhibits, Exhibit 78 – June 28, 2023 – Plymouth Planning Board Minutes, S.J. Exs. 0822; Defs' Jt. Index of Exhibits, Exhibit 99 – April 23, 2024 – Plymouth Select Board Minutes, S.J. Exs. 1165-1166.*

**RESPONSE TO FACT NO. 44:**

Disputed insofar as the ZBA decision is dated December 14, 2022, not December 7, 2022. Defs JA Ex. 44 at S.J. Exs. 0447.

**FACT NO. 45:**

At the April 23, 2024 Plymouth Select Board meeting, Claremont proposed a 300-unit "friendly" Chapter 40B development at Colony Place that would preserve the proposed water booster-station arrangement with the Town. Claremont representative Bill Lovett explained that the developer sought the Select Board's endorsement and intended to retain the booster-station commitment as part of the proposal. Plymouth Planning Director Lee Hartmann explained that, if Claremont instead pursued a traditional Chapter 40B development, the State could eliminate the booster-station requirement on financial-feasibility grounds, leaving Plymouth with the development but without the booster station. *Exhibit 99, S.J. Exs. 1165-1166*.

**RESPONSE TO FACT NO. 45:**

Undisputed, but the minutes speak for themselves.

**FACT NO. 46:**

The Amended Complaint next alleges that on April 24, 2023, Cavacco, then Chair of the Plymouth Select Board, sent a letter to the Southeastern Massachusetts Pine Barrens Alliance ("SEMPBA") concerning Sheehan's use of space in a Town-owned building leased to SEMPBA. The letter alleged that SEMPBA had permitted Sheehan to use the space without Town approval and raised the possibility that the Town would not renew SEMPBA's lease. On April 28, 2023, the letter appeared on the "Meg Costs Us Millions" Facebook page. *ECF No. 106, ¶ 84*.

**RESPONSE TO FACT NO. 46:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself, and its own version of the chronology. For example, the Amended Complaint does not "allege[] that on April 24, 2023, Cavacco . . . sent a letter to . . . SEMPBA"; it alleges that "[u]nder date of April 24, 2023, Cavacco . . . *addressed* a letter to the President of SEMPBA." Dkt. 106 at 33. Cavacco misstates the allegations in the Amended Complaint; addressing a letter is not the same thing as sending it. As indicated in the November 21, 2026 Heller Affidavit, there is significant confusion as to who wrote the letter, when the author did so, and when it was received. Heller Aff. ¶ 2.

**FACT NO. 47:**

Cavacco confirmed that the Town sent an April 24, 2023 letter to Sharl Heller of the Southeastern Massachusetts Pine Barrens Alliance ("SEMPBA"), bearing Cavacco's signature, concerning SEMPBA's use of Town-leased property. *Deposition of Betty Cavacco, 84:5–85:3; Defs' Jt. Index of Exhibits, Exhibit 100 – April 24, 2024 Letter to Sharl Heller at SEMPBA (Ex. 6 to Cavacco Dep.)*.

**RESPONSE TO FACT NO. 47:**

Undisputed, other than to any implication that the SEMPBA letter was *sent* rather than *dated* April 24, 2023. *See* Response to Fact No. 46.

**FACT NO. 48:**

Cavacco testified that, while serving as Select Board chair, she signed an April 24, 2023 letter concerning Sheehan's organization's use of a municipal address. She testified that the letter had been prepared by municipal personnel and denied that Sheehan or Save the Pine Barrens had been singled out for different treatment. *Deposition of Betty Cavacco, 85:1–91:15, 157:18–158:8; Exhibit 100.*

**RESPONSE TO FACT NO. 48:**

Undisputed that Cavacco testified that she signed the letter and that it was prepared by municipal personnel – probably Town Manager Derek Brindisi. Cavacco Tr. 84:17–21; 63:11–13. Disputed that Cavacco testified clearly that she "denied that Sheehan or Save the Pine Barrens had been singled out for different treatment." Cavacco was asked: "Was there a reason that Ms. Sheehan and Save the Pine Barrens, Inc. were being singled out for this letter," to which she responded only: "No." Cavacco Tr. 91:8–12. This testimony is unclear.

**FACT NO. 49**:

Plaintiff's counsel questioned Cavacco about whether she provided the April 24, 2023 letter to the administrator of the "Meg Costs Us Millions" Facebook page. Cavacco had no recollection of doing so and had no knowledge of how the letter came to be published on that page. *Deposition of Betty Cavacco, 94:1–95:16.*

**RESPONSE TO FACT NO. 49:**

Undisputed that Cavacco so testified, noting that having no recollection is not the same thing as an outright denial, and testifying "I don't believe so" (as Cavacco did when asked if she provided

the letter to the MMP administrator) is not the same as saying "no." *See* Cavacco Tr. 94:1–95:16. Disputed as to any implication that the SEMPBA letter was *sent* rather than *dated* April 24, 2023. *See* Response to Fact No. 46.

**FACT NO. 50:**

Cavacco did not even know who administered the "Meg Costs Us Millions" Facebook page and had not given thought to the administrator's identity. *Deposition of Betty Cavacco, 104:13–105:22*.

**RESPONSE TO FACT NO. 50:**

Undisputed that Cavacco so testified but disputed as to the veracity of this testimony, given that, when asked "do you know who Meg Costs Us Millions is?" Cavacco responded, "I don't, I wish I did lol," Pl. Ex. 225, and boosted the page, stating, for example, "everyone should read Meg costs us millions," Defs JA Ex. 113 at S.J. Exs. 1300.

**FACT NO. 51:**

Nor did she have any communications with the administrator of the "Meg Costs Us Millions" Facebook page. *Plymouth Affidavits – Betty Cavacco*.

**RESPONSE TO FACT NO. 51:**

Disputed. The cited affidavit, which lacks a pin cite, states only that Cavacco has "no recollection or record of ever communicating with the administrator" of MMP, not that she never communicated with him. Dkt. 264 at 4.

**FACT NO. 52:**

Sheehan has no personal knowledge that Cavacco provided the April 24, 2023 SEMPBA letter to the administrator of the "Meg Costs Us Millions" Facebook page. Sheehan acknowledged that her conclusion rested on the dates of the letter and Facebook post, a hearsay conversation with Sharl Heller concerning the letter's appearance on Facebook before Heller received it, and Sheehan's belief that the post appeared earlier than the date that Sharl Heller told her she received it. Sheehan

could not identify who provided the letter to the page, speculated that it might have been Cavacco or Town Manager Derek Brindisi, and acknowledged having no other specific facts supporting her conclusion. *Deposition of Margaret Sheehan (Vol. III), 521:20-24, 522:1-523:23, 524:12–525:7*.

**RESPONSE TO FACT NO. 52:**

Disputed to the extent this paragraph editorializes and mischaracterizes Sheehan's testimony, which speaks for itself. Cavacco does not provide an outright denial that she provided the letter to the MMP administrator. *See* Response to Fact No. 49. McVeigh did not remember where he got it, whether it was emailed, or whether anyone asked him to post it. McVeigh Tr. 203:4–204:2. To Sheehan's knowledge, nobody at CLWC had anything to do with it ending up in MMP's hands, which would have been counter to CLWC's interest. Sheehan Aff. ¶ 20. Disputed as to any implication that the SEMPBA letter was *sent* rather than *dated* April 24, 2023. *See* Response to Fact No. 46. When this letter arrived at its recipient's address, who provided it to MMP, and by what means it was transmitted are all questions for the jury, given the genuine disputes of material fact on this subject.

**FACT NO. 53:**

The next chronological allegation against Cavacco in the Amended Complaint concerns May 2023, when Sheehan alleges that Cavacco reposted statements from the "Meg Costs Us Millions" Facebook page on her "Plymouth Rant" Facebook page, accusing Sheehan of operating an unlawful business at a property in New Hampshire. *ECF No. 106, ¶¶ 90–92*.

**RESPONSE TO FACT NO. 53:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself.

**FACT NO. 54:**

Cavacco acknowledged she created a Facebook group called "Plymouth Rant" and served as one of its administrators. She described the group's purpose as providing a place for people to express complaints about Plymouth. She testified that she did not ordinarily post on the group, although she acknowledged that she may have done so. *Deposition of Betty Cavacco, 105:23–107:10*.

**RESPONSE TO FACT NO. 54:**

Disputed to the extent this paragraph characterizes Cavacco as "one of" multiple administrators of Plymouth Rant, as there is no evidence in her cited testimony or in the record that there were any other administrators. *See* Cavacco Tr. 105:23–107:10. To the contrary: Cavacco responded to a comment "I'm the admin of plymouth rant not the meg page." Pl. Ex. 188 at –976. Further, when a Plymouth Rant reader posted, "Seriously, Betty?? . . . Are you the administrator of this page? Pretty low allowing these posts. This exact post from this fake profile was taken down on another website. Maybe you should do the same" Cavacco responded "Yes." Pl. Ex. 199 at –967. In another instance, the same Plymouth Rant reader wrote: "Betty is the administrator of the site. She is allowing these vicious attacks." Pl. Ex. 226 at –468.

**FACT NO. 55:**

Cavacco testified that she could not recall whether she had reposted material from "Meg Costs Us Millions" on Plymouth Rant. *Deposition of Betty Cavacco, 162:20-24*.

**RESPONSE TO FACT NO. 55:**

Undisputed that Cavacco so testified, but disputed as to any implication that Cavacco did not in fact repost MMP posts on Plymouth Rant, which her testimony does not establish. Cavacco reposted MMP posts and permitted MMP and "Rebecca Newhouse," i.e., McVeigh, to post on Plymouth Rant. *See, e.g.*, Pl. Ex. 188 at –972; Def JA Ex. 138 at S.J. Exs. 2120 & 2122; Pl. Ex. 227 at –938–39 & –946.

**FACT NO. 56:**

Sheehan has identified no Facebook post, admission, or other evidence establishing that Cavacco personally published or reposted anything in May 2023 concerning Sheehan's New Hampshire property. *Deposition of Margaret Sheehan (Vol. III), 529:1–532:24*.

**RESPONSE TO FACT NO. 56:**

Disputed on the basis that the cited testimony, which primarily concerns Cavacco's responsibility as the administrator of Plymouth Rant for content appearing on it, does not support this paragraph or even reference the New Hampshire property.

**FACT NO. 57:**

The discovery record contains no Facebook post showing that Cavacco published or reposted the alleged May 2023 statements concerning Sheehan's New Hampshire property.

**RESPONSE TO FACT NO. 57:**

Disputed on the grounds that this statement, which is argument rather than material fact, is unsupported by any record citation in violation of L.R. 56.1.

**FACT NO. 58:**

The next chronological allegation against Cavacco in the Amended Complaint concerns a May 2023 appearance on the local "Talk of the Town" broadcast, during which Sheehan alleges that Cavacco made disparaging statements about her. *ECF No. 56,* ¶¶ *90–92*.

**RESPONSE TO FACT NO. 58:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself.

**FACT NO. 59:**

Sheehan did not listen to the "Talk of the Towne" broadcast in which she alleges Cavacco made disparaging statements about her and has never listened to a recording of that broadcast. Her knowledge of Cavacco's alleged statements is based entirely on reports from others. Sheehan

identified Sharl Heller as one person who reported the statements to her but could not recall the identities of the others. *Deposition of Margaret Sheehan (Vol. III), 534:19–536:24.*

**RESPONSE TO FACT NO. 59:**

Undisputed that Sheehan did not personally hear the broadcast contemporaneously and is still looking for a copy.

**FACT NO. 60:**

Cavacco acknowledged appearing as a guest on Karen Buechs' "Talk of the Town" program, broadcast on Plymouth's government television channel, but could not recall discussing Sheehan during an appearance. When specifically asked whether she remembered anything she said about Sheehan in a 2023 interview with Buechs, Cavacco answered, "I don't." *Deposition of Betty Cavacco, 34:8–35:16, 100:10-13*.

**RESPONSE TO FACT NO. 60:**

Undisputed that Cavacco so testified, but disputed as to the veracity of the testimony on the basis of her understanding of what others believe they heard. Sheehan (Vol. III) Tr. 535:2–536:14.

**FACT NO. 61:**

The next chronological allegation against Cavacco in the Amended Complaint concerns her May 2023 campaign for election to Plymouth Town Meeting. Sheehan alleges that Cavacco made disparaging statements about Sheehan and her environmental advocacy in connection with that campaign. *ECF No. 106, ¶¶ 89, 96*.

**RESPONSE TO FACT NO. 61:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself.

**FACT NO. 62:**

A Facebook post appearing under Cavacco's name criticized the proposed Plymouth charter changes and discussed Sheehan's association with the Goldenrod Foundation and Save the Pine

Barrens, as well as Frank Mand's association with the Southeastern Massachusetts Pine Barrens Alliance ("SEMPBA"). When shown the post during her deposition, Cavacco testified, "It doesn't ring a bell, honestly, but it is under my name." *Deposition of Betty Cavacco, 115:22–117:15; Defs' Jt. Index of Exhibits, Exhibit 113 – B. Cavacco Social Media Posts (Ex. 10 to Cavacco Dep.), S.J. Exs. 1275-1286.*

**<u>RESPONSE TO FACT NO. 62:</u>**

Undisputed that Cavacco so testified and that the post appears under her name. In stating, "[i]t doesn't ring a bell, honestly, but it is under my name," Cavacco did not deny writing the post. Cavacco Tr. 116:8–9.

**<u>FACT NO. 63:</u>**

On May 14, 2023, a Facebook post appearing under Cavacco's name shared to the "All Things Plymouth" page a May 11, 2023 "Meg Costs Us Millions" post containing a diagram of alleged relationships among Sheehan, the Goldenrod Foundation, Save the Pine Barrens, Frank Mand, SEMPBA, and the Plymouth Charter Commission. Cavacco's accompanying comment stated, "What a tangled web! Plymouth Voters be aware!" *Exhibit 113, S.J. Exs. 1284-1286*.

**<u>RESPONSE TO FACT NO. 63:</u>**

Undisputed that the referenced Facebook Post under Cavacco's name was shared to the *All Things Plymouth* site but disputed as to the truthfulness of the defamatory diagram of alleged relationships. The underlying MMP post and Cavacco's re-post are dated May 11, 2023; May 14, 2023 is the date another user, Carrie M. Cheffro, shared MMP's post. Defs JA Ex. 113 at S.J. Exs. 1285–86. Further disputed as to incompleteness, as the post in its entirety (with comments) runs from S.J. Exs. 1284–1288 (Cavacco states "I'm the admin of plymouth rant not the Meg page" in the pages not referenced). Defs JA Ex. 113 at S.J. Exs. 1284–1288. There was no money flow, no

financial impropriety, and no connection to the proposed new charter except that those named on the fictitious flowchart favored it. Sheehan Aff. ¶ 20.

**FACT NO. 64:**

The Amended Complaint next alleges that, in late summer or early fall 2023, Cavacco stated at a public meeting that companies owned by Sheehan's family held approximately 200 acres of land that should be donated to the Town of Plymouth, referred to Sheehan and her family as "hypocrites," and compared their conduct to that of sand-mining operators. Sheehan further alleges that Germain subsequently posted Cavacco's remarks online. *ECF No. 106, ¶ 101.*

**RESPONSE TO FACT NO. 64:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself.

**FACT NO. 65:**

During her July 7, 2026 deposition, Cavacco was not questioned about the allegation in paragraph 101 of the Amended Complaint that, at a public meeting in late summer or early fall 2023, she suggested that Sheehan family companies donate a 200-acre parcel to the Town of Plymouth and referred to Sheehan and her family as "hypocrites." *ECF No. 106, ¶ 101; Deposition of Betty Cavacco.*

**RESPONSE TO FACT NO. 65:**

Undisputed but immaterial, as whether Cavacco was questioned has no bearing on whether she made the statements.

**FACT NO. 66:**

The discovery record contains no post from Cavacco making the alleged statements concerning Sheehan's family and the approximately 200 acres of land.

**<u>RESPONSE TO FACT NO. 66:</u>**

Disputed on the grounds that this statement, which is argument rather than material fact, is unsupported by any record citation in violation of L.R. 56.1.

**<u>FACT NO. 67:</u>**

The next chronological allegation against Cavacco in the Amended Complaint concerns the December 7, 2023 meeting of the Plymouth Community Preservation Committee, at which a proposed $4 million grant to A.D. Makepeace Company was considered. Sheehan alleges that Cavacco enlisted other committee members to prevent Sheehan from speaking in opposition to the proposed grant. *ECF No. 106,* ¶ 104.

**<u>RESPONSE TO FACT NO. 67:</u>**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself, noting that the Amended Complaint mistakenly identified the date of the meeting was December 7, 2023, when it was more likely November 30, 2023. Sheehan Aff. ¶ 24. The November 30, 2023 agenda includes the Makepeace grant for $4 million.

**<u>FACT NO. 68:</u>**

Shortly after Cavacco's appointment to the Plymouth CPC, she made a motion at her first meeting in July 2023 that all future CPC meetings be held at Town Hall, be open to the public, be recorded or broadcast, and permit members of the public to participate remotely, including by asking questions or commenting. *Defs' Joint Index of Deposition Testimony, Deposition of John T. Mahoney, Rule 30(b)(6) Designee of the Plymouth Community Preservation Committee, 30:6–24*.

**<u>RESPONSE TO FACT NO. 68:</u>**

Undisputed that Mahoney so testified.

**FACT NO. 69:**

The December 7, 2023 video recording is in the record as Exhibit 91. *Defs' Jt. Index of Exhibits, Exhibit 91 – Video of December 7, 2023 Plymouth CPC Meeting*.

**RESPONSE TO FACT NO. 69:**

Undisputed that Exhibit 91 is in the record.

**FACT NO. 70:**

At her deposition, Sheehan was shown the video recording of the December 7, 2023, Plymouth Community Preservation Committee meeting and confirmed that it depicted her speaking at the meeting. The video showed Sheehan speaking during an approximately five-minute segment beginning at 1:36:35 and again during public comment approximately between 2:25 and 2:28. Sheehan acknowledged that she had spoken at the meeting. *Deposition of Margaret Sheehan (Vol. III), 511:1–512:21, 513:10-514:17; Exhibit 91, at 1:36:35-1:41:35 and 2:25:00-2:28:00*.

**RESPONSE TO FACT NO. 70:**

Undisputed that Sheehan spoke at the December 7, 2023 meeting, but, as noted in the Response to Fact No. 67, *supra*, the meeting at which Cavacco prevented Sheehan from speaking was November 30, 2023, i.e., the Amended Complaint mistakenly identified the date of the meeting in question as December 7, 2023 instead of November 30, 2023. Sheehan Aff. ¶ 24. Sheehan testified that several meetings discussed the grant at issue and that, "at one of them Betty Cavacco made a . . . statement at the beginning, 'I'm not letting this woman speak,' or 'I'm not letting her speak. Get that microphone off the table.' And then on the way out she harassed one of my friends. So yes, I remember that maybe it was a different meeting or after this or before this, so I can't say." Sheehan (Vol. III) Tr. 514:17–515:5. Cavacco also acknowledges that the CPC held "more than a meeting" on the application and could not say when they were. Cavacco Tr. 136:4–9. When she was shown the December 7 minutes, Cavacco could not confirm they reflected the meeting at

which the grant was voted on and conceded that "maybe it's not this meeting." *Id.* at 142:13–15, 145:12–23.

**FACT NO. 71:**

In her sworn answer to Interrogatory No. 4 of the Plymouth Defendants' First Set of Interrogatories, Sheehan specifically identified the December 7, 2023 Plymouth Community Preservation Committee meeting as the occasion on which Cavacco allegedly prevented her from speaking in opposition to a proposed $4 million grant to a Makepeace affiliate. Sheehan further stated that she believed Cavacco objected to her speaking because she did not reside in Plymouth. *Defs' Jt. Index of Exhibits, Exhibit 4 – Plaintiff's Answers and Objections to the Plymouth Defendants' First Set of Interrogatories (April 20, 2026), Response to Interrogatory No. 4, S.J. Exs. 0095-0096.*

**RESPONSE TO FACT NO. 71:**

Undisputed that the interrogatory answer so states, as Sheehan mistakenly identified the date of the meeting in question as December 7, 2023, when she meant November 30, 2023. *See* Response to Fact No. 67, *supra*.

**FACT NO. 72:**

After being confronted with video footage showing that she spoke at the December 7, 2023 Plymouth Community Preservation Committee meeting, Sheehan suggested that the incident in which Cavacco allegedly prevented her from speaking may have occurred at a different meeting, either before or after December 7, 2023. *Deposition of Margaret Sheehan (Vol. III), 509:8–515:8.*

**RESPONSE TO FACT NO. 72:**

Undisputed that Sheehan so testified. Sheehan additionally testified that several meetings discussed the grant at issue and that, "at one of them Betty Cavacco made a . . . statement at the beginning, 'I'm not letting this woman speak,' or 'I'm not letting her speak. Get that microphone

off the table.' And then on the way out she harassed one of my friends. So yes, I remember that maybe it was a different meeting or after this or before this, so I can't say." Pl. Ex 151 (Sheehan (Vol. III) Tr. 514:17–515:4). The meeting was likely the November 30, 2023 CPC meeting, the agenda for which includes the Makepeace grant. Sheehan Aff. ¶ 24; Pl. Ex. 230 –21726. The CPC minutes of the November 30, 2023 CPC meeting list Public Comment and identify only one person speaking, Patricia Adelman. *Id.* The CPC, including Cavacco, Mahoney, and Buechs, approved these minutes on December 7, 2023. Pl. Ex. 183 at –21760.

**FACT NO. 73:**

Sheehan did not identify any other Plymouth Community Preservation Committee meeting at which Cavacco allegedly prevented her from speaking. *Deposition of Margaret Sheehan (Vol. III), 514:17–515:8.*

**RESPONSE TO FACT NO. 73:**

Undisputed that Sheehan did not identify the meeting at her deposition but has done so subsequently. Response to Interrogatory Nos. 67, 71, 72, *supra*.

**FACT NO. 74:**

The next chronological allegation against Cavacco in the Amended Complaint concerns a January 14, 2024 post on the "Meg Costs Us Millions" Facebook page containing a purported email attributed to Sheehan. Sheehan alleges that the email was fabricated and that Cavacco subsequently reposted it, together with a comment describing Sheehan as "truly heinous," on the "Plymouth Rant" Facebook page. *ECF No. 106,* ¶¶ *105–107*.

**RESPONSE TO FACT NO. 74:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself.

**FACT NO. 75:**

When shown the purported Sheehan email posted on "Plymouth Rant" by "Rebecca Newhouse," Sheehan acknowledged that Cavacco's name did not appear on the post but maintained that Cavacco was responsible for it as the group's administrator. *Deposition of Margaret Sheehan (Vol. III), 528:5–529:18*; *Defs' Jt. Index of Exhibits, Exhibit 138 – Plymouth Rant Post re Ten Resident Group Email (Ex. 49 to Sheehan Dep. III) (Undated)*.

**RESPONSE TO FACT NO. 75:**

Undisputed that Cavacco's name does not appear on the post, but disputed as to any characterization that the email is a genuine, "Sheehan email." Defs JA Ex. 138. Sheehan did not draft or send this email, which is a "complete fabrication"; Sheehan "had nothing to do with it." Sheehan Aff. ¶ 19; Sheehan (Vol. III) Tr. 303:5-11. McVeigh testified that the email was sent to MMP by a reader and that he does not recall who sent it or how. McVeigh Tr. at 196:7–199:13. McVeigh did not believe he needed to have the email substantiated before posting it. McVeigh Tr. 197:16–20. Germain later re-posted the email to the All Things Plymouth and Fair and Open Government for Carver pages. Def JA Ex. 137 at S.J. Exs. 2118.

**FACT NO. 76:**

Sheehan testified that she believed Cavacco was responsible for all content posted on "Plymouth Rant" because Cavacco was an administrator of the Facebook group. *Deposition of Margaret Sheehan (Vol. III), 528:5–529:18*.

**RESPONSE TO FACT NO. 76:**

Disputed insofar as Sheehan testified that Cavacco is responsible for what is posted on Plymouth Rant because she is *the* administrator, not "an" administrator, and that Cavacco "was the administrator of it, and she admitted it." Sheehan (Vol. III) Tr. 529:12–18. *See* Response to Fact No. 54, *supra*.

**FACT NO. 77:**

Cavacco was not questioned during her July 7, 2026 deposition about the January 2024 Facebook post containing the purported email attributed to Sheehan or the allegation that Cavacco reposted it on "Plymouth Rant." *ECF No. 106, ¶¶ 105–107; Deposition of Betty Cavacco*.

**RESPONSE TO FACT NO. 77:**

Undisputed but immaterial. *See* Response to Fact No. 65, *supra*.

**FACT NO. 78:**

In paragraph 119 of the Amended Complaint, Sheehan alleges that Cavacco and Germain shared and reposted each other's social-media content and that Cavacco provided her April 2023 letter concerning Sheehan to the "Meg Costs Us Millions" Facebook page before its intended recipient received it. *ECF No. 106, ¶ 119*.

**RESPONSE TO FACT NO. 78:**

Disputed to the extent that Plymouth seeks to put forth its own characterization of the allegations of the Amended Complaint, which speaks for itself.

**FACT NO. 79:**

Cavacco was questioned about an exchange on Plymouth Rant in which Sheehan criticized Cavacco concerning a water-related agreement and asked whether Cavacco's position involved another falsehood. In the exchange, Cavacco responded, "Meg Sheehan, everyone should read 'Meg Costs Us Millions.' You're bored. I get it. Do you really need to hurt the taxpayers of Plymouth as you sit on your mountain of money? Find another hobby, and leave the people of Plymouth alone." *Deposition of Betty Cavacco, 166:9-22; Exhibit 113, S.J. Exs. 1299-1300*.

**RESPONSE TO FACT NO. 79:**

Undisputed.

**<u>FACT NO. 80:</u>**

Asked what she meant by Sheehan sitting on a "mountain of money," Cavacco testified that she believed Sheehan was financially well off because of her family's association with L. Knife. She acknowledged that her belief concerning Sheehan's financial resources was an assumption. *Deposition of Betty Cavacco, 166:9–167:20*.

**<u>RESPONSE TO FACT NO. 80:</u>**

Undisputed.

**<u>FACT NO. 81:</u>**

Cavacco was shown another Plymouth Rant exchange in which a comment under her name stated, "There is nothing posted that isn't fact." Cavacco acknowledged making the statement but could not recall what she was referring to when she made it. She also testified that she tried not to read Plymouth Rant regularly. *Deposition of Betty Cavacco, 159:17–161:7; Exhibit 113, S.J. Exs. 1290*.

**<u>RESPONSE TO FACT NO. 81:</u>**

Undisputed that Cavacco was shown the exchange in question and so testified, but disputed to the extent that the context of Cavacco's comment reveals what she was referring to, content on Plymouth Rant and possibly MMP, as the exhibit speaks for itself. *See* Defs JA Ex. 113 at S.J Exs. 1284–1291. Disputed to the extent that the paragraph omits the second half of Cavacco's statement, "[y]ou can make all the excuses you want Frank but the truth will set you free!" as well as Cavacco's testimony clarifying that the "Frank" in question was Frank Mand, who, along with Sheehan and others, is named on the MMP flowchart that Sheehan re-posted, *Id.* at S.J. Exs. 1284, 1285, 1291; Cavacco Tr. 160:18–23. When asked "[w]ere you and Mr. Mand having a dispute about whether everything that appeared on Plymouth Rant was true?" Cavacco responded, "Maybe. Like I said, I try not to read the Plymouth Rant." Cavacco Tr. 161:3–8. Cavacco's

testimony that she tries not to read Plymouth rant is inconsistent with her vouching, as its administrator, that "[t]here is nothing posted that isn't Fact!" Defs JA Ex. 113 at S.J. Ex. 1291.

**FACT NO. 82:**

Cavacco was questioned about an anonymous May 15, 2023 post on "Meg Costs Us Millions" referring to Sheehan as a "lying vile hag." Cavacco testified that she had not previously seen the post and agreed that the description was inappropriate. When questioned about whether she had reposted material from "Meg Costs Us Millions" on Plymouth Rant, Cavacco testified that she might have done so but could not recall. She did not confirm reposting the May 15, 2023 post. *Deposition of Betty Cavacco, 162:1-24*.

**RESPONSE TO FACT NO. 82:**

Undisputed that Cavacco so testified.

**FACT NO. 83:**

The discovery record contains no identified Facebook post, screenshot, or other evidence showing that Cavacco reposted the May 15, 2023 "Meg Costs Us Millions" post referring to Sheehan as a "lying vile hag" on Plymouth Rant.

**RESPONSE TO FACT NO. 83:**

Disputed on the grounds that this statement is unsupported by any record citation in violation of L.R. 56.1. Further disputed on the grounds that the May 15, 2023 MMP post was reposted on Plymouth Rant. Defs JA Ex. 113 at S.J. Exs. 1292–95. Whose account personally reposted them is immaterial in light of the fact that Cavacco was the administrator and permitted the posts to appear on her site. Pl. Ex. 188 at –976; Pl. Ex. 199 at –967; Pl. Ex. 226 at –468.

**FACT NO. 84:**

The discovery record contains no identified Facebook post, screenshot, or other evidence showing that Cavacco and Germain shared or reposted each other's social-media posts, as alleged in

paragraph 119 of the Amended Complaint. *ECF No. 106, ¶ 119; Deposition of Margaret Sheehan (Vol. III), 241:2–243:18.*

**RESPONSE TO FACT NO. 84:**

Disputed. The cited paragraph from the Amended Complaint states, in relevant part: "the actions of one Defendant influenced the conduct of the others, sometimes as a result of direct communications, but, also as a product of each organically 'feeding' off observations of the others. Germain and Cavacco each shared and reposted items first posted by the other . . . . In addition, Germain, a Carver official, shared MMP posts with the All Matters Plymouth page." Dkt. 106, ¶ 119. Cavacco and Germain shared the same MMP posts – one posting before the other – sometimes even on the same day. *See, e.g.*, Pl. Ex. 231 at –985–986 (MMP post), *id.* at –991 (Cavacco re-post on All Things Plymouth), *id.* at –996–997 (Germain re-posts on All Things Plymouth and Fair and Open Government for Carver).

**FACT NO. 85:**

Cavacco testified that she had never discussed or communicated with anyone at A.D. Makepeace Company. She also testified that she had never met Michael McVeigh and knew nothing about him. *Deposition of Betty Cavacco, 57:17–58:5.*

**RESPONSE TO FACT NO. 85:**

Undisputed that Cavacco so testified, but disputed as to the veracity of the testimony because it is contradicted by Cavacco's earlier testimony that she knows James Kane, CEO of Makepeace, Cavacco Tr. 51:13–21, and McVeigh's testimony with reference to Cavacco that "I think I've met her once." McVeigh Tr. 158:17–19.

**FACT NO. 86:**

Cavacco expressly denied ever speaking with McVeigh or communicating with him by email, text message, social media, or any other means. She also denied sending McVeigh the April 24, 2023 letter concerning SEMPBA. *Deposition of Betty Cavacco, 172:14–173:19.*

**RESPONSE TO FACT NO. 86:**

Undisputed that Cavacco so testified but disputed as to the veracity of the testimony because it is contradicted by McVeigh's testimony with reference to Cavacco that "I think I've met her once." McVeigh Tr. 158:17–19. *See* Response to Fact No. 46, *supra*.

**FACT NO. 87:**

When Cavacco decided to run for the Plymouth Select Board in 2017, she did not know anyone employed by A.D. Makepeace Company. *Deposition of Betty Cavacco, 51:4-12*.

**RESPONSE TO FACT NO. 87:**

Undisputed but immaterial.

**FACT NO. 88:**

Cavacco first met James Kane, A.D. Makepeace's chief executive officer, through Massachusetts Maritime Academy, where Kane served as a trustee. She estimated that they first met around 2024, although she was uncertain of the date, and testified that she had not known him for very long. *Deposition of Betty Cavacco, 51:13-21*.

**RESPONSE TO FACT NO. 88:**

Undisputed that Cavacco so testified.

**FACT NO. 89:**

Cavacco served as president of the Massachusetts Maritime Academy parents' association. She testified that she became president after the previous president stepped down and the association's board voted to select her as the successor. *Deposition of Betty Cavacco, 53:9-17*.

**RESPONSE TO FACT NO. 89:**

Undisputed that Cavacco so testified.

**FACT NO. 90:**

Cavacco testified that she did not serve on any academy board or committee with Kane by virtue of her position as president of the parents' association. *Deposition of Betty Cavacco, 52:2-14*.

**RESPONSE TO FACT NO. 90:**

Undisputed that Cavacco so testified.

**FACT NO. 91:**

Cavacco denied serving as a member of the academy's foundation board. When questioned about a website identifying her as an ex officio member of the academy's Board of Trustees Foundation, she stated that she was unaware of that designation. *Deposition of Betty Cavacco, 52:2-22*.

**RESPONSE TO FACT NO. 91:**

Undisputed that Cavacco so testified.

**FACT NO. 92:**

Cavacco testified that Kane did not assist her son in gaining admission to Massachusetts Maritime Academy. *Deposition of Betty Cavacco, 53:1-3*.

**RESPONSE TO FACT NO. 92:**

Undisputed.

**FACT NO. 93:**

Cavacco testified that Kane did not assist her in obtaining any appointment or elected position at Massachusetts Maritime Academy, including the presidency of the parents' association. *Deposition of Betty Cavacco, 53:4-8*.

**RESPONSE TO FACT NO. 93:**

Undisputed.

**FACT NO. 94:**

Cavacco testified that she did not recall communicating with A.D. Makepeace, Redbrook, or their representatives concerning the Community Preservation Committee grant application. *Deposition of Betty Cavacco, 146:6-10*.

**RESPONSE TO FACT NO. 94:**

Undisputed.

**V. Evidence Regarding Plaintiff's First Amendment Retaliation Claim Against The Town of Plymouth**

**FACT NO. 95:**

Sheehan testified that she believes Plymouth maintained an unwritten policy or practice of favoring sand-mining interests and impeding her advocacy in opposition to those interests. She identified Cavacco and Main as the primary instigators of the alleged policy. *Deposition of Margaret Sheehan (Vol. III), 444:19–449:14*.

**RESPONSE TO FACT NO. 95:**

Undisputed.

**FACT NO. 96:**

When asked to identify persons other than Cavacco and Main who participated in the alleged unwritten municipal policy, Sheehan identified the Town Manager, Town Planner, other planning-department staff, and possibly members of the Zoning Board of Appeals ("ZBA"). Asked twice whether anyone else was involved, she answered, "That's all I can think of right now." *Deposition of Margaret Sheehan (Vol. III), 453:19–454:13*.

**RESPONSE TO FACT NO. 96:**

Undisputed that Sheehan so testified but disputed as to any implication that it characterizes Sheehan's testimony to be limited to those individual figures. Sheehan subsequently testified to additional participants in the unwritten policy, including Town Manager Derek Brindisi, Lee

Hartman, Colleen Tavekelian, Nick Mayo, Lauren Lind, Michael Main, Betty Cavacco, Jason Silva, Peter Conner, Tom Wallace, Kevin O'Leary, Paul McAuliffe, Charlie Bletzer, and Amy Kwesell. Sheehan (Vol. III) Tr. 454:1–479:10. Over the course of discovery, she has been further educated. See the Unwritten Policy of her section 1983 portion of her Opposition to the Motions of Makepeace, Kane, and McVeigh, which she incorporates by reference.

**FACT NO. 97:**

Sheehan identified Town Manager Derek Brindisi and alleged that he called her a liar after she made a presentation at a Plymouth Select Board meeting. She could not recall the meeting date, identify who witnessed the exchange, or produce a recording. She had not checked whether a recording existed and acknowledged that the exchange might have occurred outside the camera's view. *Deposition of Margaret Sheehan (Vol. III), 454:14–457:10*.

**RESPONSE TO FACT NO. 97:**

Undisputed that Sheehan so testified but disputed insofar as Sheehan reviewed recordings and, to the best of her recollection, Brindisi called Sheehan a liar in a public meeting context. Sheehan Aff. ¶ 10 n.2.

**FACT NO. 98:**

In Supplemental Interrogatory No. 23, Sheehan was asked to identify each Plymouth official whom she contended had furthered the Town's alleged unwritten policy, including the specific conduct, date, proceeding, witnesses, and supporting documents. In her response, Sheehan did not identify the alleged incident in which Town Manager Derek Brindisi called her a liar. *Defs' Jt. Index of Exhibits, Exhibit 7 – Plaintiff's Answers to Plymouth's Supplemental Interrogatories (June 24, 2026), Response to Interrogatory No. 23, S.J. Exs. 0171-0172*.

**RESPONSE TO FACT NO. 98:**

Disputed to the extent that Plymouth seeks to put forth its own characterizations of Sheehan's written and oral testimony.

**FACT NO. 99:**

Sheehan identified an additional alleged instance involving Brindisi: an email that she claimed to have seen instructing Town employees not to respond to her inquiries or communicate with her. She also referred to reporting concerning restrictions on Town employees' communications with the press. *Deposition of Margaret Sheehan (Vol. III), 459:1-17.*

**RESPONSE TO FACT NO. 99:**

Disputed as to the characterization of Sheehan's testimony. Sheehan testified that Town Manager Brindisi sent an email to all town employees instructing them to not respond to any inquiries from Sheehan. Sheehan also testified that Brindisi called her a liar in open session. Sheehan (Vol. III) Tr., 457:15–459:20.

**FACT NO. 100:**

Sheehan did not identify Brindisi or the alleged email directing Town employees not to communicate with her in her answers to Plymouth's interrogatories, including specifically Supplemental Interrogatory No. 23. *Exhibit 7 – S.J. Exs. 0171-0180*.

**RESPONSE TO FACT NO. 100:**

Disputed to the extent that it mischaracterizes Sheehan's written interrogatories. Sheehan's answer to Supplemental Interrogatory No. 23 identified the Town Manager as one of two full-time paid Town employees serving as directors of the Plymouth Foundation, described the Town's $1.00 sale of 71 Hedges Pond Road to the Foundation, and tied the Foundation to the Town's unwritten policy of favoring sand mining. Defendants' Joint Exhibit, Ex 7 at -175–77. Sheehan's further response to Supplemental Interrogatory No. 23 includes that "for the avoidance of all doubt, the

disrespectful, intimidating, and dismissing behavior towards me in furtherance of the unwritten policy remains in effect[,]" including the behavior by Derek Brindisi and others to which Sheehan testified. Defendants Joint Appendix, Exhibit 7 at -180; Sheehan (Vol. III) Tr. 457:15–479:10. Further disputed as immaterial, Sheehan disclosed this incident in her deposition testimony. Sheehan (Vol. III) Tr. at 459:1–17.

**FACT NO. 101:**

Asked whether she had any other examples concerning Brindisi, Sheehan answered, "Probably, but I can't think of them offhand." She then expressed a belief that Brindisi helped draft a letter on Cavacco's behalf but acknowledged having no evidence supporting that belief. Asked whether she had exhausted her memory concerning Brindisi, she answered, "As I sit here today, but there -- I'm sure there are other incidences." *Deposition of Margaret Sheehan (Vol. III), 459:18–461:2*.

**RESPONSE TO FACT NO. 101:**

Undisputed that Sheehan so testified but disputed insofar as Cavacco herself testified that either the "assistant town manager or the town manager" wrote the letter, but was "not really sure." Cavacco Tr. 84:11–21. The metadata associated with the letter produced by the Town of Plymouth indicates that Derek Brindisi, Town Manager, authored of the letter.

**FACT NO. 102:**

Sheehan identified Town Planner Lee Hartman as another participant in the alleged policy. She attributed to him the withholding or incomplete production of records concerning sand-and-gravel operations, statements concerning the expiration of permits, communications with personnel associated with Read Custom Soils, and advice to the ZBA concerning appeals brought by her clients. She acknowledged that her conclusion that Hartman was protecting the sand-mining industry was an inference she drew from his conduct, rather than an express statement contained in the records. *Deposition of Margaret Sheehan (Vol. III), 461:3–466:24*.

**RESPONSE TO FACT NO. 102:**

Undisputed that Sheehan testified but disputed as to Plymouth's characterization of Sheehan's testimony. Further, Hartman's Affidavit does not disclose his role as a director of the Plymouth Regional Economic Development Foundation (the "Plymouth Foundation"). Hartman served on the Plymouth Foundation board from 2010 to 2026. He was co-currently the Director of Planning and Development for the Town from 2002 to 2025. Dkt. 264 at 9, Hartmann Aff. ¶ 10.

**FACT NO. 103:**

When asked for her principal specific example concerning Hartman, Sheehan identified a 2021 dispute over an A.D. Makepeace earth-removal permit for property off Federal Road in Plymouth. She alleged that Hartman and the building inspector incorrectly represented that the permit remained valid, that inspections were discretionary, and that the operation was compliant. She also identified Hartman's participation in related ZBA proceedings. *Deposition of Margaret Sheehan (Vol. III), 464:1–467:7.*

**RESPONSE TO FACT NO. 103:**

Undisputed that Sheehan testified, but disputed to the extent that Sheehan also testified that the matter dragged out for nearly a year before she established that the permit had in fact expired. Sheehan (Vol. III) Tr. at 465:16–22.

**FACT NO. 104:**

Sheehan did not identify any instance in her deposition testimony or answers to Plymouth's interrogatories in which Lee Hartmann personally prevented her from speaking, threatened her for speaking, or instructed her not to speak. *Deposition of Margaret Sheehan (Vol. I), (Vol. II), (Vol. III); Deposition of Margaret Sheehan (Vol. III), 461:3–470:21; Exhibit 4; Exhibit 7.*

**RESPONSE TO FACT NO. 104:**

Undisputed that Sheehan testified, but disputed insofar Sheehan testified that she saw Lee Hartmann advise the Zoning Board of Appeals ahead of time that they should deny certain permits. Sheehan (Vol. III) Tr. at 464:2–8.

**FACT NO. 105:**

Sheehan also did not identify Hartmann in her response to Interrogatory No. 17, which specifically requested identification of Plymouth officials who allegedly deprived or chilled her First Amendment rights. *Exhibit 4, S.J. Exs. 0134-0135; Exhibit 7, S.J. Exs. 0171-0172*.

**RESPONSE TO FACT NO. 105:**

Undisputed.

**FACT NO. 106:**

Asked to identify the planning-department employees involved in the alleged policy, Sheehan named Colleen Tavekelian, Nick Mayo, and Lauren Lind. She also attributed participation to personnel in the planning, conservation, and building departments based on their asserted reporting relationship to Hartman. *Deposition of Margaret Sheehan (Vol. III), 467:13–468:23*.

**RESPONSE TO FACT NO. 106:**

Undisputed.

**FACT NO. 107:**

Asked what Tavekelian specifically did, Sheehan answered, “Whatever Lee Hartman directed her to do.” She clarified that she was not alleging Tavekelian personally intended to violate the Constitution, but rather that Tavekelian carried out directions and performed duties under a policy Sheehan attributed to Hartman, Cavacco, and Main. *Deposition of Margaret Sheehan (Vol. III), 468:17–470:21*.

**<u>RESPONSE TO FACT NO. 107:</u>**

Undisputed that Sheehan so testified, disputed to the extent that Sheehan testified that the policy Tavekelian carried out was unlawful. Sheehan (Vol. III) Tr. at 470:4–21.

**<u>FACT NO. 108:</u>**

Sheehan did not identify Colleen Tavekelian, Nick Mayo, or Lauren Lind as participants in Plymouth's alleged unwritten policy in either her initial or supplemental answers to Plymouth's interrogatories. Nor did she specifically allege in those answers that employees of the planning, conservation, and building departments participated in the policy because they reported to Lee Hartmann, or that Tavekelian implemented the policy by following Hartmann's directions. *Deposition of Margaret Sheehan (Vol. III), 467:13–470:21*; *Exhibit 4; Exhibit 7.*

**<u>RESPONSE TO FACT NO. 108:</u>**

Undisputed but immaterial, Sheehan identified them at her deposition. Sheehan (Vol. III) Tr. 467:13–470:21.

**<u>FACT NO. 109:</u>**

Sheehan attributed to Nick Mayo statements that inspections required by sand-and-gravel permits were unnecessary, failures to respond to enforcement requests, and failures to enforce the zoning bylaw. She placed those alleged actions in public proceedings involving A.D. Makepeace in 2021. She identified Lauren Lind by name but did not describe a separate specific act by Lind in that portion of the examination. Sheehan (Vol. III) Tr., 467:13–471:12.

**<u>RESPONSE TO FACT NO. 109:</u>**

Undisputed that Sheehan so testified, disputed to the extent Defendants' counsel did not ask Sheehan for a specific act by Lind in that portion of that examination. Sheehan (Vol. III) Tr. 467:13–471:12.

**FACT NO. 110:**

Asked whether there were any other specific Town actors involved in the alleged policy, Sheehan identified building inspector Jason Silva. She alleged that Silva failed to follow the zoning bylaw, perform his duties, provide public records, and accurately represent the existence of records to the Secretary of the Commonwealth. *Deposition of Margaret Sheehan (Vol. III), 472:6–473:4*.

**RESPONSE TO FACT NO. 110:**

Undisputed.

**FACT NO. 111:**

Sheehan did not identify Nick Mayo, Lauren Lind, or Jason Silva by name in either set of her answers to Plymouth's interrogatories, nor did she specifically attribute to Mayo or Silva the alleged failures concerning permit inspections, zoning enforcement, or public records that she later described in her deposition. *Deposition of Margaret Sheehan (Vol. III), 467:11–473:4; Exhibit 4; Exhibit 7*.

**RESPONSE TO FACT NO. 111:**

Undisputed but immaterial, Sheehan identified them at her deposition. Sheehan (Vol. III) Tr., 467:11–473:4.

**FACT NO. 112:**

Asked again whether there were other specific Town actors, Sheehan identified members of the Plymouth Foundation who also served on the ZBA or economic development committee. She attributed their participation in the alleged policy to permits for sand-and-gravel operations involving land associated with the Foundation, identifying 103 Hedges Pond Road and 71 Hedges Pond Road as examples. She further stated that, in her view, every sand-and-gravel operation permitted by the Town reflected the alleged policy. *Deposition of Margaret Sheehan (Vol. III), 473:5–474:15*.

**RESPONSE TO FACT NO. 112:**

Undisputed.

**FACT NO. 113:**

Asked to identify additional individual actors, Sheehan named ZBA members Peter Conner, Michael Main, Tom Wallace, and Kevin O'Leary. She alleged that Conner favored sand-mining operators and laughed or snickered during proceedings but did not identify a specific meeting date when asked. She attributed official-capacity ZBA conduct to Wallace and O'Leary and also associated O'Leary with the Plymouth Foundation. *Deposition of Margaret Sheehan (Vol. III), 474:17–476:13*.

**RESPONSE TO FACT NO. 113:**

Disputed to the extent Sheehan further testified that there were at least 20 official meetings involving Peter Conner. Sheehan (Vol. III) Tr. 475:14–18. Further disputed as Sheehan intended to name Kevin O' Reilly in her response.

**FACT NO. 114:**

The ZBA has two (2) members named Kevin O'Reilly and Michael Leary. *Plymouth Affidavits*.

**RESPONSE TO FACT NO. 114:**

Undisputed.

**FACT NO. 115:**

In response to further questions asking whether anyone else was involved, Sheehan identified former building inspector Paul McAuliffe and former Select Board member Charlie Bletzer. Asked again whether there was anyone else, she answered, "I'd say those are the primary actors." She initially agreed that the conduct she identified involved official-capacity actions, but qualified that answer by alleging that persons affiliated with the Plymouth Foundation used their public positions to benefit the private foundation. Sheehan (Vol. III) Tr., 476:14–477:22.

**<u>RESPONSE TO FACT NO. 115:</u>**

Undisputed that Sheehan testified, disputed to the extent that Plymouth mischaracterizes Sheehan's testimony, who testified that "all of the people on the Plymouth Foundation that make money from sand mining for their foundation, they're not acting in their official capacity on a foundation. That's a private entity, so they're acting in their official capacity, you know, giving their private foundation permits to make money from sand mining." Sheehan (Vol. III) Tr. 477:9–16.

**<u>FACT NO. 116:</u>**

In her answers to Plymouth's interrogatories, Sheehan identified Peter Conner and alleged conduct by him at a February 17, 2021 ZBA meeting, but did not identify Tom Wallace, Kevin O'Leary, Paul McAuliffe, or Charlie Bletzer by name. She also did not specifically allege that Conner laughed or snickered during proceedings. *Deposition of Margaret Sheehan (Vol. III), 474:17–477:22*; *Exhibit 4, S.J. Exs. 0099; Exhibit 7*.

**<u>RESPONSE TO FACT NO. 116:</u>**

Undisputed but immaterial, Sheehan identified them at her deposition. Sheehan (Vol. III) Tr. 474:17–477:22.

**<u>FACT NO. 117:</u>**

Sheehan further alleged that KP Law, the Town's legal counsel, participated in perpetuating the purported unconstitutional policy through its attorneys' representation of the Town and ZBA. As a specific example of KP Law's alleged participation, Sheehan identified attorney Amy Kwesell rolling her eyes while Main criticized Sheehan at a public meeting. Although Sheehan declined to characterize KP Law's relationship with the other alleged participants as "conspiratorial," she maintained that KP Law's conduct furthered the purported unconstitutional policy. *Deposition of Margaret Sheehan (Vol. III), 478:12–479:10.*

**RESPONSE TO FACT NO. 117:**

Undisputed that Sheehan testified, disputed to the extent Plymouth mischaracterizes Sheehan's testimony. Sheehan testified she "can tell you about KP Law's actions that I think are wrong, but I wouldn't say conspiratorial." Further disputed that Main "criticized" Sheehan, rather, Sheehan testified that "Amy Kwesell rolled her eyes while Buster Main was screaming at me and calling me a liar." Sheehan (Vol. III) Tr. 478:24–479:5.

## VI. SHEEHAN'S SPEECH ACTIVITIES IN PLYMOUTH – OPEN MEETING LAW COMPLAINTS AND LEGAL FILINGS

**FACT NO. 118:**

Sheehan's advocacy concerning Plymouth municipal government included filing complaints under the Massachusetts Open Meeting Law on behalf of Community Land & Water Coalition, Inc. and/or Save the Pine Barrens, Inc. *Defs' Jt. Index of Exhibits, Exhibit 106 – OML Complaints by Sheehan (Includes January 2022 to September 2024 and Decisions dated May 18, 2023 and August 4, 2023)*.

**RESPONSE TO FACT NO. 118:**

Undisputed.

**FACT NO. 119:**

Her filings included complaints dated August 16, 2022, concerning the Planning Board's consideration of the Claremont development; September 14, 2022, concerning the Planning Board's reorganization and election of its chair; and December 6, 11 and 12, 2022, concerning the November 15, 2022 Select Board and ZBA executive session. *Exhibit 106, S.J. Exs. 1200-1205, 1211-1212, 1232-1239*.

**RESPONSE TO FACT NO. 119:**

Disputed to the extent that Plymouth characterizes Sheehan as the complainant, rather than the Community Land and Water Coalition and Save the Pine Barrens.

**FACT NO. 120:**

On January 4, 2023, Sheehan appeared before the Plymouth Zoning Board of Appeals, chaired by Main, and exchanged remarks with him. *Deposition of Margaret Sheehan (Vol. III), 492:13–493:24, 494:2–18.*

**RESPONSE TO FACT NO. 120:**

Disputed as misleading as to the nature of the exchange on January 4, 2023. The exchange speaks for itself. Defendants Joint Exhibit 51. Sheehan further incorporates her response to Fact No. 26. Further disputed as to the characterization of Sheehan's testimony. Sheehan never testified that she "exchanged remarks" with Main. In the section of Sheehan's deposition cited by Plymouth, Plymouth's counsel asks about the January 4, 2023 ZBA meeting and Sheehan confirms as the one "[w]here he screamed at me?" and Plymouth's counsel responded "[t]hat's the one." Sheehan (Vol. III) Tr. at 494:2–18.

**FACT NO. 121:**

On January 26, 2023, Sheehan, on behalf of Community Land & Water Coalition, submitted an appeal to the Plymouth ZBA challenging the building commissioner's refusal to enforce the zoning bylaw against alleged sand-and-gravel mining violations at Firehouse Road. The appeal criticized the ZBA's permitting and enforcement practices and requested investigation, enforcement, and remediation. *Defs' Jt. Index of Exhibits, Exhibit 58 – January 26, 2023 – Application by STPB (Firehouse Road, Case No. 4085).*

**RESPONSE TO FACT NO. 121:**

Disputed as to Plymouth's characterization of the document, which speaks for itself.

**FACT NO. 122:**

On January 30, 2023, Sheehan filed an Open Meeting Law complaint concerning Plymouth's Select Board and/or Zoning Board of Appeals, concerning the November 15, 2022 executive session and the minutes thereof. *Exhibit 106, S.J. Exs. 1215-1220, 1224-1225, 1232-1239*.

**RESPONSE TO FACT NO. 122:**

Disputed to the extent that Plymouth characterizes Sheehan as the complainant, rather than the Community Land and Water Coalition and Save the Pine Barrens. Further, the document speaks for itself.

**FACT NO. 123:**

On February 6, 2023, Save the Pine Barrens, Inc. sued Main and others over a zoning determination involving earth removal. The Superior Court dismissed the action for lack of standing on April 30, 2024. *Defs' Jt. Index of Exhibits, Exhibit 60 – February 6, 2023 – Appeal of ZBA Decision (Joshua's Way – 11.08.2022)*.

**RESPONSE TO FACT NO. 123:**

Disputed to the extent Plymouths' citation to Exhibit 60 fails to support the statement: "The Superior Court dismissed the action for lack of standing on April 30, 2024."

**FACT NO. 124:**

On February 21, 2023, Sheehan filed an Open Meeting Law complaint concerning the ZBA's failure to approve minutes of its February 17, 2021 meeting. *Exhibit 106, S.J. Exs. 1226-1227.*

**RESPONSE TO FACT NO. 124:**

Undisputed, but the document speaks for itself.

**FACT NO. 125:**

On September 24, 2024, Sheehan filed an Open Meeting Law Complaint concerning the Plymouth Regional Economic Development Foundation. *Exhibit 106, S.J. Exs. 1240-1243.*

**<u>RESPONSE TO FACT NO. 125:</u>**

Undisputed, but the document speaks for itself, and Sheehan was acting as counsel.

**<u>FACT NO. 126:</u>**

On March 16, 2025, Sheehan, on behalf of Community Land & Water Coalition, filed an Open Meeting Law complaint concerning the convening of a committee. *Defs' Jt. Index of Exhibits, Exhibit 116 – 2025.03.16 – OML Complaint.*

**<u>RESPONSE TO FACT NO. 126:</u>**

Undisputed, but the document speaks for itself.

**<u>FACT NO. 127:</u>**

On April 17, 2025, Community Land & Water Coalition, Inc. and individual plaintiffs sued Plymouth, Select Board members, the Plymouth Regional Economic Development Foundation, and private developers over alleged environmental damage and Article 97. *Coombs et al. v. Town of Plymouth et al.*, Plymouth Superior Court, Civil Action No. 2583CV00351.

**<u>RESPONSE TO FACT NO. 127:</u>**

Undisputed, but the document speaks for itself.

**VII. SHEEHAN'S SPEECH ACTIVITIES IN PLYMOUTH**

**<u>FACT NO. 128:</u>**

Between 2021 and 2025, Sheehan engaged in extensive written communications with Plymouth officials and employees. The record includes at least 38 indexed communications or groups of communications concerning zoning appeals, development projects, environmental enforcement, public hearings, and municipal records. These included correspondence with Planning Director Lee Hartmann regarding ZBA proceedings, meeting minutes, recordings, and the Claremont development; communications addressed or copied to Select Board member Betty Cavacco; and a 2024 enforcement demand addressed to Building Commissioner Nick Mayo. Communications Between Sheehan and Town, Index and accompanying records. *Defs' Jt. Index of Exhibits, Exhibit*

*122 – Communications between Sheehan and Town of Plymouth personnel (2021 to 2025) & Corresponding Communications.*

**RESPONSE TO FACT NO. 128:**

Plaintiff can neither dispute or agree due to time constraints, and says that the public records should reveal this information. Further, the documents speak for themselves.

**FACT NO. 129:**

At her September 30, 2026 deposition, Sheehan was asked how many times she appeared before Plymouth boards or committees during 2022. She testified that she did not recall and could neither agree nor disagree with counsel's suggestion that she had made at least seven such appearances. *Deposition of Margaret Sheehan (Vol. III), 492:17–493:4*.

**RESPONSE TO FACT NO. 129:**

Undisputed.

**FACT NO. 130:**

On August 16, 2022, Sheehan appeared and spoke before Plymouth Conservation Commission. *Defs' Jt. Index of Exhibits, Exhibit 127 – Sheehan's Appearances at Plymouth Boards (2021 to 2026) & Corresponding Minutes, S.J. Exs. 1659.*

**RESPONSE TO FACT NO. 130:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**FACT NO. 131:**

On August 23, 2022, Sheehan appeared and spoke before Plymouth Conservation Commission. *Exhibit 127, S.J. Exs. 1661-1662.*

**RESPONSE TO FACT NO. 131:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**FACT NO. 132:**

On August 24, 2022, Sheehan appeared and spoke before Plymouth Planning Board. *Exhibit 127, S.J. Exs. 1666, 1668*.

**RESPONSE TO FACT NO. 132:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed because Sheehan alleged that the Board violated the Open Meeting Law. Defendants Joint Exhibit 106 at -1212.

**FACT NO. 133:**

On September 14, 2022, Sheehan appeared and spoke before Plymouth Planning Board. *Exhibit 127, S.J. Exs. 1673, 1676; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 133:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**FACT NO. 134:**

On January 4, 2023, Sheehan spoke before the Plymouth Zoning Board of Appeals, chaired by Main. *Deposition of Margaret Sheehan (Vol. III), 492:13–16, 494:2–18*; *Exhibit 127, S.J. Exs. 1716-1718; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 134:**

Disputed to the misrepresentation that Sheehan was able to continue speaking over Chair Main's berating conduct and false accusations. Sheehan further incorporates her responses to Fact Nos. 26 and 120.

**<u>FACT NO. 135:</u>**

On January 9, 2023, Sheehan wrote to Cavacco criticizing Main's conduct at the January 4 hearing and requesting review of the recording. *Defs' Jt. Index of Exhibits, Exhibit 57 – January 24, 2023 Email to D. Brindisi regarding January 9 Letter to Select Board (Ex. 2 to Cavacco Dep.).*

**<u>RESPONSE TO FACT NO. 135:</u>**

Disputed as to Plymouth's mischaracterization of the document. The document speaks for itself.

**<u>FACT NO. 136:</u>**

On January 20, 2023, Sheehan emailed Town Manager Brindisi and the Select Board requesting acknowledgment of her January 9 letter and its inclusion at the January 24 meeting. *Exhibit 57.*

**<u>RESPONSE TO FACT NO. 136:</u>**

Disputed as to Plymouth's mischaracterization of the document. The document speaks for itself.

**<u>FACT NO. 137:</u>**

On March 28, 2023, Sheehan spoke before the Plymouth Zoning Board of Appeals. *Exhibit 127, S.J. Exs. 1744-1745.*

**<u>RESPONSE TO FACT NO. 137:</u>**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**<u>FACT NO. 138:</u>**

On June 28, 2023, Sheehan spoke before the Plymouth Planning Board. *Exhibit 127, S.J. Exs. 1750, 1753.*

**<u>RESPONSE TO FACT NO. 138:</u>**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**<u>FACT NO. 139:</u>**

On July 12, 2023, Sheehan spoke before the Plymouth Planning Board. *Exhibit 127, S.J. Exs. 1755.*

**RESPONSE TO FACT NO. 139:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**FACT NO. 140:**

On October 24, 2023, Sheehan spoke before the Plymouth Conservation Commission. *Exhibit 127, S.J. Exs. 1767, 1770.*

**RESPONSE TO FACT NO. 140:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**FACT NO. 141:**

On November 7, 2023, Sheehan spoke before the Plymouth Conservation Commission. *Exhibit 127, S.J. Exs. 1781*.

**RESPONSE TO FACT NO. 141:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**FACT NO. 142:**

On December 7, 2023, Sheehan attended a Plymouth Community Preservation Committee meeting concerning a Makepeace grant application and alleges she was prevented from speaking. *ECF No. 106, ¶ 104; Deposition of Margaret Sheehan (Vol. III), 508:22–509:16*.

**RESPONSE TO FACT NO. 142:**

Undisputed that Sheehan initially made those allegations, but disputed to the extent that Sheehan has since corrected the date of the meeting in which Cavacco prevented Sheehan from speaking. Sheehan Aff. ¶ 24.

**FACT NO. 143:**

On December 13, 2023, Sheehan spoke before the Plymouth Planning Board. *Exhibit 127, S.J. Exs. 1804*; *Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 143:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**FACT NO. 144:**

On January 16, 2024, Sheehan spoke before the Plymouth Select Board concerning meeting procedures and earth removal. *Exhibit 127*, *S.J. Exs. 1816; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 144:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Sheehan's remarks. Sheehan's remarks speak for themselves.

**FACT NO. 145:**

On February 14, 2024, Sheehan spoke before the Plymouth Planning Board concerning a solar project at 101 Tihonet Road. *Exhibit 127*, *S.J. Exs. 1825; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 145:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Sheehan's remarks. Sheehan's remarks speak for themselves.

**FACT NO. 146:**

On October 22, 2024, Sheehan spoke before the Plymouth Select Board concerning an earth-removal moratorium. *Exhibit 127, S.J. Exs. 1881; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 146:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Exhibit 127 at -1881. The document speaks for itself.

**FACT NO. 147:**

On December 4, 2024, Sheehan spoke before the Plymouth Planning Board concerning 71 Hedges Pond Road and 4142 Landers Farm Way. *Exhibit 127, S.J. Exs. 1885, 1888; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 147:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Exhibit 127 at -1885, 1888. The document speaks for itself.

**FACT NO. 148:**

On January 7, 2025, Sheehan spoke before the Plymouth Select Board concerning transparency, planning, the Plymouth Regional Economic Development Foundation, and executive session. *Exhibit 127, S.J. Exs. 1899; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 148:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Exhibit 127 at -1899. The document speaks for itself.

**FACT NO. 149:**

On January 28, 2025, Sheehan spoke before the Plymouth Select Board concerning the Plymouth Regional Economic Development Foundation, 71 Hedges Pond Road, earth removal, and alleged conflicts of interest. *Exhibit 127, S.J. Exs. 1915; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 149:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as mischaracterizing Exhibit 127 at -1915. The document speaks for itself. Further disputed as incomplete. Brindisi, in response to Sheehan, stated that he was "happy to meet with any community member who would like to discuss these issues further, and to end the perpetuation of misinformation by Sheehan." Defendants Joint Exhibit 127 at -1915.

**FACT NO. 150:**

On February 4, 2025, Sheehan spoke before the Plymouth Select Board concerning development and earth removal at 71 Hedges Pond Road. *Exhibit 127, S.J. Exs. 1923-1925; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 150:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Exhibit 127 at -1923–1925. The document speaks for itself.

**FACT NO. 151:**

On February 18, 2025, Sheehan spoke before the Plymouth Select Board concerning development and earth removal at 71 Hedges Pond Road. *Exhibit 127, S.J. Exs. 1941; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 151:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Exhibit 127 at -1941. The document speaks for itself.

**FACT NO. 152:**

On February 25, 2025, Sheehan spoke remotely before the Plymouth Select Board concerning earth removal at 71 Hedges Pond Road. *Exhibit 127*, *S.J. Exs. 1953; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 152:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Exhibit 127 at -1953. The document speaks for itself.

**FACT NO. 153:**

In March 2025, Sheehan continued representing petitioners in ZBA appeals concerning 71 Hedges Pond Road. She communicated directly with KP Law attorney Amy Kwesell regarding the scheduling of the appeals and potential conflicts of interest involving ZBA members. Kwesell identified Michael Main, Kevin O'Reilly, and Thomas Wallace as members who would recuse themselves at the April 7, 2025 hearing, and responded to Sheehan's inquiry concerning whether O'Reilly's participation in a March 17 procedural vote violated the ethics law. *Defs' Jt. Index of Exhibits, Exhibit 117 – Communications between A. Kwesell and Sheehan (March 2025)*.

**RESPONSE TO FACT NO. 153:**

Disputed as to Plymouth's characterization of the communications between the attorneys. The documents speak for themselves.

**FACT NO. 154:**

On March 4, 2025, Sheehan spoke remotely before the Plymouth Select Board concerning Brindisi's statements about earth removal at 71 Hedges Pond Road. *Exhibit 127, S.J. Exs. 1959; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 154:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Exhibit 127 at -1959. The document speaks for itself.

**FACT NO. 155:**

On March 16, 2025, acting as counsel for Community Land & Water Coalition, Inc., she filed an Open Meeting Law complaint concerning the Pilgrim 1600 Acre Area Plan Team, identifying Planning Director Lee Hartmann among the persons allegedly responsible for violations and requesting compliance with the Open Meeting Law and disclosure of public records. *Exhibit 116 – March 16, 2025 – OML Complaint*.

**RESPONSE TO FACT NO. 155:**

Undisputed as to the date and time of the complaint, but disputed as to Plymouth's characterization of the document. The document speaks for itself.

**FACT NO. 156:**

On April 7, 2025, Sheehan appeared before the Plymouth Zoning Board of Appeals concerning a building-permit appeal at 71 Hedges Pond Road. *Exhibit 127, S.J. Exs. 1971-1975; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 156:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial and mischaracterizing Exhibit 127 at -1971–75. The document speaks for itself.

**FACT NO. 157:**

On May 6, 2025, Sheehan spoke before the Plymouth Select Board concerning Community Land & Water Coalition's tenancy at 158 Center Hill Road. *Exhibit 127*, *S.J. Exs. 1984; Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 157:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. The letter relating to the alleged tenancy speaks for itself.

**FACT NO. 158:**

On May 18, 2026, Sheehan attended a Plymouth ZBA hearing and spoke on three occasions during the proceedings. Plymouth ZBA Hearing Recording (May 18, 2026), https://www.youtube.com/watch?v=ZzkIV5aUnAU; *Exhibit to Affidavit of Jared Pliner – "Speaking Time of Margaret E. Sheehan at Municipal Hearings (2021-2026)".*

**RESPONSE TO FACT NO. 158:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct. Further disputed as immaterial. Sheehan further states that the video speaks for itself.

## VIII. LACK OF EVIDENCE OF CHILLING

**FACT NO. 159:**

Rachel Atkins was deposed on June 23, 2026, as the Rule 30(b)(6) designee of Community Land and Water Coalition ("CLWC"), formerly known as Save the Pine Barrens. Atkins testified that she had worked for the organization since 2021 and was responsible for its finances, human resources, and administrative operations. *Defs' Joint Index of Deposition Testimony, Deposition of CLWC, 9:15–15:13*.

**RESPONSE TO FACT NO. 159:**

Undisputed except to say that the transcript of her deposition speaks for itself.

**FACT NO. 160:**

Atkins testified that CLWC's donor base had increased every year since 2021 and that she was unaware of any year in which the number of donors had declined. She estimated that CLWC had approximately 300 individual donors at the time of her deposition, compared with approximately 50 in 2022, although she acknowledged that the earlier figure was a guess. *Deposition of CLWC, 26:22–27:23*.

**RESPONSE TO FACT NO. 160:**

Undisputed except to say that the transcript of her deposition speaks for itself.

**FACT NO. 161:**

Atkins testified that CLWC's mailing list had grown annually since 2021 and contained approximately 3,500 recipients at the time of her deposition. She did not recall any year in which the mailing list had decreased. *Deposition of CLWC, 31:22–32:15.*

**RESPONSE TO FACT NO. 161:**

Disputed to the extent that Ms. Atkins also testified that people can unsubscribe and she does not "follow every bump in the road." Community Land and Water Coalition, Rule 30(b)(6) Deposition ("CLWC") Tr. 32:18–19.

**FACT NO. 162:**

Atkins testified that Sheehan had appeared before Plymouth boards and committees many times and described Sheehan as "very, very active on behalf of her clients." Atkins did not know the number of appearances in any particular year but did not dispute counsel's suggested figures of at least seven appearances in each of 2022, 2023, and 2024, and at least nine appearances in 2025. *CLWC Tr., 232:2–233:22*.

**RESPONSE TO FACT NO. 162:**

Undisputed, except to the extent the statement implies that her perseverance negates her argument that her speech has been chilled by Defendants' retaliatory conduct.

**FACT NO. 163:**

Atkins testified that she personally attended a Plymouth Zoning Board of Appeals hearing at which Main accused Sheehan of lying, repeatedly interrupted her, and made remarks Atkins characterized as derogatory toward Sheehan. Atkins recalled that, at a subsequent meeting, Main apologized for his conduct to the Town or his fellow board members but refused to apologize to Sheehan. *CLWC Tr., 233:23–236:16*.

**RESPONSE TO FACT NO. 163:**

Undisputed except to the extent that the summary of Ms. Atkins' testimony is incomplete: Ms. Atkins also testified that Main was completely abusive and disrespectful of Sheehan, and also told Sheehan that he was sick of her appearing in front of his committee and cut her off repeatedly CLWC Tr. 235:18–236:1.

**FACT NO. 164:**

Atkins testified that she had attended several municipal hearings with Sheehan and had discussed those hearings with her afterward. When asked to identify particular conversations with Sheehan

about appearances before Plymouth boards or committees, Atkins testified that she could not recall any such conversation with specificity. *CLWC Tr., 240:1–243:10.*

**RESPONSE TO FACT NO. 164:**

Undisputed except to the extent that the summary of Ms. Atkins' testimony is incomplete. Ms. Atkins also testified that in her many conversations with Sheehan after hearings, others have come up to them "aghast" for how Sheehan is treated, including Sybil Holland at the public hearing on Hedges Pond Road and Michael Withington. Ms. Atkins also testified to other conversations with CLWC employees regarding the mistreatment of Sheehan. CLWC Tr. 240:8–17, 241:6–15, 243:22–247:18.

**FACT NO. 165:**

Atkins testified that she did not believe she had ever had a conversation with Main and that she had never had a conversation with Cavacco. *Deposition of CLWC, 248:15-23*.

**RESPONSE TO FACT NO. 165:**

Undisputed.

**FACT NO. 166:**

Atkins testified that CLWC determines who will speak at municipal meetings by reviewing meeting agendas, discussing attendance, agreeing on talking points, and considering the availability and expertise of potential speakers. She testified that this process had generally remained consistent since the organization's creation. Deposition of CLWC, *249:3–251:9*.

**RESPONSE TO FACT NO. 166:**

Undisputed.

**FACT NO. 167:**

Atkins agreed that, as CLWC developed, more individuals had become willing or capable of speaking on the organization's behalf. She also testified that CLWC personnel volunteered to

speak on particular issues and that Sheehan was among those who continued to volunteer. *Deposition of CLWC, 251:10–252:22*.

**RESPONSE TO FACT NO. 167:**

Undisputed, except to the extent that the summary of Ms. Atkins' testimony was incomplete: Ms. Atkins also testified that some "[a]ffected neighbors will want to speak about their particular experience, not necessarily on behalf of Community Land and Water [Coalition]." CLWC Tr. 252:4–7.

**FACT NO. 168:**

Atkins testified that she was unaware of any CLWC participant who had declined to speak about a particular issue. *Deposition of CLWC, 252:23–253:3*.

**RESPONSE TO FACT NO. 168:**

Undisputed.

**FACT NO. 169:**

Atkins testified that she was not aware of any individual, group, or organization with interests similar to CLWC's that had been unwilling to speak before a Plymouth board or committee. She also testified that she was not aware of anyone CLWC had asked to speak who had declined. *CLWC Tr., 255:11–256:8*.

**RESPONSE TO FACT NO. 169:**

Undisputed except to the extent that the summary of Ms. Atkins testimony is incomplete: Ms. Atkins also testified that she was "sure there are people who are unwilling." CLWC Tr. 255:21–22.

**FACT NO. 170:**

Asked whether Sheehan had discussed the emotional impact of pursuing this lawsuit, Atkins testified that she could not identify any such discussion with specificity. She explained that the

lawsuit was Sheehan's personal matter rather than CLWC's business and that Sheehan did not speak much about it in that context. *Deposition of CLWC, 257:4-24*.

**RESPONSE TO FACT NO. 170:**

Undisputed.

**FACT NO. 171:**

Asked what Sheehan hoped to accomplish through this lawsuit, Atkins testified that she understood Sheehan's objective to be obtaining accountability for how others had treated her. Atkins could not recall any additional objective with specificity. *Deposition of CLWC, 258:1-12*.

**RESPONSE TO FACT NO. 171:**

Undisputed.

**FACT NO. 172:**

Sheehan testified that she sent a letter to the Plymouth Select Board concerning Main's conduct at the January 4, 2023 Zoning Board of Appeals hearing, with a copy to Town Manager Derek Brindisi. She acknowledged that she wrote, signed, and sent the letter. *Deposition of Margaret Sheehan (Vol. III), 495:12–496:13*.

**RESPONSE TO FACT NO. 172:**

Undisputed, except the letter speaks for itself. Defs JA Ex. 46.

**FACT NO. 173:**

Sheehan testified that, at the January 4, 2023 hearing, her presentation lasted approximately 30 seconds before the exchange with Main. She could not recall the duration of her presentation after the exchange and stated that she would have to review the video recording. *Deposition of Margaret Sheehan (Vol. III), 490:3-12*.

**RESPONSE TO FACT NO. 173:**

Undisputed, except to say that the video speaks for itself. Defs JA Ex. 51.

**FACT NO. 174:**

Sheehan testified that members of the public spoke after her at the January 4, 2023 hearing. She believed that one of those speakers was her client, Joe Balboni, although she stated that she would have to review the video to confirm. *Deposition of Margaret Sheehan (Vol. III), 491:10–492:16*.

**RESPONSE TO FACT NO. 174:**

Undisputed except to the extent that the video speaks for itself. Defs JA Ex. 51. Sheehan further says the summary was incomplete and that the minutes reflect that Ashley Fraccalossi, Mike Fraccalossi, Anne Balboni, and Anita Galletti each spoke. Defs JA Ex. 50 at -1087.

**FACT NO. 175:**

Sheehan testified that she had represented clients harmed by the sand and gravel mining industry and had pursued regulatory proceedings and permit challenges on their behalf. *Deposition of Margaret Sheehan (Vol. III), 580:13–581:10*.

**RESPONSE TO FACT NO. 175:**

Disputed to the extent that Plymouth mischaracterizes Sheehan's testimony. Sheehan did not testify that she had pursued regulatory proceedings and permit challenges on her clients behalf; she testified that she represents clients who are harmed by the sand and gravel industry. Sheehan (Vol. III) Tr. 580:24–581:10.

**FACT NO. 176:**

Sheehan testified that she volunteered with Community Land and Water Coalition and assisted volunteers, grassroots networks, and other organizations in carrying out environmental advocacy activities. *Deposition of Margaret Sheehan (Vol. III), 581:20–583:4*.

**RESPONSE TO FACT NO. 176:**

Undisputed.

**<u>FACT NO. 177:</u>**

Sheehan testified that she had spoken at numerous public events, spoken to the press, written articles concerning sand mining, and made social media and video posts concerning environmental issues. *Deposition of Margaret Sheehan (Vol. III), 583:13–585:4*.

**<u>RESPONSE TO FACT NO. 177:</u>**

Undisputed.

**<u>FACT NO. 178:</u>**

Sheehan was questioned about her interrogatory response concerning individuals other than herself who allegedly altered their First Amendment activity because of Plymouth's alleged unwritten policy. The response stated that Sheehan had not contended that other individuals were "discouraged, chilled, deterred, intimidated, silenced, retaliated against, or otherwise caused to alter" their First Amendment activity as a result of that policy, and that the affected individuals would have to speak for themselves. *Deposition of Margaret Sheehan (Vol. III), 576:8–577:22*.

**<u>RESPONSE TO FACT NO. 178:</u>**

Undisputed, except insofar as the statement purports to summarize the content of her testimony as to which the transcript speaks for itself.

**<u>FACT NO. 179:</u>**

Sheehan testified that she continued representing clients in matters involving sand and gravel mining, including pursuing regulatory proceedings and permit challenges on their behalf. *Deposition of Margaret Sheehan (Vol. III), 580:13–581:10*.

**<u>RESPONSE TO FACT NO. 179:</u>**

Disputed. Sheehan testified that she has "represent[ed] [her] clients who were harmed by the sand and gravel mining industry." Sheehan (Vol. III) Tr. 581:8–10.

**FACT NO. 180:**

Sheehan testified that she continued volunteering with Community Land and Water Coalition, assisting volunteers, grassroots networks, and other organizations with environmental advocacy activities. *Deposition of Margaret Sheehan (Vol. III), 581:20–583:1*.

**RESPONSE TO FACT NO. 180:**

Undisputed.

**FACT NO. 181:**

The following individuals signed executed affidavits, swearing under the pains and penalties of perjury and denying awareness of any unconstitutional Town policy or custom: Betty Cavacco, Michael Main, Derek Brindisi, Lee Hartmann, Lauren Lind, Colleen Tavekelian, Jason Silva, Nicholas Mayo, Peter Conner, Michael Leary, Kevin O'Reilly, Charles Bletzer and Amy Kwesell. *Plymouth Affidavits.*

**RESPONSE TO FACT NO. 181:**

Undisputed for the purposes of summary judgment that Plymouth filed affidavits from the listed individuals, disputed as to the legal conclusion that no unconstitutional Town policy or custom existed. Each affiant's denial of awareness of an unconstitutional policy or custom is also a legal conclusion and should be disregarded. Fed. R. Civ. P. 56(c)(2), (c)(4).

Dated: November 25, 2026

Respectfully submitted,

By: */s/ Joan A. Lukey* ____________________

Joan A. Lukey (BBO No. 307340)
Justin J. Wolosz (BBO No. 643543)
MANATT, PHELPS & PHILLIPS, LLP
One Beacon Street, 11th Floor
Boston, Massachusetts 02108
Telephone: (617) 646-1448
jlukey@manatt.com
jwolosz@manatt.com

*Attorneys for the Plaintiff,*
*Margaret E. Sheehan*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 25, 2026, I caused a true and correct copy of the foregoing to be served via the Court's CM/ECF system on all counsel of record.

*/s/ Joan A. Lukey*
Joan A. Lukey